# EXHIBIT 7

# JOSEPH ABBOUD

June 29, 2004

Mr. Joseph Abboud
Founder and Chief Creative Director
JA Apparel Corp.
650 Fifth Avenue
New York, New York 10019

Dear Joseph:

Having reviewed your April 5th letter to me and discussed your role in JA Apparel Corp.'s business with my fellow owners of JA Holding, Inc., I am delighted to confirm that we have come to a common understanding, which is set forth herein. Please indicate your agreement by countersigning this letter.

1. Both you and JA Apparel Corp. reaffirm their commitment to the terms of the July 13, 2000, Personal Services Agreement by and between you and JA Apparel Corp., as supplemented by this letter. We agree that your title with JA Apparel Corp. will be "Founder and Chief Creative Director."

2. On or before February 28, 2005, each party to the Personal Services Agreement will notify the other as to his intention to discuss your continued role in JA Apparel Corp. beyond the expiration of the Personal Services Period set forth therein. If both parties intend to have that discussion, they will do so during the 60 days following February 28, 2005, without any commitment by either to reach any further agreement.

3. Contemporaneously with your countersigning this letter, you shall be entitled to purchase $1 million of the common stock of JA Holding, Inc., at the same price per share as Eric Spiel and Randy Fields ($10.00 per share), which as of the date of this letter represents 2.059% of the fully diluted equity of JA Holding, Inc. Contemporaneously with your purchase of common stock of JA Holding, Inc., you shall execute the Stockholders Agreement by and among JA Holding, Inc. and its stockholders, a copy of which is attached hereto as Exhibit A, as a Management Holder of such common stock.

4. However, notwithstanding the terms of the Stockholders Agreement, at the expiration of the Personal Services Period, if the parties do not mutually agree to extend your role in JA Apparel Corp., JA Holding, Inc. shall have the right to "call," i.e. repurchase, 100% of your common stock in JA Holding, Inc. at the Cost Price of $1 million; and, you shall have the right to "put," i.e. to require JA Holding, Inc., or its designee at its discretion, to repurchase, 100% of your stock in JA Holding, Inc. at the Cost Price of $1 million. Such call and put rights shall only be exercisable by

either party upon written notice delivered to the other within 30 days following the expiration of the Personal Services Period. The closing with regard to the payment of the Cost Price of $1 million for your stock in JA Holding, Inc., shall occur within 30 days after the delivery of such written notice.

5. In the event the parties mutually agree to extend your role in JA Apparel Corp. beyond the Personal Services Period, you shall at the time of such extension be entitled to purchase an additional $1.5 million of the common stock of JA Holding, Inc., at the same price of $10.00 per share, subject to adjustment for stock dividends and stock splits. The additional stock purchased by you would be subject to the terms and conditions of the Stockholders Agreement.

6. In connection with your initial purchase of common stock in JA Holding, Inc., JA Holding, Inc. represents and warrants the truth and accuracy of its Capitalization table, dated as at June 28, 2004, showing the capital structure of the corporation, including debt; equity; all outstanding stockholdings; all treasury stock reserved for options and/or warrants to purchase common stock; and, any capital surplus or deficit, a copy of which is attached hereto as Exhibit B.

7. In addition to your responsibilities, as already set forth in the Personal Services Agreement, you shall have creative control over the Joseph Abboud Collection line of tailored clothing, sportswear, furnishings, and accessories, as well as creative control over the following licensed products: home furnishings, eyewear, pens, jewelry, footwear and all women's products, as well as any licensed apparel products bearing the Joseph Abboud Collection label. However, these additional responsibilities are at my option and are subject to change. You and I will consult regarding the design resources for the above lines, but the allocation of resources for your design work will be subject to my approval, and will be reviewed regularly to ensure efficiency and expense control. You may advise on all other licensed products as per the terms of your Personal Services Agreement.

8. JA Apparel Corp. currently intends to hire one full time designer to work with you and report to you on the Joseph Abboud Collection line, and to allocate a portion of the time of an existing member of the finance staff to this line. Also, JA Apparel Corp. currently intends to shift a designer from another area of its business to work with you and to report to you on the Home Collection. However, all of the above decisions are within my sole discretion and are subject to change.

9. Otherwise, in order to provide support for all your work under the Personal Services Agreement, as supplemented by this letter, especially paragraphs 7 and 8 herein, JA Apparel Corp. currently intends to provide you with access to its merchandising, marketing, publicity and advertising divisions, groups and/or staffs for purposes of assisting in your work. However, the above decisions are within my sole discretion and are subject to change.

10. You will report to me, as President of JA Apparel Corp., on all matters pertaining to the company's business.

11. You will submit all of your business expenses to either Eric Spiel or me for approval. All such expenses must be incurred in accordance with existing company policy.

12. If JA Apparel Corp.'s board of directors determines to conduct a formal auction process with multiple bidders for the sale of JA Apparel Corp., you will be invited to participate as a bidder in the auction process.

13. We have agreed not to pursue any of the other matters suggested in your April 5th letter to me.

Joseph, I am so excited to work with you to establish the "Joseph Abboud" trademark as the next global brand. On a personal level, I already know I will enjoy working with you. Let's get this done and move on to the next chapter and to the exciting part of building the business.

Best regards.

Sincerely,

*[signature]*

Martin Staff
President, JA Apparel Corp.

AGREED:

*[signature]*

Joseph Abboud

JA HOLDING, INC.

By: _____
Mark J. Tricolli
Vice President, JA Holding, Inc.

10. You will report to me, as President of JA Apparel Corp., on all matters pertaining to the company's business.

11. You will submit all of your business expenses to either Eric Spiel or me for approval. All such expenses must be incurred in accordance with existing company policy.

12. If JA Apparel Corp.'s board of directors determines to conduct a formal auction process with multiple bidders for the sale of JA Apparel Corp., you will be invited to participate as a bidder in the auction process.

13. We have agreed not to pursue any of the other matters suggested in your April 5th letter to me.

Joseph, I am so excited to work with you to establish the "Joseph Abboud" trademark as the next global brand. On a personal level, I already know I will enjoy working with you. Let's get this done and move on to the next chapter and to the exciting part of building the business.

Best regards.

Sincerely,

_____
Martin Staff
President, JA Apparel Corp.

AGREED:

_____
Joseph Abboud

JA HOLDING, INC.

By: _____
Mark J. Tricolli
Vice President, JA Holding, Inc.