Thomas A. Smart
Phillip A. Geraci
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Plaintiff JA Apparel Corp.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JA APPAREL CORP.,                                     :

       Plaintiff,                                  :       Civil Action No. 07-cv-___

  v.                                                  :

JOSEPH ABBOUD, HOUNDSTOOTH CORP., and
HERRINGBONE CREATIVE SERVICES, INC.,                  :

       Defendants.                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS APPLICATION FOR EXPEDITED DISCOVERY**

KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Plaintiff JA Apparel Corp.*

31520224.DOC

Plaintiff JA Apparel Corp. ("JA Apparel") submits this memorandum of law in support of its application by order to show cause for an order, pursuant to FED. R. CIV. P. 26, 30 and 34, permitting expedited discovery in aid of a preliminary injunction enjoining defendants Joseph Abboud ("Mr. Abboud"), Houndstooth Corp. ("Houndstooth"), and Herringbone Creative Services, Inc. ("Herringbone"), pending trial, from infringing and diluting JA Apparel's well known "Joseph Abboud" trademarks, and other trade names, marks and designations incorporating the trade name "Joseph Abboud," engaging in unfair competition and false and deceptive trade practices, and breaching contracts entered between JA Apparel, Joseph Abboud and Houndstooth.

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS[1]

This action seeks to stop Mr. Abboud and his affiliates from unlawfully misappropriating very valuable trademarks, trade names, brand names, and designations in which Mr. Abboud sold all right, title, and interest to JA Apparel for the handsome sum of $65.5 million. Having pocketed that payment, Mr. Abboud forfeited all rights to use the names, trademarks, trade names, service marks, logos, insignias and designations that include the name Joseph Abboud as well as new trade names, trademarks, service marks, logos, insignias and designations containing the words "Joseph Abboud," "designed by Joseph Abboud," "by Joseph Abboud" or anything similar thereto or derivative thereof (collectively, "the ABBOUD marks"), as well as "a new composition by designer Joseph Abboud." Simply put, Mr. Abboud chose to trademark his name and Mr. Abboud chose to sell his trademarks, trade names and designations, and related goodwill, to plaintiff for $65.5 million. He therefore chose to lose the right to use those trademarks, trade names, and designations, and JA Apparel's companion motion for a

---

[1] This statement of facts is based on the August 30, 2007 Declaration of Eric Spiel, Senior Vice President and Chief Financial Officer of plaintiff JA Apparel ("Spiel Dec.") and exhibits thereto.

preliminary injunction demonstrates why he and his entities should be enjoined from attempting to do so in violation of plaintiff's contractual, statutory, and common law rights.

JA Apparel is the owner of numerous United States registrations for the trademark and trade name "Joseph Abboud" for designer goods and services, and other related marks, which have been continuously and exclusively used by JA Apparel since 1988. JA Apparel has expended millions of dollars to advertise and promote the ABBOUD marks and names throughout the United States and worldwide, resulting in a retail value of approximately $300 million in worldwide sales under the ABBOUD marks. The ABBOUD marks are extremely strong and famous. (Spiel Dec. ¶ 18.)

JA Apparel has recently learned from articles in *The Wall Street Journal* and the leading menswear industry weekly, *DNR*, that Mr. Abboud and his companies Houndstooth and Herringbone have embarked on a campaign to misappropriate JA Apparel's ABBOUD marks by marketing and promoting a forthcoming new menswear line "jaz" with the trade names, trademarks, and designations "a new composition by designer Joseph Abboud" and "Joseph Abboud." (*Id.* at ¶¶ 31, 36 & Exs. 8, 11.) JA Apparel has also recently learned that defendants have taken the position that they "are free to use [Mr. Abboud's] name in marketing materials, not on clothing," and that defendants view the name Joseph Abboud as "a very big asset to us" and to their "partners, and future partners and accounts." (*Id.* at ¶ 34 & Ex. 9.)

Defendants' conduct is in direct breach of the contract (the "Purchase and Sale Agreement") by which Mr. Abboud and Houndstooth sold to JA Apparel all of their interest in the ABBOUD marks, the related goodwill, and "[a]ll rights to use and apply for the registration of new trade names, trademarks, service marks, logos, insignias, and designations containing the words 'Joseph Abboud,' 'designed by Joseph Abboud,' 'by Joseph Abboud,' 'JOE' or 'JA,' or

anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols, for any and all products or services." (Spiel Dec. ¶ 7 & Ex. 1, at ¶ 1.1(a)(C).) Defendants' use of the trade name, trademark, and designation "a new composition by designer Joseph Abboud" is a barely discernable variation and clearly "similar" to and "derivative of" several of the marks that he expressly sold, including "Joseph Abboud," "designed by Joseph Abboud," and "by Joseph Abboud," and, thus, is a plain breach of the agreement. Similarly, their use of "Joseph Abboud" "on marketing and advertising materials" for Mr. Abboud's new line is a blatant attempt by Mr. Abboud to keep for himself that which he sold to JA Apparel for $65.5 million.

