Louis S. Ederer(LE 7574)
John Maltbie (JM 3658)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000
*Attorneys for Defendants and*
*Counterclaim Plaintiffs Joseph Abboud, Houndstooth Corp.*
*and Herringbone Creative Services, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

JA APPAREL CORP.,                          :

           Plaintiff,                    :          Civil Action No. 07 CV 07787 (DAB)

           v.                            :

JOSEPH ABBOUD, HOUNDSTOOTH            :
CORP., and HERRINGBONE CREATIVE      :
SERVICES, INC.,                              :

           Defendants.                  :          **ANSWER AND COUNTERCLAIMS**
-------------------------------------------------------- :          **OF DEFENDANTS AND**
JOSEPH ABBOUD, HOUNDSTOOTH            :          **COUNTERCLAIM PLAINTIFFS**
CORP., and HERRINGBONE CREATIVE      :          **JOSEPH ABBOUD, HOUNDSTOOTH**
SERVICES, INC.,                              :          **CORP. AND HERRINGBONE**
                         :          **CREATIVE SERVICES, INC.**
           Counterclaim Plaintiffs,     :

           v.                            :

JA APPAREL CORP. and MARTIN STAFF,   :

           Counterclaim Defendants.     :
-------------------------------------------------------- x

      Defendants Joseph Abboud ("Abboud"), Houndstooth Corp. ("Houndstooth"), and

Herringbone Creative Services, Inc. ("Herringbone"), by their attorneys Arnold & Porter LLP,

hereby answer the Complaint of plaintiff JA Apparel Corp. ("JA Apparel"), and Abboud,

Houndstooth and Herringbone further assert counterclaims against JA Apparel and Counterclaim

Defendant Martin Staff ("Staff") as follows:

## NATURE AND BASIS OF THE ACTION

1.      Defendants deny the allegations contained in paragraph 1 of the Complaint.

2.      With respect to the allegations contained in paragraph 2 of the Complaint, defendants admit that this purports to be an action based upon the facts alleged therein, brought under the statutes and laws set forth therein, but deny the substantive allegations contained therein and/or deny knowledge or information sufficient to form a belief as to the truth of the allegations contained therein.

3.      With respect to the allegations contained in paragraph 3 of the Complaint, defendants, without admitting the truth of its contents, state that the August 6, 2007 *DNR* article speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 3 of the Complaint.

4.      With respect to the allegations contained in paragraph 4 of the Complaint, defendants, without admitting the truth of its contents, state that the August 13, 2007 *DNR* article speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 4 of the Complaint.

5.      With respect to the allegations contained in paragraph 5 of the Complaint, defendants, without admitting the truth of its contents, state that the August 6, 2007 *Wall Street Journal* article speaks for itself, and respectfully refers this Court to the contents thereof. Defendants deny the remaining allegations contained in paragraph 5 of the Complaint.

6.      Defendants deny the allegations contained in paragraph 6 of the Complaint.

7.      With respect to the allegations contained in paragraph 7 of the Complaint, defendants state that the Purchase and Sale Agreement speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 7 of the Complaint.

8.      Defendants deny the allegations contained in paragraph 8 of the Complaint.

9.      With respect to the allegations contained in paragraph 9 of the Complaint, defendants state that the Side Letter Agreement speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 9 of the Complaint.

## THE PARTIES

10.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint.

11.      Defendants admit the allegations contained in paragraph 11 of the Complaint.

12.      With respect to the allegations contained in paragraph 12 of the complaint, defendants admit that Houndstooth is a corporation organized under the laws of the State of New York, with its principal place of business located at 640 Old Post Road, Bedford, New York, but deny the remaining allegations contained therein.

13.      With respect to the allegations contained in paragraph 13 of the Complaint, defendants admit that Herringbone is a corporation organized under the laws of the State of New York and that Abboud is the principal of Herringbone, but deny the remaining allegations contained therein.

## JURISDICTION AND VENUE

14.      Defendants admit the allegations contained in paragraph 14 of the Complaint.

15.      Defendants admit the allegations contained in paragraph 15 of the Complaint.

16.      Defendants admit the allegations contained in paragraph 16 of the Complaint.

17.      With respect to the allegations contained in paragraph 17 of the Complaint, defendants state that the Purchase and Sale Agreement and the Side Letter Agreement speak for themselves, and respectfully refers this Court to the contents thereof.

## ALLEGATIONS COMMON TO ALL CLAIMS

18. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19. With respect to the allegations contained in paragraph 19 of the Complaint, defendants admit that JA Apparel was formed when Abboud, a fashion designer, through his wholly-owned corporation, Houndstooth, entered into a joint venture agreement with GFT, a subsidiary of the Italian company RCS, to manufacture, market and sell various products. Defendants further admit that when the joint venture was terminated in 1996, JA Apparel became a wholly-owned subsidiary of GFT. Defendants deny the remaining allegations contained in paragraph 19 of the Complaint.

