00  MON 14:37 FAX 1212 972 5487        COHEN PONTANI ET AL                      002

SCHEDULE A(X)(A)
JOSEPH ABBOUD/ J.A.APPAREL

mark Report by Mark                                                    Printed: 5/22/00        Page    1
tatus:   ACTIVE

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| **ABBOUD** | | | | | | | |
| UNITED KINGDOM | 3518-16GB | 1/4/91 | 1452165 | 1/4/91 | 1452165 | REGISTERED | 3 |
| **DIAMOND & RECTANGLE DESIGN** | | | | | | | |
| CANADA | 3518-34CA | 9/22/93 | 737431 | 10/8/97 | 483753 | REGISTERED | 20,24,27 |
| CANADA | 3518-27CA | 8/21/90 | 664789 | 11/11/94 | 435238 | REGISTERED | 25 |
| **DIAMOND AND RECTANGLE DESIGN** | | | | | | | |
| AUSTRIA | 3518-17AT | 8/10/89 | 5602/88 | 1/28/91 | 126503 | REGISTERED | 25,3 |
| BRAZIL | 3518-17A/BR | 5/9/91 | 816183317 | 1/5/93 | 816183317 | REGISTERED | 3 |
| BRAZIL | 3518-17B/BR | 5/9/91 | 816183309 | 11/17/92 | 816183309 | REGISTERED | 25 |
| CANADA | 3518-3CA | 12/6/88 | 620958 | 3/29/91 | 382228 | REGISTERED | 25 |
| CANADA | 3518-24CA | 9/26/91 | 690472 | 7/30/93 | 415014 | REGISTERED | 9 |
| JAPAN | 3518-24JP | 10/3/91 | 103180/1991 | 4/28/94 | 103180/1991 | REGISTERED | 10 |
| MEXICO | 3518-3MX | 3/30/90 | 84542 | 6/25/91 | 396993 | REGISTERED | 25 |
| MEXICO | 3518-24MX | 11/22/91 | 127399 | 3/10/93 | 431691 | REGISTERED | 9 |
| PORTUGAL | 3518-3PT | 11/7/89 | 259663 | 9/2/93 | 259663 | REGISTERED | 25 |
| SPAIN | 3518-3ES | 1/12/89 | 1295307 | 3/6/92 | 1295307 | REGISTERED | 25 |
| UNITED STATES | 3518-24 | 10/9/91 | 74/212,569 | 5/25/93 | 1,773,480 | REGISTERED | 9 |
| VENEZUELA | 3518-17B/VE | 3/5/91 | 003609-91CL25 | | | PENDING | 25 |
| **DIAMOND AND RECTANGLE MARK** | | | | | | | |
| NEW ZEALAND | 3518-3NZ | 5/24/94 | 237161 | 5/24/94 | 237161 | REGISTERED | 25 |
| **DIAMOND DESIGN** | | | | | | | |
| SPAIN | 3518-17ES | 2/6/91 | 1615988 | 3/3/92 | 1615988 | REGISTERED | 3 |
| **DIAMOND DEVICE** | | | | | | | |
| AUSTRALIA | 3518-3AU | 5/27/94 | 630838 | 5/27/94 | A630838 | REGISTERED | 25 |
| **FIGURE OF RHOMB AND RECTANGLE** | | | | | | | |
| ITALY | 3518-3IT | 12/14/88 | 49740C/88 | 11/18/91 | 553952 | REGISTERED | 25 |
| **J.O.E. IN DESGIN** | | | | | | | |
| UNITED KINGDOM | 3518-20GB | 12/5/91 | 1485131 | 6/27/91 | 1485131 | REGISTERED | 25 |
| **J.O.E. IN DESIGN** | | | | | | | |
| JAPAN | 3518-23JP | 10/3/91 | 103161/1991 | 4/28/94 | 2654924 | REGISTERED | 10 |
| MEXICO | 3518-23MX | 11/22/91 | 1274000 | 3/30/92 | 409667 | REGISTERED | 9 |
| PANAMA | 3518-20PA | 2/8/95 | 064779 | 9/20/94 | 064779 | REGISTERED | 25 |

05/22/00  MON 14:38 FAX 1212 972 5487    COHEN PONTANI ET AL    ☑003

Trademark Report by Mark                                    Printed: 5/22/00    Page    2

