USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/10/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JA APPAREL CORP.,

                    Plaintiff,

          v.

JOSEPH ABBOUD, et al.,

                    Defendants.
------------------------------------X

07 Civ. 7787 (THK)

**MEMORANDUM OPINION AND ORDER**

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

    In this action, Plaintiff JA Apparel Corporation sues Defendant Joseph Abboud and other related entities for breach of a contract under which Plaintiff acquired Abboud's business and the trademarks associated with the business.

    Presently before the Court are two letter submissions - one from Defendants and one from Plaintiff - regarding (a) whether a portion of a document inadvertently produced in discovery by Plaintiff is protected by the attorney-client privilege and/or work product doctrine and, if so, whether Plaintiff waived its right(s) to seek protection under the privilege or doctrine, and (b) whether other specified documents, to the extent they exist, are protected from disclosure by the common interest doctrine.

    For the reasons set forth below, the Court finds that the documents are privileged and that there has been no waiver, at least based on the current record.

I.   <u>The Cowan Memo</u>

    During the course of expedited discovery in this matter,

Plaintiff produced a 175-page presentation that was made to its Board on April 28, 2005. Included in the presentation Plaintiff produced is an 18-page section, which is largely a verbatim recitation of a memorandum prepared by Plaintiff's trademark attorneys, Cowan Liebowitz & Latman, P.C., regarding the rights of the parties to this action under the Purchase and Sale Agreement at the heart of this case. (This document, which has not been provided to the Court, has been identified as covering Bates numbers JAA0009634 - JAA 0009651; it will be referred to herein as the "Cowan Memo").

   A.   <u>Attorney-Client Privilege</u>

Defendants argue that the Cowan Memo is not privileged because it merely contains business strategies and general business advice. (See Defendants' December 14 Letter ("Defs.'s Ltr.") at 2.) Yet, somewhat inconsistently, Defendants also state that "the Cowan Memo, as contained in the Presentation, states that under the Purchase and Sale Agreement, Abboud did not sell to JA Apparel the exclusive right to use his name for all purposes." (<u>Id.</u>) Although Plaintiff disputes this characterization of the Cowan Memo (see Plaintiff's December 21 Letter ("Pl.'s Ltr.") at 2, n.1.), it contends that the Cowan Memo clearly contains legal advice. (See <u>id.</u> at 2 ("The self-evident purpose of the advice contained in the Cowan Liebowitz Memorandum was to advise JA Apparel (i.e., its Board) on the legal issues of the company's right to the name,

2

designation or mark JOSEPH ABBOUD in light of Mr. Abboud's departure . . . The advice is undeniably of a legal nature.").)

"The attorney client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007). Based on the submissions of the parties, the Court concludes that the Cowan Memo does contain legal advice and is, therefore, protected by the attorney-client privilege. A memo from a trademark attorney to his client setting forth his views regarding the parameters of the client's rights and obligations in connection with certain trademarks qualifies as legal advice. See, e.g., Upjohn v. United States, 449 U.S. 383, 390, 101 S. Ct. 1677 (1981) ("Attorney-client privilege exists to protect not only giving of professional advice to those who can act on it but also the giving of information to lawyer to enable him to give sound and informed advice."); Fed. Express, Corp. v. Fed. Espresso, Inc., No. 97 Civ. 1219 (RSP)(GJD), 1997 WL 736530 at *3 (N.D.N.Y. Nov. 24, 1997) (correspondence with trademark counsel privileged). That the legal advice was contained in a "business" presentation to the client's Board of Directors does not render it "business" rather than "legal" in nature. Business transactions inevitably involve legal matters on which privileged advice is sought.

Defendants next contend that even if the Cowan Memo is

privileged, Plaintiff "may have" waived its right to assert the privilege because, during his deposition, Plaintiff's Chief Executive Officer, Marty Staff ("Staff"), testified that he may have shown the Cowan Memo to Plaintiff's public relations consultant. (See Defs.' Ltr. at 4.) Staff also testified that the presentation to the Board, which included the Cowan Memo, was made in the presence of an employee of Plaintiff's parent company, J.W. Childs. (See id.)

The Court finds this argument unpersuasive, at least based on the current record. First, Staff's testimony that he "may have" shown the document to the public relations firm is, in and of itself, insufficient to establish a waiver.[1] Moreover, even if Plaintiff did in fact provide the document to the public relations firm, such an act does not necessarily waive the privilege. The

---

[1] The Court is mindful that, in the context of the attorney-client privilege, the party bearing the burden of establishing waiver, or lack thereof as the case may be, has not been conclusively decided. However, the weight of authority suggests that the burden of showing a waiver rests with the opponent of the privilege. See Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, No. 06 7785 (PKC), 2007 WL 1573913, at *5 (May 24, 2007) (citing 24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure 5507 (1986) ("[T]here is general agreement that the burden of proving the preliminary facts of exceptions to the privilege is on the opponent of the privilege claim. The same should be true when it is claimed that the privilege has been waived."); 6C-13 Edward J. Imwinkelried, The New Wigmore: A Treatise on Evidence § 6.12.2 (2002) ("[E]ven if a jurisdiction assigns the ultimate burden of proof to the privilege claimant, the opponent ought to bear the initial burden of production or going forward. It would be silly to require the privilege claimant to anticipate and negate waiver in every instance.").

