# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JA APPAREL CORP.,<br><br>                Plaintiff,<br><br>    v.<br><br>JOSEPH ABBOUD, HOUNDSTOOTH CORP., and HERRINGBONE CREATIVE SERVICES, INC.,<br><br>                Defendants.<br><br>JOSEPH ABBOUD, HOUNDSTOOTH CORP., and HERRINGBONE CREATIVE SERVICES, INC.,<br><br>                Counterclaim-Plaintiffs,<br><br>    v.<br><br>JA APPAREL CORP. and MARTIN STAFF,<br><br>                Counterclaim-Defendants. | Civil Action No. 07 CV 07787 (THK) |

## PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE* TO PRECLUDE THE ADMISSION OF PAROL EVIDENCE

**KAYE SCHOLER LLP**

425 Park Avenue
New York, New York 10022
(212) 836-8000
*Attorneys for Plaintiff and Counterclaim-Defendant JA Apparel Corp. and Counterclaim-Defendant Martin Staff*

31595297_V26.WPD

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    PAROL EVIDENCE IS INADMISSIBLE WHERE, AS DEFENDANTS CONCEDE HERE, THE CONTRACT IS UNAMBIGUOUS . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    THE PURCHASE AND SALE AGREEMENT IS NOT AMBIGUOUS . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Para Prof. Sys., Inc. v. Hooper Holmes, Inc.*,
13 A.D.3d 167, 787 N.Y.S.2d 227 (1st Dep't 2004) .......................... 4

*Asgrow Seed Co. v. Winterboer*,
513 U.S. 179 (1995) ....................................................... 9

*Atlantic Mut. Ins. Co. v. Terk Tech. Corp.*,
309 A.D.2d 22, 763 N.Y.S.2d 56 (1st Dep't 2003) ........................... 5

*Brainard v. N.Y. Cent. R.R. Co.*,
242 N.Y. 125 (N.Y. 1926) .................................................. 4

*Breed v. Ins. Co.*,
46 N.Y.2d 351, 413 N.Y.S.2d 352 (N.Y. 1978) ............................... 5

*Citadel Equity Fund Ltd. v. Aquila, Inc.*,
371 F. Supp.2d 510 (S.D.N.Y. 2005), *aff'd*, 168 Fed. Appx. 474 (2d Cir. 2006) ..... 9

*Diversified Mortg. Investors v. U.S. Life Title Ins. Co. of New York*,
544 F.2d 571 (2d Cir. 1976) ............................................... 10

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
125 S. Ct. 2611 (2005) .................................................... 6

*FDIC v. Meyer*,
510 U.S. 471 (1994) ....................................................... 9

*Int'l Multifoods Corp. v. Comm. Union Ins. Co.*,
98 F. Supp.2d 498 (S.D.N.Y. 2000) ......................................... 4

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*,
906 F.2d 884 (2d Cir. 1990) ............................................... 5, 10

*Miller v. Hekiman Labs., Inc.*,
257 F. Supp.2d 506 (N.D.N.Y. 2003), *aff'd*, 85 Fed. Appx. 266 (2d Cir. 2004) ...... 9

*Moore v. Kopel*,
237 A.D.2d 124, 653 N.Y.S.2d 927 (1st Dep't 1997) ......................... 5

**Page(s)**

*Muzak Corp. v. Hotel Taft Corp.*,
    1 N.Y.2d 42, 150 N.Y.S.2d 171 (N.Y. 1956) .................................. 8

*Namad v. Salomon Inc.*,
    74 N.Y.2d 751, 545 N.Y.S.2d 79 (N.Y. 1989) ................................ 8, 9

*Rosmer v. Pfizer Inc.*,
    263 F.3d 110 (4th Cir. 2001) ............................................ 6

*Slatt v. Slatt*,
    64 N.Y.2d 966, 488 N.Y.S.2d 645 (N.Y. 1985) ............................... 4

*South Road Assocs., LLC v. Intern. Bus. Mach. Corp.*,
    4 N.Y.3d 272, 793 N.Y.S.2d 835 (N.Y. 2005) ................................. 4

