Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Defendants and
Counterclaim Plaintiffs Joseph Abboud, Houndstooth
Corp. and Herringbone Creative Services, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
JA APPAREL CORP.,                                        :     Civil Action No. 07 CV 07787 (THK)
                                                         :
                    Plaintiff,                           :
                                                         :
            v.                                           :
                                                         :
JOSEPH ABBOUD, HOUNDSTOOTH CORP.,                        :     **DEFENDANTS AND
and HERRINGBONE CREATIVE                                 :     COUNTERCLAIM PLAINTIFFS'
SERVICES, INC.,                                          :     MEMORANDUM OF LAW IN
                                                         :     SUPPORT OF CROSS-MOTION
                    Defendants.                          :     FOR JUDGMENT ON THE
                                                         :     PLEADINGS ON COUNTS ONE
-------------------------------------------------------- x     THROUGH SEVEN AND COUNT
-------------------------------------------------------- x     NINE OF PLAINTIFF'S
                                                         :     COMPLAINT AND IN
JOSEPH ABBOUD, HOUNDSTOOTH CORP.,                        :     OPPOSITION TO PLAINTIFFS'
and HERRINGBONE CREATIVE                                 :     MOTION *IN LIMINE* TO
SERVICES, INC.,                                          :     PRECLUDE ADMISSION OF
                                                         :     PAROL EVIDENCE**
                    Counterclaim Plaintiffs,             :
                                                         :
            v.                                           :
                                                         :
JA APPAREL CORP. and MARTIN STAFF,                       :
                                                         :
                    Counterclaim Defendants.             :
-------------------------------------------------------- x

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 2

I.    LEGAL STANDARD ON A MOTION FOR JUDGMENT ON THE
      PLEADINGS .................................................................................................................. 2

II.   JUDGMENT SHOULD BE ENTERED IN FAVOR OF ABBOUD ON JA
      APPAREL'S CLAIMS THAT ABBOUD BREACHED THE PURCHASE
      AND SALE AGREEMENT ............................................................................................. 3

III.  JUDGMENT SHOULD BE ENTERED IN FAVOR OF ABBOUD ON JA
      APPAREL'S CLAIMS OF TRADEMARK INFRINGEMENT,
      TRADEMARK DILUTION, FALSE DESIGNATION OF ORIGIN, FALSE
      ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM
      ACT AND THE STATE AND COMMON LAW OF NEW YORK.. ...................... 10

IV.   JA APPAREL'S MOTION *IN LIMINE* TO PRECLUDE THE
      INTRODUCTION OF PAROL EVIDENCE SHOULD BE DENIED ...................... 14

CONCLUSION ...................................................................................................................... 17

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*Arnold v. ABC, Inc.*, No. 06 Civ. 1747 (GBD) 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) ..............................................................................................................13

*Ayers v. SGS Control Svcs., Inc.*, No. 06 Civ. 7111 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007) ......................................................................................................16

*B & L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir. 1970)....................11

*Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)..............................................................................................5

*Blue Jeans U.S.A., Inc. v. Basciano*, 286 A.D.2d 274, 729 N.Y.S.2d 703 (2001).............15

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir. 1995) .................13

*CBS Broad. Inc. v. Jones*, 460 F. Supp. 2d 500 (S.D.N.Y. 2006).....................................15

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................................................2

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir. 1997)....................................................................................................12, 13

*Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733 (2d Cir. 1999)...........................................3

*Dolby v. Robertson*, 654 F.Supp. 815 (N.D.Cal. 1986) ....................................................12

*EEOC v. Staten Island Savings Bank*, 207 F.3d 144 (2d Cir. 2000)....................................2

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56 (2d Cir. 2000)..............................................................................................11

*Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 807 N.E.2d 869, 775 N.Y.S.2d 757 (2004)...............................................................................................15

*Federal Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 691 N.Y.S.2d 508 (1st Dep't 1999) ...............................................................................................9

*Hartford Acc. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 305 N.E.2d 907, 350 N.Y.S.2d 895 (1973)..............................................................................................15

*Herman Miller v. Palazzetti Imports & Exports*, 270 F.3d 298 (6th Cir. 2001)................13

*Home Depot U.S.A., Inc. v. G&S Investors/Willow Park, L.P.*, Nos. 98 Civ. 6719,
00 Civ. 676 (TCP) (ARL), 2005 WL 3018701 (E.D.N.Y. Nov. 7, 2005) ...................15

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274 (2d Cir.1989).............................5

*IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370 (2d Cir.
1994) .............................................................................................................................9

*In re Jacone*, 156 B.R. 740 (Bankr. S.D.N.Y. 1993). ..........................................................2

*Information Superhighway, Inc. v. Talk Am., Inc.*, 395 F. Supp. 2d 44 (S.D.N.Y.
2005) ...........................................................................................................................11

