Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000
*Attorneys for Defendants and
Counterclaim Plaintiffs Joseph Abboud, Houndstooth Corp.
and Herringbone Creative Services, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

JA APPAREL CORP.,

            Plaintiff,

            v.

JOSEPH ABBOUD, HOUNDSTOOTH
CORP., and HERRINGBONE CREATIVE
SERVICES, INC.,

            Defendants.

-------------------------------------------------------------------

JOSEPH ABBOUD, HOUNDSTOOTH
CORP., and HERRINGBONE CREATIVE
SERVICES, INC.,

            Counterclaim Plaintiffs,

            v.

JA APPAREL CORP. and MARTIN STAFF,

            Counterclaim Defendants.

------------------------------------------------------------------- x

Civil Action No. 07 CV 07787 (DAB)

**DECLARATION OF LOUIS S. EDERER IN SUPPORT OF CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTS ONE THROUGH SEVEN AND COUNT NINE OF PLAINTIFF'S COMPLAINT AND IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE ADMISSION OF PAROL EVIDENCE**

# EXHIBIT S

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————————x

JOSEPH ABBOUD AND HOUNDSTOOTH
CORP.,                                              :         Index No. 604033/02
                                                              Index No. 602211/03
           Plaintiffs,                        :

          - against -                               :

ROBERT J. WICHSER AND                               :         Hon. Karla Moskowitz
JA APPAREL CORP., ET AL.,
                                                    :
           Defendants.

————————————————————————x


**STATEMENT OF UNDISPUTED MATERIAL FACTS
PURSUANT TO COMMERCIAL DIVISION RULE 19-a
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**


D 04373



DEFENDANT'S
EXHIBIT
18

1. On or around March 1, 1988, plaintiff Houndstooth Corporation ("Houndstooth"), which is owned by plaintiff Joseph Abboud, formed a joint venture with defendant GFT (U.S.A.) Corp. ("GFT-USA") called "J.A. Apparel Corp.", to manufacture, market and sell products under the Joseph Abboud trademarks (the "joint venture"). (See Verified Complaints under Tabs B and F of the Exhibit Binder, at ¶¶ 16-17 and ¶¶ 20-22, respectively)

2. Joseph Abboud, having assigned his trademarks to Houndstooth in 1987, caused Houndstooth to sublicense the Abboud trademarks to J.A. Apparel. (See Tabs B and F, at ¶¶ 16-17 and ¶¶ 20-22, respectively)

3. Houndstooth held a forty percent ownership interest in J.A. Apparel; GFT-USA owned the remaining interest. (See Tab F, at ¶ 22)

4. On March 1, 1988, Mr. Abboud entered into an Employment Agreement with J.A. Apparel, which set forth his responsibilities as Executive Vice President in charge of design during that time period, including to "design and supervise the design of the Corporation's products." (See Employment Agreement under Tab G of the Exhibit Binder, at ¶ 1)

5. In 1993, Robert J. Wichser became President and Chief Operating Officer of J.A. Apparel. (See Tab F, at ¶ 25)

6. In January 1996, the joint venture came to an end: GFT-USA bought out Joseph Abboud's ownership interest in J.A. Apparel; J.A. Apparel became wholly owned by GFT; and Houndstooth entered into new licensing agreements with J.A. Apparel, permitting J.A. Apparel to continue as the licensee of the Abboud menswear lines. (See Tab F, at ¶ 23)

7. On August 1, 1998, Mr. Wichser and Houndstooth entered into a Consulting Agreement, also signed by Joseph Abboud, which provided for Mr. Wichser's

D 04374

938182v1

services to Houndstooth in connection with its licensing activities. The Consulting Agreement expressly limited Mr. Wichser's responsibilities and authority as set forth therein, and expressly acknowledged Mr. Wichser's position as President and Chief Operating Officer of J.A. Apparel and his "primary responsibility" to J.A. Apparel. (See Consulting Agreement under Tab E of the Exhibit Binder, at ¶ 1)

