## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JA APPAREL CORP., <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH ABBOUD, HOUNDSTOOTH CORP., and HERRINGBONE CREATIVE SERVICES, INC., <br><br> Defendants. <br><hr>JOSEPH ABBOUD, HOUNDSTOOTH CORP., and HERRINGBONE CREATIVE SERVICES, INC., <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> JA APPAREL CORP. and MARTIN STAFF, <br><br> Counterclaim-Defendants. | Civil Action No. 07 CV 07787 (THK) |

### PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW (1) IN REPLY TO DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* TO PRECLUDE THE ADMISSION OF PAROL EVIDENCE; (2) IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; AND (3) IN SUPPORT OF MOTION TO STRIKE DECLARATION OF LOUIS S. EDERER

**KAYE SCHOLER LLP**
425 Park Avenue
New York, New York 10022
(212) 836-8000
*Attorneys for Plaintiff and Counterclaim-
   Defendant JA Apparel Corp. and
   Counterclaim-Defendant Martin Staff*

31606723.WPD

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    THERE IS NO DISPUTE THAT THE PURCHASE AND SALE AGREEMENT IS UNAMBIGUOUS AND THAT PAROL EVIDENCE IS THEREFORE INADMISSIBLE . . . 3

    B.    DEFENDANT'S "INTERPRETATION" OF THE AGREEMENT IS CONTRARY TO THE AGREEMENT'S UNAMBIGUOUS MEANING AND THE COMPLAINT PROPERLY ALLEGES BREACH OF THE AGREEMENT . . . . . . . . . . 3

    C.    PLAINTIFF HAS ADEQUATELY ALLEGED DEFENDANTS' TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, TRADEMARK DILUTION, FALSE AND DECEPTIVE PRACTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    THE DECLARATION OF LOUIS S. EDERER SHOULD BE STRICKEN . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases**

                                                                                                                                 **Page(s)**

*American Para Prof. Sys., Inc. v. Hooper Holmes, Inc.*,
    13 A.D.3d 167, 787 N.Y.S.2d 227 (1st Dep't 2004) ................................. 13

*Brainard v. N.Y. Cent. R.R. Co.*,
    242 N.Y. 125 (N.Y. 1926) ................................................................. 13

*Brass v. Am. Film Tech., Inc.*,
    987 F.2d 142 (2d Cir. 1993) .............................................................. 12

*Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*,
    70 F.3d 267 (2d Cir. 1995) ................................................................ 11

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ................................................................ 13

*Dolby v. Robertson*,
    654 F. Supp. 815 (N.D. Cal. 1986) .................................................... 11

*EMI Catalogue P'Ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
    228 F.3d 56 (2d Cir. 2000) ................................................................ 11

*Fed. Ins. Co. v. Americas Ins. Co.*,
    258 A.D.2d 39, 691 N.Y.S.2d 508 (1st Dep't 1999) .............................. 13

*IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*,
    26 F.3d 370 (2d Cir. 1994) ................................................................ 13

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004) .................................................................... 11, 12

*Karsh v. Haiden*,
    120 Cal.App.2d 75 (Cal. Ct. App. 1953) ............................................. 9

*Levitt Corp. v. Levitt*,
    593 F.2d 463 (2d Cir. 1979) .............................................................. 8

*Madrigal Audio Labs., Inc. v. Cello, Ltd.*,
    799 F.2d 814 (2d Cir. 1986) ........................................................ 7, 8, 11

**Page(s)**

*Muzak Corp. v. Hotel Taft Corp.*,
   1 N.Y.2d 42, 150 N.Y.S.2d 171 (N.Y. 1956) .................................................. 4

*Nipon v. Leslie Fay Cos. (In re Leslie Fay Cos.)*,
   216 B.R. 117 (Bankr. S.D.N.Y. 1997) .......................................................... 8

*Ocean Transp. Line, Inc. v. Am. Philippine Fiber Indus., Inc.*,
   743 F.2d 85 (2d Cir. 1984) ........................................................................ 13

*Poorman v. Julian*,
   22 Ill.App.2d 208 (Ill. App. Ct. 1959) ......................................................... 9

*Prentice v. Apfel*,
   11 F. Supp.2d 420 (S.D.N.Y. 1998) ........................................................... 12

