UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JA APPAREL CORP., | |
| Plaintiff, | Civil Action No. 07 CV 07787 (THK) |
| v. | |
| JOSEPH ABBOUD, HOUNDSTOOTH CORP., and HERRINGBONE CREATIVE SERVICES, INC., | |
| Defendants. | |
| JOSEPH ABBOUD, HOUNDSTOOTH CORP., and HERRINGBONE CREATIVE SERVICES, INC., | |
| Counterclaim-Plaintiffs, | |
| v. | |
| JA APPAREL CORP. and MARTIN STAFF, | |
| Counterclaim-Defendants. | |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANTS'
MEMORANDUM OF LAW IN RESPONSE TO "DEFENDANTS
AND COUNTERCLAIM PLAINTIFFS' BENCH MEMORANDUM
ON USE OF DESCRIPTIVE TERMS IN THEIR DESCRIPTIVE SENSE"**

KAYE SCHOLER LLP
425 Park Avenue
New York, New York  10022
(212) 836-8000
*Attorneys for Plaintiff and Counterclaim-
Defendant JA Apparel Corp. and
Counterclaim-Defendant Martin Staff*

31616369.WPD

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Defendants Sold Any Right to "Fair Use" of "Joseph Abboud" . . . . . . . . . . . . . 2

      B.    Defendants' Proposed Ads Do Not Make a "Fair Use" of "Joseph Abboud" . . . . 5

      C.    Defendants' Irrelevant Right of Publicity Discussion . . . . . . . . . . . . . . . . . . . . . . 12

      D.    The First Amendment Does Not Immunize Defendants' Breach
           of Contract and Trademark Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **TABLE OF AUTHORITIES**

**Page(s)**

*815 Tonawanda St. Corp. v. Fay's Drug Co.,*
    842 F.2d 643 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Adrian v. Unterman,*
    281 A.D.81, 118 N.Y.S.2d 121 (1st Dep't 1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Application of Colonial Stores Inc.,*
    394 F.2d 549 (C.C.P.A. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Bates v. State Bar of Ariz.,*
    433 U.S. 350 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Capital Cities Cable, Inc. v. Crisp,*
    467 U.S. 691 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Car-Freshener Corp. v. S.C. Johnson & Son, Inc.,*
    70 F.3d 267 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Castrol, Inc. v. Pennzoil Co.,*
    987 F.2d 939 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Champion Spark Plug Co. v. Champion,*
    23 F. Supp. 638 (E.D. Mich. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Charcoal Steak House of Charlotte, Inc. v. Staley,*
    139 S.E.2d 185 (N.C. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Colgate-Palmolive Co. v. Tullos,*
    219 F.2d 617 (5th Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Comdisco, Inc. v. Home Insurance Co.,*
    1996 U.S. Dist. LEXIS 304 (S.D.N.Y. Jan. 16, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cosmetically Sealed Industrial, Inc. v. Chesebrough-Pond's USA Co.,*
    125 F.3d 28 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,*
    604 F.2d 200 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dolby v. Robertson,*
    654 F. Supp. 815 (N.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Page(s)**

*Eli Lilly & Co. v. Revlon, Inc.,*
   577 F. Supp. 477 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Factors Etc. v. Pro Arts, Inc.,*
   579 F.2d 215 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gucci v. Gucci Shops, Inc.,*
   688 F. Supp. 916 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Guth v. Guth Chocolate Co.,*
   224 F. 932 (4th Cir. 1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.,*
   202 F.2d 866 (2d Cir. 1953) (5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hard Rock Cafe International v. Morton,*
   1999 U.S. Dist. LEXIS 8340 (S.D.N.Y. June 2, 1999) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Home Box Office, Inc. v. Showtime/The Movie Channel Inc.,*
   832 F.2d 1311 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,*
   543 U.S. 111 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 11

*Kiki Undies Corp. v. Alexander's Department Stores, Inc.,*
   390 F.2d 604 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lazzaroni USA Corp. v. Steiner Foods,*
   2006 U.S. Dist. LEXIS 20962 (D.N.J. Apr. 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Levitt Corp. v. Levitt,*
   593 F.2d 463 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Lois Sportswear v. Levi Strauss & Co.,*
   799 F.2d 867 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Madrigal Audio Laboratories, Inc. v. Cello, Ltd.,*
   799 F.2d 814 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Major League Baseball Properties, Inc. v. Sed Olet Denarius, Ltd.,*
   1990 U.S. Dist. LEXIS 13108 (S.D.N.Y. Oct. 5, 1990) . . . . . . . . . . . . . . . . . . . . . . . 11