Nor is defendants' conduct rendered lawful by the fact that defendant Mr. Abboud's name is "Joseph Abboud." Courts repeatedly have enjoined the use of personal names where, as here (for $65.5 million), an individual has contracted away and sold to another the exclusive right to use the individual's name. *See, e.g., Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979); *Nipon v. Leslie Fay Cos. (In re Leslie Fay Cos.)*, 216 B.R. 117, 135 (Bankr. S.D.N.Y. 1997).

Furthermore, applying the Second Circuit's standard for trademark infringement, it is evident that defendants' use of the trade names, trademarks, and designations "a new composition by designer Joseph Abboud" and "Joseph Abboud" infringes JA Apparel's ABBOUD marks: JA Apparel's mark is strong and enforceable, the similarity of defendants' mark is obvious, the marks are used in connection with almost identical goods, there is evidence of actual confusion, and defendants have acted in bad faith. (Spiel Dec. ¶ 48 & Exs. 12, 13.) Defendants' unauthorized use of the trade names, trademarks, and designations "a new composition by designer Joseph Abboud" and "Joseph Abboud" plainly creates a likelihood of

consumer confusion as to source, origin, sponsorship, license or approval with JA Apparel's line of products branded with the ABBOUD marks, in violation of the Lanham Act and state statutory and common law. 15 U.S.C. §§ 1114, 1125(a), N.Y. GEN. BUS. LAW §§ 349(a), 350, 360-l. *See, e.g., Levitt Corp.*, 593 F.2d at 469; *Nipon*, 216 B.R. at 125-26; *Francis S. Denney, Inc. v. I.S. Labs., Inc.*, 758 F. Supp. 140, 143 (S.D.N.Y. 1990). In addition, defendants' unauthorized use of "a new composition by designer Joseph Abboud" and "Joseph Abboud" as a trade name, trademark, and designation dilutes and creates a likelihood of dilution of the distinctive quality of the ABBOUD marks, and constitutes false and deceptive trade practices, in violation of federal and state anti-dilution laws. 15 U.S.C. § 1125(c); N.Y. GEN. BUS. LAW § 360-l. *See, e.g., Nipon.*, 216 B.R. at 132.

In addition, Mr. Abboud's conduct is a clear breach of non-competition provisions contained in a second contract (the "Side Letter Agreement") that he entered into with JA Apparel at the same time that he entered into the Purchase and Sale Agreement in which Mr. Abboud agreed, *inter alia*, to provide consulting services relating to fashion design and brand promotion of the products sold by JA Apparel under the ABBOUD marks. (Spiel Dec. ¶ 19 & Ex. 6.) Pursuant to that agreement, Mr. Abboud agreed that until July 13, 2007 (the "Restricted Period"), he (i) would not, directly or indirectly be associated with any person which competed or proposed to compete with the JA Apparel, and (ii) would obtain JA Apparel's written consent before becoming associated in any capacity with any person or entity that competed or proposed to compete with the company. (*Id.* at ¶¶ 20,21 & Ex. 6, at ¶ 2(a)-(b).) Remarkably, within three weeks of the expiration of the non-compete provisions, Mr. Abboud had, according to *DNR* and *The Wall Street Journal*, already identified, negotiated, and fully formed licensing partnerships and acquisition agreements with five different companies for his

new competitive menswear line, and had already designed, obtained fabrics for, and manufactured a complete line of menswear, including suits, sweaters, shirts, jackets and pants. (*Id.* at ¶¶ 31, 32, 36 & Exs. 8, 11.) *See, e.g., World Auto Parts, Inc. v. Labenski*, 217 A.D.2d 940, 629 N.Y.S.2d 896 (4th Dep't 1995) (holding that defendant breached non-compete provision by "attending trade shows, distributing his business card and discussing with competitors his plans to re-enter . . . business when the non-compete provision expired"). In other words, although Mr. Abboud was restricted from competing with or associating with anyone who competed with JA Apparel prior to July 13, 2007, his entirely new menswear business somehow sprang to life less than three weeks thereafter. Mr. Abboud could not have done this unless, well before July 13, 2007, he had begun competing with JA Apparel in breach of his non-compete obligations. (*Id.* at ¶¶ 20-21, 42-46 & Ex. 6.)

Defendants' clear infringing activities and breaches of contract threaten to cause JA Apparel serious harm to its sales and reputation as the source of products with the ABBOUD marks. JA Apparel has therefore moved for a preliminary injunction based on published reports that indicate that defendants intend to breach the Purchase and Sale Agreement by infringing JA Apparel's trademarks and which provide circumstantial evidence that defendants have breached the non-compete provisions in the Side Letter Agreement.