20. With respect to the allegations contained in paragraph 20 of the Complaint, defendants admit that on June 16, 2000, JA Apparel, Abboud and Houndstooth entered into a Purchase and Sale Agreement pursuant to which, *inter alia*, Abboud was to assign to JA Apparel certain enumerated trademarks and the goodwill associated therewith, as well as licenses and records relating to those trademarks, and JA Apparel was to pay Abboud $65.5 million. Defendants further state that the Purchase and Sale Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

21. With respect to the allegations contained in paragraph 21 of the Complaint referring to the terms and provisions of the Purchase and Sale Agreement, defendants state that the Purchase and Sale Agreement speaks for itself, and respectfully refers this Court to the contents thereof. Defendants deny the remaining allegations contained in paragraph 21 of the Complaint.

22. With respect to the allegations contained in paragraph 22 of the Complaint, defendants admit that pursuant to the Purchase and Sale Agreement JA Apparel paid Abboud

$65.5 million in exchange for the assignment of certain enumerated trademarks and the goodwill associated therewith, as well as licenses and records relating to those trademarks. Defendants deny the remaining allegations contained in paragraph 22 of the Complaint.

23.    With respect to the allegations contained in paragraph 23 of the Complaint referring to the terms and provisions of the Purchase and Sale Agreement, defendants state that the Purchase and Sale Agreement speaks for itself, and respectfully refers this Court to the contents thereof. Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23 of the Complaint.

24.    With respect to the allegations contained in paragraph 24 of the Complaint referring to the contents of the Side Letter Agreement, defendants state that the Side Letter Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

25.    With respect to the allegations contained in paragraph 25 of the Complaint referring to the contents of the Side Letter Agreement, defendants state that the Side Letter Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

26.    With respect to the allegations contained in paragraph 26 of the Complaint referring to the contents of the Side Letter Agreement, defendants state that the Side Letter Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

27.    Defendants deny the allegations contained in paragraph 27 of the Complaint.

28.    With respect to the allegations contained in paragraph 28 of the Complaint referring to the contents of the Side Letter Agreement, defendants state that the Side Letter Agreement speaks for itself, and respectfully refers this Court to the contents thereof. Defendants deny the remaining allegations contained in paragraph 28 of the Complaint.

29.    With respect to the allegations contained in paragraph 29 of the Complaint referring to the contents of the Side Letter Agreement, defendants state that the Side Letter

Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

Defendants deny the remaining allegations contained in paragraph 29 of the Complaint.

30.    With respect to the allegations contained in paragraph 30 of the Complaint,

defendants admit that Abboud filed a lawsuit against JA Apparel, RCS, and GFT alleging fraud

and breach of contract, and another lawsuit against JA Apparel's former President and CEO

alleging breach of fiduciary duty, common law fraud, and tortious interference with contract.

Defendants deny the remaining allegations contained in paragraph 30 of the Complaint

31.    Defendants deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 31 of the Complaint.

32.    With respect to the allegations contained in paragraph 32 of the Complaint

referring to the contents of the Letter Agreement, defendants state that the Letter Agreement

speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the

remaining allegations contained in paragraph 32 of the Complaint.

33.    With respect to the allegations contained in paragraph 33 of the Complaint

referring to the contents of the Letter Agreement, defendants state that the Letter Agreement

speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the

remaining allegations contained in paragraph 33 of the Complaint.

34.    Defendants deny the allegations contained in paragraph 34 of the Complaint.

35.    With respect to the allegations contained in paragraph 35 of the Complaint,

defendants admit that in 2006, Abboud made an offer to purchase JA Apparel and that JA

Apparel rejected that offer.  Defendants deny knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 35 of the Complaint.

36.    Defendants deny the allegations contained in paragraph 36 of the Complaint.

37.    Defendants deny knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 37 of the Complaint.

38.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

39.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint, except deny that products currently sold under the JOSEPH ABBOUD brand are high-end, high-quality products. Defendants further state that since the acquisition of JA Apparel in 2004, the quality of JOSEPH ABBOUD brand products has deteriorated, with such products now being made of materials of inferior or lower quality, and the level of retail outlets for such products has decreased, as such products are now widely available at discount retail stores.

40.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint.

41.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint.

42.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint.

43.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint.

44.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint, except deny that the JOSEPH ABBOUD trademarks are currently strong, distinctive, or enjoy an excellent reputation among the trade and consumers.  Defendants further state that to the extent the JOSEPH ABBOUD trademarks were previously strong and distinctive and enjoyed an excellent reputation among the trade and consumers, the strength, distinctiveness and reputation of the JOSEPH

ABBOUD brand among the trade and consumers has significantly deteriorated for, among other reasons, the reasons set forth in Paragraph 39 above.

45.    With respect to the allegations contained in paragraph 45 of the Complaint, defendants, without admitting the truth of its contents, state that the August 6, 2007 *DNR* article speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 45 of the Complaint.

46.    With respect to the allegations contained in paragraph 46 of the Complaint, defendants, without admitting the truth of its contents, state that the August 6, 2007 *DNR* article speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 46 of the Complaint.

47.    With respect to the allegations contained in paragraph 47 of the Complaint, defendants, without admitting the truth of its contents, state that the August 6, 2007 *DNR* article speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 47 of the Complaint.

48.    With respect to the allegations contained in paragraph 48 of the Complaint, defendants state that the August 8, 2007 e-mail speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48 of the Complaint.