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| **J.O.E. JUST ONE EARTH & DESIGN** | | | | | | | |
| MEXICO | 3518-20MX | 9/29/92 | 150872 | | | PENDING | 25 |
| **J.O.E. JUST ONE EARTH AN ENVIRONMENT OF STYLE** | | | | | | | |
| UNITED STATES | 3518-20 | 6/27/91 | 74/180,543 | 11/2/93 | 1,802,786 | REGISTERED | 25 |
| **JA II AND DESIGN** | | | | | | | |
| UNITED STATES | 3518-13 | 4/10/90 | 74/050,080 | 6/18/91 | 1,648,203 | REGISTERED | 25 |
| **JOSEPH ABBOUD** | | | | | | | |
| ARGENTINA | 3518-16A/AR | 2/21/91 | 1792527 | 5/31/93 | 1442124 | REGISTERED | 3 |
| ARGENTINA | 3518-16B/AR | 2/21/91 | 1792528 | 5/31/93 | 1442125 | REGISTERED | 25 |
| AUSTRALIA | 3518-2AU | 5/3/94 | 628745 | 9/4/96 | 628745 | REGISTERED | 25 |
| AUSTRIA | 3518-2AT | 10/17/89 | AM4983/89 | 1/23/90 | 129196 | REGISTERED | N/A |
| AUSTRIA | 3518-16AT | 1/22/91 | 126503 | 1/22/91 | 129196 | REGISTERED | 25,3 |
| BENELUX | 3518-2BX | 10/6/89 | 735469 | 10/6/89 | 468886 | REGISTERED | 25 |
| BENELUX | 3518-16BX | 1/4/91 | 757916 | 1/4/91 | 493671 | REGISTERED | 3 |
| BOLIVIA | 3518-16A/BO | 4/29/91 | 0590/CL3 | 9/22/92 | C53753 | REGISTERED | 3 |
| BOLIVIA | 3518-16B/BO | 4/29/91 | 0590/CL25 | 9/22/92 | C53754 | REGISTERED | 25 |
| BRAZIL | 3518-16A/BR | 4/24/91 | 816171203 | 1/5/93 | 816171203 | REGISTERED | 3 |
| BRAZIL | 3518-16B/BR | 5/9/91 | 816183252 | 11/17/92 | 816183252 | REGISTERED | 25 |
| CANADA | 3518-2CA | 5/30/89 | 633137 | 1/21/94 | 422111 | REGISTERED | 25 |
| CANADA | 3518-33CA | 9/22/93 | 737372 | 3/22/99 | 509744 | REGISTERED | 20,24,27 |
| CANADA | 3518-25CA | 2/26/93 | 723547 | 6/30/99 | TMA512584 | REGISTERED | 9 |
| CHILE | 3518-16CL | 2/27/91 | 169658 | 3/17/93 | 383511 | REGISTERED | 3 |
| COLOMBIA | 3518-16A/CO | 3/15/91 | 341185 | 4/16/96 | 187065 | REGISTERED | 3 |
| COLOMBIA | 3518-16B/CO | 5/15/91 | 341186 | 3/21/95 | 173879 | REGISTERED | 25 |
| DENMARK | 3518-2DK | 9/29/89 | 7233/89 | 5/17/91 | 2866-1991 | REGISTERED | 25 |
| DENMARK | 3518-16DK | 1/3/91 | 0058/91 | 5/29/92 | 4588-1992 | REGISTERED | 3 |
| ECUADOR | 3518-2EC | 6/4/91 | 25816 | 4/27/92 | 588-92 | REGISTERED | 25 |
| FRANCE | 3518-2FR | 5/2/88 | 924071 | 5/2/88 | 1463108 | REGISTERED | 25 |
| FRANCE | 3518-16FR | 1/9/91 | 259988 | 1/9/91 | 1637450 | REGISTERED | 3 |
| GERMANY | 3518-2DE | 5/2/88 | A44514/25WZ | 5/2/88 | 1130076 | REGISTERED | 25 |
| GERMANY | 3518-16DE | 1/14/91 | A49542/3Wz | 1/15/91 | 2005024 | REGISTERED | 3 |
| GREECE | 3518-16GR | 3/4/91 | 103045 | 12/19/94 | 103045 | REGISTERED | 3 |
| HONG KONG | 3518-2HK | 5/26/94 | 94 05875 | 5/26/94 | 09460/95 | REGISTERED | 25 |
| ITALY | 3518-2IT | 5/13/88 | 10436C/88 | 11/25/89 | 518092 | REGISTERED | 25 |
| ITALY | 3518-16IT | 2/5/91 | FI91C/87 | 5/27/94 | 617659 | REGISTERED | 3 |
| JAPAN | 3518-2JP | 5/24/88 | 58693/1988 | 5/29/92 | 2409539 | REGISTERED | 17 |

05/22/00  MON 14:38 FAX 1212 972 5487    COHEN PONTANI ET AL    ☒004

Trademark Report by Mark                                          Printed: 5/22/00    Page    3

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| *JOSEPH ABBOUD continued . . .* | | | | | | | |
| JAPAN | 3518-2.1JP | 7/31/89 | 88214/1989 | 3/31/92 | 2395331 | REGISTERED | 22 |
| JAPAN | 3518-2.2JP | 7/31/89 | 88215/1989 | 5/30/92 | 2428818 | REGISTERED | 23 |
| JAPAN | 3518-2.3JP | 11/30/90 | 134475/1990 | 11/30/92 | 2483142 | REGISTERED | 4 |
| JAPAN | 3518-2.4JP | 11/30/90 | 134476/1990 | 3/31/93 | 2515557 | REGISTERED | 16 |
| JAPAN | 3518-2.5JP | 11/30/90 | 134477/1990 | 5/31/93 | 2538998 | REGISTERED | 20 |
| JAPAN | 3518-2.6JP | 5/21/87 | 55625/1987 | 1/30/90 | 2205975 | REGISTERED | 21 |
| JAPAN | 3518-2.7JP | 11/30/90 | 134479/1990 | 2/26/93 | 2506539 | REGISTERED | 24 |
| JAPAN | 3518-25JP | 10/3/91 | 103162/1991 | 2/28/94 | 2623800 | REGISTERED | 9 |
| MACAO | 3518-2MO | 10/20/93 | 12997 | 10/20/93 | 12997 | REGISTERED | 25 |
| MACAO | 3518-16MO | 9/22/93 | 12940 | 9/29/93 | 12940 | REGISTERED | 3 |
| MEXICO | 3518-2MX | 10/19/88 | 74103 | 7/20/90 | 379787 | REGISTERED | 39 |
| MEXICO | 3518-16MX | 2/20/91 | 107008 | 6/24/91 | 396951 | REGISTERED | 3 |
| MEXICO | 3518-25MX | 11/22/91 | 127401 | 9/1/93 | 440907 | REGISTERED | 9 |
| NEW ZEALAND | 3518-2NZ | 4/28/94 | 236405 | 4/28/94 | 236405 | REGISTERED | 25 |
| NORWAY | 3518-2NO | 10/18/89 | 895124 | 9/24/92 | 152367 | REGISTERED | 25 |
| NORWAY | 3518-16NO | 1/7/91 | 910126 | 5/11/94 | 162436 | REGISTERED | 3 |
| PANAMA | 3518-2PA | 12/27/91 | 059505 | 12/27/91 | 059505 | REGISTERED | 25 |
| PANAMA | 3518-16PA | 12/27/91 | 059505 | 12/27/91 | 59505 | REGISTERED | 25 |
| PARAGUAY | 3518-16A/PY | 4/15/91 | 04153 | 9/9/91 | 149,340 | REGISTERED | 3 |
| PARAGUAY | 3518-16B/PY | 4/15/91 | 04154 | 9/9/91 | 149,341 | REGISTERED | 25 |
| PORTUGAL | 3518-2PT | 10/4/89 | 258886 | 5/5/93 | 258886 | REGISTERED | 25 |
| PORTUGAL | 3518-16PT | 1/11/91 | 270557 | 2/3/93 | 270557 | REGISTERED | 3 |
| SOUTH KOREA | 3518-2KR | 10/4/95 | 37403/1995 | 7/15/98 | 410109 | REGISTERED | 45 |
| SPAIN | 3518-2ES | 11/30/89 | 0274568 | 11/5/91 | 1534539 | REGISTERED | 25 |
| SPAIN | 3518-16ES | 2/22/91 | 1619677 | 3/5/92 | 1619677 | REGISTERED | 3 |
| SWITZERLAND | 3518-16CH | 1/9/91 | 133/19910 | 1/9/91 | 387369 | REGISTERED | 3 |
| TAIWAN | 3518-2TW | 8/5/99 | 88038440 | | | PENDING | 25 |
| TAIWAN | 3518-25TW | 8/5/99 | 88038444 | | | PENDING | 09 |
| TAIWAN | 3518-41TW | 8/5/99 | 88038442 | | | PENDING | 18 |
| UNITED KINGDOM | 3518-2GB | 5/5/88 | 1343597 | 5/5/88 | B1343597 | REGISTERED | 25 |
| UNITED KINGDOM | 3518-16A/GB | 1/13/93 | 1523782 | 1/13/93 | 1523782 | REGISTERED | 3 |
| UNITED STATES | 3518-2 | 8/25/87 | 73/680,600 | 2/18/92 | 1,675,915 | REGISTERED | 25 |
| UNITED STATES | 3518-16A | 8/6/99 | 75/789,266 | | | PENDING | 03 |
| UNITED STATES | 3518-25 | 10/9/91 | 74/212,563 | 3/2/93 | 1,756,084 | REGISTERED | 9 |
| UNITED STATES | 3518-41 | 1/20/00 | 75/902,628 | | | PENDING | 18 |
| UNITED STATES | 3518-43 | 8/10/99 | 75/772,376 | | | PENDING | 35 |