4

waiver analysis would turn on, among other things, the specific purpose for which Plaintiff provided the document, to whom the document was provided, along with what instructions, if any, Plaintiff provided with the document. In all events, however, there is simply no basis upon which the Court can find a waiver based on the incomplete factual record before it, which consists of imprecise deposition testimony that Defendants appear not to have pursued.

Likewise, the presence of a J.W. Childs employee, William McMullen, at the Board meeting where the presentation was given does not necessarily waive the privilege with respect to the Cowan Memo. McMullen's status as an employee of J.W. Childs, as opposed to Plaintiff, is not determinative because J.W. Childs owned 98% of Plaintiff at the time of the presentation, (see Pl.'s Ltr. at 3), and Defendants provide no support for the proposition that a subsidiary's disclosure of a privileged document to its parent company constitutes a waiver. Cf. Cary Oil, Inc., v. MG Refining & Marketing, Inc., No. 99 Civ. 1725 (VM)(DFE), 2000 WL 1800750 at *16 (S.D.N.Y. Dec. 7, 2000) (no waiver based on subsidiary's disclosure of privileged communications to its parent corporation).

Neither party, however, provided the Court with any information regarding McMullen's position with J.W. Childs, or why he attended Plaintiff's Board meeting. His attendance at the board meeting raises a fair inference that he is a high-level J.W. Childs

5

employee, and if he was in a position to act or rely on the legal advice in the Cowan Memo, his presence at the meeting likely would not have waived the privilege. See, e.g., E.B. v. New York City Board of Educ., No. CV 2002-5118 (CPS)(MDG), 2007 WL 2874862 at *4 (E.D.N.Y. Sept. 27, 2007) ("Courts determining whether dissemination of a document to employees amounts to a waiver of an entity's attorney-client privilege apply 'a need to know standard: did the recipient need to know the content of the communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication?") (internal citation omitted). But if McMullen is a low-level employee to whom the legal advice in the Cowan Memo would have had no significance, his presence may have constituted a waiver of the privilege. Id. at *4. Unfortunately, the parties did not provide any of this critical information to the Court.

For the foregoing reasons, the Court finds that, at least at this point in time, Defendants have not established that Plaintiff waived its right to assert the attorney-client privilege with respect to the Cowan Memo.

Finally, contrary to Defendants' contention, the "at issue" exception to the attorney-client privilege – also known as "waiver by assertion" – does not apply to the Cowan Memo. Plaintiff did not relinquish its right to assert the privilege by seeking legal advice, prior to the initiation of the litigation, on the legal

question to be addressed in the litigation. The "at issue" waiver applies "where one party injects the contents of a privileged communication into the litigation and lack of dual access would unfairly prejudice the opposing party, or where truthful resolution of the issue would require disclosure of the information." Allen v. West Point-Pepperell, Inc., 848 F. Supp. 2d 423, 429 (S.D.N.Y. 2000) (citing Remington Arms Co. v. Liberty Mut. Ins. Co., 142 F.R.D. 408, 412 (D. Del. 1992)). That is not the case here.[2]

B.  Work-Product Doctrine

Plaintiff contends that, in addition to being protected by the attorney-client privilege, the Cowan Memo is also protected by the work-product doctrine. The Court agrees. The "work-product doctrine is distinct from and broader than the attorney-client privilege." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citing Hickman v. Taylor, 329 U.S. 495, 508, 67 S. Ct. 385, 392 (1947) and quoting United States v. Nobles, 422 U.S. 225, 238 & n. 11, 95 S. Ct. 2160, 2170 (1975)). The purpose of the

---

[2] The main case on which Defendants rely, Atronic Intern., GMBH v. SAI Semispecialists of America, Inc., 232 F.R.D. 160, 166 (E.D.N.Y.), is inapposite. (See Defs.' Ltr. at 5.) There, the court found that considerations of fairness weighed in favor of allowing the defendant to use e-mails inadvertently produced by the plaintiff which contained the "number of graphic processors" the plaintiff sold to the defendant because the plaintiff had taken a position contrary to the e-mails during the litigation. The situation in this case, involving a legal memorandum about a key legal - not factual - issue in the case, is obviously quite different. The Court also notes that Atronic is an Eastern District of New York case, not a Southern District of New York case as represented, and is not controlling authority.

work-product doctrine is to "preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1996 (2d Cir. 1998). It is intended to "protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation." United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980).