*Stoike v. First Nat'l Bank*,
    290 N.Y. 195 (1943) ................................................... 9

*Suffolk County Water Auth. v. Village of Greenport*,
    21 A.D.3d 947, 800 N.Y.S.2d 767 (2d Dep't 2005) ............................ 8

*Terwilliger v. Terwilliger*, 206 F.3d 240 (2d Cir. 2000) ............................ 5

*Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*,
    63 N.Y.2d 396, 482 N.Y.S.2d 465 (N.Y. 1984) ............................... 8

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
    1 N.Y.3d 470, 475, 775 N.Y.S.2d (N.Y. 2004) ................................ 4

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157, 565 N.Y.S.2d 440 (N.Y. 1990) ............................. 3, 4, 6, 8

*West, Weir & Bartel, Inc. v. Carter Paint Co.*,
    25 N.Y.2d 535, 307 N.Y.S.2d 449 (N.Y. 1969) ............................... 4

*Whiteside v. North Am. Accident Ins. Co.*,
    200 N.Y. 320 (1911) .................................................. 10

Plaintiff and counterclaim-defendant JA Apparel Corp. ("JA Apparel") and counter-claim-defendant Martin Staff submit this memorandum of law in support of their motion *in limine* to preclude the admission of parol evidence at the trial that is scheduled to commence on February 20, 2008.

## PRELIMINARY STATEMENT

On June 16, 2000, Mr. Joseph Abboud, Houndstooth Corp. ("Houndstooth") and JA Apparel entered into a Purchase and Sale Agreement (the "Agreement") whose terms are clear and unambiguous – in exchange for $65.5 million, Mr. Abboud and Houndstooth sold *"all"* of their "right title and interest" in the JOSEPH ABBOUD "names, trademarks, trade names, service marks, logos, insignias and designations," and *"[a]ll rights to use* and apply for the registration of new trade names, trademarks, service marks, logos, insignias and designations containing the words "Joseph Abboud," "designed by Joseph Abboud," "by Joseph Abboud." (PX-001) (emphasis added).[1]

The Agreement was negotiated at arm's length by sophisticated parties represented by experienced counsel – Finnegan, Hickey, Dinsmoor and Johnson, P.C. for defendants and Patterson, Belknapp, Webb & Tyler LLP for JA Apparel – and, moreover, Mr. Abboud, on behalf of himself and Houndstooth, carefully read the entire Agreement before signing it, and initialed each and every page of it. (PX-001, Smart Dec. Ex. C (Abboud Tr. 89-90), Smart Dec Ex. D (Dinsmoor Tr. 14-16)). In addition, the Agreement contains a merger clause (PX-001 ¶ 9.9) expressly providing that it "embod[ies] the entire agreement and understanding of the parties":

> This Agreement, including the Exhibits and Schedules hereto and the documents, certificates and instruments referred to herein, *embody the entire*

---

[1] The trial exhibits (Plaintiff's Trial Exhibit ("PX")), as well as other documents we refer to, are attached to the accompanying declaration of Thomas A. Smart ("Smart Dec."). Although Mr. Staff is not a party to the Agreement, because the meaning of the Agreement is relevant to defendants' counterclaims, Mr. Staff joins in this motion.

31595297_V26.WPD

*agreement and understanding of the parties hereto* in respect of the transactions contemplated by this Agreement. *There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to herein.* This Agreement supersedes all prior agreements and understandings between the parties with respect to such transactions. (*Id.* ¶ 9.9) (emphasis added).

Just as that provision was aimed at shutting the door to the mischief of extra-contractual evidence, the Agreement also provided against interpretations for or against one party as the drafter: the "parties have participated jointly in the negotiation and drafting of this Agreement" and if "any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumptions or burden of proof shall arise favoring or disfavoring any party by virtue of authorship of any of the provisions of this Agreement." (*Id.* ¶ 9.8).