*International Fidelity Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400
(S.D.N.Y. 2000).............................................................................................................5

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125
S.Ct. 542, 550-51, 160 L.Ed.2d 440 (2004)............................................................ 12, 13

*Karsh v. Heiden*, 120 Call. App. 2d 75, 260 P.2d 633 (1st Dist. 1953)................................3

*Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814 (2d Cir. 1986) ........................3, 4

*Marks v. Carrier*, No. 90 Civ. 6714, 1992 WL 245684 (S.D.N.Y. Sept. 21, 1992).............5

*McGraw-Hill Cos. v. Int'l Sec. Exch.*, No. 05 Civ. 1129, 2005 WL 2100518
(S.D.N.Y. Sept. 1, 2005)...........................................................................................11

*Narvarte v. Chase Manhattan Bank*, 969 F.Supp. 10 (S.D.N.Y. 1997)...............................2

*New York Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 389 F. Supp. 2d
527 (S.D.N.Y. 2005)...................................................................................................11

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65 (2d Cir.
1999) ...........................................................................................................................11

*Ocean Transport Line, Inc. v. Am. Philippine Fiber Indus.*, 743 F.2d 85 (2d Cir.
1984) .............................................................................................................................9

*Poorman v. Julian*, 22 Ill. App. 2d 208, 215, 160 N.E. 2d 169, 172 (1959)........................3

*Prentice v. Apfel*, 11 F. Supp. 2d 420 (S.D.N.Y. 1998)......................................................3

*RJE Corp. v. Northville Indus. Corp.*, 198 F. Supp. 2d 249 (E.D.N.Y. 2002) ....................4

*Sayers v. Rochester Tel. Corp.*, 7 F.3d 1091 (2d Cir. 1993)............................................4, 5

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425 (2d Cir. 1992).........................15

*Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 110 F.3d 234 (4th Cir. 1997)....................12

*Society For the Advancement of Education, Inc. v. Gannett Co., Inc.*, No. 98 Civ.
    2135 (LMM), 1999 U.S. Dist. LEXIS 700 (S.D.N.Y. Jan. 21, 1999)...........................3

*South Rd. Assoc., LLC v. Int'l Bus. Machs. Corp.*, 4 N.Y.3d 272, 826 N.E.2d 806,
    793 N.Y.S.2d 835 (2005) ..............................................................................................6

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055 (7th Cir. 1995) ...............12

*TCPIP Holding Co., Inc. v. Haar Commcn's., Inc.*, 244 F.3d 88 (2d Cir. 2001) ..............11

*Time Warner Cable v. City of N.Y.*, 943 F.Supp. 1357 (S.D.N.Y. 1996) ............................9

*TVT Records v. Island Def Jam Music Group*, 250 F. Supp. 2d 341 (S.D.N.Y.
    2003) ............................................................................................................................15

*Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F.Supp. 1058 (S.D.N.Y. 1990)...........11

*W.W.W. Assoc., Inc. v. Giancontieri*, 77 N.Y.2d 157, 566 N.E.2d 639, 565
    N.Y.S.2d 440 (1990)......................................................................................................4

## STATUTES AND OTHER RESOURCES

15 U.S.C. § 1052...................................................................................................................8

15 U.S.C. § 1115................................................................................................1, 10, 11, 14

15 U.S.C. § 1127...................................................................................................................2

Fed. R. Civ. P. 12.................................................................................................................2

*Restatement of the Law, Third, Unfair Competition*, § 34...................................................3

## PRELIMINARY STATEMENT

Defendants Joseph Abboud, Houndstooth Corp. and Herringbone Creative Services, Inc. (collectively "Abboud"), by their attorneys Arnold & Porter LLP, submit this Memorandum of law in support of Abboud's Cross-Motion for judgment on the pleadings on Counts one through seven and Count nine of JA Apparel's Complaint in this action and in opposition to Plaintiff and Counterclaim Defendant JA Apparel Corp. ("JA Apparel")'s Motion *in limine* to preclude parol evidence.

In general, Counts one through seven and Count nine of JA Apparel's Complaint are unfounded in fact or law, as they are based on an erroneous reading of the parties' June 16, 2000, Purchase and Sale Agreement (the "Purchase and Sale Agreement") obligating Abboud "on the Closing Date" (July 13, 2000) to "convey, transfer, assign and deliver" certain "Assets" that are described and defined in Article 1.1(a) of the Agreement. *See* Ederer Decl., at Ex. A. Specifically, despite clear and unambiguous language in Article 1.1(a)(A) describing the trademarks that are identified on Schedule 1.1(a)(A), JA Apparel would have this court gerrymander the language in the Agreement so as to obligate Abboud to convey an exclusive right to use his personal name, in any way shape or form, rather than as a trademark as identified on the Schedule. This blatant attempt to rewrite the Purchase and Sale Agreement almost eight years after the fact defies all rules for reading and interpreting contract language.