8. Prior to November 1999, Mr. Abboud decided to explore opportunities for the sale of his trademarks. On November 11, 1999, Mr. Abboud wrote a letter to defendant Roberto Jorio Fili, one of the principals of the corporate defendants, "to clarify which issues [were] still in negotiation [concerning the purchase of the Abboud trademarks] and which issues need[ed] further discussion and clarification." (See "November 11 letter" under Tab H of the Exhibit Binder)

9. In Section III of the November 11 letter, which is called the "Overall Points of Strategy," Mr. Abboud requested that all "creative, marketing, advertising, and PR teams" report directly to him after the proposed sale of the trademarks to J.A. Apparel. (See Tab H, at p. 2)

10. On November 15, 1999, Joseph Anton, Mr. Abboud's investment banker, wrote a letter to Mr. Jorio Fili, stating that Mr. Abboud had advised Mr. Anton that the "business issues" in Section III of the November 11 letter were under current discussion and had yet to be formulated and resolved. (See "November 15 letter" under Tab I of the Exhibit Binder)

11. On February 2, 2000, Mr. Abboud had a meeting in Milan with representatives of J.A. Apparel and Mr. Anton, during which the principals agreed to change the purchase terms from an "earn-out" to a lump sum payment of $65 million, later increased to

D 04375

938182v1

$65.5 million. (See Tab D, at pp. 640-45; see also Purchase and Sale Agreement under Tab U of the Exhibit Binder)

12. On February 10, 2000, J.A. Apparel's attorneys sent a draft letter of agreement regarding the proposed acquisition of the Abboud trademarks. Paragraph 3 of the February 10 letter set forth a description of the services to be performed by Mr. Abboud following such acquisition. (See "February 10 letter" under Tab J of the Exhibit Binder)

13. On February 25, 2000, Mr. Jorio Fili wrote to Mr. Abboud, commenting on Mr. Jorio Fili's receipt of the recent correspondence between their attorneys. (See "February 25 letter" under Tab X of the Exhibit Binder)

14. On March 1, 2000, Mr. Abboud wrote to Mr. Jorio Fili and expressed his dismay that the description in the February 10 draft of his role was "fundamentally different" than what they had discussed on November 11, 1999. Mr. Abboud commented that his role as defined in the draft was one of "no authority" that "clearly diminishe[d]" his opportunity to be vital and effective in the business. (See "March 1 letter" under Tab K of the Exhibit Binder)

15. On March 9, 2000, J.A. Apparel's attorney, Jeffrey LaGueux, wrote to Abboud's attorney, Theodore Dinsmoor, sending a revision of the parties' draft agreement, to reflect the changes made in response to the parties' recent correspondence. The description of Mr. Abboud's services in the March 9 draft was substantially unchanged from the February 10 draft. (See "March 9 letter" under Tab L of the Exhibit Binder, and ¶ 3 of the draft attached thereto)

16. On March 17, 2000, Mr. Abboud, Houndstooth and J.A. Apparel entered into a letter agreement concerning the sale of the Abboud trademarks. In the March 17 agreement, the description of Mr. Abboud's role was substantially unchanged from the

D 04376

-4-

938182v1

February 10 and March 9 drafts. (See "March 17 Letter of Intent" under Tab M of the Exhibit Binder)

17. On May 3, 2000, Mr. LaGueux, J.A. Apparel's attorney sent revised drafts of the Purchase and Sale Agreement and Personal Services Agreement. The description of Mr. Abboud's services was substantially unchanged from the prior drafts and the March 17 agreement, except that a phrase was added to state that those services would be performed "as requested" by J.A. Apparel. (See "May 3 letter" and attached drafts under Tab N of the Exhibit Binder)

18. On May 19, 2000, Mr. Abboud's attorney, Mr. Dinsmoor commented on the draft agreements, but he did not comment on or propose changes in the description of Mr. Abboud's services. (See "May 19 letter" and attached draft under Tab O of the Exhibit Binder)