*Schiess-Froriep Corp. v. S.S. Finnsailor*,
   574 F.2d 123 (2d Cir. 1978) ...................................................................... 12

*Slatt v. Slatt*,
   64 N.Y.2d 966, 488 N.Y.S.2d 645 (N.Y. 1985) .......................................... 13

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*,
   64 F.3d 1055 (7th Cir. 1995) ..................................................................... 11

*TVT Records v. Island Def Jam Music Group*,
   250 F. Supp.2d 341 (S.D.N.Y. 2003) .......................................................... 3

*Time Warner Cable of N.Y.C. v. City of New York*,
   943 F. Supp. 1357 (S.D.N.Y. 1996) ........................................................... 13

*W.W.W. Assocs., Inc. v. Giancontieri*,
   77 N.Y.2d 157, 565 N.Y.S.2d 440 (N.Y. 1990) .......................................... 13

*Wonder Labs, Inc. v. Procter & Gamble Co.*,
   728 F. Supp. 1058 (S.D.N.Y. 1990) ........................................................... 11

*Wyler v. United States*,
   725 F.2d 156 (2d Cir. 1983) ...................................................................... 12

**Page(s)**

**Statutes and Rules**

15 U.S.C. §1060(a)(3) .................................................................. 5

15 U.S.C. § 1115(b)(4) ................................................................ 10

FED. R. EV. 602 ........................................................................... 5

Plaintiff and counterclaim-defendant JA Apparel Corp. ("JA Apparel") and counter-claim-defendant Martin Staff submit this memorandum of law (i) in reply to defendants' opposition to their motion *in limine* to preclude the admission of parol evidence at the trial that is scheduled to commence tomorrow; (ii) in opposition to defendants' motion for judgment on the pleadings with respect to all claims in the complaint (*i.e.*, Counts 1-7, and 9) except for the claims based on Mr. Abboud's breach of the non-compete obligations in the Side Letter Agreement; and (3) in support of their motion to strike the declaration of Louis S. Ederer, dated February 14, 2008.

## PRELIMINARY STATEMENT

Although defendants state that they oppose the motion to exclude the admission of parol evidence, they not only *agree,* but affirmatively argue and urge the Court to find, that the Purchase and Sale Agreement (the "Agreement") is, in their words, "clear and unambiguous," and that, accordingly, parol evidence is inadmissible. (Defendants' Memorandum ("Defs. Mem.") 1, 5). Accordingly, the motion should be granted.

As for defendants' cross-motion for judgment on the pleadings, it is baseless, purely tactical, and untimely in the extreme. Indeed, plaintiff's response to the motion is not due under the rules until *after* the trial. Nevertheless, we are responding in a matter of days so that the Court can have the benefit of our views before the first witness testifies. We note at the outset that nowhere in their 25-page brief opposing plaintiff's motion for a preliminary injunction – filed over four months ago – did defendants even address plaintiff's breach of contract claim, let alone assert that they were entitled to judgment on the pleadings. (Dkt. Entry 11). Nor did they make any such assertion with respect to any of the other claims on which now they seek judgment on the pleadings. Instead, they had the parties embark on extensive, time-consuming and enormously expensive discovery. The Court will also recall that in late December defendants designated Theodore

31606723.WPD

Dinsmoor, their attorney during the negotiation of the Agreement, as a witness to testify, *inter alia*, with respect to the "negotiation and drafting of the June 2000 Purchase and Sale Agreement." (Smart Dec. Ex. F p. 3). They then opposed plaintiff's request to depose him, necessitating a conference with the Court at which the deposition was ordered. Now, we find out, that, according to defendants, all of this was a waste of time, effort and money because, they suddenly assert, every claim should have been thrown out on day one (other than the claims for breach of the non-compete obligations). If there were any merit to the cross-motion – and there is none – defendants would have filed it long before six days before trial.