**Page(s)**

*Max Factor & Co. v. Max Factor,*
226 F. Supp. 120 (S.D. Cal. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Merrill Lynch Commodities Inc. v. Richal Shipping Corp.,*
581 F. Supp. 933 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Minnesota Mining & Manufacturing Co. v. Johnson & Johnson,*
454 F.2d 1179 (C.C.P.A. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Muzak Corp. v. Hotel Taft Corp.,*
1 N.Y.2d 42, 150 N.Y.S.2d 171, 1956) N.Y. 171, 1956); Y. 1956 . . . . . . . . . . . . . . . . . 4

*Namad v. Salomon Inc.,*
74 N.Y.2d 751, 545 N.Y.S.2d 79 (N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*New York Mercantile Exch., Inc. v. Intercontinental Exch., Inc.,*
289 F. Supp. 2d 527 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nipon v. Leslie Fay Cos. (In re Leslie Fay Cos.),*
216 B.R. 117 (Bankr. S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*In re R.M.J.,*
455 U.S.191 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shirai v. Blum,*
239 N.Y. 172 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Soweco, Inc. v. Shell Oil Co.,*
617 F.2d 1178 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stephano v. News Group Publications, Inc.,*
64 N.Y.2d 174, 485 N.Y.S.2d 220 (N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stix Products v. United Merchants & Mfgrs., Inc. v. Firestone Tire & Rubber Co.,*
295 F. Supp. 479 (S.D.N.Y. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Susy Products v. Greeman,*
140 N.Y.S.2d 904 (Sup. Ct. N.Y. Cnty 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Taylor Wine Co. v. Bully Hill Vineyards, Inc.,*
569 F.2d 731 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Page(s)**

*Topps Chewing Gum, Inc. v. Fleer Corp.*,
    799 F.2d 851 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*U.S. Shoe Corp. v. Brown Group, Inc.*,
    740 F. Supp. 196 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Venetianaire Corp. v. A&P Import Co.*,
    429 F.2d 1079 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Virgin Enterprises Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Warner Publication, Inc. v. Popular Publ'ns*,
    87 F.2d 913 (2d Cir. 1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*William R. Warner & Co. v. Eli Lilly & Co.*,
    265 U.S. 526 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Statutes**

15 U.S.C. § 1115(a)-(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 1115(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

15 U.S.C. § 1125(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. § 1127 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Treatises**

*McCarthy on Trademarks* (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## PRELIMINARY STATEMENT

Defendants' "bench memo" ("Defs. Mem.") is their fifth attempt[1] to explain why, even though Mr. Abboud sold "all . . .right, title and interest" to the "name" "Joseph Abboud," and "all rights to use" the "designations" "by Joseph Abboud" or "designed by Joseph Abboud," "or anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols" (PX-001 ¶ 1.1(a)), he should nonetheless be permitted to advertise his new jaz line using the designation "by the award-winning designer Joseph Abboud," or similar phrase, such as "a new composition by designer Joseph Abboud." Plainly, the designation "by the award winning designer Joseph Abboud" not only uses the name "Joseph Abboud," but also is a barely discernable variation of "by Joseph Abboud" and "designed by Joseph Abboud" and, thus, is "similar thereto" or "derivative thereof."

Because the plain and unambiguous language of the Purchase and Sale Agreement prohibits Mr. Abboud from using his name in an advertisement and from using the designation "by the award-winning designer Joseph Abboud," there is no need for the Court to consider Mr. Abboud's purported affirmative defense of "fair use." The Agreement contains no exception for so-called "fair use" of "Joseph Abboud" – let alone for such use in advertisements for products that are directly competitive with JA Apparel's JOSEPH ABBOUD products. Nor can there be any doubt that JA Apparel never would have paid $65.5 million to Mr. Abboud if Mr. Abboud or Mr.

---

[1]    *See* Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, Oct. 10, 2007 (Dkt. Entry 11); Defendants and Counterclaim-Plaintiffs' Proposed Findings of Fact and Conclusions of Law, Feb. 14, 2008; Defendants and Counterclaim-Plaintiffs' Memorandum of Law in Support of Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiffs' Motion *in Limine* to Preclude the Admission of Parol Evidence, Feb. 14, 2008 (Dkt. Entry 33); Defendants and Counterclaim Plaintiffs' Trial Brief, Feb. 19, 2008 (Dkt. Entry 37).