Accordingly, JA Apparel seeks expedited discovery in aid of its preliminary injunction motion to obtain evidence from defendants' own files and testimony regarding the nature and extent of defendants' use, and planned use, of the trade names, trademarks, and designations "a new composition by designer Joseph Abboud" and "Joseph Abboud" and to develop first-hand evidence of defendants' breaches of the non-compete clauses in the Side Letter Agreement. Defendants have already caused irreparable harm to JA Apparel and threaten

to imminently cause additional irreparable harm to the company, justifying the need for prompt injunctive relief. Expediting discovery in these circumstances will allow the parties promptly to collect and marshal their evidence so that the Court will have a full record by which to evaluate plaintiff's motion for a preliminary injunction.

## ARGUMENT

### EXPEDITED DISCOVERY IS NECESSARY IN THIS CASE AND SHOULD BE GRANTED

The Federal Rules of Civil Procedure and the relevant authorities grant this Court broad power to permit expedited discovery in circumstances like these. Thus, 28 U.S.C.§ 1657(a) provides that "the court shall expedite the consideration of any action . . . for . . . preliminary injunctive relief," and FED. R. CIV. P. 26(d) specifically authorizes the Court to allow discovery on an expedited basis. *See* FED. R. CIV. P. 26(d) 1993 Advisory Committee Note (order providing for expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction"). Plaintiff is entitled to expedite discovery upon a showing of "good cause." *Standard Investment Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 2007 U.S. Dist. LEXIS 27342, at *16 (S.D.N.Y. Apr. 11, 2007); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005). This test is "flexible" and guided by a "reasonableness" standard. *Ayyash*, 233 F.R.D. at 326-27. Good cause is established where the need for expedited discovery, in consideration of the administration of justice, outweighs any prejudice to the responding party. *Keybank, Nat'l Ass'n v. Quality Payroll Sys., Inc.*, 2006 U.S. Dist. LEXIS 42078, at *13 (E.D.N.Y. June 22, 2006) (granting expedited discovery where injury to plaintiff in being unable to obtain requested discovery "is far greater" than injury to defendant in directing them to comply).

Expedited discovery is recognized as a necessary means for ensuring timely and just determination of a dispute where the pace of normal pretrial procedure will be prejudicial. Obviously, delay here will favor defendants by allowing them to continue to infringe JA Apparel's ABBOUD marks and to breach their contracts and will result in further prejudice to JA Apparel and continued harm by confusing the public. For these reasons, time and time again, courts in this Circuit have granted expedited discovery and held a hearing within a short time frame in actions alleging trademark infringement or other violations of the Lanham Act or breaches of contracts selling trademarks. *See, e.g., Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 344-45 (S.D.N.Y. 2001); *Garden Way, Inc. v. The Home Depot, Inc.*, 94 F. Supp. 2d 276, 279 (N.D.N.Y. 2000); *Benham Jewelry Corp. v. Aron Basha Corp.*, 1997 U.S. Dist. LEXIS 15957, at *58-59 (S.D.N.Y. Oct. 14, 1997); *Francis S. Denney, Inc.*, 737 F. Supp. at 248; *American Cyanamid Co. v. Campagna Per La Farmacie In Italia S.P.A.*, 678 F. Supp. 1049, 1055 (S.D.N.Y. 1987), *aff'd per curiam*, 847 F.2d 53 (2d Cir. 1988). Indeed, in a case very similar to this one, the court granted the plaintiff's request for expedited discovery and later granted a preliminary injunction, holding that where defendants sold the personal name "Irma Shorell" trademark, business assets and goodwill, their subsequent advertisements referring to "Irma Shorell's CONTOUR/35" were likely to cause confusion. *Francis S. Denney, Inc.*, 737 F. Supp. at 248, 249-51; *see Francis S. Denney, Inc.*, 758 F. Supp. at 145 (granting permanent injunction).

Thus, plaintiff seeks expedition of discovery from defendants and third parties to aid it in its motion for a preliminary injunction which seeks to enjoin defendants, who are assisted by licensees and apparel companies, among other third parties, from further infringing its valuable ABBOUD marks and from further breaches of contract.

## CONCLUSION

For all the foregoing reasons, the Court should grant JA Apparel's application for expedited discovery.

Dated: September 4, 2007
New York, New York

                                                                  KAYE SCHOLER LLP

Of counsel:

                                                    By:     s/

John D. Geelan                                 Thomas A. Smart
Richard A. De Sevo                           Phillip A. Geraci
Victoria Haje                                     425 Park Avenue
Patricia Ryder                                   New York, New York  10022
                                                    (212) 836-8000

                                                    *Attorneys for Plaintiff JA Apparel Corp.*