49.    With respect to the allegations contained in paragraph 49 of the Complaint, defendants, without admitting the truth of its contents, state that the August 13, 2007 *DNR* article speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 49 of the Complaint.

50.    With respect to the allegations contained in paragraph 50 of the Complaint, defendants, without admitting the truth of its contents, state that the August 6, 2007 *Wall Street*

*Journal* article speaks for itself, and respectfully refers this Court to the contents thereof. Defendants deny the remaining allegations contained in paragraph 50 of the Complaint.

 51. Defendants deny the allegations contained in paragraph 51 of the Complaint.

 52. Defendants deny the allegations contained in paragraph 52 of the Complaint.

 53. Defendants deny the allegations contained in paragraph 53 of the Complaint.

 54. With respect to the allegations contained in paragraph 54 of the Complaint, defendants, without admitting the truth of its contents, state that the August 6, 2007 *DNR* article speaks for itself, and respectfully refers this Court to the contents thereof.  Defendants deny the remaining allegations contained in paragraph 54 of the Complaint.

 55. Defendants deny the allegations contained in paragraph 55 of the Complaint.

 56. Defendants deny the allegations contained in paragraph 56 of the Complaint.

 57. Defendants deny the allegations contained in paragraph 57 of the Complaint.

 58. Defendants deny the allegations contained in paragraph 58 of the Complaint.

 59. Defendants deny the allegations contained in paragraph 59 of the Complaint.

 60. Defendants deny the allegations contained in paragraph 60 of the Complaint.

 61. Defendants deny the allegations contained in paragraph 61 of the Complaint.

### FIRST CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)

 62. Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 61 above.

 63. Defendants deny the allegations contained in paragraph 63 of the Complaint.

 64. Defendants deny the allegations contained in paragraph 64 of the Complaint.

 65. Defendants deny the allegations contained in paragraph 65 of the Complaint.

 66. Defendants deny the allegations contained in paragraph 66 of the Complaint.

 67. Defendants deny the allegations contained in paragraph 67 of the Complaint.

**SECOND CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**
**FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)**

68.    Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 67 above.

69.    Defendants deny the allegations contained in paragraph 69 of the Complaint.

70.    Defendants deny the allegations contained in paragraph 70 of the Complaint.

71.    Defendants deny the allegations contained in paragraph 71 of the Complaint.

72.    Defendants deny the allegations contained in paragraph 72 of the Complaint.

73.    Defendants deny the allegations contained in paragraph 73 of the Complaint.

74.    Defendants deny the allegations contained in paragraph 74 of the Complaint.

**THIRD CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**
**TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(e)**

75.    Defendants repeat, reallege and ncorporate by reference the allegations set forth in their responses to paragraphs 1 through 74 above.

76.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the Complaint.

77.    Defendants deny the allegations contained in paragraph 77 of the Complaint.

78.    Defendants deny the allegations contained in paragraph 78 of the Complaint.

79.    Defendants deny the allegations contained in paragraph 79 of the Complaint.

80.    Defendants deny the allegations contained in paragraph 80 of the Complaint.

**FOURTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**
**TRADEMARK DILUTION UNDER NEW YORK GEN. BUS. LAW § 360-1**

81.    Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 80 above.

82.    With respect to the allegations contained in paragraph 81 of the Complaint, defendants admit that this purports to be a claim brought under New York Gen. Bus. Law § 360-

1, but deny the substance of such claims.

83.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the Complaint.

84.     Defendants deny the allegations contained in paragraph 84 of the Complaint.

85.     Defendants deny the allegations contained in paragraph 85 of the Complaint.

## FIFTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS) TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER STATE COMMON LAW

86.     Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 85 above.

87.     Defendants deny the allegations contained in paragraph 87 of the Complaint.

88.     Defendants deny the allegations contained in paragraph 88 of the Complaint.

89.     Defendants deny the allegations contained in paragraph 89 of the Complaint.

## SIXTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS) DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK GEN. BUS. LAW §§ 349-350

90.     Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 89 above.

91.     With respect to the allegations contained in paragraph 91 of the Complaint, defendants admit that this purports to be a claim brought under New York Gen. Bus. Law § 349-350, but deny the substance of such claims.

92.     Defendants deny the allegations contained in paragraph 92 of the Complaint.

93.     Defendants deny the allegations contained in paragraph 93 of the Complaint.

94.     Defendants deny the allegations contained in paragraph 94 of the Complaint.

## SEVENTH CLAIM FOR RELIEF (AGAINST MR. ABBOUD AND HOUNDSTOOTH) BREACH OF CONTRACT (PURCHASE AND SALES AGREEMENT)

95.     Defendants repeat, reallege and incorporate by reference the allegations set forth

in their responses to paragraphs 1 through 94 above.

96.    With respect to the allegations contained in paragraph 96 of the Complaint, defendants admit that this purports to be a breach of contract claim brought under common law, but deny the substance of such claims.

97.    With respect to the allegations contained in paragraph 97 of the Complaint referring to the Purchase and Sale Agreement, defendants state that the Purchase and Sale Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

98.    With respect to the allegations contained in paragraph 98 of the Complaint, defendants admit that JA Apparel paid Abboud $65.5 million in exchange for, *inter alia*, the assignment of certain enumerated trademarks and the goodwill associated therewith.  Defendants deny the remaining allegations contained in paragraph 98 of the Complaint.