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| Trademark Report by Mark | | | | | Printed: 5/22/00 | Page    4 | |

**JOSEPH ABBOUD continued . . .**

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| UNITED STATES | 3518-45 | 1/24/00 | 75/906,922 | | | PENDING | 14 |
| UNITED STATES | 3518-49 | 1/24/00 | 75/906,918 | | | PENDING | 24 |
| URUGUAY | 3518-16UY | 6/20/91 | 244870 | 2/14/92 | 244870 | REGISTERED | 25,3 |
| VENEZUELA | 3518-16A/VE | 3/5/91 | 003607-91 | 7/18/94 | 162740-F | REGISTERED | 3 |
| VENEZUELA | 3518-16B/VE | 3/5/91 | 003608-91 | 8/10/94 | 161592-F | REGISTERED | 25 |

### JOSEPH ABBOUD & DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| TAIWAN | 3518-3TW | 7/14/99 | 88034236 | | | PENDING | 25 |
| TAIWAN | 3518-24TW | 7/14/99 | 88034232 | | | PENDING | 09 |
| TAIWAN | 3518-42TW | 7/14/99 | 88034234 | | | PENDING | 18 |
| TAIWAN | 3518-44TW | 7/14/99 | 88034233 | | | PENDING | 14 |
| UNITED STATES | 3518-48 | 8/10/99 | 75/772,402 | | | PENDING | 35 |

### JOSEPH ABBOUD AND MISCELLANEOUS DIAMOND DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| TAIWAN | 3518-47TW | 7/14/99 | 88034235 | | | PENDING | 24 |

### JUST ONE EARTH & DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| UNITED STATES | 3518-26 | 10/25/91 | 74/215,436 | 5/9/95 | 1,893,638 | REGISTERED | 25 |

### LOZENGE DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| UNITED KINGDOM | 3518-3GB | 11/22/88 | 1364230 | 11/22/88 | 1364230 | REGISTERED | 25 |

### MICELLANEOUS DIAMOND DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| UNITED STATES | 3518-44 | 1/24/00 | 75/906,921 | | | PENDING | 24 |

### MISCELLANEOUS COLORED DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| GERMANY | 3518-3DE | 11/22/88 | A45477/25WZ | 11/23/88 | 1182061 | REGISTERED | 25 |

### MISCELLANEOUS DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| TAIWAN | 3518-45TW | 7/14/99 | 80034233 | | | PENDING | 14 |

### MISCELLANEOUS DESIGN (DIAMOND AND RECTANGLE DESIGN)

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| AUSTRIA | 3518-3AT | 12/9/88 | AM5602/88 | 8/10/90 | 126503 | REGISTERED | 25 |
| BENELUX | 3518-3BX | 2/16/89 | 066248 | 2/16/89 | 460339 | REGISTERED | 25 |
| BENELUX | 3518-17BX | 3/1/91 | 760492 | 3/1/91 | 496140 | REGISTERED | 3 |
| DENMARK | 3518-3DK | 10/17/89 | 7714/89 | 1/25/91 | 0571-1991 | REGISTERED | 25 |
| DENMARK | 3518-17DK | 1/31/91 | 0803/91 | 7/10/92 | 6073-1992 | REGISTERED | 3 |
| FRANCE | 3518-3FR | 2/27/89 | 113294 | 2/27/89 | 1516535 | REGISTERED | 25 |
| FRANCE | 3518-17FR | 1/29/91 | 264119 | 1/29/91 | 1641207 | REGISTERED | 3 |
| GERMANY | 3518-17DE | 2/1/91 | A 49648/3Wz | 2/2/91 | 2005241 | REGISTERED | 3 |
| JAPAN | 3518-3JP | 1/25/89 | 7613/1989 | 9/30/91 | 2339804 | REGISTERED | 17 |
| JAPAN | 3518-3.1JP | 7/31/89 | 88216/1989 | 7/31/92 | 2433049 | REGISTERED | 22 |

Trademark Report by Mark                                                    Printed: 5/22/00        Page    5

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| **MISCELLANEOUS DESIGN (DIAMOND AND RECTANGLE** | | | | | | | |
| JAPAN | 3518-3.6JP | 11/30/90 | 134460/1990 | 4/28/93 | 2526961 | REGISTERED | 21 |
| JAPAN | 3518-3.7JP | 11/30/90 | 134461/1990 | 4/28/93 | 2531165 | REGISTERED | 24 |
| NORWAY | 3518-3NO | 10/18/89 | 895125 | 6/20/91 | 145853 | REGISTERED | 25 |
| SWEDEN | 3518-3SE | 10/26/89 | 89-10162 | 10/11/91 | 227040 | REGISTERED | 25 |
| SWITZERLAND | 3518-3CH | 11/19/88 | 8270 | 11/19/88 | 368751 | REGISTERED | 25 |
| SWITZERLAND | 3518-17CH | 2/12/91 | 989/1991.4 | | | PENDING | 3 |
| UNITED KINGDOM | 3518-17GB | 2/13/91 | 1455594 | 2/13/91 | 1455594 | REGISTERED | 3 |
| URUGUAY | 3518-17UY | 8/7/91 | 243055 | 3/24/94 | 243055 | REGISTERED | 25,3 |