Here, Plaintiff represents that the Cowan Memo was prepared "in anticipation of activities by [Defendant] Abboud that could constitute trademark infringement or otherwise violate JA Apparel's rights in the JOSEPH ABBOUD names, designations or marks." (Pl.'s Ltr. at 5; see also Ex. B at 257-61.) Plaintiff further represents that it was created at a time when "litigation was likely." (Pl.'s Ltr. at 5.) Defendants do not challenge these representations. Accordingly, the document is protected by the work-product doctrine.

Although Defendants do not argue that Plaintiff waived its right to seek protection under this doctrine by virtue of sharing the Cowan Memo with its public relations firm, or presenting it at a meeting in which a J.W. Childs employee was present, any such argument would fail. This is true because waiver of the work-product doctrine is significantly more difficult to establish than

8

waiver of the attorney-client privilege. "Unlike the attorney-client privilege, the work-product privilege is not necessarily waived by disclosure to any third party; rather, 'the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." Falise v. American Tobacco Co., 193 F.R.D. 73, 80 (E.D.N.Y. 2000) (quoting In re Pfizer Inc. Sec. Litig., No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)). Even if the attorney-client privilege has been waived, documents provided to third-parties may still be protected as attorney work-product so long as "there was some good reason to show it." Adlman, 134 F.3d at 1199-1200 & n. 4; see also In re Grand Jury, 219 F.3d at 190. Providing documents to those who have a common interest with the disclosing party, rather than an adversarial relationship, does not waive attorney work-product. See In re Steinhardt Partners, L.P., 9 F.3d 230, 235-36 (2d Cir. 1993).

Here, Defendants do not contend that Plaintiff intentionally shared the Cowan Memo with them, the adversarial party. Instead, Defendants merely contend that Plaintiff may have provided the Cowan Memo to its public relations firm, and presented it in the presence of an employee of its parent company. Even if established, neither act would constitute a waiver of the work-product doctrine, for the reasons set forth above.

9

II. The Opinion Letters

Defendants also argue that Plaintiff improperly withheld from production certain opinion letters or memoranda (the "Opinion Letters"), which were referenced by Staff during his deposition, and which relate to "Abboud's ability to use his name under the Purchase and Sale Agreement and the scope of the non-compete provision in the accompanying Personal Services Agreement." (See Defs.' Ltr. at 5.)[3] The Opinion Letters were apparently prepared for, and at the request of, J.W. Childs prior to its acquisition of Plaintiff. (See Defs.' Ltr. at 5; Pl.'s Ltr. at 5.) Defendants claim that the Opinion Letters are not privileged and, even if they are, Plaintiff has waived the privilege. (See Defs.' Ltr. at 5-7.)

In response, Plaintiff's counsel states that they have conducted a thorough review of Plaintiff's documents and have not found any such documents. (See Pl.'s Ltr. at 5.) This essentially ends the utility of any privilege determination by the Court. Moreover, the Court is without key facts necessary to determine whether the Opinion Letters are privileged. Defendants argue that they are not privileged because they contain business, as opposed to legal, advice. (See Defs.' Ltr. at 7-8.) But the Court has not reviewed the Opinion letters and neither party has submitted

---

[3] The parties agree that the Opinion Letters were prepared by the firm representing Plaintiff in this case, Kaye Scholer LLP, who was representing J.W. Childs prior to the J.W. Childs acquisition of Plaintiff.

10

evidence regarding when the documents were prepared, or for what purpose. If J.W. Childs requested that the Opinion Letters be prepared before it decided to purchase Plaintiff, in order to assess the value of Plaintiff's business, Defendant would have a colorable argument that the Opinion Letters are not privileged because they were created for business purposes, not to give legal advice. See, e.g., In Re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F. 2d 1032, 1037 (2d Cir. 1994) (privilege does not extend to documents consisting of business strategies or advice). Conversely, if J.W. Childs requested that the Opinion Letters be prepared after it had already made the decision, for all intents and purposes, to purchase Plaintiff, in order to better understand Plaintiff's rights and obligations under the relevant agreements, Plaintiff would be on solid footing to argue that the Opinion Letters are privileged because they contain legal advice. See e.g., Stratagem Dev. Corp. v. Heron Int'l, N.V., 153 F.R.D. 535, 543 (S.D.N.Y.1994) (where advice is primarily legal, as opposed to business in nature, the privilege attaches). The Court, however, is presently without any information that would assist its analysis in this regard.

Consequently, although Plaintiff's representation that it does not have the documents obviates the need for resolution of the privilege issue, if the documents are eventually located and secured, the Court will require additional information in order to

address the issue.

\*   \*   \*

Accordingly, Defendants' application for the production of the Cowan Memo and Opinion Letters is denied. If circumstances regarding the Opinion Letters change, the Court will reconsider its decision.

So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: January 10, 2008
       New York, New York