JA Apparel commenced this action on September 4, 2007, seeking a preliminary injunction against, *inter alia*, defendants' continuing breach of the Agreement.[2] Neither in their Answer (Dkt. Entry 9) nor in their brief opposing entry of a preliminary injunction (Dkt. Entry 11) did defendants assert that the Agreement was ambiguous or that they would seek to rely on parol evidence. To the contrary, defendants alleged in their Answer that the Agreement "speaks for itself." (at ¶¶ 20, 21, 23). Similarly, in his declaration opposing entry of a preliminary injunction motion (Dkt. Entry 12), Mr. Abboud did *not* assert that the Agreement was ambiguous nor refer to any parol evidence. It was only in late December, when the parties exchanged exhibit lists, that defendants for the first time indicated that they intended to introduce parol evidence. Among other items of parol evidence, they listed as exhibits pre-Agreement communications between or among the parties and the parties' counsel regarding the drafting of the Agreement and identified Mr. Dinsmoor – defendants' attorney during the negotiation of the Agreement – as a witness to testify, *inter alia*, with

---

[2]   Pursuant to the agreed Scheduling Order, entered on September 10, 2007 (Dkt. Entry 3), the motion for a preliminary injunction was consolidated with the final trial on the merits.

respect to the "negotiation and drafting of the June 2000 Purchase and Sale Agreement." (Smart Dec. Exs. E, F p. 3).[3] Indeed, in his deposition, Mr. Dinsmoor confirmed that he intended to testify at trial as to alleged conversations with JA Apparel that pre-dated execution of the Agreement.

Then, during a January 4, 2008 telephonic conference with the Court, defendants' counsel stated in connection with defendants' designation of Mr. Dinsmoor as a trial witness that defendants did *not* believe that the Agreement was ambiguous and that parol evidence was *not* needed because defendants' interpretation of the Agreement reflected the plain meaning of the Agreement. However, defendants' counsel asserted, if the Court did not agree with defendants' interpretation, then the Court should review parol evidence. Defendants are mistaken. As demonstrated below, the law is clear that where a contract is not ambiguous, then its interpretation is an issue of law for the Court and parol evidence is inadmissible. Accordingly, because as is clear from the face of the Agreement, and as all parties here agree, the Agreement is not ambiguous, JA Apparel's motion *in limine* to preclude the admission of parol evidence should be granted.

## ARGUMENT

### A. PAROL EVIDENCE IS INADMISSIBLE WHERE, AS DEFENDANTS CONCEDE HERE, THE CONTRACT IS UNAMBIGUOUS

It is black-letter New York law (which governs here (PX-001 ¶ 9.6)) that the Court must "enforce[] [the agreement] according to its terms," and must "concern ourselves with what the parties intended, *but only to the extent that they evidenced what they intended by what they wrote*" in the contract. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443

---

[3]  In his letter to the Court regarding defendants' refusal to produce their trial witnesses for depositions, defendants' counsel stated that "[p]laintiff has known of Mr. Dinsmoor's potential involvement as a witness in this case since at least October 17, 2007, when Abboud served his answers to plaintiff's Interrogatories." (Letter, Louis Ederer to Hon. Katz, Jan. 3, 2008, p. 2). In fact, the interrogatory answers did *not* identify Mr. Dinsmoor as a witness with respect to the negotiation, drafting or meaning of the Agreement. (*See* Smart Dec. Ex. G (Answers 11-12, 16)).

(N.Y. 1990); *West, Weir & Bartel, Inc. v. Carter Paint Co.*, 25 N.Y.2d 535, 542, 307 N.Y.S.2d 449, 453 (N.Y. 1969) (emphasis added). *Accord, South Road Assocs., LLC v. Intern. Bus. Mach. Corp.*, 4 N.Y.3d 272, 277, 793 N.Y.S.2d 835, 838 (N.Y. 2005) ("In cases of contract interpretation, it is well settled that 'when parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms.'") (quoting *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 767 (N.Y. 2004)). "This principle is based on the sound policy that favors predictability in the interpretation of commercial writings. If parties are properly to structure and plan their commercial activities, they must be able to rely upon the plain language of the agreements they sign." *Int'l Multifoods Corp. v. Comm. Union Ins. Co.*, 98 F. Supp.2d 498, 503 (S.D.N.Y. 2000) (applying New York law). *See W.W.W. Assocs.*, 77 N.Y.2d at 162, 565 N.Y.S.2d at 443 (The purpose of the parol evidence rule is "to impart stability to commercial transactions by safeguarding against fraudulent claims . . . [and] infirmity of memory.").