Further, if the Court determines that Abboud only conveyed trademarks to JA Apparel, then Abboud has the absolute right, under the Lanham Act's "fair use" defense (15 U.S.C. § 1115(b)(4)), to use his name, "otherwise than as a mark," to identify himself as the designer of the fashionable apparel products that he plans to market and sell under his "jaz" trademark; to

symbolize his unique talents, skills and abilities as a designer of such fashionable apparel

products; and, as a sign of his individual accomplishments in the fashion industry and personal

reputation and renown as a fashion designer, in truthful commercially valuable communications

to the trade and consuming public.

    For the reasons set forth below, the Court should deny JA Apparel's motion *in limine* to

preclude the introduction of parol evidence at trial, and enter judgment in favor of Abboud on JA

Apparel's breach of contract claims relating to the Purchase and Sale Agreement, and claims of

trademark infringement, trademark dilution, false designation of origin, false advertising and

unfair competition under the Lanham Act and the State and Common law of New York.

## ARGUMENT

## I.    LEGAL STANDARD ON A MOTION FOR JUDGMENT ON THE PLEADINGS.

    On a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a party's claim

may be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *EEOC v. Staten Island Savings Bank*,

207 F.3d 144, 148 (2d Cir. 2000), quoting *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957). The

standards are identical for a Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6)

motion to dismiss for failure to state a claim. *Narvarte v. Chase Manhattan Bank*, 969 F.Supp.

10, 11 (S.D.N.Y. 1997). For the purpose of a motion on the pleadings, well-pleaded material

allegations of the nonmoving party's pleadings are to be taken as true and all inferences are to be

taken in favor of the nonmoving party. *In re Jacone*, 156 B.R. 740, 743 (Bankr. S.D.N.Y. 1993).

    In deciding a motion for judgment on the pleadings, a court may consider the pleadings

and exhibits attached thereto, statements or documents incorporated by reference in the

pleadings, and documents submitted by the moving party, so long as such documents either are in

2

the possession of the party opposing the motion or were relied upon by that party in its pleadings.

*Prentice v. Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998).

## II.    JUDGMENT SHOULD BE ENTERED IN FAVOR OF ABBOUD ON JA APPAREL'S CLAIMS THAT ABBOUD'S PROPOSED USE OF HIS PERSONAL NAME WILL BREACH THE PURCHASE AND SALE AGREEMENT.

JA Apparel's claims (Counts Seven and Nine) that Abboud breached the Purchase and

Sale Agreement should be dismissed as a matter of law because they are contrary to the clear and

unambiguous language of the Agreement. *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737-

39 (2d Cir. 1999) (affirming dismissal of breach of contract claim under Fed. R. Civ. P. 12(b)(6)

where the contract clearly did not grant the rights that plaintiff was attempting to enforce);

*Society For the Advancement of Education, Inc. v. Gannett Co., Inc.*, No. 98 Civ. 2135 (LMM),

1999 U.S. Dist. LEXIS 700. at *12-14 (S.D.N.Y. Jan. 21, 1999) (dismissing a breach of contract

claim where the unambiguous contract did not provide the rights asserted in the plaintiff's

complaint).

It is well established law in this Circuit that while an individual may convey the right to

use his personal name, a court will not bar him from using that name unless his "'his intention to

convey an exclusive right to the use of [his] own name' is 'clearly shown.'" *Madrigal Audio*

*Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 822 (2d Cir. 1986) (citations omitted). This rule is so

strict, and the threshold plaintiff must meet is so high, that any such conveyance of an exclusive

right to use a personal name in business must be explicit in the contract of sale. *Id., see also*

*Restatement of the Law, Third, Unfair Competition*, § 34 at comment g (noting that "[a]n

assignment of a personal name mark will not ordinarily be interpreted to preclude the named

individual from all subsequent use of the name in business unless the intention to do so is *clearly*

*shown*" (emphasis added)); *Karsh v. Heiden*, 120 Call. App. 2d 75, 82, 260 P.2d 633, 637 (1st

3

Dist. 1953) (finding that "the right to use one's own name in business may be given up by contract, but in the absence of *express language* to that effect the intention to part with that right will not be presumed" (emphasis added)); *Poorman v. Julian*, 22 Ill. App. 2d 208, 215, 160 N.E. 2d 169, 172 (1959) (determining that "a court in equity will enjoin the use by a natural person of his own name only when there is a grant to someone else of the exclusive right to use it. *This exclusive right must be found in the final agreement of the parties by the use of the word 'exclusive' or the intent of the parties to grant an exclusive right must be manifest*" (emphasis added)). Thus, the only way JA Apparel can prevent Abboud from using his personal name in his new business is if it can prove that Abboud clearly and explicitly conveyed to JA Apparel the exclusive right to use his personal name, other than as a trademark, "exclusive" meaning that Abboud explicitly and/or clearly forfeited his own right to ever use his name again in any business or commercial enterprise. *See, e.g., Madrigal Audio Labs., Inc.*, 799 F.2d 814 at 822.