19. On May 24, 2000, Mr. Abboud wrote to Mr. Jorio Fili about the draft agreements, specifically commenting on his personal services agreement. Mr. Abboud did not challenge the description of his services. (See "May 24 letter" under Tab P of the Exhibit Binder)

20. On June 5, 2000, the purchaser's attorney sent revised drafts of the Purchase and Sale Agreement and the Personal Services Agreement to Mr. Dinsmoor. The description of Mr. Abboud's services was substantially unchanged from the prior draft. (See "June 5 letter" and attached drafts under Tab Q of the Exhibit Binder)

21. On June 7, 2000, Mr. Dinsmoor wrote on behalf of Mr. Abboud to the purchaser's attorney, to comment on the proposed drafts, without making any comments on the description of Mr. Abboud' services. (See "June 7 letter" under Tab R of the Exhibit Binder)

D 04377

938182v1

-5-

22. On June 14, 2000, the purchaser's attorney sent a revised draft of the agreements to Mr. Dinsmoor. The description of Abboud's services was substantially unchanged from the prior draft. (See "June 14 letter" and attached drafts under Tab S of the Exhibit Binder)

23. On June 15, 2000, Mr. Abboud, his attorneys and investment bankers, and J.A. Apparel, its attorneys and representatives all met to sign the Purchase and Sale Agreement, and to approve and initial the Personal Services Agreement. (See Excerpts from Joseph Abboud Deposition Testimony under Tab D of the Exhibit Binder, at pp. 207-09; see also Excerpts from Theodore Dinsmoor's Deposition Testimony under Tab T of the Exhibit Binder, at pp. 173-74)

24. At the June 15 meeting, the purchaser refused Mr. Dinsmoor's request that changes be made in the description of Mr. Abboud's role in the Personal Services Agreement. (See Tab D, at pp. 262-64)

25. The definition of a Creative Director – and what his or her specific role and responsibilities are – varies from company to company. (See Tab D, at pp. 190, 270-71)

26. At no time on June 15, 2000, prior to execution of the Purchase and Sale Agreement (with the Personal Services Agreement attached) was there any discussion about Joseph Abboud's rights, responsibilities, authority, or resources as Creative Director. (See Tab D, at pp. 238-40; Tab T, at pp. 185-88)

27. As of June 16, 2000, the parties executed the final Agreement of Purchase and Sale and initialed the final text of the Personal Services Agreement. (See Purchase and Sale Agreement under Tab U of the Exhibit Binder)

28. On July 13, 2000, at the closing, the parties delivered the final Personal Services Agreement as executed. (See Personal Services Agreement under Tab A of the Exhibit Binder)

D 04378

29. By letter dated September 24, 2002, to the chairman of defendant Holding Partecipazioni Industriali S.p.A., Joseph Abboud set forth ten points relating to authority and resources to which he claimed entitlement as "Creative Director". (See "September 24 letter" under Tab C of the Exhibit Binder)

30. None of the ten-numbered items set forth in the September 24 letter was ever discussed with Mr. Jorio Fili on June 15, 2000. (See Tab D, at pp. 253-54)

31. J.A. Apparel paid Mr. Abboud $65.5 million for his trademarks. (See Tab U)

32. Mr. Abboud knew before signing the Personal Services Agreement that he and Mr. Wichser had what he described as "philosophical differences" as to how J.A. Apparel should be operated: Mr. Abboud believed that the design team should report to him; and Mr. Wichser believed that the design team should report to merchandisers and, through them, to Mr. Wichser. (See Tab D, at pp. 123-26, 243-44)

33. On July 13, 2000, Abboud's attorney Mr. Dinsmoor issued an Opinion Letter about the terms of the Purchase and Sale Agreement and the Personal Services Agreement, stating, *inter alia*, that the agreements had been thoroughly examined and that they constituted legal, valid and binding obligations of Abboud "enforceable in accordance with their terms." (See Opinion Letter under Tab W of the Exhibit Binder)

Dated: September 18, 2003
New York, New York

PATTERSON, BELKNAP, WEBB & TYLER LLP

By: _____
Attorneys for Defendants
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2000

-7-

D 04379

938182v1