        Turning to the merits of the motion for judgment on the pleadings, defendants' proffered interpretation of the Agreement is belied by the Agreement's express language. In addition, the allegations of defendants' conduct – which, of course, are deemed true on this motion – including Mr. Abboud's announced plan to use the slogan and designation "a new composition by designer Joseph Abboud" (nowhere mentioned in defendants' brief), clearly state a claim for breach of that contract. As for the fact-laden claims of trademark infringement, false designation of origin, unfair competition, trademark dilution, and false and deceptive practices, the complaint repeatedly alleges that JA Apparel owns all names, trademarks, trade names, service marks and designations containing the words JOSEPH ABBOUD; that defendants have used, and intend to use, the words JOSEPH ABBOUD in connection with almost identical products and services; and that this use is likely to cause confusion and dilution and injure JA Apparel. It is simply preposterous for defendants to argue that, accepting these allegations as true – a fundamental rule to which defendants pay only lip service – defendants are entitled to judgment on the pleadings.

        Finally, in support of their motion, defendants submit the declaration of their attorney, Louis S. Ederer, in a blatant attempt to pollute the record and have the Court – which will be the fact

finder at trial – review before trial the very parol evidence that is inadmissible. Indeed, because parol evidence is inadmissible to determine if a contract is unambiguous, and because evidence beyond the pleadings is inadmissible on a motion for judgment on the pleadings, defendants' submission of such evidence is improper on its face. The declaration is inadmissible because Mr. Ederer plainly lacks the personal knowledge necessary to authenticate the exhibits to the declaration and to support the factual assertions made therein. The declaration is also argumentative and should be stricken from the record for this additional reason.

## ARGUMENT

### A.   THERE IS NO DISPUTE THAT THE PURCHASE AND SALE AGREEMENT IS UNAMBIGUOUS AND THAT PAROL EVIDENCE IS THEREFORE INADMISSIBLE

In our moving brief, we showed that the key provision in the Agreement – paragraph 1.1(a) – is not ambiguous. (Pl. Mem. 6-10). Defendants agree: The provision is "clear and unambiguous." (Defs. Mem. 1). As a result, as defendants also agree, parol evidence is inadmissible. (Pl. Mem. 3-6; Defs. Mem. 5). That is the end of the matter. Accordingly, JA Apparel's motion *in limine* should be granted.[1]

### B.   DEFENDANT'S "INTERPRETATION" OF THE AGREEMENT IS CONTRARY TO THE AGREEMENT'S UNAMBIGUOUS MEANING AND THE COMPLAINT PROPERLY ALLEGES BREACH OF THE AGREEMENT

As we explained in our moving brief (Pl. Mem. 6-7), paragraph 1.1(a) of the Agreement unambiguously provides that "all" of the designated assets are transferred to JA Apparel – *i.e.*, "all" "right, title and interest" to the "names, trademarks, trade names, service marks, logos, insignias

---

[1] None of the cases on which defendants rely (Defs. Mem. 15-16) support their apparent contention that the *in limine* motion is premature or should not be decided. Unlike in those cases, which involved scatter-shot attacks on expert or other broad-ranging testimony or were at an early stage of the case, plaintiff's motion here, days before trial, fulfills the purpose of an *in limine* motion – "to enable the Court to rule on disputes over the admissibility of discrete items of evidence." *TVT Records v. Island Def Jam Music Group*, 250 F. Supp.2d 341, 344 (S.D.N.Y. 2003).

31606723.WPD                                   3

and designations" identified on Schedule 1.1(a)(A), and all trademark registrations and applications therefor, and the goodwill related thereto," "all" "licenses to use the Trademarks granted by Houndstooth or Abboud," and "all" "rights to use and apply for the registration of new trade names, trademarks, service marks, logos, insignias and designations containing the words 'Joseph Abboud,' 'designed by Joseph Abboud,' 'by Joseph Abboud,' 'JOE' or 'JA,' or anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols . . . for any and all products or services." (PX-001 ¶ 1.1(a)(A)-(E)).

We further explained (Pl. Mem. 7-10) that defendants' argument that the seven different items specified in paragraph 1.1(a)(A) – "names, trademarks, trade names, service marks, logos, insignias and designations" – mean *only* "trademarks" is wrong for several different reasons:

- If all that the provision means is that the Agreement transferred "trademarks," then that could have and would have been stated much more simply and directly by merely stating that defendants were selling the "trademarks identified on Schedule 1.1(a)(A)."

- By ignoring "names," "trade names," "service marks," "logos," "insignias" and "designations," defendants' proffered interpretation is directly counter to the black-letter New York "rules of construction of contracts [that] require us to adopt an interpretation which gives meaning to *every* provision of a contract or, in the negative, no provision of a contract should be left without force and effect." *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 174 (N.Y. 1956) (emphasis added).