Dinsmoor had stated that they believed that, at the end of the non-compete period, Mr. Abboud could resume using his name in advertising in competition with JA Apparel's JOSEPH ABBOUD goods.

Moreover, even if, contrary to fact, Mr. Abboud had sold only the rights to use the name "Joseph Abboud" and the designations "by Joseph Abboud" and "by designer Joseph Abboud" as trademarks, defendants could not establish their affirmative use of fair use because they are attempting to fit a square peg into a round hole. Using the name Joseph Abboud to "describe," in his words, the "source" of his new line of mens' apparel (Trial Transcript ("TT") 580), is, on its face, a trademark use, not a fair use. Nor can defendants cite any case that under the fair use doctrine permits a designer who has sold his name to use his name to indicate the source of his products.

As the Second Circuit has explained, "[t]o protect the property interest of the purchaser, . . . the courts will be especially alert to foreclose attempts by the seller to 'keep for himself the essential thing he sold, and also keep the price he got for it.'" *Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979) (quoting *Guth v. Guth Chocolate Co.*, 224 F. 932, 934 (4th Cir. 1915)). The two mock-ups provided by defendants confirm that is exactly what Mr. Abboud is attempting to do -- keep for himself the essential thing he sold and the price he got for it.

## ARGUMENT

### A.  DEFENDANTS SOLD ANY RIGHT TO "FAIR USE" OF "JOSEPH ABBOUD"

As we have explained several times before, paragraph 1.1(a) of the Agreement unambiguously provides that "all" of the designated assets are transferred to JA Apparel – *i.e.*, "all" "right, title and interest" to the "names, trademarks, trade names, service marks, logos, insignias and designations" identified on Schedule 1.1(a)(A), and all trademark registrations and applications therefor, and the goodwill related thereto"; "all" "licenses to use the Trademarks granted by Houndstooth or Abboud"; and "all" "rights *to use* and apply for the registration of new trade names, trade-

marks, service marks, logos, insignias and designations containing the words 'Joseph Abboud,' 'designed by Joseph Abboud,' 'by Joseph Abboud,' 'JOE' or 'JA,' or anything similar thereto or derivative thereof, either alone or in conjunction with other words or symbols . . . for any and all products or services." (PX-001 ¶ 1.1(a)(A)-(C)) (emphasis added).

When read together, these provisions transferred *all* present and future interests in the JOSEPH ABBOUD intellectual property. In fact, through paragraph 1.1(a)(C), in specifically enumerating "by Joseph Abboud" and "designed by Joseph Abboud," Mr. Abboud sold the very "informational" right defendants are claiming was withheld. Defendants' proposed mock-ups use the phrase "by the award-winning designer Joseph Abboud," which is a barely discernible variation of "Joseph Abboud," "designed by Joseph Abboud," and "by Joseph Abboud," and plainly is "similar thereto" and "derivative thereof." The mock-ups, thus, clearly breach paragraph 1.1(a)(C). Moreover, by using the name "Joseph Abboud," the proposed mockup also breaches paragraph 1.1(a)(A) in which Mr. Abboud transferred to JA Apparel "all right, title and interest" in the name "Joseph Abboud."

In addition, nowhere do defendants tell the Court why it can disregard the clear and unambiguous word "designation" in paragraph 1.1(a)(C). Even assuming that defendants' proposed use of "by the award-winning designer Joseph Abboud" does not rise to the level of technical trade-mark use – which it plainly does (*see* pp. 10-11, *infra*) – these words clearly constitute a "designation," which Mr. Abboud expressly transferred to JA Apparel. Significantly, not in any of their four briefs nor at trial have defendants even once explained why the Court should (i) assume that the words "trade names," "service marks, logos, insignias and designations" can be read out of paragraph 1.1(a)(C) and (ii) ignore the normal rules of contract construction under which each word is presumed

to have separate meaning.[2] Indeed, the dictionary definition of "designation" is "the act of indicating or identifying." (http://www.merriam-webster.com/dictionary/designation). Nor do defendants point to any language in the Agreement that says that JA Apparel is buying designations that rise to technical trademark use, but not any designations that do not rise to technical trademark use.