99.    Defendants deny the allegations contained in paragraph 99 of the Complaint.

100.    Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.    Defendants deny the allegations contained in paragraph 101 of the Complaint.

102.    Defendants deny the allegations contained in paragraph 102 of the Complaint.

## EIGHTH CLAIM FOR RELIEF (AGAINST MR. ABBOUD) BREACH OF CONTRACT (SIDE LETTER AGREEMENT — NON-COMPETE PROVISION)

103.    Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 102 above.

104.    With respect to the allegations contained in paragraph 104 of the Complaint referring to the contents of the Side Letter Agreement, defendants state that the Side Letter Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

105.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 105 of the Complaint.

106.    Defendants deny the allegations contained in paragraph 106 of the Complaint.

107.    Defendants deny the allegations contained in paragraph 107 of the Complaint.

108.    Defendants deny the allegations contained in paragraph 108 of the Complaint.

109.    Defendants deny the allegations contained in paragraph 109 of the Complaint.

110.    Defendants deny the allegations contained in paragraph 110 of the Complaint.

## NINTH CLAIM FOR RELIEF (AGAINST MR. ABBOUD AND HOUNDSTOOTH) DECLARATORY JUDGMENT (BREACH OF PURCHASE AND SALE AGREEMENT)

111.    Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 110 above.

112.    Defendants deny the allegations contained in paragraph 112 of the Complaint.

113.    Defendants deny the allegations contained in paragraph 113 of the Complaint.

114.    Defendants deny the allegations contained in paragraph 114 of the Complaint.

115.    Defendants deny the allegations contained in paragraph 115 of the Complaint.

## TENTH CLAIM FOR RELIEF (AGAINST MR. ABBOUD) DECLARATORY JUDGMENT (BREACH OF SIDE LETTER AGREEMENT — NON-COMPETE PROVISION

116.    Defendants repeat, reallege and incorporate by reference the allegations set forth in their responses to paragraphs 1 through 115 above.

117.    Defendants deny the allegations contained in paragraph 117 of the Complaint.

118.    With respect to the allegations contained in paragraph 118 of the Complaint referring to the contents of the Side Letter Agreement, defendants state that the Side Letter Agreement speaks for itself, and respectfully refers this Court to the contents thereof.

119.    Defendants deny the allegations contained in paragraph 119 of the Complaint.

120.    Defendants deny the allegations contained in paragraph 120 of the Complaint.

121.    Defendants deny the allegations contained in paragraph 121 of the Complaint.

## AFFIRMATIVE DEFENSES

122.    Defendants assert the following affirmative defenses.  Defendants reserve their right to amend their answer and affirmative defenses, if appropriate, after a reasonable opportunity to conduct discovery.

## FIRST AFFIRMATIVE DEFENSE

123.    JA Apparel's claims for relief fail to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

124.    JA Apparel's claims are barred, in whole or in part, by the ripeness doctrine, and on the grounds that the claims are not otherwise justiciable.

## THIRD AFFIRMATIVE DEFENSE

125.    JA Apparel's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

126.    JA Apparel's claims are barred, in whole or in part, by its failure to provide Defendants notice of its claims as provided by paragraph 8.1(b) of the Purchase and Sale Agreement.

## FIFTH AFFIRMATIVE DEFENSE

127.    JA Apparel's claims are barred, in whole or in part, by the doctrine of fair use.

## SIXTH AFFIRMATIVE DEFENSE

128.    JA Apparel's federal claims lack merit, and this Court lacks subject matter jurisdiction over JA Apparel's non-federal claims.

## SEVENTH AFFIRMATIVE DEFENSE

129.    The damages for which JA Apparel seeks to hold Defendants liable were

proximately caused by JA Apparels' own failure to use reasonable means to mitigate damages.

## COUNTERCLAIMS

For their counterclaims against Counterclaim Defendants JA Apparel and Staff, Defendants and Counterclaim Plaintiffs Abboud, Houndstooth, and Herringbone hereby allege as follows:

## JURISDICTION AND VENUE

130.    This Court has jurisdiction over the false designation of origin and false advertising counterclaims set out below, pursuant to the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338(a) and (b).  Further, this Court has supplemental jurisdiction over the additional counterclaims, including the counterclaims arising under state law, pursuant to 28 U.S.C. § 1367(a), as the counterclaims are related to Plaintiff's claims over which the Court has original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

131.    Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and 1400(a) and (b), because Counterclaim Defendant JA Apparel is subject to personal jurisdiction within this judicial district and/or because a substantial part of the events giving rise to these claims occurred within this judicial district.

## PARTIES

132.    Counterclaim Plaintiff Abboud is an individual residing in the State of New York.

133.    Counterclaim Plaintiff Houndstooth is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 640 Old Post Road, Bedford, New York.

134.    Counterclaim Plaintiff Herringbone is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 640 Old Post

Road, Bedford, New York.