## MISCELLANEOUS DIAMOND DESIGN

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| UNITED STATES | 3518-42 | 1/24/00 | 75/902,629 | | | PENDING | 24 |
| UNITED STATES | 3518-46 | 1/24/00 | 75/906,917 | | | PENDING | 24 |

## MISCELLANEOUS MARK (DIAMOND & RECTANGLE DESIGN)

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| JAPAN | 3518-3.3JP | 11/30/90 | 134480/1990 | 2/26/93 | 2506540 | REGISTERED | |

## MISCELLANEOUS MARK (DIAMOND AND RECTANGLE DESIGN)

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| BOLIVIA | 3518-17B/BO | | | 8/18/92 | 53715 | REGISTERED | 25 |
| CHILE | 3518-17CL | 2/27/91 | 189657 | 4/25/91 | 367737 | REGISTERED | 25,3 |
| COLOMBIA | 3518-17B/CO | 5/16/91 | 341245 | 4/29/94 | 158278 | REGISTERED | 25 |
| JAPAN | 3518-3.2JP | 7/31/89 | 088217/1989 | 9/30/92 | 2462289 | REGISTERED | 23 |
| JAPAN | 3518-3.4JP | 11/30/93 | 134481/1990 | 6/30/93 | 2548303 | REGISTERED | 16 |
| JAPAN | 3518-3.5JP | 11/30/90 | 134482/1990 | 7/30/93 | 2559782 | REGISTERED | 20 |
| PARAGUAY | 3518-17A/PY | 4/15/91 | 04146 | 9/9/91 | 149338 | REGISTERED | 3 |
| PARAGUAY | 3518-17B/PY | 4/15/91 | 04147 | 9/9/91 | 149339 | REGISTERED | 25 |
| SWEDEN | 3518-17SE | 3/19/91 | 9102483 | 8/12/92 | 236303 | REGISTERED | 3 |
| UNITED STATES | 3518-17A | 12/22/99 | 75/878,009 | | | PENDING | 03 |

## MISCELLANEOUS MARK (DIAMOND AND RECTANGLE)

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| ECUADOR | 3518-17A/EC | 5/27/91 | 25896 | 3/4/92 | 512-92 | REGISTERED | 3 |

## MISCELLANEOUS MARK (DIAMOND AND TRIANGLE DESIGN)

| COUNTRY | REFERENCE# | FILED | APPL# | REGDT | REG# | STATUS | CLASSES |
|---------|-----------|-------|-------|-------|------|--------|---------|
| ARGENTINA | 3518-17A/AR | 2/21/91 | 1792529 | 5/31/93 | 1442126 | REGISTERED | 3 |

END OF REPORT                                      TOTAL ITEMS SELECTED =    140

# FILING RECEIPT FOR TRADEMARK APPLICATION

Receipt on the DATE OF FILING of the application for registration and filing fees is acknowledged for the mark identified below. The DATE OF FILING is contingent upon the collection of any payment made by check or draft. Your application will be considered in the order in which it was received and you will be notified as to the examination thereof. Action on the merits should be expected from the Patent and Trademark Office in approximately 06 months from the filing date. When inquiring about this application, include the SERIAL NUMBER, DATE OF FILING, OWNER NAME, and MARK.

Page 01 of 01

Apr 11, 2000

THEODORE E. DINSMOOR,
FINNEGAN, HICKEY, DINSMOOR & JOHNSON, PC
175 FEDERAL STREET,
BOSTON, MASSACHUSETTS, 02110

**ATTORNEY
REFERENCE NUMBER**

## PLEASE REVIEW THE ACCURACY OF THE FILING RECEIPT DATA.

A request for correction to the filing receipt should be submitted within 30 days to the following address: ASSISTANT COMMISSIONER FOR TRADEMARKS, 2900 CRYSTAL DRIVE, ARLINGTON, VIRGINIA 22202-3513. The correspondence should be marked to the attention of the Preexamination File Receipt Section. Or fax a request to 703-308-9096. The Patent and Trademark Office will review the request and make corrections when appropriate.

SERIAL NUMBER: 75/881167
FILING DATE:   Dec 27, 1999
REGISTER:      Principal
LAW OFFICE:    108
MARK:          JOSEPH ABBOUD
MARK TYPE(S):  Trademark
DRAWING TYPE:  Words, letters, or numbers and design
FILING BASIS:  Sect. 1(a) (Use in Commerce)



ATTORNEY: Theodore E. Dinsmoor,

OWNER: Abboud, .Joseph M. (UNITED STATES, Individual)
       P.O. Box 32
       Pound Ridge, NEW YORK  10576

FOR: Clothing, namely men s and women s apparel, including suits, jackets, shirts, ties, sweaters, trousers, overcoats and raincoats
     INT. CLASS: 025
     FIRST USE: Dec 1, 1993      USE IN COMMERCE: Dec 1, 1993
                   ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

OTHER DATA

DESCRIPTION OF MARK: Geometric design, consisting of two rectangles inside one another that are completely or partially shaded, an intersecting diamond with a single or multiple line border and decorative borders, and the words JOSEPH ABBOUD.

OWNER OF U.S. REG. NOS.: 1675915



[REV 1/00]

# SCHEDULE  1.1 (e)

## ROYALTIES AND RECONCILIATION
## DUE JOSEPH ABBOUD AND HOUNDSTOOTH

| PERIOD | PAYMENT TYPE | DUE DATE | $ AMOUNT |
|---|---|---|---|

### 1. GFT

#### A. Clothing and Furnishing Agreement – Golf and International

| | | | |
|---|---|---|---|
| 2nd Quarter | Minimum | 6/30/00 | 387,500 |
| | Reconciliation | 7/31/00 | ? * |

* For Shipments From 1/1/00 to 6/30/00 relating to Spring/Summer 2000 and prior.