"[W]hether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs.*, 77 N.Y.2d at 162, 565 N.Y.S.2d at 443. Also "well settled [is] that extrinsic and parol evidence is not 'admissible to create an ambiguity in a writing which is complete and clear and unambiguous on its face.'" *Id.*, 77 N.Y.2d at 163, 565 N.Y.S.2d at 443; *accord, South Road Assocs.*, 4 N.Y.3d at 278, 793 N.Y.S.2d at 838. Nor does it matter whether the extrinsic or parol evidence was created before or after the execution of the Agreement, *see, e.g., Slatt v. Slatt*, 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 646 (N.Y. 1985); *Brainard v. N.Y. Cent. R.R. Co.*, 242 N.Y. 125, 133 (N.Y. 1926), or whether it is in the form of drafts of the agreement or of a party's "understanding" of the agreement, *see, e.g., American Para Prof. Sys., Inc. v. Hooper Holmes, Inc.*, 13 A.D.3d 167, 169, 787 N.Y.S.2d 227, 229 (1st Dep't 2004). If the agreement is unambiguous, all

such evidence is excluded and its interpretation is for the Court alone. As the Second Circuit summarized the law:

> Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties *as expressed in the unequivocal language they have employed*. Construing an unambiguous contract provision is a function of the court, rather than a jury, and *matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument*. A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.

*Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (citations omitted) (emphasis added).

Here, defendants conceded in the January 4, 2008 conference with the Court that the Agreement is *not* ambiguous. They stated, however, that if the Court disagrees with their interpretation of the Agreement, the Court should admit parol evidence. That is not the law. If the Agreement – as all parties agree – is unambiguous, then, as explained above, it is for the Court to interpret it based on the Agreement's text alone. Thus, "a contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms." *Moore v. Kopel*, 237 A.D.2d 124, 125, 653 N.Y.S.2d 927, 929 (1st Dep't 1997). *Accord, Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."); *Atlantic Mut. Ins. Co. v. Terk Tech. Corp.*, 309 A.D.2d 22, 28, 763 N.Y.S.2d 56, 61 (1st Dep't 2003).

Put another way, ambiguity cannot be determined by referring to the parties' interpretation of a contract. Their interpretations necessarily differ. That is why they are in litigation. Indeed, even where judges disagree as to the meaning of a contract, that does not render the contract ambiguous; the plain meaning of the contract controls. *See, e.g., Breed v. Ins. Co.*, 46 N.Y.2d 351, 355,

413 N.Y.S.2d 352, 355-56 (N.Y. 1978). As the Fourth Circuit explained in applying the same fundamental rule to statutory interpretation, "[t]o hold otherwise would mean that . . . we would be abandoning *our* own duty to interpret the law." *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 118 (4th Cir. 2001) (emphasis added) (finding statute unambiguous on 2-1 vote); *accord, Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2621-25(2005) (finding same statute unambiguous on 5-4 vote).

In short, "whether or not a writing is ambiguous is a question of law to be resolved by the courts" from the face of the contract. *W.W.W. Assocs.*, 77 N.Y.2d at 162, 565 N.Y.S.2d at 443. As explained below, even if defendants had not – as they have – conceded the issue, the Agreement is not ambiguous. Accordingly, defendants should be precluded from introducing parol evidence in an attempt to proffer a meaning other than the meaning that is plain from the face of the Agreement.