Judgment on the pleadings in a breach of contract action is appropriate when the terms of the contract at issue are clear and unambiguous. *Sayers v. Rochester Tel. Corp.*, 7 F.3d 1091, 1094 (2d Cir. 1993). Whether or not a contract provision is ambiguous is a question of law to be resolved by the Court and "must be ascertained from the face of an agreement without regard to extrinsic evidence." *Id.* at 1095; *W.W.W. Assoc., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162-63, 566 N.E.2d 639, 642, 565 N.Y.S.2d 440 (1990). In making its determination, the Court is required to interpret contractual agreements together whenever those writings form part of the same transaction. *RJE Corp. v. Northville Indus. Corp.*, 198 F. Supp. 2d 249, 254 (E.D.N.Y. 2002).

4

Where intent is complete, clear and unambiguous as evidenced by the plain meaning of the language the parties chose to employ in the contract, the contract should be enforced as written and no ambiguity exists. *Marks v. Carrier*, No. 90 Civ. 6714, 1992 WL 245684, at *3 (S.D.N.Y. Sept. 21, 1992); *International Fidelity Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 404 (S.D.N.Y. 2000). The language of a contract is not made ambiguous simply because the parties urge different interpretations. *Sayers*, 7 F.3d at 1095. Nor can the Court find that ambiguity exists where one party's view "strain[s] the contract language beyond its reasonable and ordinary meaning." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989); *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957).

Here, even a cursory review of the Purchase and Sale Agreement reveals that there are no provisions in the Agreement which obligate Abboud to convey to JA Apparel the exclusive right to the use of his name, much less an explicit statement, or a clearly-shown indication that he would do that. Instead, a close and conscientious reading of the Agreement shows that Abboud agreed to convey five assets that are clearly defined in Article 1.1(a). First, in Article 1.1(a)(A), Abboud agreed to convey his existing "Trademarks." In Article 1.1(a)(B), he agreed to convey all existing "License Agreements" licensing the right to use his "Trademarks." In Article 1.1(a)(C), he agreed to convey the right to use and apply to register "New Trademarks", including "Trademarks" containing the words "Joseph Abboud." In Article 1.1(a)(D), he agreed to convey all business records relating primarily to the "Trademarks" or the "License Agreements." And, in Article 1.1(a)(E), he agreed to convey the goodwill pertaining to the "Trademarks." *See* Ederer Decl. at Ex. A.

Further, Article 2.2 of the Purchase and Sale Agreement sets forth the conveyances that Abboud was to make at the "Closing." Specifically, with respect to intellectual property rights, Abboud agreed to convey to JA Apparel "(vii) instruments of assignments in favor of [JA Apparel] with respect to each of the Trademarks, in form and content acceptable to [JA Apparel], duly executed by Houndstooth or Abboud, as the case may be." At the "Closing", Abboud only assigned to JA Apparel the "Trademarks", including the JOSEPH ABBOUD trademark.[1] Accordingly, Abboud did not agree, and therefore at the "Closing" did not assign to JA Apparel, any exclusive right to use his personal name in business, explicitly, implicitly, or otherwise. *See* Ederer Decl., ¶11 and Ex. B.

With nowhere else to go in this suit, JA Apparel has twisted and parsed the words the Purchase and Sale Agreement, to try to give them a meaning they clearly do not have. Indeed, JA Apparel is now on its third different attempt, since the commencement of this action, to try to explain which words, if any, in Article 1.1(a) of the Purchase and Sale Agreement show a clear intent on Abboud's part to convey the exclusive right to use his name in business. Currently, JA Apparel points to the word "name" that appears in Article 1.1(a)(A), and to the words "all of [Abboud's] right, title and interest" that appear in the preamble of Article 1.1(a), and says "presto" — Abboud sold "all right, title and interest" in and to "his name." However, this fragmented reading of the Purchase and Sale Agreement should readily be rejected by the Court, because there is no mention of *his name or even the Joseph Abboud name* in the Agreement. *See, e.g., South Rd. Assoc., LLC v. Int'l Bus. Machs. Corp.*, 4 N.Y.3d 272, 277, 826 N.E.2d 806,

---

[1] While the trademark assignment delivered to JA Apparel at the Closing was not attached to the pleadings, we have obtained the assignment from the United States Patent and Trademark Office, and ask the Court to take judicial notice of the assignment. *See* Ederer Decl., Ex. B.

793 N.Y.S.2d 835 (2005) (noting that the parties' intent must be gleaned from the agreement as a whole in order to avoid excessive emphasis being placed upon particular words or phrases).