- The seven different items specified in paragraph 1.1(a) are referred to "collectively" as "Trademarks," and use of the term "collectively" necessarily means that the defined term "Trademarks" means each of the seven items specified in the "collection." Otherwise, there would have been no need to use the term "collectively."

- The term "Trademarks" is defined in the Agreement to include all seven terms, and that is the meaning it must be given, not some dictionary or other meaning.

Unable to respond to this showing and black-letter law, defendants ignore them. Instead, they contend that paragraph 1.1(a) should not be interpreted as written. None of their proffered reasons for this contention has any merit.

First, defendants argue that the Agreement does not use the term "exclusive" with respect to the transfer of the right to use Mr. Abboud's "name." (Defs. Mem. 5). The Agreement, however, expressly transfers "all" "right, title and interest" in the "name," "Joseph Abboud," which is Mr. Abboud's name. There is nothing ambiguous about the word "all." Nor does plaintiff contend that Mr. Abboud transferred the "exclusive" right to use his name. Obviously, he did not transfer his right to use his name for a driver's license, marriage license, Social Security number, credit card, doctor's appointment or other personal affairs, but he did transfer "all" rights to use it for all products and services.

Second, defendants argue that there was no "assignment" of Mr. Abboud's "name." (Defs. Mem. 6). Assignments are used to transfer trademarks and trademark registrations because the Lanham Act provides for assignments and their filing with the Patent and Trademark Office, which constitutes "prima facie evidence of [the assignment's] . . . execution." 15 U.S.C. § 1060(a)(3). Moreover, there is no need for any additional assignment because Mr. Abboud unambiguously agreed not to "*use*" "'Joseph Abboud' . . . for *any and all* products or services." (PX-1 ¶ 1.1(a)(C)) (emphasis added). Defendants further argue that "there is a big difference between the word 'name' [Joseph Abboud] and the words 'words' [Joseph Abboud]." (Defs. Mem. 8). They never state what the difference is, nor cite a case that would explain the mystery.

Third, defendants argue that there are no "names" listed on Schedule 1.1(a)(A). (Defs. Mem. 7). Says who? The name "Joseph Abboud" appears repeatedly on the Schedule, as does the name "J.O.E." The fact that it is also a registered trademark, or is a trademark that is the subject of pending trademark applications, does not change the fact that it is also a "name."

Fourth, defendants argue that paragraph 1.1(a)(A) of the Agreement should be read together with the provision in the Side Letter Agreement in which Mr. Abboud was permitted during the period of his non-compete obligations to make media appearances. (Defs. Mem. 9, quoting Ederer Dec. Ex. C (PX-2) ¶ 1(b)). Defendants, however, ignore that this provision terminated with the termination of the non-compete period, and further ignore that in the Purchase and Sale Agreement Mr. Abboud reserved *no* such right to make appearances or to use his personal name in competition with plaintiff. And defendants ignore the fact that that media appearance right was strictly limited to appearances that would not result in Mr. "Abboud actually competing with any of the business activities of" JA Apparel. (PX-2 ¶ 1(b)).

In their proposed findings of fact and conclusions of law, but not in their brief supporting their cross-motion, defendants make the following argument:

> While JA contends that the terms used in Article 1.1(a)(A) of the Purchase and Sale Agreement are independent of the trademarks on Schedule 1.1(a)(A), *i.e.*, "names" means "names" and not "trademarks", as a matter of law, this argument is belied by the clear and unambiguous language of Article 1.1(a)(A) of the Purchase and Sale Agreement, namely the placement of the phrase "identified on Schedule 1.1(a)(A)" following the term "designations", rather than the term "trademarks." In other words, because the words "identified on Schedule 1.1(a)(A)" are placed a the end of the terms; and, because the Schedule is a Trademark Report that only identifies trademarks and not any names or trade names, the Court must, as a matter of law, interpret the terms as being descriptive of the trademarks on Schedule 1.1(a)(A), rather than as being independent of the Schedule. . . . (Defendants' Proposed Conclusion of Law 45).