It is well settled that "the language of a business contract must be construed in light of what a businessman would reasonably expect to give or receive, or to perform or suffer, under its terms." *Shirai v. Blum*, 239 N.Y. 172, 179 (1924). *Accord, Comdisco, Inc. v. Home Ins. Co.*, 1996 U.S. Dist. LEXIS 304, *9-10 (S.D.N.Y. Jan. 16, 1996); *Merrill Lynch Commodities Inc. v. Richal Shipping Corp.*, 581 F. Supp. 933, 939 n.14 (S.D.N.Y. 1984). No one could reasonably assume that at the very time JA Apparel was buying *"all rights to use"* "Joseph Abboud," "by Joseph Abboud" and "designed by Joseph Abboud," "or anything similar thereto or derivative thereof," it was not purchasing the right to use the very same phrases in an advertisement so long as such use did not rise to technical trademark use. It defies reality to believe for one minute that JA Apparel would have paid $65.5 million for such an elusive right. Yet the entirety of defendants' defense rests on this breathtaking assertion.

Defendants also seek to find significance in the fact that the Agreement does not use the term "exclusive" with respect to the transfer of the right to use Mr. Abboud's "name." (Defs. Mem. 3 n.2). But the Agreement clearly and unequivocally transfers *"all"* "right, title and interest" in the "name" "Joseph Abboud," which is Mr. Abboud's name. There is nothing ambiguous about the word "all," or about the words "right, title and interest." Nor does JA Apparel contend that Mr.

---

[2]      *See, e.g., Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 174 (N.Y. 1956) (the "rules of construction of contracts require us to adopt an interpretation which gives meaning to *every* provision of a contract or, in the negative, no provision of a contract should be left without force and effect") (emphasis added); *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753, 545 N.Y.S.2d 79, 80 (N.Y. 1989) (any construction of contract that would render a term a "nullity" is "untenable" under New York contract law).

Abboud transferred the "exclusive" right to use, in defendants' counsel's phrase, Mr. Abboud's "personal name." Obviously, he did not transfer his right to use his name for a driver's license, marriage license, Social Security number, credit card, doctor's appointment, or other personal affairs. He did, however, transfer "all" rights to use it commercially for "all" products and services. And that is the end of the matter.

## B.    DEFENDANTS' PROPOSED ADS DO NOT MAKE A "FAIR USE" OF "JOSEPH ABBOUD"

Defendants assert that their proposed use of "Joseph Abboud" in their mock-ups of ads meets their burden under the affirmative defense of "fair use" in 15 U.S.C. § 1115(b)(4).[3] In particular, they assert that their proposed use of "the name "Joseph Abboud" is "use of a descriptive term" in that it "communicate[s] truthful and valuable commercial information concerning the quality, value, characteristics, and/or attributes of goods." (Defs. Mem. 1). But the very cases defendants cite demonstrate that defendants' proposed use is not a descriptive one.

As the predecessor to the Federal Circuit explained in a decision on which defendants rely, a mark is descriptive if it "*merely* denotes the ingredients, quality or composition of an article" and held that "SUGAR & SPICE" was *not* descriptive because it did not merely describe the "ingredients, quality or composition" of baking products. *Application of Colonial Stores Inc.*, 394 F.2d 549, 551 (C.C.P.A. 1968) (emphasis added). Surely, if "SUGAR & SPICE" was *not* descriptive of the "ingredients, quality or composition" of baking products, then "Joseph Abboud" is not "descriptive" of the "ingredients, quality or composition" of products sold by Mr. Abboud.[4]

---

[3]    *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 123 (2004) (holding that defendant has burden of proof of fair use; reversing summary judgment for defendant).

[4]    Similarly, other cases defendants cite (Defs. Mem. 1, 4) make clear that the legal test for descriptive use is whether the use refers to the ingredients, quality or composition of the product, and not to the product's source, origin or designer. *See Minnesota Mining & Mfg. Co. v. Johnson & Johnson*, 454 F.2d 1179, 1181

(continued...)