135.    Upon information and belief, Counterclaim Defendant JA Apparel is a corporation duly organized and existing under the laws of the State of Delaware, with a place of business at 650 Fifth Avenue, New York, New York.

136.    Upon information and belief, Counterclaim Defendant Staff is an individual who resides in this judicial district.  Upon further information and belief, Staff is the moving, active, conscious force directing JA Apparel's wrongful actions described herein, and, as such, is personally responsible and individually liable for such conduct.

## FACTS COMMON TO ALL COUNTERCLAIMS

137.    Abboud is a world-renowned designer of apparel and fashion-related products and a well-respected authority on issues relating to fashion and design.  Abboud has dedicated his entire professional life to working in the fashion industry and to developing his unique talents, skills and artistic abilities as a designer of menswear and other consumer products.  At the age of 16, Abboud joined the prestigious Boston, Massachusetts retail store, Louis Boston.  Over the course of the next twelve years, he served as buyer, merchandiser, and eventually coordinator of promotion and advertising at Louis Boston.

138.    Abboud graduated from the University of Massachusetts - Boston and went on to study design at the Sorbonne in Paris.  In 1981 Abboud began working for Polo Ralph Lauren as a menswear designer and became the Associate Director of Menswear Design for Polo Ralph Lauren.  In the late 1980's, Abboud also designed menswear for the world famous luxury goods company, Chanel.

139.    In 1987 Abboud launched his own menswear label consisting of his own, unique designs, and enjoyed success with menswear designs that featured rich colors and unusually crafted textures. In 1988 he won the Cutty Sark Award for Most Promising Menswear Designer.

Then, in 1989, and again in 1990, the Council of Fashion Designers of America ("CFDA") awarded Abboud the Menswear Designer of the Year award — the first designer to win the coveted award two years in a row.

140.    Since 1990, Abboud has won many additional awards and honors for his work as a designer in the fashion industry.  In 1994 Abboud received a Special Achievement Award from the Neckwear Association of America — an honor that had been presented only twice before, when the association deemed that an individual's work had changed the face of the industry. Additionally, in 1995 he was honored by the United States Department of Commerce "for creative contributions promoting the American fashion and retail industry", and "for actively promoting American design to the world, and for bringing the hallmark for excellence to American fashion."  Moreover, in 1997 Abboud was presented with the prestigious Michael Award as Menswear Designer of the Year.  Also, in 2000, Abboud was honored by the American Jewish Committee for his philanthropic work and his contribution to the fashion industry, with a special proclamation from Senator John F. Kerry from Massachusetts.

141.    Over the years, outside of his design work for products sold under the JOSEPH ABBOUD label, Abboud has also served as the official designer for the broadcasters of the NBC Olympics and for CBS' NCAA College Basketball Championship, popularly known as "March Madness."  In addition, Abboud has designed car interiors and trim for General Motors and Buick.

142.    Building on his widespread renown and personal accomplishments as a fashion designer, Abboud has also become well-known as a celebrity and personality.  He has appeared on The Today Show, Fox News, CNN, CNBC, MSNBC, CBS, The Metro Channel, The Mike Barnicle Show, and The O'Reilly Factor, commenting not only on issues relating to fashion and design, but also topics of the day.  Additionally, Abboud made a cameo appearance in an episode

of the hit-television series "Seinfeld," has been a frequent guest on Don Imus's radio show, and, in 2002, became the first designer to throw out the opening pitch at Boston's Fenway Park.

143.    In 2004 Abboud published his memoirs, entitled <u>Threads : My Life Behind the Seams in the High-Stakes World of Fashion</u>, detailing his lifetime commitment to the world of fashion. Abboud is also well-known for his famous clients, many of whom have become his close friends, including American trumpeter and composer Wynton Marsalis, author and former TV news anchor Tom Brokaw, and Los Angeles Dodgers shortstop Nomar Garciaparra.

144.    Because of his widespread renown and personal accomplishments as a fashion designer, celebrity and personality, Abboud has been asked to become associated with several charities, and donates substantial time to such endeavors. Among others, he sits on the boards of the C.J. Foundation for SIDS (Sudden Infant Death Syndrome), the Sean McDonough Foundation (which raises money for children in need as well as those afflicted with serious illnesses in and around the Boston area), the Nomar 5 Foundation (which helps raise money for the under-privileged children of Boston), and CFDA's "Fashion Targets Breast Cancer." Abboud is also the Co-Chairman of Swim Across the Sound, an organization that raises money for cancer, and he has created the Mohegan Sun/Joseph Abboud Celebrity Tennis Tournament, which has raised nearly a million dollars to benefit the Imus Ranch for children with cancer, the C.J. Foundation for SIDS, and the Northern Westchester Hospital's neonatal unit.

145.    In addition to his experience, expertise, reputation and personal accomplishments as a fashion designer, Abboud is also known for his expertise and acumen in business and education. Among other things, Abboud has held a position with the University of Massachusetts - Boston as a Distinguished Visiting Professor of Marketing, has taught the Management of Creativity at Sacred Heart University at the graduate level, and has taught the Marketing of Creativity at Fordham University. He also frequently lectures on these and other

related themes. He is on the Advisory Board for the Laboratory Institute of Merchandising College. In addition, Abboud is serving as the Chairman of Educational Initiatives of the CFDA, which oversees all fashion schools and institutions across the United States including Parsons and Fashion Institute of Technology.