#### B. Sportswear Agreement

| | | | |
|---|---|---|---|
| 2nd Quarter | Reconciliation | 7/31/00 | ? * |

* For Shipments From 1/1/00 to 6/30/00 relating to Spring/Summer 2000 and prior.

### 2. Ambassador

| | | | |
|---|---|---|---|
| | Minimum | 10/15/99 | 75,000* |
| | Minimum | 1/15/00 | 80,000* |
| | Minimum | 4/15/00 | 80,000* |
| | Minimum | 7/15/00 | 80,000* |

* Ambassador in breach – funds not received.

### 3. Cardinal

| | | | |
|---|---|---|---|
| | Reconciliation | 1/31/00 | ? |

### 4. Carnival

| | | | |
|---|---|---|---|
| | Reconciliation | 3/30/00 | ? |

5. Creative Bath

| | Reconciliation | 4/30/00 | ? |
|---|---|---|---|

6. Day Lor

| | | 9/30/99 | 37,500* |
|---|---|---|---|
| | | 12/31/99 | 37,500* |
| | | 3/31/00 | 37,500 |
| | | 6/30/00 | 37,500 |
| | Advertising | 12/01/99 | 67,500* |

* Day Lor agreement expired.  Funds not received in litigation.

7. E. Gluck

| | | 6/30/00 | 10,000 |
|---|---|---|---|

8. EuroItalia

| | | 7/31/00 | Approx. 35,000 |
|---|---|---|---|

9. Florsheim

| | Advertising | 3/31/00 | 75,000 |
|---|---|---|---|
| | Minimum | 6/30/00 | 75,000 |
| | Advertising | 6/30/00 | 75,000 |

10. Grieco

| | | 12/31/98 | 31,250* |
|---|---|---|---|
| | | 6/30/99 | 75,000* |
| | | 12/31/99 | 75,000* |

* Funds not received. Contract expired.

11. Induter

| | Reconciliation | 4/30/00 | ? |
|---|---|---|---|

12. Majestic

|  | Reconciliation | 4/30/00 | ? |
|---|---|---|---|

13. Onward Kashiyama

| Spring/Sum. 2000 | Reconciliation | 6/30/00 | 90,000 |
|---|---|---|---|
|  |  | 8/15/00 | ? |

14. Pancaldi

|  |  | 3/31/99 | 10,000* |
|---|---|---|---|
|  |  | 6/30/99 | 5,000* |
|  |  | 9/30/99 | 37,500* |
|  |  | 12/31/99 | 37,500* |
|  |  | 3/31/00 | 37,500 |
|  |  | 6/30/00 | 37,500 |

* In breach / Funds not received / In litigation.

15. Pellari

|  |  | 9/30/99 | 47,500* |
|---|---|---|---|
|  |  | 12/31/99 | 47,500* |
|  |  | 6/30/00 | 12,230 * |

* Not received – in negotiation due to Mettler's

16. Pietrafesa

|  |  | 3/31/00 | 15,000 |
|---|---|---|---|
|  |  | 6/30/00 | 15,000 |
|  | Advertising |  | 50,000 |

17. Portalano

|  | Reconciliation | 10/30/99 | ? |
|---|---|---|---|
|  | Reconciliation | 1/30/00 | ? |

## 18.  V. Fraas

|  |  | 6/30/00 | 7,500 |
|---|---|---|---|

## 19.  Whaling

|  |  | 6/30/00 | 28,125 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |



**Exhibit 2.2(iv)**

## CONSENT TO ASSIGNMENT

This CONSENT TO ASSIGNMENT dated _____, 2000, by and between HOUNDSTOOTH CORPORATION, a New York corporation ("Assignor"), and _____, a _____ ("Licensee").

## W I T N E S S E T H

THAT, WHEREAS, Licensee is a party to that certain license agreement dated _____ (the "License Agreement") with Assignor;

WHEREAS, Assignor, together with Mr. Joseph Abboud, has entered into an Agreement of Purchase and Sale (the "Purchase and Sale Agreement") dated June ___, 2000 with JA Apparel Corp., a Delaware corporation ("Assignee"), pursuant to which Assignor has agreed to assign to Assignee all of its rights and benefits under the License Agreement (the "Assignment") and to delegate to Assignee all of its duties and obligations (the "Delegation") under the License Agreement;

WHEREAS, Assignee has agreed to accept such Assignment and Delegation, subject to the consent of Licensee; and

WHEREAS, Licensee is willing to grant its consent to the foregoing Assignment and Delegation on the terms and conditions hereinafter set forth;

NOW, THEREFORE, the parties agree as follows:

1.    Consent.  Licensee hereby irrevocably consents to the Assignment and Delegation.

2.    Recognition of Assignee as Licensor.  From and after the closing date under the Purchase and Sale Agreement (the "Closing Date"), Licensee irrevocably agrees to recognize Assignee as the licensor for all purposes of the License Agreement and to make all payments pursuant to the License Agreement due from and after the Closing Date to Assignee.

3.    Assignor's Duties and Obligations.  With respect to all time periods prior to the Closing Date, Licensee acknowledges and agrees that Assignee will have no liability for Assignor's duties and obligations under the License Agreement and Licensee will look solely to Assignor for performance of those duties and obligations.

4.    Assignee's Duties and Obligations.  From and after the Closing Date, Assignee agrees to perform the duties and obligations of the licensor set forth in

the License Agreement. [Assignee further agrees that it will continue to avail itself of the personal cooperation of Mr. Abboud in connection with the performance of such duties and obligations]. *Bracketed language to be used for those License Agreements which provide for the personal commitment of Mr. Abboud to supply image and fashion direction.*

5.    <u>Duties Arising After Closing Date</u>.    Licensee agrees that Assignor will have no liability or obligation to perform any duties or obligations arising under the License Agreement from and after the Closing Date.

6.    <u>Counterparts</u>.  This Consent to Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but both of which together constitute a single instrument.

7.    <u>Governing Law</u>.  This Consent to Assignment will be governed by, and construed and enforced in accordance with, the laws of the State of New York without regard to the choice of law provisions thereof.

IN WITNESS WHEREOF, the parties have executed this Consent to Assignment on the date first written above.

HOUNDSTOOTH CORPORATION

By:    _____
Name:
Title:

[LICENSEE]

By:    _____
Name:
Title:

487200.3

EXHIBIT 2.2(v)

- The incorporation and valid existence of Houndstooth.