**B.    THE PURCHASE AND SALE AGREEMENT IS NOT AMBIGUOUS**

The provisions of the Agreement at issue in this case state:

1.1(a)   Upon the terms and subject to the conditions of this Agreement, on the Closing Date (as hereinafter defined), the Sellers shall sell, convey, transfer, assign and deliver to the Buyer, and the Buyer shall purchase and acquire from the Sellers, *all of the Sellers' right, title and interest* in and to:

(A) The *names, trademarks, trade names, service marks, logos, insignias and designations* identified on Schedule 1.1(a)(A) [which includes 11 marks registered in the United States that include the words "Joseph Abboud" or "JA"], and all trademark registrations and applications therefor, and *the goodwill related thereto* (collectively, the "Trademarks"), . . .

(B) *All* licenses to use the Trademarks granted by Houndstooth or Abboud . . . (collectively, the "License Agreements").

(C) *All rights to use* and apply for the registration of *new trade names, trademarks, service marks, logos, insignias and designations containing the words* "Joseph Abboud," "designed by Joseph Abboud," "by Joseph Abboud," "JOE" or

> *"JA," or anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols (collectively, the "New Trademarks"), for any and all products or services.*

* * * *

>    (E)   The goodwill of or pertaining to the Trademarks.   (PX-001 ¶ 1.1(a)(A)-(E)) (emphasis added).

There is nothing ambiguous about any of this. In each instance, the Agreement expressly specifies that "all" of the designated assets are transferred to JA Apparel. There is nothing ambiguous about the word "all." Nor is there anything ambiguous about any of the terms used to describe what was transferred:

- "right, title and interest"

- "names, trademarks, trade names, service marks, logos, insignias and designations identified on Schedule 1.1(a)(A), and all trademark registrations and applications therefor, and the goodwill related thereto," which were referred to "collectively" under the shorthand "the 'Trademarks'"

- "licenses to use the Trademarks granted by Houndstooth or Abboud"

- "rights to use and apply for the registration of new trade names, trademarks, service marks, logos, insignias and designations containing the words 'Joseph Abboud,' 'designed by Joseph Abboud,' 'by Joseph Abboud,' 'JOE' or 'JA,' or anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols (which were referred to "collectively" under the shorthand "the 'New Trademarks'"), for any and all products or services."

As noted above, defendants not only fail to identify any ambiguity in any of these provisions, they assert affirmatively – and correctly – that the provisions are *not* ambiguous. Their

interpretation of these provisions confirms that the provisions are not ambiguous. Thus, defendants contend that *all* that they sold was the trademark "Joseph Abboud" because Schedule 1.1(a)(A) is a list of trademark registrations or applications for registrations. (Letter, Louis Ederer, Esq. to Hon. Katz, Jan. 3, 2008, p. 5). In particular, they assert that they did not sell Mr. Abboud's "name" and that they are free to use his name in connection with the sale of products. (*Id.*). Defendants further assert that the seven different items specified in paragraph 1.1(a)(A) – "names, trademarks, trade names, service marks, logos, insignias and designations" – mean *only* "trademarks" because, defendants assert, the seven items are "expressly and collectively defined as the 'Trademarks'" and, therefore, mean "nothing more or less than a transfer of trademarks." (*Id.*). Defendants' argument fails for three reasons.

First, if all that the provision means is that the Agreement transferred "trademarks," then that could have and would have been stated much more simply and directly by merely stating that defendants were selling the "trademarks identified on Schedule 1.1(a)(A)." But that is not what the provision says. It also specifically refers to "names," "trade names," "service marks," "logos," "insignias" and "designations." These terms cannot be ignored. As New York's highest court has explained, the "rules of construction of contracts require us to adopt an interpretation which gives meaning to *every* provision of a contract or, in the negative, no provision of a contract should be left without force and effect." *See, e.g, Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 174 (N.Y. 1956) (emphasis added).[4] Under defendants' interpretation, only one of the seven items – "trademarks" would be given meaning, while the other six items – "names, . . . trade names,

---

[4] *See also, e.g., Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Assocs.*, 63 N.Y.2d 396, 403, 482 N.Y.S.2d 465, 468 (N.Y. 1984) ("In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless."); *Suffolk County Water Auth. v. Village of Greenport* 21 A.D.3d 947, 947-48, 800 N.Y.S.2d 767, 768 (2d Dep't 2005) ("an interpretation which renders language in the contract superfluous is unsupportable").