Rather, what Abboud agreed to convey to JA Apparel in Article 1.1(a)(A) was "all right, title and interest" to his then-existing trademarks. In Article 1.1(a)(A), Abboud agreed to convey the "names, trademarks, trade names, service marks, logos, insignias and designations identified on Schedule 1.1(a)(A), and all trademark registrations and applications therefore, and the goodwill related thereto (collectively, the "Trademarks")." So to find out what, if any, names Abboud agreed to transfer, the Court must look at Schedule 1.1(a)(A), which is a Trademark Report listing only trademark registrations and applications. Simply put, there is no listing of "names" on Schedule 1.1(a)(A), just as there is no listing therein of any trade names, logos, insignias or designations. Rather, the only items listed on the Schedule are trademark registrations, service mark registrations and applications therefor. Thus, when Article 1.1(a)(A) is read together with Schedule 1.1(a)(A), it becomes clear that the words "names, trademarks, trade names, service marks, logos and designations" must be read collectively as being descriptive of the trademarks on the Schedule, rather than in isolation as independent items. *See* Ederer Decl., Ex. A.

As for Article 1.1(a)(C), the items enumerated, *i.e.*, "new trade names, trademarks, service marks, logos, insignias and designations" must be read the same as in Article 1.1(a)(A), *i.e.*, as terms that are descriptive of the New Trademarks. *See* Ederer Decl., Ex. A. However, JA Apparel asks the Court to truncate this Article and thereby read it as an obligation to convey "all rights to use the *name* 'Joseph Abboud'", rather than "all rights to use and apply for the registration of new trade names, trademarks, [etc] containing the *words* 'Joseph Abboud.'"

7

Clearly, there is a big difference between the word "name" and the word "words"; so JA Apparel cannot cavalierly substitute one for the other, nor can it leave out the word "containing" to corrupt the meaning of carefully drafted contract language.

Moreover, what Article 1.1(a)(C) really says, when read as a whole instead of piecemeal, is that Abboud is obligated to convey to JA Apparel "all rights *to use and apply for the registration* of new trade names, trademarks, service marks, logos, insignias and designations containing the words "Joseph Abboud", "designed by Joseph Abboud", "by Joseph Abboud", "JOE" or "JA", or anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols (collectively, the "New Trademarks"), *for any and all products or services*." The clear meaning of Article 1.1(a)(C) is that Abboud is giving up to JA Apparel all rights to use and apply for registration of the words "Joseph Abboud" as "New Trademarks" for products or services. Thus, all that Abboud is agreeing to convey to JA Apparel in Article 1.1(a)(C) is the right to use and register the name "Joseph Abboud" in the future as a trademark, *i.e.*, to use the name to distinguish its "products and services." See 15 U.S.C. 1127 (defining a trademark as "[a] name . . . used . . . to identify and distinguish . . . goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown").[2]

Thus, the only possible way to read the Purchase and Sale Agreement is that Abboud was only obligated to convey trademarks to JA Apparel; so he is not precluded by the Purchase and Sale Agreement (and/or in any assignment that he made at the Closing), from using his name in

---

[2] Clearly, whereas Article 1.1(a)(A) and Schedule 1.1(a)(A), deal with all existing trademark applications and registrations, Article 1.1(a)(C) conveys the rights to future *trademark* filings. Thus, the language in Article 1.1(a)(C) means that Abboud will agree to convey at the Closing an assignment *consenting* to JA Apparel's ability to register new trademarks containing his name, as required by 15 U.S.C. § 1052(c), and nothing more.

business, other than as a trademark, to identify himself as the designer of the fashionable apparel products that he plans to market and sell under his "jaz" trademark.[3]

Further, any question as to whether there was any intent that Abboud should convey an exclusive right to the use of his name under the terms of Purchase and Sale Agreement is readily resolved by the Personal Services Agreement, which is integrated with the Purchase and Sale Agreement, and which explicitly reserved to Abboud the right to continue to develop and exploit his own individual name, reputation and persona; so that he could take advantage of his formidable reputation as a designer in the fashion industry following the expiration of his restrictive covenant. In Paragraph 1(b) of the Personal Services Agreement, JA Apparel consented to Abboud doing the following during the period of his personal services as well as his restricted period:

> making media (including television) or celebrity appearances and otherwise acting as a general authority in the fashion business . . . as long as such activities do not result in Abboud actually competing with any of the business activities of the Buyer or its affiliated entities as conducted at that time.