Defendants' argument makes no sense, as setting forth Paragraph 1.1(a)(A) in the way defendants suggest, with the moved "Schedule 1.1(a)(A)" shown in bold below, shows:

> 1.1(a)   Upon the terms and subject to the conditions of this Agreement, on the Closing Date (as hereinafter defined), the Sellers shall sell, convey, transfer, assign and deliver to the Buyer, and the Buyer shall purchase and acquire from the Sellers, *all of the Sellers' right, title and interest* in and to:
>
> (A)   The names, trademarks **identified on Schedule 1.1(a)(A)**, trade names, service marks, logos, insignias and designations, and all trademark registrations and applications therefor, and *the goodwill related thereto* (collectively, the "Trademarks"), . . .

As is readily apparent, by moving the phrase "identified on Schedule 1.1(a)(A)" after the word "trademarks," there is no modifier for the terms "names," "trade names," "service marks," "logos," "insignias" and "designations." That is, the revised paragraph would not state *which* "names," "trade names," "service marks," "logos," "insignias" and "designations" were being transferred. Nothing would limit them to "Joseph Abboud" or any other term. It would just transfer "names," "trade names," "service marks," "logos," "insignias" and "designations," in the abstract, unhinged from Joseph Abboud and reality. The argument is absurd, and should be rejected.

The bottom line is that if the Agreement were limited to the transfer of the trademarks on the Schedule, it could have stated that very simply: "The trademarks identified on Schedule 1.1(a)(A), and the goodwill related thereto." It didn't.

Unable to explain how the unambiguous transfer, and agreement not to use, "names, trademarks, trade names, service marks, logos, insignias and designations" can be read – indeed, must be read – as a transfer and agreement not to use only "trademarks," defendants rely on *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814 (2d Cir. 1986). But as we explained in detail in our proposed conclusions of law (*see* Plaintiff's Proposed Conclusions 34-35), the Court in *Madrigal* held that "[w]hether a person who sells the trade name to his personal name is barred from using the

personal name depends on the terms of the sale," and the defendant Levinson was enjoined from using on product labels or brochures (which are ads) the designation or phrase "Cello by Mark Levinson." *Id.* at 823. Here, the terms of the sale are clear that the defendant cannot use his name as it is alleged he has done and intends to do. In addition, *Madrigal* plainly holds that "an individual who sells a trade name may not thereafter falsely designate the origin of newly-produced products by using his name in such a way as to mislead the public into believing that those products are produced by the company which purchased the trade name." *Id.* So whether the Agreement is limited (against its plain language) to "trademarks," defendants cannot use "Joseph Abboud" in a manner that is likely to mislead or confuse consumers, which is exactly what defendants have done, and are planning to do, here.

Moreover, it speaks volumes that in their cross-motion defendants do not even address *Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979), in which the Second Circuit affirmed a wide-ranging injunction prohibiting William Levitt – who previously had sold to plaintiff his business, including use of his personal name as a trade name or trademark, and the related goodwill – from using his name as a part of a trademark. Nor in their cross-motion or in their 108-page proposed findings and conclusions, do defendants even once mention *Nipon v. Leslie Fay Cos. (In re Leslie Fay Cos.)*, 216 B.R. 117, 123-25, 136 (Bankr. S.D.N.Y. 1997), where, on facts that fit this case like a designer glove, the court enjoined clothing designer Albert Nipon from using the tagline or designation "Executive Dress by Albert Nipon" in conjunction with the trademark AMERICAN POP, holding that Mr. Nipon previously had sold to plaintiff the trademarks in his name and the related goodwill.[2]

---

[2]    Instead of addressing these cases from this Circuit and District, defendants chose to rely on two half-century old state court cases from California and Illinois, neither of which applied our governing New York
(continued...)

31606723.WPD                                    8

Finally, defendants ignored that JA Apparel's complaint alleges that "[d]efendants intend to use, in connection with their 'jaz' clothing line and on marketing and advertising materials, . . . 'Joseph Abboud' and 'a new composition by designer Joseph Abboud,' the latter of which is a barely discernable variation of . . . 'Joseph Abboud,' 'designed by Joseph Abboud,' or 'by Joseph Abboud,' and plainly is similar to or derived [there] from," and that this conduct "by Mr. Abboud and Houndstooth is a clear breach of the Purchase and Sale Agreement," "[a]s a direct and proximate result of [which] . . . JA Apparel has suffered and will continue to suffer. . . irreparable injury." (Complaint ¶¶ 99-102; *see id.* ¶¶ 45-67). These allegations – which defendants ignore – like all of the allegations in the complaint, must, as defendants concede (Defs. Mem. 2), be accepted as true on a motion for judgment on the pleadings.[3] They preclude judgment for defendants.