Nor does *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir. 1997), support defendants' argument. In that case, the plaintiff used a "well known descriptive phrase," "Sealed with a Kiss," as its trademark. *Id.* at 30. By contrast, the defendants made "a clear[ly] . . . non-trademark use of words in their descriptive sense" by using the phrase "Seal it with a Kiss" as an "instruction to seal by kissing the complimentary postcard" referred to in a promotional display in which "the source of the defendants' product [wa]s clearly identified by the prominent display of the defendants' own trademarks" (*i.e.*, the defendants' product name was "in red block letters, at least twice the size of the lettering for 'Seal it with a Kiss!!'" and the brand name, CUTEX, was "in block letters three times the size of the 'Seal it' instruction"). *Id.* at 29-30. Also unavailing are the other cases on which defendants rely, which involved use of such clearly descriptive terms as "kicky" for ladies intimate apparel,[5] "lip repair cream" for lip treatment cream,[6] "larvicide" for a product for killing larvae,[7] "feels like a sneaker" as an advertising slogan for shoes,[8] "Coco-Quinine" for quinine containing chocolate,[9] or a "pine-tree shape" for a pine-scented plug-in

---

[4](...continued)
(C.C.P.A. 1972) ("SKIN VISIBLE" held "not merely descriptive" for adhesive tape for medical and surgical uses); *Warner Publ'n, Inc. v. Popular Publ'ns*, 87 F.2d 913, 914 (2d Cir. 1937) ("Ranch Romances" held merely descriptive of romantic stories of the West); *Charcoal Steak House of Charlotte, Inc. v. Staley*, 139 S.E.2d 185, 188 (N.C. 1964) ("charcoal steak house" held to be "literally descriptive of the product which both plaintiff and defendant" sell).

[5]    *Kiki Undies Corp. v. Alexander's Dep't Stores, Inc.*, 390 F.2d 604, 605 (2d Cir. 1968).

[6]    *Eli Lilly & Co. v. Revlon, Inc.*, 577 F. Supp. 477, 485-86 (S.D.N.Y. 1983).

[7]    *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1186-87 (5th Cir. 1980).

[8]    *U.S. Shoe Corp. v. Brown Group, Inc.*, 740 F. Supp. 196, 199 (S.D.N.Y. 1990).

[9]    *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528-29 (1924). Defendants misleadingly cite a quotation from *William Warner* that used the word "name." (Defs. Mem. at 5-6, quoting *William Warner*, 265 U.S. at 528). The Court, however, used "name" to refer to the name of a *product* – *i.e.*, quinine and chocolate – not to the name of a *person*. The case does not support the use of a person's name, as defendants are attempting to do here, to designate the source of a competitive product.

air freshener.[10]  In short, in each of these cases the fair use was the use of ordinary English words to describe the "ingredients, quality or composition" of a product, *Application of Colonial Stores*, 394 F.2d at 551, and not the source of the product.  Here, unlike the defendants in these cases, Mr. Abboud wants to make a clear trademark use of the JOSEPH ABBOUD name to identify himself, as Mr. Abboud testified at trial, as the "source" of his products.   (TT 580).

What is more, as the few cases defendants cite that involved the name of a person demonstrate by comparison, the use of his name that Mr. Abboud proposes in the mock-ups is anything but fair or descriptive.  Thus, in one case, the court enjoined one Max Factor because "it is the opinion of the court that he can*not* use his own name in the sale of ladies' hosiery without inevitably representing the hosiery he sells as that of the plaintiff."  *Max Factor & Co. v. Max Factor*, 226 F. Supp. 120, 127 (S.D. Cal. 1963) (emphasis added).  Similarly, in *Champion Spark Plug Co. v. Champion*, 23 F. Supp. 638, 641 (E.D. Mich. 1938), the court *enjoined* the defendant from using his name "Champion" "in connection with the business of manufacturing or spark plugs."  As for *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648-49 (2d Cir. 1988), the only issue there was whether the name "Fay" had developed secondary meaning and was protectible as a trademark.  There was no holding that an individual who had developed secondary meaning in a personal name, registered it as a trademark, and subsequently sold the name, could thereafter make a "fair use" of the name to describe the source of a new, competing product or business.

---

[10]    *Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995).  *See also Venetianaire Corp. v. A&P Import Co.*, 429 F.2d 1079 (2d Cir. 1970) (defendant's use of the descriptive word "hygienic" held infringing because of similarity of packaging); *New York Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 289 F. Supp.2d 527, 545 (S.D.N.Y. 2005) (defendant's use of "NYMEX" and "New York Mercantile Exchange" "merely to describe the economic aspects of its OTC contracts" held fair use); *Stix Prods. v. United Merchants & Mfgrs., Inc. v. Firestone Tire & Rubber Co.*, 295 F. Supp. 479 (S.D.N.Y. 1968) (defendant's use of "contact" in connection with self-adhesive plastic held infringing).