146.    As a result of all of the foregoing, Abboud has developed, separate and apart from the brand name JOSEPH ABBOUD, a widespread and favorable individual reputation throughout the fashion industry, and among the consuming public, as an expert in fashion, design, business, marketing and education, who has exercised his unique talents, skills and artistic abilities in the design of menswear and other consumer products. In addition, over many years, Abboud has achieved, among consumers and the trade, separate and apart from the brand name JOSEPH ABBOUD, widespread individual and personal recognition as a designer, celebrity and personality (known both within and outside the fashion industry), and his individual reputation, persona and likeness are widely, well and favorably known to the public, and are extremely valuable in and of themselves.

147.    On or about June 16, 2000, Abboud entered into a Purchase and Sale Agreement with JA Apparel (the "Purchase and Sale Agreement"). Under the terms of the agreement, Abboud agreed to assign trademarks that had been used in connection with the clothing line that he had built. Among the trademarks assigned was the mark JOSEPH ABBOUD. In the Purchase and Sale Agreement, however, Abboud deliberately did not assign his personal rights to use his name "Joseph Abboud" for any purpose, or his individual reputation, persona, likeness and celebrity.

148.    On or about July 13, 2000, Abboud entered into a Personal Services Agreement with JA Apparel (the "Personal Services Agreement"). Under the terms of the Personal Services Agreement, Abboud agreed to serve as Chairman Emeritus of JA Apparel for a period of five

years (the "Personal Services Period"), during which time he was to continue to oversee and provide stylistic direction to JA Apparel in connection with the design, manufacture and sale of products under the JOSEPH ABBOUD trademark. The Personal Services Agreement specifically prohibited Abboud from engaging in any business activities during the Personal Services Period. However, Abboud deliberately bargained for, and was permitted to make media and celebrity appearances in his individual capacity, as an authority in the fashion design business, in order to protect, preserve and enhance the value of his publicity rights (see ¶1(b) of the Personal Services Agreement).

149. Under the terms of the Personal Services Agreement, the Personal Services Period expired on July 13, 2005. However, the Personal Services Agreement provided that upon the expiration of the Personal Services Period, Abboud would be subject to certain restrictions on his association with JA Apparel competitors for a two year period commencing July 13, 2005 (the "Restricted Period"). Under the terms of the Personal Services Agreement, the Restricted Period expired on July 13, 2007.

150. Despite the fact that Abboud is no longer associated with JA Apparel, and has not been associated with JA Apparel since July 13, 2005, and indeed, upon information and belief, because of that fact, throughout the Restricted Period, and continuing today, Counterclaim Defendants have deliberately engaged in a variety of advertising and promotional campaigns and initiatives intended to create the false impression that JA Apparel still possessed Abboud's individual reputation as a designer, as well as his unique talents, skills and artistic abilities to design menswear and other consumer products for JA Apparel, by usurping, misappropriating and converting to their own unlawful use and economic benefit Abboud's individual reputation as a fashion designer, his publicity rights, and his personal celebrity status in the fashion world. As an example, Counterclaim Defendants have utilized the slogan "DO U KNOW JOE?" in

advertisements and in connection with a website, www.douknowjoe.com, and have also used similar slogans intended to create the same false impression, including, but not limited to, "HEY JOE, WHAT SHOULD I WEAR."

151.    Upon information and belief, Counterclaim Defendants engaged in such conduct during the Restricted Period, and thereafter, in order to falsely mislead the consuming public into believing that JA Apparel still possessed Abboud's individual reputation as a designer, as well as his unique talents, skills and artistic abilities to design menswear and other consumer products for JA Apparel under the JOSEPH ABBOUD trademark, and thereby they have unlawfully traded upon and commercially exploited Abboud's individual reputation as a fashion designer, his publicity rights, and his personal celebrity status in the fashion world, for their own profit, use and  economic benefit.  Further, upon information and belief, Counterclaim Defendants have engaged in such conduct in order to counteract Abboud's expected launch of his own fashion design company, to be operated under the tradename "Herringbone", and his new product line to be marketed and sold under the trademark JAZ.

152.    In addition, Counterclaim Defendants have attempted to impede the launch of Abboud's new venture, and otherwise injure Abboud, by contacting persons in the fashion industry in an effort to impair or prevent Abboud from entering into or maintaining new business relationships.  In making such contacts, Counterclaim Defendants have employed dishonest, unfair or improper means to dissuade these parties from entering into or maintaining business relationships with Abboud, all in a deliberate attempt to injure Abboud with respect to his lawful business activities, his professional reputation, his personal character, and his ability to engage in his chosen profession by exercising his unique design talents, skills and artistic abilities for his own financial benefit and well being.

153.    For example, upon information and belief, Staff recently contacted at least one of

Abboud's new associates in the fashion industry in an attempt to dissuade him from maintaining a business relationship with Abboud, making false statements that were intended to impugn Abboud's professional reputation and character. Upon further information and belief, Staff knew that these statements were false and disparaging when he made them, or he acted with reckless disregard as to their falsity and disparaging nature. All such statements and/or similar statements were made without any legal justification.