- The authorization of the execution and delivery of the Agreement of Purchase and Sale and the instruments of transfer referred to therein by Houndstooth.

- The due execution and delivery by each of Houndstooth and Abboud of the Agreement of Purchase and Sale and the instruments of transfer referred to therein.

- The due execution and delivery of the Side Letter Agreement by Abboud.

- The enforceability of the Agreement of Purchase and Sale and the Side Letter Agreement against Houndstooth and Abboud.

**Exhibit 2.2(vi)**

July __, 2000

Mr. Joseph Abboud
c/o Houndstooth Corporation
90 Pine Brook Road
Bedford, New York 10506

Joseph Abboud Worldwide Inc.
49 West 57th Street
New York, New York 10019

Gentlemen:

Reference is made to the Agreement of Purchase and Sale, dated as of June 15, 2000 (the "Agreement"), among Houndstooth Corporation ("Houndstooth"), Mr. Joseph Abboud ("Abboud") and JA Apparel Corp. (the "Buyer"). Pursuant to the Agreement, on the date hereof the Buyer is acquiring from Houndstooth and Abboud (i) certain names, trade names, service marks, logos, insignias, designations, trademark registrations and applications and the goodwill related thereto (collectively, the "Trademarks"), (ii) all licenses to use the Trademarks granted by Houndstooth, or Abboud (collectively, the "License Agreements") and (iii) all rights to use and apply for the registration of new trade names, trademarks, service marks, logos, insignias and designations containing the words "Joseph Abboud," "designed by Joseph Abboud," "by Joseph Abboud," "JOE" or "JA" or anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols (collectively, the "New Trademarks" and, collectively with the Trademarks and the License Agreements, the "Assets"). In consideration of the consummation of the purchase and sale of the Assets pursuant to the Agreement, and in order to induce Houndstooth, Abboud and the Buyer to consummate such purchase, the parties hereto have agreed as follows:

1. <u>Personal Services to be Performed by Abboud</u>.

(a) For a period of five (5) years from and after the date hereof (the "Personal Services Period"), Abboud agrees to serve as Chairman Emeritus of the Buyer and to provide the following personal services to the Buyer on an exclusive basis: (a) providing stylistic guidelines in connection with the Black Label collection of apparel marketed under the Trademarks, (ii) providing stylistic ideas and proposals for the design and development of all other collections marketed under the Trademarks and/or the New Trademarks, (iii) providing concepts and ideas in connection with public relations activities and advertising campaigns, (iv) providing suggestions and ideas for the development of new business opportunities and new licensing relationships for the Buyer and (v) upon reasonable prior notice to Abboud consistent with the past

practices of the parties, making personal appearances at exhibitions, fashion shows and other events on behalf of the Buyer whenever the Buyer deems it reasonably necessary for the benefit of the brand awareness of the Trademarks and/or the New Trademarks. Subject to reasonable prior notice to Abboud consistent with the past practices of the parties, Abboud agrees to use his reasonable best efforts to make himself available to perform such personal services at the request of the Buyer in New York, New York and at such other places as the Buyer may from time to time reasonably request, in each case during the Personal Services Period.

(b) It is understood and agreed that Abboud's performance of such personal services will be rendered as requested from time to time by the Buyer during the Personal Services Period and that Abboud will not be entitled to engage in other business activities during the Personal Services Period, other than serving as Chairman Emeritus of the Buyer as provided herein, without the prior written consent of the Buyer, which consent shall not be unreasonably withheld in the case of any proposed business activities by Abboud which the Buyer reasonably determines are not in conflict with any of the business activities of the Buyer or any of its affiliated entities then conducted or as then reasonably proposed to be conducted. Further, it is understood and agreed that the Buyer hereby consents to Abboud (i) making media (including television) or celebrity appearances and otherwise acting as a general authority in the fashion business, (ii) serving for compensation on boards of directors, advisory boards and special committees and (iii) acquiring, owning and holding stock in public corporations, in each case as long as such activities do not result in Abboud actually competing with any of the business activities of the Buyer or its affiliated entities as conducted at that time. Any request by Abboud for the Buyer's consent to engage in any other activities during the Personal Services Period shall be directed to and determined by the Chief Executive Officer of GFT Net S.p.A. (or its corporate successor) on behalf of the Buyer.

(c) Abboud agrees that the purchase price paid by the Buyer for the Assets on the date hereof pursuant to the Agreement provides him with full and fair consideration from the Buyer for the performance of such personal services during the Personal Services Period and that he will not be entitled to any additional compensation from the Buyer or any of its affiliates with respect to the performance of such personal services except as otherwise expressly provided in this Letter Agreement.

(d) During the Personal Services Period. Abboud shall receive all of the benefits and compensation described hereunder. For his service hereunder, Abboud will receive an annual retainer of Twelve Thousand Dollars ($12,000), payable in arrears in semi-annual installments of Six Thousand Dollars ($6,000) each, beginning six (6) months from the date hereof, during the Personal Services Period. Abboud will be entitled to a corporate expense account from the Buyer (including a corporate credit

2

card) which will be used exclusively for business-related expenses incurred by him in connection with his duties as Chairman Emeritus of the Buyer. Such business-related expenses will be submitted on a monthly basis to the Buyer for its reasonable approval. Abboud shall be entitled to car service transportation and first class travel and overnight accommodation arrangements at the expense of the Buyer whenever he is required to travel at the request of the Buyer in performing such personal services. Abboud shall be entitled to membership club dues of up to Six Thousand Dollars ($6,000) per annum payable by the Buyer on or before the due date(s) thereof. Abboud shall also be entitled to a clothing allowance of up to Ten Thousand Dollars ($10,000) per annum pursuant to which he will be entitled to purchase articles of apparel manufactured by or for the Buyer at a twenty percent (20%) discount to the Buyer's standard wholesale price on an item by item basis. In addition, during the period of his service as Chairman Emeritus of the Buyer, Abboud will also be entitled to receive medical insurance coverage on the same terms and conditions as the Buyer provides from time to time to its senior executive officers, as more particularly described as of the date hereof in Schedule 1(d).