31595297_V26.WPD                                8

service marks, logos, insignias and designations" – would be rendered "a nullity." *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753, 545 N.Y.S.2d 79, 80 (N.Y. 1989). Such a "construction is untenable" under New York contract law. *Id.*

Second, the seven different items specified in paragraph 1.1(a)(A) are referred to "collectively" as Trademarks. Use of the term "collectively" necessarily means that the defined term "Trademarks" means each of the seven items specified in the "collection." Otherwise, there would have been no need to use the term "collectively."

Third, terms – here, "Trademarks" – that are defined in a contract have the meaning set forth in the contract, not the dictionary meaning or some other definition. That is why the definition was put in the contract in the first place. Thus, courts look to dictionary definitions, treatises or parol evidence to ascertain the meaning of a term *only* where, unlike here, the contract itself fails to provide a definition. *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F. Supp.2d 510, 517 (S.D.N.Y. 2005), *aff'd*, 168 Fed. Appx. 474 (2d Cir. 2006); *Miller v. Hekiman Labs., Inc.*, 257 F. Supp.2d 506, 516-17 (N.D.N.Y. 2003), *aff'd*, 85 Fed. Appx. 266 (2d Cir. 2004).[5] Put another way, if the Agreement had used the terms "old assets" and "new assets" – or, for that matter, "new stuff" and "old stuff" – no one would seriously contend that what was actually transferred would be dependent on the meaning of the word "stuff" unhinged from the language of the Agreement. What controls – *all that controls* – is the plain language of the contract; in this case, all "names . . . trade names, service marks, logos, insignias and designations" identified in the Agreement.

In short, the parties made a deal set forth unambiguously in the Agreement and it is *that* deal that governs. As the Second Circuit has explained, the "parties' rights under an unambigu-

---

[5] This is consistent with the rule that only where a statute does not define a term does the court look to other aids to interpret the term. *See, e.g., Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *FDIC v. Meyer*, 510 U.S. 471, 576 (1994); *Stoike v. First Nat'l Bank*, 290 N.Y. 195, 201 (1943).

ous contract should be fathomed from the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable . . . . 'The parties having agreed upon their own terms and conditions, 'the courts cannot change them and must not permit them to be violated or disregarded.'"" *Metropolitan Life Ins. Co.,* 906 F.2d at 889 (quoting *Diversified Mortg. Investors v. U.S. Life Title Ins. Co. of New York*, 544 F.2d 571, 575 (2d Cir. 1976) (quoting *Whiteside v. North Am. Accident Ins. Co.*, 200 N.Y. 320, 326 (1911)).[6]

## CONCLUSION

For the foregoing reasons, JA Apparel and Mr. Staff's motion *in limine* to preclude the admission of parol evidence, in the form of testimony and documents, should be granted.

Dated: February 4, 2008
New York, New York

*Of counsel:*

John D. Geelan
Richard A. De Sevo
Victoria Haje
Patricia Ryder

KAYE SCHOLER LLP

By: _____
Thomas A. Smart
Phillip A. Geraci
425 Park Avenue
New York, New York  10022
(212) 836-8000
*Attorneys for Plaintiff and Counterclaim-
    Defendants*

---

[6] For essentially the same reasons, no parol evidence should be admitted with respect to the Side Letter Agreement (PX-002), which is equally unambiguous on its face, also contains a merger clause, and which defendants have not asserted is ambiguous in any pleading. It is also worth noting is that Mr. Abboud is precluded by *res judicata* from claiming that an oral agreement modifies the terms of the Side Letter Agreement because he made that claim in a previous litigation against JA Apparel that he dismissed with prejudice.