*See* Ederer Decl., Ex. B. In sum, JA Apparel consented to Abboud is continuing to develop his own separate persona and reputation as a well-known figure in the fashion industry, under his name Joseph Abboud. As Abboud had the right to publicly exploit his own persona while under contract to JA Apparel, he obviously has that right following the expiration of the Personal

---

[3] While not relying on such evidence in support of this cross-motion, Abboud wishes to point out to the Court that the conduct of JA Apparel following the execution of the Purchase and Sale Agreement is compelling evidence that JA Apparel understood that all it had acquired in the Purchase and Sale Agreement were trademarks. *See* Ederer Decl., ¶¶ 31 - 37; Exs. O - S. It is well established that the parties' interpretation of the contract in practice, prior to litigation, "is deemed of great, if not controlling, influence" in the Court's interpretation of a contractual agreement. *IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370, 374 (2d Cir. 1994) (citation omitted); *Ocean Transport Line, Inc. v. Am. Philippine Fiber Indus.*, 743 F.2d 85, 91 (2d Cir. 1984); *Time Warner Cable v. City of N.Y.*, 943 F.Supp. 1357, 1390 (S.D.N.Y. 1996) (noting that evidence of the parties' course of conduct is admissible to interpret a contract, even if the contract is unambiguous); *see also Federal Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 44, 691 N.Y.S.2d 508, 512 (1st Dep't 1999) (stating that the course of performance under a contract is

Services Agreement. The fact that Abboud was specifically permitted to exploit his name and reputation in the field of men's apparel as a major public figure is inconsistent with JA Apparel's claim that he sold that name exclusively to them for use in business; on the contrary, he obviously reserved that right to himself so he could take advantage of that reputation upon his return to the industry.

As there is nothing in the Purchase and Sale Agreement to indicate that Abboud had any intention to convey to JA Apparel the exclusive right, even against himself, to use his name in business, in any way, shape or form, including reference to himself individually, much less a clear or express showing of such intent, then as a matter of law, this Court should find that Abboud did not do so, and JA Apparel's Counts Seven and Nine sounding in breach of contract of the Purchase and Sale Agrement must be dismissed on their face.

## III.    JUDGMENT SHOULD BE ENTERED IN FAVOR OF ABBOUD ON JA APPAREL'S CLAIMS OF TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM ACT AND THE STATE AND COMMON LAW OF NEW YORK.

Once this Court determines that Abboud did not convey to JA Apparel the exclusive right to use his name in business, even as against himself, it is then left to determine whether Abboud may use his name, "otherwise than as a mark", to communicate truthful and valuable information to the trade and consumers, namely, that he is the designer of his "jaz" menswear line.

As discussed above, there is no provision in the Purchase and Sale Agreement whereby Abboud agreed to convey his personal name to JA Apparel. In addition, the Court should look to the "fair use" defense of the Lanham Act. 15 U.S.C. § 1115(b)(4). If the Court finds, as it should, that Abboud's proposed use of his personal name, "otherwise than as a mark", is

---

considered to be the "most persuasive evidence of the agreed intention of the parties").

protected by the Lanham Act's "fair use" defense, then it should enter judgment in favor of

Abboud on JA Apparel's claims of trademark infringement, trademark dilution, false designation

of origin, false advertising and unfair competition under the Lanham Act and the State and

Common Law of New York, as "fair use" is a complete defense to all of these claims. *See, e.g.,*

*B & L Sales Assocs. v. H. Daroff & Sons, Inc.,* 421 F.2d 352, 354 (2d Cir. 1970) (granting

judgment in favor of defendant where the pleadings and exhibits "conclusively establish[ed]" fair

use); *see also New York Mercantile Exch., Inc. v. Intercontinental Exch., Inc.,* 389 F. Supp. 2d

527, 545 (S.D.N.Y. 2005); *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,*

228 F.3d 56, 65 (2d Cir. 2000) (determining that fair use is a defense to a Section 43(a) claim);

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 73-74 (2d Cir. 1999)

(noting that fair use is a defense to a Section 32(1) claim); *TCPIP Holding Co., Inc. v. Haar*

*Commcn's., Inc.,* 244 F.3d 88, 103-04 (2d Cir. 2001) (stating that fair use is a defense to a

Section 43(c) claim); see also *McGraw-Hill Cos. v. Int'l Sec. Exch.,* No. 05 Civ. 1129, 2005 WL

2100518, at *9 (S.D.N.Y. Sept. 1, 2005); *Wonder Labs, Inc. v. Procter & Gamble Co.,* 728

F.Supp. 1058, 1067 (S.D.N.Y. 1990); *Information Superhighway, Inc. v. Talk Am., Inc.,* 395 F.

Supp. 2d 44, 56 (S.D.N.Y. 2005).

Section 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4), defines "fair use" as

follows:

> That the use of the name . . . charged to be an infringement is a use, otherwise
> than as a mark, of the party's individual name in his own business, or of the
> individual name of anyone in privity with such party.

15 U.S.C. § 1115(b)(4). Section 33(b)(4) also protects from infringement the use of a "term, or

device", *otherwise than as a mark*, "which is descriptive of and used fairly and in good faith only

to describe the goods or services of such party." While, notably, the requirement that the use be

11

"descriptive of" and be "fair and in good faith" does not apply to the use of one's name (the ability to make such use being inviolate), Abboud also meets the "descriptive of" and "fair and in good faith" test, because, again, all he plans to do is use his name "descriptively" to identify himself and his role in designing the new "jaz" menswear line.