C. **PLAINTIFF HAS ADEQUATELY ALLEGED DEFENDANTS' TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, TRADEMARK DILUTION, FALSE AND DECEPTIVE PRACTICES**

Defendants do not deny – nor could they – that the complaint adequately, and in detail, alleges that JA Apparels owns all trademarks, trade names, service marks and designations containing the words JOSEPH ABBOUD, that defendants have used, and intend to use, the words

---

[2](...continued)
law and neither of which applies here. In *Karsh v. Haiden*, 120 Cal.App.2d 75, 82 (Cal. Ct. App. 1953), the court stated that "[t]he right to use one's own name in business may be given up by contract," that "the seller of a business and goodwill may not use the firm name he has assigned or another similar firm name likely to cause confusion," that the seller "is not in the same position as a person who newly enters a line of business in which a firm which accidentally makes use of the same name has gained a reputation," and that "[t]he seller's contractual relation to the purchaser implies an obligation of 'good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." In *Poorman v. Julian*, 22 Ill.App.2d 208, 217 (Ill. App. Ct. 1959), the court held that the sale agreement could not be interpreted to prohibit the defendant from using his name for funeral directing where a statute required that a party engaged in funeral directing "must use his name in connection therewith" and where the "Bill of Sale . . . transfers nothing whatever in that respect." There is no New York (or other) state statute regulating the use of names of people designing suits and sport coats.

[3]   It was presumably for that very reason that defendants did not move with respect to plaintiff's non-compete claim.

JOSEPH ABBOUD in connection with almost identical products and services, and that this use is likely to cause confusion and injure JA Apparel. (*See, e.g.*, Complaint ¶¶ 37-53, 58-94).

Faced with these allegations – which, as defendants concede, must be accepted as true on a motion for judgment on the pleadings – defendants rely on their affirmative defense that their use of the trademark "Joseph Abboud" is a "fair use" under 15 U.S.C. § 1115(b)(4). In particular, they assert that Mr. Abboud's "proposed use" of his name is "otherwise than as a mark." (Defs. Mem. 10). But the only uses alleged in the complaint are "[d]efendants' use of the trademarks, trade names and designations 'a new composition by designer Joseph Abboud' and 'Joseph Abboud'" on their 'jaz' clothing line and on marketing and advertising materials," which the complaint alleges are "identical or nearly identical and confusingly similar to, and a colorable imitation of, the ABBOUD marks owned by JA Apparel, and infringes JA Apparel's trademark rights and interests in those marks." (Complaint ¶ 64). Defendants do not even mention in their cross-motion (or in their proposed findings and conclusion) the allegation (and evidence) of their use of "a new composition by designer Joseph Abboud." Nor is there is any allegation in the complaint or defendants' affirmative defense of fair use (Answer ¶ 127) as to any use that defendants now contend is a fair use. For this reason alone, defendants' cross-motion should be denied. The court cannot decide the issue of fair use in a vacuum.

But even if the Court were to go beyond the pleadings, nowhere in their memorandum of law do defendants assert any particular use that they contend is fair. Rather, they airily refer to Mr. Abboud using his name "'descriptively' to identify himself and his role in designing the new 'jaz' menswear line" (Defs. Mem. 12), but never articulate what such use would look like. And, of course, defendants neglect to tell the Court that Mr. Abboud has purported to grant Lord & Taylor's affiliate a "license" to use his "name" "for purposes of advertising and/or promoting" Lord &

Taylor's men's and boy's clothing. (PX-327). That is as far from "fair" use as one could get – Mr. Abboud selling to Lord & Taylor what he already sold to JA Apparel.