Here, the issue is not whether the Abboud trademarks have obtained secondary meaning; they plainly have. The issue is whether Mr. Abboud, after selling his name as a trademark, can turn around and make a "fair use" of that very name to identify Mr. Abboud as the designer of "jaz" clothes; *i.e.*, that, as Mr. Abboud testified at trial – "yes," he wants the public to know that he is the "*source* of the work." (TT 580) (emphasis added). If that is not a trademark use, nothing is. *See Lois Sportswear v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) (a claim for trademark infringement and false designation of origin under the Lanham Act "is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product"); *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (same).

None of the cases on which defendants rely involved a situation where, as here, a fashion designer or other person sold his name and then turned around and tried to use the name in competition with the buyer. Thus, in *Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. 1988), -- which did *not* involve the sale of a mark – it was only *after* an extensive analysis of the parties' agreements and the court's conclusion that the defendant's prior agreement not to use his name in competition was *not* binding, that the court addressed whether defendant's use of his name was fair. *Id.* at 920-25. And even then, the court required the defendant to use his full name – "Paolo Gucci" -- in comparison to the plaintiff's trademark and name "Gucci," and only after finding that there was "little if any chance that the consumer will believe he is purchasing a 'Gucci' product manufactured by defendant." *Id.* at 927.[11]  Such a finding could not possibly be made on the record here where

---

[11]    *See also Dolby v. Robertson*, 654 F. Supp. 815, 820-21 (N.D. Cal. 1986), which did not involve the sale of a mark, and where the court, in denying a preliminary injunction to the owners of Dolby Stereo that would have barred defendant, whose stage name was "Thomas Dolby," from using his full name, held that he "may not use the surname 'Dolby' alone."

both plaintiff and defendants will be using the identical "Joseph Abboud" name for almost identical goods and where defendants bear the burden of proof on their affirmative defense of fair use.

Nor is there even a hint in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004), that a designer who sold his name can thereafter use it regardless of the degree of confusion such use may cause. (*Compare* Defs. Mem. 6-7). Rather, the "question" in *KP Permanent Make-Up* – which did not involve the use of a person's name – was whether the defendant "has a burden to negate *any* likelihood that the practice complained of will confuse consumers about the origin of the goods or services affected." *Id*. at 114 (emphasis added). In answering that question in the negative, the Court stated that "we do not rule out the pertinence of the degree of consumer confusion under the fair use defense," and remanded the case for additional proceedings. *Id*. at 123. The Court was concerned that the Lanham Act not be used "to deprive commercial speakers of the ordinary utility of descriptive words" (*id*. at 122), not with whether someone who, as Mr. Abboud has done here, sold his name and then turns around and attempts to use the name in advertising in a way that is likely to confuse consumers and claims that this is somehow a "fair" use.

Defendants' assertion, that "Second Circuit decisions . . . clearly rule out any confusion analysis," is equally wide of the mark. (Defs. Mem. 7). *Madrigal* held that "an individual who sells a trade name may *not* thereafter falsely designate the origin of newly-produced products by using his name in such a way as to mislead the public into believing that those products are produced by the company which purchased the trade name." *Madrigal Audio Labs., Inc. v. Cello, Ltd*., 799 F.2d 814, 823 (2d Cir. 1986) (emphasis added). As we explained in detail in our proposed conclusions of law (*see* Plaintiff's Proposed Conclusions 34-35), the Court in *Madrigal* held that "[w]hether a person who sells the trade name rights to his personal name is barred from using the personal name depends on the terms of the sale," and the defendant Levinson was enjoined from

using on product labels or brochures (which are ads) the designation or phrase "Cello by Mark Levinson." *Id.* Here, the terms of the sale are clear that Mr. Abboud sold his name and agreed not to make any commercial use of it.

Moreover, in their memo defendants ignore *Levitt Corp. v. Levitt*, 593 F.2d 463 (2d Cir. 1979). There, the Second Circuit affirmed a wide-ranging injunction prohibiting William Levitt from using his name commercially and emphasized that where, as here, "the infringing party has previously sold his business, including use of the name and its goodwill, to the plaintiff, *sweeping injunctive relief* is more tolerable" than where the defendant simply has the same or similar name to the plaintiff's. *Id.* at 468-69, citing *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735 (2d Cir. 1978) ("the fact that an alleged infringer has previously sold his business with its goodwill to the plaintiff makes a sweeping injunction more tolerable"). Nor do defendants address that in *Nipon v. Leslie Fay Cos. (In re Leslie Fay Cos.)*, 216 B.R. 117, 123-25, 136 (Bankr. S.D.N.Y. 1997), where, on facts that fit this case like a designer glove, the court enjoined clothing designer Albert Nipon from using the tagline or designation "Executive Dress by Albert Nipon" in conjunction with the trademark AMERICAN POP, holding that Mr. Nipon previously had sold to plaintiff the trademarks in his name and the related goodwill.