**FIRST CAUSE OF ACTION**
**(FALSE ENDORSEMENT (15 U.S.C. § 1125(A)(1)(A))**

154.    Counterclaim Plaintiffs repeat, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 153 of the Counterclaims as if fully set forth herein.

155.    By reason of the foregoing, Counterclaim Defendants' unlawful conduct constitutes the willful use in interstate commerce of false or misleading descriptions or representations of fact designed to cause consumers and the trade to mistakenly believe that Counterclaim Defendants' fashion designs sold under the JOSEPH ABBOUD trademark are endorsed by Abboud, all in violation of 15 U.S.C. §1125(a)(1)(A).

156.    Upon information and belief, by their acts, Counterclaim Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled. Such profits should either be disgorged to Counterclaim Plaintiffs, or Counterclaim Defendants should be directed to pay Counterclaim Plaintiffs a reasonable royalty for the unauthorized use of Abboud's endorsement and/or publicity rights, in a precise amount to be determined at trial, but estimated to be not less than $31 million for the period commencing July 13, 2005.

157.    Upon Information and belief, Counterclaim Plaintiffs are entitled to a trebling of the amount of actual damages suffered by Counterclaim Plaintiffs due to Counterclaim Defendants' willful conduct, in a precise amount to be determined at trial, but estimated to be not less than $93 million for the period commencing July 13, 2005.

158.    Upon information and belief, Counterclaim Defendants intend to continue their willfully infringing acts unless restrained by this Court.

159.    Such conduct on the part of the Counterclaim Defendants have caused and will continue to cause irreparable injury to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (FALSE ADVERTISING (15 U.S.C. § 1125(A)(1)(B))

160.    Counterclaim Plaintiffs repeat, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 159 of the Counterclaims as if fully set forth herein.

161.    By reason of the foregoing, Counterclaim Defendants' unlawful conduct constitutes the willful use in interstate commerce of advertising which misrepresents the nature, characteristics and qualities of its products, in that it falsely suggests that products sold under the JOSEPH ABBOUD trademark incorporate and/or consist of designs created by Abboud, all in violation of 15 U.S.C. §1125(a)(1)(B).

162.    Upon information and belief, by their acts, Counterclaim Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled.  Such profits should either be disgorged to Counterclaim Plaintiffs, or Counterclaim Defendants should be directed to pay Counterclaim Plaintiffs a reasonable royalty for the unauthorized use of Abboud's endorsement and/or publicity rights, in a precise amount to be determined at trial, but estimated to be not less than $31 million for the period commencing July 13, 2005.

163.    Upon Information and belief, Counterclaim Plaintiffs are entitled to a trebling of the amount of actual damages suffered by Counterclaim Plaintiffs due to Counterclaim Defendants' willful conduct, in a precise amount to be determined at trial, but estimated to be not less than $93 million for the period commencing July 13, 2005.

164.    Upon information and belief, Counterclaim Defendants intend to continue their willfully infringing acts unless restrained by this Court.

165.    Such conduct on the part of the Counterclaim Defendants have caused and will continue to cause irreparable injury to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no adequate remedy at law.

## THIRD CAUSE OF ACTION
## (VIOLATION OF NEW YORK CIVIL RIGHTS LAW §§ 50-51)

166.    Counterclaim Plaintiffs repeat, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 165 of the Counterclaims as if fully set forth herein.

167.    Upon information and belief, certain of the complained of acts constituting the willful misappropriation of Abboud's personal rights, namely the willful use of Abboud's name, persona, reputation and/or celebrity for commercial or trade purposes, have occurred and, in fact, have been initiated within the one year period prior to the filing of the complaint in this action. Such acts and conduct complained of have been engaged in without Abboud's permission, in violation of N.Y. Civ. Rights Law §§ 50-51.

168.    Upon information and belief, by their acts, Counterclaim Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled.  Such profits should either be disgorged to Counterclaim Plaintiffs, or Counterclaim Defendants should be directed to pay Counterclaim Plaintiffs a reasonable royalty for the unauthorized use of Abboud's endorsement and/or publicity rights, in a precise amount to be determined at trial.

169.    Such conduct on the part of the Counterclaim Defendants have caused and will continue to cause irreparable injury to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### (NEW YORK GENERAL BUSINESS LAW § 349)

170.    Counterclaim Plaintiffs repeat, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 169 of the Counterclaims as if fully set forth herein.

171.    By reason of the foregoing, Counterclaim Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted and/or may result in injury to consumers in New York and/or harm to the public.

172.    By the acts described herein, Counterclaim Defendants have willfully engaged in deceptive acts or practices in the conduct of its business in violation of New York General Business Law § 349.

173.    Upon information and belief, by their acts, Counterclaim Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled. Such profits should either be disgorged to Counterclaim Plaintiffs, or Counterclaim Defendants should be directed to pay Counterclaim Plaintiffs a reasonable royalty for the unauthorized use of Abboud's endorsement and/or publicity rights, in a precise amount to be determined at trial, but estimated to be not less than $31 million for the period commencing July 13, 2005.