2.  Prohibition of Competing Activities by Abboud.

(a)  For the two-year period immediately following the expiration of the Personal Services Period (the "Restricted Period"), Abboud agrees that he will not, directly or indirectly through any partnership, corporation, limited liability company, trust or other entity, be associated as an owner, director, officer, employee, consultant or other participant with, any person, group, business enterprise or other entity which is engaged in or proposes to engage in the business of designing, licensing, manufacturing, marketing or distributing any products or services which are or would be competitive with the business of the Buyer as then conducted or as such business may be reasonably expected to be conducted in the future anywhere in the world.

(b)  In order to enforce the agreement of Abboud set forth in paragraph (a) of this Section 2, Abboud agrees that at all times during the Restricted Period he will be obligated to obtain the prior written consent of the Buyer, which may be granted, withheld or conditioned in the sole discretion of the Buyer, before becoming associated in any capacity with any person, group, business enterprise or other entity, other than the Buyer or any of its affiliated entities, which is engaged in or proposes to engage in the business of designing, licensing, manufacturing, marketing or distributing any products or services which could reasonably be expected to be competitive with the business of the Buyer as then conducted or as then reasonably proposed to be conducted in the future. Any request by Abboud for the Buyer's consent to engage in any activities which require such consent during the Restricted Period shall be directed to and determined by the Chief Executive Officer of GFT Net S.p.A. (or its corporate successor) on behalf of the Buyer.

3

485001.6

(c)  Abboud agrees that the purchase price paid by the Buyer for the Assets on the date hereof pursuant to the Agreement provides him with full and fair consideration from the Buyer for the agreement of Abboud set forth in this Section 2 during the Restricted Period and that he will not be entitled to any additional compensation from the Buyer or any of its affiliates with respect to such agreement except as otherwise expressly provided in this Letter Agreement.

(d)  Abboud acknowledges that his agreements set forth in this Section 2 were specifically bargained for by the Buyer in connection with the consummation of the transactions contemplated by the Agreement, that the services to be performed by him pursuant to Section 1 above are special and unique and that in the event of any breach by Abboud of his agreements set forth in such Sections the Buyer will not have an adequate remedy at law and therefore will be entitled to obtain equitable relief in the form of a preliminary or permanent injunction from any court of competent jurisdiction in order to enforce such agreements  The parties acknowledge that the Agreement also provides for the indemnification of the Buyer by Houndstooth and Abboud in connection with any breach by Abboud of his agreements set forth in such Sections, subject to the limitations and other provisions of the Agreement contained in Article VIII thereof, and agree that such indemnification will constitute the Buyer's sole remedy at law in case of any such breach..

(e)  In the event that a court of competent jurisdiction would refuse to enforce the agreement of Abboud set forth in this Section 2 because it covers too wide a geographic area, extends for a period of time which is deemed excessive or otherwise, it is the intention of the Buyer and Abboud that such agreement shall be reformed by such court so as to comport with the maximum allowable provisions permitted by applicable law.

3.  <u>Reimbursement of Certain Expenses by The Buyer</u>.

(a) In consideration of the sale of the Assets by Abboud and Houndstooth to the Buyer pursuant to the Agreement on the date hereof, the Buyer agrees to reimburse Worldwide on a periodic monthly basis for 100% of the rent as of the date hereof ($10,967.09) paid by Worldwide for the third floor offices in 49 West 57th Street in New York City currently occupied by Worldwide for the period from and including the Closing Date (as defined in the Agreement) through and including September 30, 2000 (such period, the "Reimbursement Period").  Such reimbursement will be paid in accordance with <u>Schedule 3(a)</u> annexed hereto.

(b) In consideration of the sale of the Assets by Abboud and Houndstooth to the Buyer pursuant to the Agreement on the date hereof, the Buyer agrees to reimburse Worldwide on a periodic monthly basis for 100% of the base compensation as of the date hereof, paid by Worldwide during the Reimbursement Period to each of

4

Mark Scarborough, Bob Franceschini, Dominick Leuci, Deborah Koncan, and Amy Vernazza in accordance with Schedule 3(b) annexed hereto for each such individual until the earlier to occur of (i) the date that such individual ceases to be employed by Worldwide for any reason (including, but not limited to, as a result of the discretionary hiring of such individual by the Buyer or one of its affiliates) and (ii) the expiration of the Reimbursement Period.

(c) In consideration of the sale of the Assets by Abboud and Houndstooth to the Buyer pursuant to the Agreement on the date hereof, the Buyer agrees to reimburse Worldwide on a periodic monthly basis for 50% of the rent paid by Worldwide as of the date hereof ($10,967.09 x 50% = $5,483.55) for the third floor offices in 49 West 57th Street in New York City currently occupied by Worldwide for the period from and including October 1, 2000 to and including the earlier to occur of (y) December 31, 2000 and (z) the date that Worldwide subleases, assigns or surrenders its lease with respect to such space such period the "Partial Reimbursement Period"). Such reimbursement will be paid in accordance with Schedule 3(c) annexed hereto. In addition, Abboud agrees to cause Worldwide to use its commercially reasonable efforts to sublease, assign or surrender its lease with respect to such space during the Partial Reimbursement Period and to promptly notify the Buyer if Worldwide is able to effect any such sublease, assignment or surrender.

(d) In consideration of the sale of the Assets by Abboud and Houndstooth to the Buyer pursuant to the Agreement on the date hereof, the Buyer agrees to assume and discharge the Sellers' existing advertising obligations to radio station WFAN-66AM New York for commercials on the "Imus in the Morning" radio show due on October 15, 2000 in the amount of $12,500 and due on February 15, 2001 in the amount of $37,500.

4 Miscellaneous.

(a) This Letter Agreement constitutes the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, whether written or oral, among such parties relating to the subject matter hereof.

(b) This Letter Agreement and the rights and obligations of the parties will be governed by, construed and enforced in accordance with the laws of the State of New York without regard to the choice of law provisions thereof.

(c) This Letter Agreement is personal to the parties hereto and no party may assign its or his rights or delegate its or his obligations hereunder, in whole or in part, to any third party without the prior written consent of the other parties hereto, and

5

any such attempted assignment or delegation in the absence of such consent, shall be void and without effect.

(d) All actions and proceedings arising out of or relating to this Letter Agreement will be exclusively heard and determined in a New York state or federal court sitting in the City of New York and by the execution and delivery hereof the parties hereby irrevocably submit to the jurisdiction of such courts in any such action or proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of such action or proceeding.