"Fair use" is an absolute defense to liability under the Lanham Act even if a defendant's conduct would otherwise cause a likelihood of confusion as to source. *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997). So long as Abboud only uses his name in reference to himself personally, and to his reputation as a designer of menswear, in an informational, non-trademark, non-source-indicating way, he is completely protected under the Lanham Act's "fair use" defense, regardless of whether any consumer or trade person is "confused" and believes that he or his "jaz" menswear line is somehow connected to the JOSEPH ABBOUD brand. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121-23, 125 S.Ct. 542, 550-51, 160 L.Ed.2d 440 (2004); *see also Cosmetically Sealed Indus., Inc.*, 125 F.3d at 30-31 (noting that the fair use defense may succeed even if there is a likelihood of confusion); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995) (determining that a finding of a likelihood of confusion did not preclude the fair use defense); *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 110 F.3d 234, 243 (4th Cir. 1997) (noting that "a determination of likely confusion [does not] preclud[e] considering the fairness of use"); *Dolby v. Robertson*, 654 F.Supp. 815 (N.D.Cal. 1986) (finding that defendant could make a non-trademark "fair use" use of his stage name "Thomas Dolby" even though it was likely to confuse consumers). By law, that is the consequences JA Apparel must suffer for acquiring only Abboud's name *as a trademark*, and not the exclusive right to use his name in business.

12

This principle is discussed by the Supreme Court in *KP Permanent Make-Up, Inc*, 543 U.S. 111 at 121-23. In *KP Permanent Make-Up*, in a case involving the use of the registered trademark in a descriptive manner, the Supreme Court held that a "fair use" under Section 33(b)(4) of the Lanham Act may be made regardless of whether confusion may result. *KP Permanent Make-Up*, 543 U.S. at 121-23; *see also Cosmetically Sealed Indus., Inc*, 125 F.3d at 30-31. In so holding, the Court noted that "[i]f any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a well-known descriptive phrase." *KP Permanent Make-Up*, 543 U.S. at 122; *see also Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995) (noting that "[i]f any confusion results to the detriment of the markholder, that was a risk entailed in the selection of a mark with descriptive attributes"); *Arnold v. ABC, Inc.*, No. 06 Civ. 1747 (GBD) 2007 WL 210330, at 2-3 (S.D.N.Y. Jan. 29, 2007). Similarly, in acquiring a trademark that is also a person's name, which that person has an inviolate right to use in business under the "fair use" provision of the Lanham Act, JA Apparel assumed the risk that Abboud would do so, and also the risk that "confusion" might result from such use. *See, e.g., Herman Miller v. Palazzetti Imports & Exports*, 270 F.3d 298, 317-21 (6th Cir. 2001). Put another way, as the Supreme Court stated in *KP Permanent Make-Up*, "the defendant has no independent burden to negate the likelihood of any confusion in raising "the fair use defense." Indeed, "some possibility of consumer confusion must be compatible with fair use." *KP Permanent Make-Up*, 543 U.S. at 121-23.

Looking only at the "name" portion of the "fair use" defense, it is a complete defense to a claim of trademark infringement, even where a likelihood of confusion is shown, so long as the defendant is only using his personal name in business, and not as a trademark. There is no

13

further requirement that the use be "descriptive" and in "good faith." *See, e.g., Dolby*, 654 F.Supp. 815; 15 U.S.C. § 1115(b)(4). Further, Abboud also meets the "term" or "device" component of the "fair use" test, which states that it is a complete defense to a claim for infringement if a "term" or "device" is used "descriptively" and in "good faith." 15 U.S.C. § 1115(b)(4). Here, while he has done nothing yet to advertise his affiliation with his new "jaz" menswear line, all Abboud wishes to do is to use his name in an informational way, and not as a trademark (the trademark being "jaz"), to communicate truthful and valuable information to the trade and consumers, namely, that he is the creative force behind his new menswear line. Abboud has further indicated that he will not use his name on a product, nor does he intend to use his name as part of the name of any company with which he is associated with. Further, he has no intention of making any reference, in advertising or otherwise, to his former association with JA Apparel or to the JOSEPH ABBOUD brand. As Abboud's proposed use of his personal name is "otherwise than as a mark", it is protected under either prong of the Lanham Act's "fair use" defense, even if there was proof of consumer confusion, and this Court should enter judgment in favor of Abboud on JA Apparel's claims of trademark infringement, trademark dilution, false designation of origin, false advertising and unfair competition under the Lanham Act and the State and Common Law of New York.