Surely, judgment on the pleadings cannot be given with respect to a use that is not identified anywhere in the pleadings or in the defendants' brief and where, by its very nature, whether a use is fair or not will turn on the particular facts and circumstances of the use and the market in which such use is made. As for the cases on which defendants rely, the vast majority involve use of such clearly descriptive terms as "swing swing swing" for golf equipment, "the dentists' choice" for toothpaste, "sweet-tart" for juice drinks, or a "pine-tree shape" for a pine-scented plug-in air freshener.[4] None involved a situation where, as here, a fashion designer or other person sold his name and then turned around and tried to use the name in competition with the buyer.[5] Nor is there even a hint in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 123 (2004), that a designer who sold his name can thereafter use it, in defendants' words, "regardless of whether any consumer or trade person is 'confused'" (Defs. Mem. 12) – a statement directly contrary to *Madrigal*'s holding that "an individual who sells a trade name may not thereafter . . . mislead the public into believing that [his] products are produced by the company which purchased" the name. 799 F.2d at 823. And, finally, none of the cases defendants cite remotely

---

[4]  *EMI Catalogue P'Ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64-69 (2d Cir. 2000); *Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995); *Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995).

[5]  *See, e.g., Dolby v. Robertson*, 654 F. Supp. 815, 820-21 (N.D. Cal. 1986) (denying preliminary injunction to owners of Dolby Stereo that would have barred defendant, whose stage name was "Thomas Dolby," from using his full name, but "may not use the surname 'Dolby' alone").

suggests that the issue of alleged fair use can be decided on the pleadings where the alleged fair use has not even been identified by the defendant.[6]

D.     THE DECLARATION OF LOUIS S. EDERER SHOULD BE STRICKEN

The fact-laden declaration of defendants' attorney, Louis S. Ederer, which defendants submitted both in support of their cross-motion and in opposition to the *in limine* motion, should be stricken because it is not based on Mr. Ederer's "personal knowledge of the matter[s]" set forth therein. F. R. Ev. 602. Rather, it is an argumentative, brief-like declaration of a lawyer who was not present during any of the transactions at issue, did not represent any of the parties at the time,[7] and did not write or receive any of the documents attached to the declaration. As the Second Circuit has held, "[a]n affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to *any weight*." *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) (emphasis added). *Accord, Schiess-Froriep Corp. v. S.S. Finnsailor*, 574 F.2d 123, 126 (2d Cir. 1978).

The declaration should also be stricken because defendants state – as they must on a motion for judgment on the pleadings – that they are "not relying" on the documents attached to the declaration "in support of th[eir] cross-motion." (Defs. Mem. 9 n.3).[8] The evidence is also

---

[6]     *See KP Permanent Make-Up*, 543 U.S. 111 at 123 (reversing summary judgment for defendant, remanding for further proceedings, and holding that defendant has burden of proof of fair use).

[7]     Indeed, at the time, Mr. Ederer was representing another party that was engaged in a litigation *against* Mr. Abboud.

[8]     Defendants intimate elsewhere in their memorandum that the Court can look beyond the pleadings to documents not referenced in the pleadings "so long as such documents . . . are in the possession of the party opposing the motion." (Defs. Mem.2-3, citing *Prentice v. Apfel,* 11 F. Supp.2d 420, 424 (S.D.N.Y. 1998), which cites dicta in *Brass v. Am. Film Tech., In*c., 987 F.2d 142, 150 (2d Cir. 1993)). The law is not nearly so expansive. As *Prentice* and the case on which *Brass* relies make clear, on a motion directed to the pleadings, courts may look to documents not attached to the pleadings only in such limited situations where, for example, the record of an administrative hearing is at issue on a challenge to denial of a claim for disability
(continued...)

inadmissible with respect to the *in limine* motion, because, which defendants also do not dispute, it is "well settled 'that extrinsic and parol evidence is not admissible to create an ambiguity in a writing which is complete and clear and unambiguous upon its face,'" *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163, 565 N.Y.S.2d 440, 443 (N.Y. 1990). Nor do they dispute that parol evidence is inadmissible regardless of whether it was created before or after the execution of the Agreement, *see, e.g., Slatt v. Slatt*, 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 646 (N.Y. 1985), or whether it is in the form of drafts of the agreement or of a party's "understanding" of the agreement. *See, e.g., American Para Prof. Sys., Inc. v. Hooper Holmes, Inc.*, 13 A.D.3d 167, 169, 787 N.Y.S.2d 227, 229 (1st Dep't 2004); *Brainard v. N.Y. Cent. R.R. Co.*, 242 N.Y. 125, 133 (N.Y. 1926). Unable to dispute this black letter law, defendants argue that the documents attached to Mr. Ederer's declaration show "course of conduct." (Defs. Mem. 9 n.3). But the cases they cite only look to course of conduct after first having determined that the contract at issue was ambiguous.[9] Here, the contract is not ambiguous, so such evidence is inadmissible. Moreover, the documents defendants rely on do not reflect any *conduct* by the parties. Rather, the documents are drafts and some post-Agreement documents (some of which are clearly inadmissible hearsay) that use the term "trademarks" as just a shorthand for the assets that were actually sold (as opposed to businesses and tangible assets of Joseph Abboud).