Turning to the mock-ups themselves, they clearly use the name "Joseph Abboud" as an "attention-getting symbol," which constitutes a trademark use. *Lazzaroni USA Corp. v. Steiner Foods*, 2006 U.S. Dist. LEXIS 20962, *13-14 & n.1 (D.N.J. Apr. 10, 2006).[12] Put another way, there

---

[12]    While it is, at best, unclear what point defendants are attempting to make in their footnote (Defs. Mem. 8 n.4) regarding *Lazzaroni*, there is no gainsaying that after stating that the defendant sold trademark rights in his name, the court held that the defendant's use of his name as an "attention-getting symbol" in packaging, "sales materials," and a "price list" to indicate that the product was the "product of" the defendant is an infringing trademark use. *Lazzaroni*, 2006 U.S. Dist. LEXIS 20962, at *13-14 & n.1. Nor is there any basis for the suggestion that the use of the plaintiff's mark in an advertisement, as opposed to on the product
(continued...)

is nothing fair or descriptive about the mock-ups' use of "Joseph Abboud." The mock-ups do not use "Joseph Abboud" to describe a characteristic of a product as would be the case where, as in many of the cases defendants cite, someone has taken an every day English language word and turned it in to a trademark. Consistent with Mr. Abboud's testimony at trial that he wants consumers to know that he is the source of the "jaz" products, the use in the mock-ups of the name "Joseph Abboud" does not describe the characteristics of the "jaz" line, but, rather, designates its origin, which is the very function of a trademark. *See* 15 U.S.C. § 1127 ("The term 'trademark' includes any word, name, . . . used . . . to indicate the *source* of [his] goods. . . ."). Thus, courts have enjoined designers who have sold their names from coming back to the market and advertising their new brands with the designation "Executive Dress by Albert Nipon" and "Cello by Mark Levinson." *Nipon*, 216 B.R. at 119; *Madrigal*, 799 F.2d at 818. Likewise, the United States Patent and Trademark Office, recognizing that the designation "designed by__" designates the source of a product, repeatedly has granted applications to register trademarks consisting of the phrase "designed by__." *See, e.g.*, "Designed by Harvey R. Ball USA 1963," "Logic Bricks Designed by XYLON," "Simonton Says Designed by George Simonton," "Select Designed by EMG," MPRAPM Another Line Designed by Mikli," "Designed by Joyce C. Mitchell Nappy Jumpers," "Designed by Cecile Platovsky"). (PX-223).

The defendants have the burden of proof to demonstrate their fair use affirmative defense. *See KP Permanent Make-Up*, 543 U.S. at 123. Yet, they have offered not a shred of

---

[12](...continued)
or packaging, does not constitute trademark infringement. *See, e.g., McCarthy on Trademarks*, § 25:26 (2007); *Hard Rock Cafe Int'l v. Morton*, 1999 U.S. Dist. LEXIS 8340, *78 (S.D.N.Y. June 2, 1999) ("[a]dvertisements alone can constitute actionable use of a trademark"); *Major League Baseball Properties, Inc. v. Sed Olet Denarius, Ltd.*, 1990 U.S. Dist. LEXIS 13108, *10 (S.D.N.Y. Oct. 5, 1990) ("the use of [plaintiff's] marks in advertising, even without any attempts to sell, may dilute the distinctive quality of plaintiffs' marks").

evidence (1) that Mr. Abboud has an identifiable reputation among consumers apart from the JOSEPH ABBOUD brand or what percentage, if any, of consumers are aware of Mr. Abboud the individual, or (2) that consumers would not be confused by the mock-ups into believing (i) that the "award-winning designer Joseph Abboud" is also the source or origin of JA Apparel's JOSEPH ABBOUD products, or that he is a sponsor of, affiliated or connected with, or approves of JA Apparel's JOSEPH ABBOUD products,[13] or (ii) that the company that sells the JOSEPH ABBOUD brand is the source or origin of the "jaz" line by the "award-winning designer Joseph Abboud" or that that company is a sponsor of, affiliated or connected with, or approves of Mr. Abboud's products.[14]

In all events, to the extent that any consumers recognize the name "Joseph Abboud" because of Mr. Abboud's reputation as a designer, that is part of his goodwill he sold to JA Apparel when he sold the trademark Joseph Abboud. Simply put, because the name "Joseph Abboud" has been trademarked and become famous, it is ludicrous to believe that using the same name in an advertisement for "jaz" will not convey the same meaning as "Joseph Abboud" in JA Apparel's ads. In other words, it is neither in good faith nor *fair* to sell one's name for $65.5 million and then attempt to use that name in advertising in direct competition with the purchaser.