174.    Upon information and belief, Counterclaim Defendants intend to continue their willfully infringing acts unless restrained by this Court.

175.    Such conduct on the part of the Counterclaim Defendants have caused and will continue to cause irreparable injury to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### (COMMON LAW UNFAIR COMPETITION)

176.    Counterclaim Plaintiffs repeat, reallege and incorporate by reference the allegations set forth in paragraphs 1 through 175 of the Counterclaims as if fully set forth herein.

177.    By reason of the foregoing, Counterclaim Defendants have engaged in, and upon information and belief, will continue to engage in, willful acts of unfair competition in violation of the common law of the State of New York.

178.    Upon information and belief, by their acts, Counterclaim Defendants have made and will make substantial profits and gains to which it is not in law or equity entitled.  Such profits should either be disgorged to Counterclaim Plaintiffs, or Counterclaim Defendants should be directed to pay Counterclaim Plaintiffs a reasonable royalty for the unauthorized use of Abboud's endorsement and/or publicity rights, in a precise amount to be determined at trial, but estimated to be not less than $31 million for the period commencing July 13, 2005.

179.    Upon further information and belief, by virtue of their conduct set forth in paragraphs 152 and 153 above, Counterclaim Defendants have caused Counterclaim Plaintiffs damage and injury, in a monetary amount to be determined at trial.

180.    Upon information and belief, Counterclaim Defendants intend to continue their willfully infringing acts unless restrained by this Court.

181.    Such conduct on the part of the Counterclaim Defendants have caused and will continue to cause irreparable injury to Counterclaim Plaintiffs, for which Counterclaim Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs demand judgment against Counterclaim Defendants as follows:

1.    Finding that (i) Counterclaim Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (ii) Counterclaim Defendants have violated N.Y. Civ. Rights Law §§ 50-51; (iii) Counterclaim Defendants have engaged in deceptive acts and practices under New York General Business Law § 349; (iv) Counterclaim Defendants have engaged in unfair

competition under the common law of New York.

2.    Preliminarily and permanently enjoining and restraining Counterclaim Defendants , their officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them, from making any false or misleading statement or representation of fact whatsoever with respect to any goods or services promoted, advertised, displayed, sold, offered for sale, produced, imported, exported, circulated or distributed by Counterclaim Defendants which is likely to cause confusion, mistake or deception by suggesting in any way that Counterclaim Defendants goods or services are affiliated, connected or associated with Counterclaim Plaintiffs, or that Counterclaim Defendants goods or services originate with, or are sponsored, endorsed or approved by Counterclaim Plaintiffs.

3.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any goods or services offered for sale, sold or otherwise circulated or promoted by Counterclaim Defendants are authorized, sponsored or endorsed by Counterclaim Plaintiffs, or is related to, or associated in any way with, Counterclaim Plaintiffs including, but not limited to, ordering Counterclaim Defendants to notify the trade and consuming public, in all advertising, promotion and website materials, for a period of two years, that the designer Joseph Abboud is no longer associated with the JOSEPH ABBOUD brand and/or does not design any products that are sold under the JOSEPH ABBOUD brand..

4.    Requiring Counterclaim Defendants, on Counterclaim Plaintiffs' First to Fifth Causes of Action, to account and pay over to Counterclaim Plaintiffs all profits realized as a result of the conduct alleged therein, and that these illicit profits be trebled since they were generated willfully by JA Apparel.

5. Entering judgment against Counterclaim Defendants, (a) on Counterclaim Plaintiffs' First, Second, Fourth and Fifth Causes of Action, for actual damages suffered by Counterclaim Plaintiffs as the result of the conduct alleged therein, such damages being estimated to be at least $31 million since July 13, 2005, as alleged above, and, (b) on Counterclaim Plaintiffs' First and Second Causes of Action, trebling the amount of actual damages suffered by Counterclaim Plaintiffs pursuant to 15 U.S.C. § 1117(b), due to Counterclaim Defendants' willful conduct, for a total award of not less than $93 million.

6. Entering judgment against Counterclaim Defendants for actual damages suffered by Counterclaim Plaintiffs as a result of Counterclaim Defendants' conduct as alleged in Counterclaim Plaintiff's Third Cause of Action, in an amount to be determined at trial.

7. Awarding Counterclaim Plaintiffs their costs and reasonable attorney's and investigatory fees, together with pre-judgment interest.

8. Awarding Counterclaim Plaintiffs such additional and further relief as the Court deems just and proper.

Dated: New York, New York
     September 28, 2007

ARNOLD AND PORTER LLP

By: _Louis S. Eder_____

Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Attorneys for Defendants and Counterclaim Plaintiffs Joseph Abboud, Houndstooth Corp., and Herringbone Creative Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **ANSWER AND COUNTERCLAIMS OF DEFENDANTS AND COUNTERCLAIM PLAINTIFFS JOSEPH ABBOUD, HOUNDSTOOTH CORP. AND HERRINGBONE CREATIVE SERVICES, INC.,** was served upon the following by first class mail, postage prepaid, and by e-mail, this 28th day of September, 2007:

Thomas A. Smart, Esq
Phillip A. Geraci, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

*Attorneys for Plaintiff and Counterclaim Defendants*

Alan C. Veronick