(e) This Letter Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(f) All notices and other communications hereunder must be in writing and will be deemed given if sent to the respective parties hereto at their addresses as set forth in, and in the manner provided in, the Agreement.

To indicate your agreement to the foregoing, please execute the duplicate copy of this Letter Agreement in the space provided below for such purpose and return it to the undersigned, whereupon this Letter Agreement shall become a binding agreement among the parties.

Very truly yours,

JA APPAREL CORP.

By:_____
    Name:
    Title:


ACCEPTED AND AGREED TO:


_____
Joseph Abboud

6

485001.6

HOUNDSTOOTH CORPORATION

By:_____
   Name:
   Title:





7

SCHEDULE 1(d)

EXHIBIT A

## MEDICAL AND DENTAL PLAN COMPARISON (Continued)

| | W.B. JONES SELF-FUNDED (PPO) | | AETNA HEALTHCARE |
|---|---|---|---|
| | In Network | Out of Network | |
| **MENTAL & NERVOUS** (loss accumulate) | | | |
| In-Patient | $200 Co-Pay (limited to 40 days lifetime max/individual) | 80% after deductible (limited to 20 days lifetime maximum/ individual) | No Co-Pay (limited to 35 days/calendar year) |
| Out-Patient | $10 Co-Pay (limited to 40 visits/calendar year per individual) | 80% after deductible (limited to 40 visits/ calendar/ year per individual) | $25 Co-Pay (limited to 20 visits/calendar year) |
| **ALCOHOL AND SUBSTANCE ABUSE** (loss accumulate) | | | |
| In-Patient | $200 Co-Pay (Lifetime max of $15K per individual) | 80% after deductible (Lifetime max of $15K per individual) | No Co-Pay |
| Out-Patient | $10 Co-Pay (limited to 30 visits/calendar year. Lifetime max of $15K/individual) | 80% after deductible (limited to $75/visit to 20 visits/calendar yr. Lifetime max of $15K/ individual) | $15 Co-Pay (limited to 60 visits/calendar year) |
| **COSMETIC SURGERY** | Not covered | Not covered | Not covered |
| **DENTAL BENEFIT** | | | |
| Deductible | $100 per person ($300 for family) | | None |
| Maximum Calendar Year Benefit | $2000 | | None |
| **DENTAL SERVICES** | | | |
| Preventive Services (I) | 100% not subject to deductible | | $2 Co-Pay |
| Basic Services (II) | 80% after deductible | | $2 Co-Pay |
| Major Services (III) | 50% after deductible | | Available at reduced fees |
| Orthodontics | Not Covered | | Available at reduced fees |
| **Employee Monthly Proration** | | | |
| Single (medical & dental) | $66 | | $40 |
| Single + one (medical & dental) | $138 | | $85 |
| Family (medical family/single dental) | $175 | | Not Available |
| Family (medical & dental) | $210 | | $142 |

1. This outline contains highlights only and is subject to change. Full coverage details are contained in the Summary Plan Document.

2. Coverage is effective the first day of the month following a one-month waiting period from your hire date.

Page 2 of 2

Schedule 3(a)

Joseph Abboud Worldwide Rent Expense

Rental expense @ 100% for the period commencing from the Closing Date through September 30, 2000

$10,967.09 per month



05/18/00  16:29 FAX 12123979360          J.A.APPAREL CORP.                                    002

05/18/2008  16:04    2122239398                ABBOUD WORLDWIDE                        PAGE  01

## Schedule 3(b)

## Joseph Abboud Worldwide Employee Expense

| Name | Title | Semi-monthly | Monthly |
|------|-------|--------------|---------|
| Mark Scarborough | Exec VP / Gen Mgr | 7916.67 | 15,833.34 |
| Robert Franceschini | Senior VP / Marketing | 10,000.00 | 20,000.00 |
| @Dominick Leuci | Creative Director | 3333.34 | 6666.68 |
| Deborah Koncan | Designer | 2666.67 | 5333.34 |
| Amy Vernazza | Admin Support | 1791.67 | 3583.34 |

|  | Semi-monthly | Monthly |
|--|--------------|---------|
| Total | $25,708.35 | $51,416.70 |

| Benefits costs per month@ | $7963.95 |
|---------------------------|----------|

| Total Salary + Benefits per month | $59,380.65 |
|-----------------------------------|------------|

@  In addition to monthly salary noted, Dominick Leuci also to receive a single lump sum payment of $4750.00 on June 30, 2000 for the period from July 1 through September 30, 2000.

@  Benefits calculation inclusive of:

Insurance:
- Medical
- Dental
- Disability
- Federal and State Unemployment
- Workers Compensation

Taxes:
- Social Security
- Medicare

Misc:
- Payroll and Direct Deposit Service

Schedule 3(c)

Joseph Abboud Worldwide Rent Expense

Rent expense @ 50% for the period from and including October 1, 2000 to and including the earlier to occur of (y) December 31, 2000 and (z) the date that Worldwide subleases, assigns or surrenders its lease with respect to the third floor offices in 49 West 57th Street in New York City currently occupied by Worldwide.



EXHIBIT 2.3(vi)

- The incorporation and valid existence of JA Apparel.

- The authorization of the execution and delivery of the Agreement of Purchase and Sale by JA Apparel.

- The due execution and delivery by JA Apparel of the Agreement of Purchase and Sale.

- The due execution and delivery of the Side Letter Agreement by JA Apparel.

- The enforceability of the Agreement of Purchase and Sale and the Side Letter Agreement against JA Apparel.



## SCHEDULE 3.3 – LICENSEE CONSENTS

The following is a list of Licensees whose License Agreements cannot be assigned without their consent to such assignment, as per the terms of their License Agreements:

1. GFT
2. Ambassador
3. Avon Home Furnishings
4. Cardinal
5. Carnival
6. Creative Bath
7. Daylor
8. E. Gluck
9. Euro Italia
10. Florsheim
11. General Motors
12. Grieco
13. Hedaya
14. Induter
15. Kravet
16. Majestic
17. Onward Kashiyama
18. Pancaldi

19. Pietrafesa
20. Portolano
21. Sergio Pellari
22. United Feather & Down
23. V. Fraas
24. Whaling



## SCHEDULE 3.6(b)

Notice is hereby given that a party in Mexico has claimed all right, title and interest to the trademark "Joe" in connection with retail apparel sales and operations.