## IV.    JA APPAREL'S MOTION *IN LIMINE* TO PRECLUDE THE INTRODUCTION OF PAROL EVIDENCE SHOULD BE DENIED.

As indicated above, the most essential issue in this non-jury action is what Abboud agreed to convey to JA Apparel in the Purchase and Sale Agreement. Did he or did he not agree to convey the exclusive right, even as against himself, to use his name in any way, shape or form, in addition to the right to use his name as a trademark? As noted above, Abboud believes that

the language in the Purchase and Sale Agreement is clear in his favor, and so there is no need for

parol evidence showing that all Abboud agreed to convey to JA Apparel was trademarks. *See,*

*supra* at pp. 3 - 10.

However, in the event the Court determines there is ambiguity in the pertinent contract

language, it should consider parol evidence to clarify such ambiguity. *See, e.g., Seiden Assocs.,*

*Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *CBS Broad. Inc. v. Jones*, 460 F.

Supp. 2d 500 (S.D.N.Y. 2006); *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 459, 807 N.E.2d

869, 775 N.Y.S.2d 757 (2004); *Blue Jeans U.S.A., Inc. v. Basciano*, 286 A.D.2d 274, 276, 729

N.Y.S.2d 703, 705 (2001); *Hartford Acc. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 172, 305

N.E.2d 907, 350 N.Y.S.2d 895 (1973). This is particularly true where, as here, the case will be

tried to the Court without a jury. Whereas, arguably, a verdict might be prejudiced if a jury heard

parol evidence regarding the creation or interpretation of a written contract and the Court later

determined that the contract was unambiguous, no such risk is presented in a bench trial. *Home*

*Depot U.S.A., Inc. v. G&S Investors/Willow Park, L.P.*, Nos. 98 Civ. 6719, 00 Civ. 676 (TCP)

(ARL), 2005 WL 3018701, *9 (E.D.N.Y. Nov. 7, 2005) (the Court, in denying a motion *in limine*

to exclude parol evidence, notes that the "attempt to exclude whole items of evidence that may or

may not be introduced at trial is an inappropriate use of the motion *in limine* device," and that "it

is common for courts to reserve judgment on a motion *in limine* until trial so that the motion can

be placed in the appropriate factual context"); *see also TVT Records v. Island Def Jam Music*

*Group*, 250 F. Supp. 2d 341, 345 (S.D.N.Y. 2003) (determining that a party may not employ

motions *in limine* as "preemptive weapons with which they endeavor to strike in shotgun fashion

at whole topics and sources of prospective evidence, out of context and before any specific

objection against its proper backdrop is raised, that each side anticipates the other may contemplate introducing at some point during the course of the trial, or as a dispositive means to fully obviate the need for a trial altogether"); *Ayers v. SGS Control Svcs., Inc.*, No. 06 Civ. 7111 2007 WL 3171342, *1 (S.D.N.Y. Oct. 9, 2007).

Accordingly, if the Court finds that the Purchase and Sale Agreement is ambiguous, it must take into account the formidable evidence leading up to the execution of the Purchase and Sale Agreement and the Personal Services Agreement that the parties intended that Abboud convey or assign to JA Apparel at the Closing, trademarks and license agreements and nothing more. *See, e.g.,* Ederer Decl. at Ex. D (a Nov. 11, 1999 letter containing the "Point of Agreement" and specifying that JA Apparel was interested in purchasing "all Joseph Abboud trademarks"); Def. Ex. I (a Feb. 25, 2000 letter indicating that the objective of the transaction "was and still is the acquisition of the trademarks" and, in reference to Joseph Abboud Worldwide, Inc., stating that JA Apparel was "not interested in buying companies"); Def. Ex. L (a March 17, 2000 letter of intent indicating that the assets to be purchased by JA Apparel included the "Trademarks"; the right to use and apply for registration of the "New Trademarks"; and all licenses to use the "Trademarks." The letter of intent formed the basis for drafting the Purchase and Sale Agreement); *see also* Ederer Decl. at ¶¶16 - 30; Exs. D - N. In addition, as noted above, although not parol evidence, the conduct of JA Apparel following the execution of the Purchase and Sale Agreement is compelling evidence that JA Apparel understood that all it had acquired in the Purchase and Sale Agreement were trademarks. *See* Ederer Decl., ¶¶ 31 - 37; Exs. O - S.

For the foregoing reasons, JA Apparel's motion *in limine* should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion *in limine* to preclude

the introduction of parol evidence and enter judgment in favor of Defendants on counts one

through seven and count nine of Plaintiff's Complaint in this action.

Dated:  New York, New York
       February 14, 2008

               Respectfully submitted,

               ARNOLD & PORTER LLP

By: _____
           Louis S. Ederer (LE 7574)
           John Maltbie (JM 3658)
           399 Park Avenue
           New York, New York 10022
           (212) 715-1000

           *Attorneys for Defendants and*
           *Counterclaim Plaintiffs Joseph Abboud,*
           *Houndstooth Corp. and Herringbone*
           *Creative Services, Inc.*