---

[8] (...continued)
benefits, or in a securities fraud action, "a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies" for its claims, or where there are "public disclosure documents required by law to be and which actually have been filed with the SEC." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). That is hardly the case here – in fact, it is quite the opposite.

[9] *IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 26 F.3d 370, 374 (2d Cir. 1994); *Ocean Transp. Line, Inc. v. Am. Philippine Fiber Indus., Inc.*, 743 F.2d 85, 89(2d Cir. 1984); *Time Warner Cable of N.Y.C. v. City of New York*, 943 F. Supp. 1357, 1390 (S.D.N.Y. 1996); *Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 43, 691 N.Y.S.2d 508, 512 (1st Dep't 1999).

In all events, the documents do not support defendants' theory that all that was sold were "trademarks." None states that the other six items expressly sold in the agreement – names, trade names, service marks, logos, insignias and designations – were *not* sold. Indeed, the headline of one of the documents, a press release, is "GFT Net (HdP) acquires Joseph Abboud" (Ederer Dec. Ex. O (DX-178)), which defendants notably failed to disclose in their brief. Also directly contrary to defendants' theory that only "trademarks" were sold is another document in which Mr. Abboud writes to the CEO of GFT, the then owner of JA Apparel, that his decision to sell was **emotional**, because I am *relinquishing my name* (albeit for a large sum)." (Ederer Dec. Ex. J (DX-009) p.3) (first emphasis by Mr. Abboud; second emphasis added). In another document defendants fail to cite, Mr. Abboud's attorney, Mr. Dinsmoor, correctly advised Jack Victor that "Joe's *name* cannot be used on a hangtag, as such use *would constitute a trademark infringing on JA Apparel's trademark rights*." (PX-152) (emphasis added). And, as if all of this were not enough, Mr. Dinsmoor, in yet another letter, acknowledged: "In this regard, Mr. Abboud understands that any effort on his part to pursue his trade as a designer of apparel could not include his use of the name 'Joseph Abboud' or any of the other trademarks conveyed to JA Apparel." (PX-347).

Given that the documents are not admissible with respect to either motion, why did defendants submit them? The reason is clear. Defendants know the documents are inadmissible, but they wanted to find some mechanism – any mechanism – to put them before the Court that is acting as the fact finder. This is clearly improper and should not be countenanced.[10]

---

[10] That defendants' submission of Mr. Ederer's inadmissible declaration was purely tactical is seen most clearly in the context of their unexplained eleventh-hour decision to cancel the deposition of plaintiff's rebuttal witness on parol matters – Jeffrey LaGueux – who negotiated the contracts for the buyers. It is obvious that defendants did not want there to be a first-hand record of the expressed intention of the other party to the contract, which, of course, would have contradicted Mr. Ederer's argumentative and selective recitation of record and third-hand facts.

## CONCLUSION

For the foregoing reasons, JA Apparel and Mr. Staff's motion *in limine* to preclude the admission of parol evidence, in the form of testimony and documents, should be granted, defendants' motion for judgment on the pleadings should be denied, and defendants' motion to strike the declaration of Louis S. Ederer should be granted.

Dated: February 19, 2008  
       New York, New York

**KAYE SCHOLER LLP**

By: _____  
    Thomas A. Smart  
    Phillip A. Geraci  
425 Park Avenue  
New York, New York  10022  
(212) 836-8000  
*Attorneys for Plaintiff and Counterclaim-*  
  *Defendants*

*Of counsel:*

  John D. Geelan  
  Richard A. De Sevo  
  Victoria Haje  
  Patricia Ryder