## C.   DEFENDANTS' IRRELEVANT RIGHT OF PUBLICITY DISCUSSION

Whatever it is defendants are trying to say with respect to Mr. Abboud's alleged "publicity rights" (Defs. Mem. 13-14), ignores that (1) publicity rights are a matter of state law; (2)

---

[13]    15 U.S.C. § 1125(a)(1); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979).

[14]    *Cf. Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1316 (2d Cir. 1987) (defendant has "heavy burden" of "com[ing] forward with evidence sufficient to demonstrate" that a disclaimer "would significantly reduce the likelihood of consumer confusion").

31616369.WPD                                              12

New York law governs here (*see* PX-001 ¶ 9.6); (3) it is black letter law that the "right of publicity

. . . is exclusively statutory in this State" and that there is no "independent common-law right of pu-

blicity," *Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174, 183, 485 N.Y.S.2d 220, 224

(N.Y. 1984); (4) JA Apparel is not using Mr. Abboud's photograph or likeness;[15] (5) Mr. Abboud

provided "written consent" to use of his name – indeed, he sold and transferred to JA Apparel "all

right, title and interest" in his name;[16] and (6) even if he had a right under state law to use the name

Joseph Abboud in connection with the marketing, advertising or sale of menswear or other products,

that right would be preempted by federal law because it would conflict with JA Apparel's "*exclusive*

right to use the registered [Joseph Abboud] mark[s] in commerce," 15 U.S.C. § 1115(a)-(b)

(emphasis added); *see, e.g., Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99 (1984).

## D.   THE FIRST AMENDMENT DOES NOT IMMUNIZE DEFENDANTS' BREACH OF CONTRACT AND TRADEMARK INFRINGEMENT

Defendants do not even purport to argue – nor could they – that the First Amendment

has any application to a situation where, as here, a party voluntarily contracted away his right to use

certain names, trademarks, trade names, service marks, logos, insignias, and designations.  In all

events, the law is well settled that the First Amendment provides no protection for false or deceptive

speech. *See, e.g., In re R.M.J.*, 455 U.S.191, 203 (1982) ("Misleading advertising may be prohibited

entirely."); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977) ("Advertising that is false, deceptive

or misleading of course is subject to restraint."); *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 949

(3d Cir. 1993) ("[I]t is well settled that false commercial speech is not protected by the First

---

[15]    *Compare Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851 (2d Cir. 1986); *Factors Etc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978); *Colgate-Palmolive Co. v. Tullos*, 219 F.2d 617 (5th Cir. 1955); *Haelan Labs., Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953)

[16]    *Compare Adrian v. Unterman*, 281 A.D.81, 118 N.Y.S.2d 121 (1st Dep't 1952); *Susy Prods. v. Greeman*, 140 N.Y.S.2d 904 (Sup. Ct. N.Y. Cnty 1955)

Amendment and may be banned entirely"). As the very case on which defendants rely states, "[o]bviously, much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We foresee no obstacle to a State's dealing effectively with this problem. The First Amendment, as we construe it today, does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976).

Here, because use of the "Joseph Abboud" name in the mock-ups is likely to cause confusion, there is no First Amendment impediment to enjoining such confusing use. Simply put, there is no constitutional right to confuse the public.

## CONCLUSION

For the foregoing reasons, defendants' proposed mock-up ads breach their obligations

under the Purchase and Sale Agreement and is not a fair use under 15 U.S.C. § 1115(b)(4).

Dated: March 14, 2008           KAYE SCHOLER LLP
      New York, New York

                             By: _____

*Of counsel:*                          Thomas A. Smart
                               Phillip A. Geraci
   John D. Geelan              425 Park Avenue
   Richard A. De Sevo       New York, New York  10022
   Victoria Haje              (212) 836-8000
   Patricia Ryder             *Attorneys for Plaintiff and Counterclaim-*
                               *Defendants*