Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Defendants and
Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

JA APPAREL CORP.,

         Plaintiff,

      v.

JOSEPH ABBOUD, HOUNDSTOOTH CORP.,
and HERRINGBONE CREATIVE
SERVICES, INC.,

         Defendants.

------------------------------------------------------- x
------------------------------------------------------- x

JOSEPH ABBOUD, HOUNDSTOOTH CORP.,
and HERRINGBONE CREATIVE
SERVICES, INC.,

         Counterclaim Plaintiffs,

      v.

JA APPAREL CORP. and MARTIN STAFF,

         Counterclaim Defendants.

------------------------------------------------------- x

Civil Action No. 07 CV 07787 (THK)

**DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS'
SUPPLEMENTAL PROPOSED
FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

# <u>APPENDIX A</u>

No. 03-409

# In the Supreme Court of the United States

KP PERMANENT MAKE-UP, INC., PETITIONER

*v.*

LASTING IMPRESSION, INC., ET AL.

*ON WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE NINTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS**
**AMICUS CURIAE SUPPORTING PETITIONER**

JAMES A. TOUPIN
  *General Counsel*
JOHN M. WHEALAN
  *Solicitor*
CYNTHIA C. LYNCH
NANCY C. SLUTTER
  *Associate Solicitors*
  *Patent and Trademark Office*
  *Arlington, VA  22215*

THEODORE B. OLSON
  *Solicitor General*
    *Counsel of Record*
PETER D. KEISLER
  *Assistant Attorney General*
THOMAS G. HUNGAR
  *Deputy Solicitor General*
PATRICIA A. MILLETT
  *Assistant to the Solicitor*
  *General*
ANTHONY J. STEINMEYER
ANTHONY A. YANG
  *Attorneys*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *(202) 514-2217*

## QUESTION PRESENTED

Whether the Lanham Act's fair use defense to trademark infringement, 15 U.S.C. 1115(b)(4), requires the party asserting the defense to demonstrate the absence of a likelihood of consumer confusion.

(I)

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Interest of the United States | 1 |
| Statement | 2 |
|   1. Legal framework | 2 |
|   2. Factual and procedural background | 8 |
| Summary of argument | 10 |
| Argument: | |
|   The fair use defense to trademark infringement under the Lanham Act does not require proof that consumers are not likely to be confused | 12 |
|   A. The text of the Lanham Act's fair use defense does not require proof by the defendant of the absence of a likelihood of confusion | 13 |
|   B. The context and overall structure of the Lanham Act's fair use defense demonstrate that the defendant need not prove the absence of a likelihood of confusion | 16 |
|     1. Requiring proof of non-confusion would render the affirmative defense superfluous | 16 |
|     2. The court of appeals' policy rationale fails | 18 |
|   C. No other considerations justify judicial supplementation of the fair use defense enacted by Congress | 24 |
|     1. Legislative history | 25 |
|     2. Common law | 26 |
| Conclusion | 30 |
| Appendix | 1a |

(III)

IV

TABLE OF AUTHORITIES

Cases:                                                                      Page

*Abercrombie & Fitch Co.* v. *Hunting World, Inc.*,
  537 F.2d 4 (2d Cir. 1976) ............................................ 3, 4, 24

*Armstrong Paint & Varnish Works* v. *Nu-Enamel*
  *Corp.*, 305 U.S. 315 (1938) ........................................ 26, 27

*Bates* v. *United States*, 522 U.S. 23 (1997) ...................... 15

*Beach* v. *Ocwen Fed. Bank*, 523 U.S. 410 (1998) ............. 15

*Beecham* v. *United States*, 511 U.S. 368 (1994) ............... 23

*Brother Records, Inc.* v. *Jardine*, 318 F.3d 900 (9th
  Cir.), cert. denied, 124 S. Ct. 155 (2003) ...................... 21

*Burger King* v. *Hoots*, 403 F.2d 904 (7th Cir.
  1968) .................................................................... 23

*Cairns* v. *Franklin Mint Co.*, 292 F.3d 1139
  (9th Cir. 2002) ................................................... 10, 19

*Car-Freshner Corp.* v. *S.C. Johnson & Son, Inc.*,
  70 F.3d 267 (2d Cir. 1995) ..................................... 21

*Champions Golf Club, Inc.* v. *The Champions Golf
  Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996) ................... 3

*Cosmetically Sealed Indus.* v. *Chesebrough-Pond's
  USA Co.*, 125 F.3d 28 (2d Cir. 1997) ...................... 18, 21

*Director, Office of Workers' Comp. Programs* v.
  *Newport News Shipbuilding & Dry Dock Co.*,
  514 U.S. 122 (1995) .............................................. 20

*Doe* v. *Chao*, 124 S. Ct. 1204 (2004) ........................ 18, 19

*Elkins* v. *United States*, 364 U.S. 206 (1960) ............... 29

*EMI Catalogue Partnership* v. *Hill, Holliday,
  Connors, Cosmopulos Inc.*, 228 F.3d 56 (2d Cir.
  2000) .................................................................. 14

*Forstmann Woolen Co.* v. *Murray Sices Corp.*,
  10 F.R.D. 367 (S.D.N.Y. 1950) ............................... 7

*Franklin Knitting Mills, Inc.* v. *Fashionit Sweater
  Mills, Inc.*, 297 F. 247 (S.D.N.Y. 1923), aff'd,
  4 F.2d 1018 (2d Cir. 1925) ..................................... 26

V

| Cases—Continued: | Page |
|---|---|
| *Green* v. *Bock Laundry Mach. Co.,* 490 U.S. 504 (1989) | 28 |
| *Holiday Inn* v. *Holiday Inns, Inc.,* 534 F.2d 312 (C.C.P.A. 1976) | 5 |
| *Howe Scale Co.* v. *Wyckoff, Seamans, & Benedict,* 198 U.S. 118 (1905) | 27 |
| *Institute for Scientific Infor., Inc.* v. *Gordon & Breach, Science Publishers, Inc.,* 931 F.2d 1002 (3d Cir.), cert. denied, 502 U.S. 909 (1991) | 21 |
| *James Burrough Ltd.* v. *Sign of Beefeater, Inc.,* 540 F.2d 266 (7th Cir. 1976) | 5 |
| *John Hancock Mut. Life Ins. Co.* v. *Harris Trust & Sav. Bank,* 510 U.S. 86 (1993) | 25 |
| *Keene Corp.* v. *United States,* 508 U.S. 200 (1993) | 15 |
| *Lamie* v. *United States Trustee,* 124 S. Ct. 1023 (2004) | 15 |
| *Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998) | 25 |
| *Lindy Pen Co.* v. *Bic Pen Corp.,* 725 F.2d 1240 (9th Cir. 1984), cert. denied, 469 U.S. 1188 (1985) | 19 |
| *Mil-Mar Shoe Co.* v. *Shonac Corp.,* 75 F.3d 1153 (7th Cir. 1996) | 18 |
| *Moseley* v. *V Secret Catalogue, Inc.,* 537 U.S. 418 (2003) | 6, 12 |
| *PACCAR, Inc.* v. *TeleScan Techs., LLC,* 319 F.3d 243 (6th Cir. 2003) | 29-30 |
| *Packman* v. *Chicago Tribune Co.,* 267 F.3d 628 (7th Cir. 2001) | 17 |
| *Park `N Fly, Inc.* v. *Dollar Park & Fly, Inc.,* 469 U.S. 189 (1985) | *passim* |
| *Pebble Beach Co.* v. *Tour 18 I Ltd.,* 155 F.3d 526 (5th Cir. 1998) | 19 |
| *Prestonettes, Inc.* v. *Coty,* 264 U.S. 359 (1924) | 4, 28 |
| *Qualitex Co.* v. *Jacobson Prods. Co.,* 514 U.S. 159 (1995) | 12, 20 |

VI

| Cases—Continued: | Page |
|---|---|
| *Resorts of Pinehurst, Inc.* v. *Pinehurst Nat'l Corp.*, 148 F.3d 417 (4th Cir.), cert. dismissed, 515 U.S. 1051 (1998) .................................................... | 23 |
| *Rodriguez* v. *United States*, 480 U.S. 522 (1987) ............. | 20 |
| *San Francisco Arts & Athletics, Inc.* v. *United States Olympic Comm.*, 483 U.S. 522 (1987) ................................ | 6 |
| *Shakespeare Co.* v. *Silstar Corp.*, 110 F.3d 234 (4th Cir. 1997), cert. denied, 522 U.S. 1046 (1998) ........... | 17 |
| *Smith* v. *United States*, 508 U.S. 223 (1993) ..................... | 16 |
| *Soweco, Inc.* v. *Shell Oil Co.*, 617 F.2d 1178 (5th Cir. 1980), cert. denied, 450 U.S. 981 (1981) .... | 3, 17-18, 19, 24 |
| *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.*, 220 U.S. 446 (1911) ................................................... | 27 |
| *Sugar Busters, LLC* v. *Brennan*, 177 F.3d 258 (5th Cir. 1999) .................................................................. | 19 |
| *SunAmerica Corp.* v. *Sun Life Assurance Co.*, 77 F.3d 1325 (11th Cir.), cert. denied, 519 U.S. 822 (1996) .................................................................. | 23 |
| *Sunmark, Inc.* v. *Ocean Spray Cranberries, Inc.*, 64 F.3d 1055 (7th Cir. 1995) .................................. | 18, 30 |
| *Thaddeus Davids Co.* v. *Davids*, 233 U.S. 461 (1914) ................................................................. | 27 |
| *Thrifty Rent-A-Car Sys., Inc.* v. *Thrift Cars, Inc.*, 831 F.2d 1177 (1st Cir. 1987) .............................. | 22, 23, 24 |
| *Time, Inc.* v. *Petersen Publ'g Co.*, 173 F.3d 113 (2d Cir. 1999) ...................................................... | 17 |
| *TMT North Am., Inc.* v. *Magic Touch GmbH*, 124 F.3d 876 (7th Cir. 1997) .................................. | 3, 23 |
| *TrafFix Devices, Inc.* v. *Marketing Displays, Inc.*, 532 U.S. 23 (2001) .................................................. | 19 |
| *Transgo, Inc.* v. *Ajac Transmission Parts Corp.*, 911 F.2d 363 (9th Cir. 1990) ................................. | 19 |

VII

Cases—Continued:                                                      Page

*Two Pesos, Inc.* v. *Taco Cabana, Inc.*, 505 U.S.
763 (1992) ................................................................    3, 5-6, 12, 17
*United Drug Co.* v. *Theodore Rectanus Co.*, 248
U.S. 90 (1918) ........................................................    22
*United States* v. *Nordic Village, Inc.*, 503 U.S. 30
(1992) ........................................................................    18
*United States* v. *Reese*, 92 U.S. 214 (1875) ..................    30
*United States* v. *Ron Pair Enters., Inc.*, 489 U.S.
235 (1989) ................................................................    13
*Value House* v. *Phillips Mercantile Co.*, 523 F.2d 424
(10th Cir. 1975) ......................................................    7
*Vornado Air Circulation Sys., Inc.* v. *Duracraft
Corp.*, 58 F.3d 1498 (10th Cir. 1995), cert. denied,
516 U.S. 1067 (1996) ..............................................    20
*Wal-Mart Stores, Inc.* v. *Samara Bros.*, 529 U.S.
205 (2000) ................................................................    3, 13, 29
*William R. Warner & Co.* v. *Eli Lilly & Co.*, 265
U.S. 526 (1924) ........................................................    27
*Zatarains, Inc.* v. *Oak Grove Smokehouse, Inc.*,
698 F.2d 786 (5th Cir. 1983) ..................................    19

Treaties and statutes:

Agreement on Trade Related Aspects of Intellectual
Property Rights, Apr. 15, 1994, Annex 1C, Art. 17,
33 I.L.M. 1197 (1994) ............................................    15-16
Paris Convention for the Protection of Industrial
Property of Mar. 20, 1983, as revised on July 14,
1967, Art. 10(3)(1), 21 U.S.T. 1629, 828 U.N.T.S. 305 ......    6
Trademark Act of 1946 (Lanham Act), ch. 540,
60 Stat. 427, (15 U.S.C. 1051 *et seq.*) ....................    1, 2
15 U.S.C. 1051(a)(3)(D) ........................................    15
15 U.S.C. 1051(b)(3)(D) ........................................    15
15 U.S.C. 1052(a) ..................................................    5
15 U.S.C. 1052(b) ..................................................    5

VIII

Statutes—Continued:                                                Page

         15 U.S.C. 1052(c) .................................................................... 6
         15 U.S.C. 1052(d) .................................................................... 15
         15 U.S.C. 1052(f) ..................................................................... 4
         15 U.S.C. 1057(b) .................................................................... 4
         15 U.S.C. 1064(3) ............................................................. 3, 5, 7
         15 U.S.C. 1065 .................................... 4, 5, 8, 9, 10, 1a
         15 U.S.C. 1065(4) .............................................................. 4, 2a
         15 U.S.C. 1066 ......................................................................... 15
         15 U.S.C. 1114 .......................................................................... 3a
         15 U.S.C. 1114(1) .................................................. 5, 6, 15, 17, 3a
         15 U.S.C. 1115 ................................................................. 7, 16, 8a
         15 U.S.C. 1115(a) ......................................................... 4, 6, 7, 17, 8a
         15 U.S.C. 1115(b) .................................................................. *passim*
         15 U.S.C. 1115(b)(1) .......................................................... 22, 9a
         15 U.S.C. 1115(b)(2) .......................................................... 22, 9a
         15 U.S.C. 1115(b)(3) ................................................................. 22
         15 U.S.C. 1115(b)(1)-(3) ................................................... 7, 8, 9a
         15 U.S.C. 1115(b)(3) .................................................................. 2
         15 U.S.C. 1115(b)(4) .............................. 1, 6, 13, 14, 21, 9a
         15 U.S.C. 1115(b)(5) ......................................................... 8, 23, 9a
         15 U.S.C. 1115(b)(5)-(9) .................................................. 8, 9a-10a
         15 U.S.C. 1115(b)(6) ......................................................... 8, 10a
         15 U.S.C. 1115(b)(7) ......................................................... 22, 10a
         15 U.S.C. 1115(b)(8) ......................................................... 22, 10a
         15 U.S.C. 1115(b)(9) ...................................................... 22, 23, 10a
         15 U.S.C. 1122(a) ...................................................................... 2
         15 U.S.C. 1125(a) ...................................................................... 4
         15 U.S.C. 1125(a)(1)(A) ......................................... 6, 15, 17
         15 U.S.C. 1127 ................................. 2, 3, 14, 15, 20, 11a
Trademark Law Revision Act of 1988, Pub. L. No.
  100-667, § 128(a)(4), 102 Stat. 3944 ...................................... 7
      § 128(b)(1), 102 Stat. 3945 ................................................. 7
Australian Trade Marks Act of 1995, as amended
  in 2003, Sec. 122 ...................................................................... 16
European Council Regulation No. 40/94 on the
  Community Trademark, Dec. 20, 1993, Art. 12.................... 16

IX

Miscellaneous:                                                    Page

    *Black's Law Dictionary* (5th ed. 1979) ....................................    17
    134 Cong. Rec. (1988):
        p. 11,073 .............................................................    7
        p. 31,851 .............................................................    7
    Stephen Elias, *Patent Copyright and Trademark*
      (1996) .......................................................................    3
    3 Jerome Gilson, et al., *Trademark Protection and*
      *Practice* (2001) ....................................................    20
    *Hearings on H.R. 102, H.R. 5461, and S. 895 Before*
      *the Subcomm. on Trade-Marks of the House Comm.*
      *on Patents,* 77th Cong., 1st Sess. (1941) .............    23, 25, 26, 29
    H.R. 5461, 77th Cong., 1st Sess. (1941) .............................    25
    H.R. Rep. No. 944, 76th Cong., 1st Sess. (1939) ...............    2, 9
    H.R. Rep. No. 219, 79th Cong., 1st Sess. (1945) ..............    2
    http://www.kpmakeup.com/colorcharts.html .......................    9
    J. Thomas McCarthy, *McCarthy on Trademarks*
      *& Unfair Competition* (2003):
        Vol. 1 ...................................................................    26
        Vol. 2 ...................................................................    19
    Restatement (Third) of Unfair Competition
      (1993) ................................................    4, 14, 20, 21, 27, 28
    S. Rep. No. 515, 100th Cong., 2d Sess. (1988) .................    7
    S. Rep. No. 1333, 79th Cong., 2d Sess. (1946) .................    2
    *Trade-marks: Hearings on H.R. 4744 Before the*
      *Subcomm. on Trade-Marks of the House Comm. on*
      *Patents,* 76th Cong., 1st Sess. (1939) .......................    5
    *Trademark Law Revision Act of 1987: Hearing on*
      *S. 1883 Before the Subcomm. on Patents, Copyrights*
      *and Trademarks of the Senate Comm. on the*
      *Judiciary,* 100th Cong., 2d Sess. (1988) ...................    7

# In the Supreme Court of the United States

No. 03-409

KP PERMANENT MAKE-UP, INC., PETITIONER

*v.*

LASTING IMPRESSION, INC., ET AL.

*ON WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE NINTH CIRCUIT*

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PETITIONER

### INTEREST OF THE UNITED STATES

This case concerns whether the Lanham Act's fair use defense in a trademark infringement case, 15 U.S.C. 1115(b)(4), requires the defendant not only to prove the statutory elements of the fair use defense, but also to demonstrate that the defendant's activity has no likelihood of causing consumer confusion as to the source of goods or services.[1] The United States Patent and Trademark Office plays a central role in the administration of the federal trademark system. See 15 U.S.C. 1051 *et seq.* Further, the United States government has a substantial interest in ensuring that federal trademark protection comports with Congress's carefully calibrated approach in the Lanham Act to advancing consumer welfare through promoting competition, enhancing the fairness and reliability of product information, and protecting consumers against confusion in the marketing of goods and services. In addition, the United States and its

---

[1] While trademark infringement claims can be raised both by plaintiffs and by defendants as counterclaims, for ease of reference, this brief refers to the party asserting the trademark infringement claim as a "plaintiff" and the party defending against that claim as a "defendant."

2

agencies are subject to liability under the Lanham Act, 15 U.S.C. 1122(a), and thus enjoy the protections of the fair use defense.

As explained below, in the government's view, the court of appeals erred in requiring defendants to prove the absence of any likelihood of consumer confusion as part of the fair use defense because (i) that factor makes no appearance in the statutory text and (ii) interpolating such a requirement cannot be reconciled with the structure and purpose of the fair use defense.

## STATEMENT

### 1. *Legal Framework*

Congress enacted the Trademark Act of 1946 (Lanham Act), ch. 540, 60 Stat. 427, as amended, 15 U.S.C. 1051 *et seq.*, to replace a "disorderly patchwork" of federal trademark laws and to establish a uniform level of national protection for trademarks used in interstate and foreign commerce. H.R. Rep. No. 944, 76th Cong., 1st Sess. 1 (1939); *id.* at 4; see S. Rep. No. 1333, 79th Cong., 2d Sess. 4-6 (1946); H.R. Rep. No. 219, 79th Cong., 1st Sess. 3-4 (1945). The Lanham Act created a comprehensive national registration system for trademarks and put into place a federal administrative and judicial framework for regulating the use of trademarks and protecting them against infringement, dilution, and unfair competition. Such "[n]ational protection of trademarks is desirable * * * because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Park `N Fly, Inc.* v. *Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985); see 15 U.S.C. 1127 (stmn. of congressional intent).

Section 45 of the Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof" that is used "to identify and distinguish [a person's] goods * * * from those manufactured or sold by others and to

3

indicate the source of the goods." 15 U.S.C. 1127.[2] Because trademark law protects trademarks "only to the extent that they give consumers information about the origin or quality of products," *TMT North Am., Inc.* v. *Magic Touch GmbH*, 124 F.3d 876, 882 (7th Cir. 1997), such marks are generally grouped into five classes reflecting the relative potency of the term or symbol used as a mark: (1) fanciful, (2) arbitrary, (3) suggestive, (4) descriptive, and (5) generic. *Two Pesos, Inc.* v. *Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Abercrombie & Fitch Co.* v. *Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). A "fanciful" mark is a uniquely created word or symbol (*e.g.*, "Kodak," "Xerox"). An "arbitrary" mark is the use of a word or symbol the ordinary connotation of which has no natural connection to the product (*e.g.*, "Apple" Computers, "Penguin" books). A "suggestive" mark requires the use of imagination to connect the word or phrase with the product (*e.g.*, "L'eggs" hosiery). A "descriptive" mark simply describes the product or its characteristics (*e.g.*, "Rich 'N Chip" cookies). Finally, a "generic" mark is a word or phrase that is commonly used to describe an entire category or genus of products or services (*e.g.*, "Crab House," cola). Generic marks enjoy no protection under the Lanham Act or at common law.[3]

---

[2] The Lanham Act also protects service marks, which identify service providers (*e.g.*, "Jiffy Lube"), certification marks, which identify the regional origin or quality of goods (*e.g.*, the "Good Housekeeping Seal of Approval"), and collective marks, which identify that a good or service is provided by a particular association (*e.g.*, ILGWU (International Ladies Garment Workers Union)). See 15 U.S.C. 1127.

[3] See 15 U.S.C. 1064(3), 1065(4); *Park 'N Fly*, 469 U.S. at 194. See generally *Wal-Mart Stores, Inc.* v. *Samara Bros., Inc.*, 529 U.S. 205, 210-211 (2000); *Champions Golf Club, Inc.* v. *The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996); *Soweco, Inc.* v. *Shell Oil Co.*, 617 F.2d 1178, 1183-1184 (5th Cir. 1980), cert. denied, 450 U.S. 981 (1981); *Abercrombie*, 537 F.2d at 9; Stephen Elias, *Patent Copyright & Trademark* 347-351, 354-355 (1996).

4

Because descriptive marks identify characteristics or qualities of a product that may apply broadly to many products and services, they are protected under the Lanham Act only if they have acquired an established secondary meaning for consumers that links the word to a particular manufacturer or service provider (*e.g.*, "Chunky" candy bars, "Park 'N Fly"). See 15 U.S.C. 1052(f); *Park 'N Fly*, 469 U.S. at 194. Even when a descriptive mark has acquired secondary meaning and thus is eligible for protection under the Lanham Act, the trademark embraces only that acquired secondary meaning. The original and primary descriptive meaning of the term remains available for others to use to describe their products.[4]

While the Lanham Act provides protection against the infringement of unregistered trademarks, see 15 U.S.C. 1125(a), the statute provides enhanced protection for federally registered trademarks. In particular, registration on the principal register constitutes "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." See 15 U.S.C. 1057(b), 1115(a). Registration thus substantially eases a trademark owner's burden of proof in an infringement action.

If a trademark is used in commerce, on or in connection with the trademark holder's goods, for five consecutive years after its registration, the trademark can obtain "incontestable" status, see 15 U.S.C. 1065, which provides even more protection for the mark. First, the right of the registrant "to use [the] registered mark" in commerce on or in connection

---

[4] See Restatement (Third) of Unfair Competition § 13 cmt. e, at 109 (1993) ("Protection extends, however, only to the secondary meaning that has attached to the designation. The trademark owner acquires no exclusive right to the use of the term in its original, lexicographic sense."); see also *Prestonettes, Inc.* v. *Coty*, 264 U.S. 359, 368 (1924) (a trademark "does not confer a right to prohibit the use of the word or words").

5

with the specified goods becomes "incontestable," subject only to specified statutory exceptions. *Ibid.* That provision thus enables the registrant to defend against efforts by others to prevent its own use of the mark.

Second, incontestable status constitutes "conclusive evidence" of the "validity of the registered mark" and, most significantly, of the registrant's "exclusive right to use the registered mark" in commerce. 15 U.S.C. 1115(b). That evidentiary rule significantly strengthens the registrant's right to exclude others from using the mark. See *Trademarks: Hearings on H.R. 4744 Before the Subcomm. on Trade-Marks of the House Comm. on Patents*, 76th Cong., 1st Sess. 105-107 (1939).[5] The incontestable status bestowed by the Lanham Act thus effectively allows a registrant "to quiet title in the ownership of his mark," *Park `N Fly*, 469 U.S. at 198, by substantially limiting the grounds on which others may contest the registrant's use or attempt their own competing uses of the mark.[6]

To deter and remedy trademark infringement, the Act provides owners of both registered and unregistered trademarks with a federal cause of action for monetary and injunctive relief. See 15 U.S.C. 1114(1) (registered marks), 1125(a) (unregistered marks); see generally *Two Pesos*, 505

---

[5] See also *James Burrough Ltd.* v. *Sign of Beefeater, Inc.*, 540 F.2d 266, 273 n.15 (7th Cir. 1976) (construing "exclusive right"); *Holiday Inn* v. *Holiday Inns, Inc.*, 534 F.2d 312, 319 (C.C.P.A. 1976) (same).

[6] The term "incontestable" is something of a misnomer. The registrant's right to use the mark remains subject to challenge "to the extent" that it infringes on another's valid state-law trademark right that arose before the otherwise incontestable mark was registered. See 15 U.S.C. 1065. Likewise, an owner's right to use the trademark may be challenged if, among other things, the mark's registration was obtained fraudulently or the mark is a "generic" word or phrase, is functional, has been abandoned, is used to misrepresent the source of goods, consists of immoral, deceptive, or scandalous matter, or consists of the United States flag, coat of arms, or similar insignia. See 15 U.S.C. 1064(3), 1065; see also 15 U.S.C. 1052(a), (b) and (c).

6

U.S. at 768-769.  A plaintiff asserting that its trademark has
been infringed carries the burden of establishing two distinct
elements.  First, the plaintiff must prove that its mark is
valid and that it has the exclusive right to use the mark.
Second, the plaintiff must prove that the allegedly infringing
use of the mark by the defendant is "likely to cause confu-
sion, or to cause mistake, or to deceive" consumers.  15
U.S.C. 1114(1), 1115(a) and (b), 1125(a)(1)(A).[7]  A mark's
registration and/or incontestable status will ease proof of the
first element, but it does not relieve the plaintiff of its
separate obligation to prove a likelihood of consumer con-
fusion.  See 15 U.S.C. 1115(b); cf. *Two Pesos*, 505 U.S. at 769.

A party may defend against a claim of infringement by
establishing one of nine statutory affirmative "defenses or
defects."  15 U.S.C. 1115(a) and (b).  One such defense is the
fair use defense, which requires the defendant to prove

[t]hat the use of the name, term, or device charged to be
an infringement is a use, otherwise than as a mark, of the
party's individual name in his own business, or of the
individual name of anyone in privity with such party, or
of a term or device which is descriptive of and used fairly
and in good faith only to describe the goods or services of
such party, or their geographic origin.

15 U.S.C. 1115(b)(4).  The fair use defense thus allows a
defendant to use the term, not as a mark, but solely in a
descriptive manner to characterize fairly its own products or
services, even if the plaintiff has established that the term

---

[7] See *Moseley* v. *V Secret Catalogue, Inc.*, 537 U.S. 418, 428 (2003);
*San Francisco Arts & Athletics, Inc.* v. *United States Olympic Comm.*,
483 U.S. 522, 531 (1987); see also Paris Convention for the Protection of
Industrial Property of Mar. 20, 1883, as revised on July 14, 1967, Art.
10(3)(1), 21 U.S.T. 1629, 1648, 828 U.N.T.S. 305, 337 (defining unfair
competition as acts that "create confusion by any means whatever with
the establishment, the goods, or the industrial or commercial activities, of
a competitor").

7

has acquired secondary meaning and functions as a trademark with regard to the plaintiff's goods or services.[8]

The other "defenses or defects" are (1) that the mark's registration or incontestable status was obtained fraudulently, (2) abandonment of the mark, (3) misrepresentative use of the mark, (4) the defendant's innocent and continuous use of the mark within a limited area prior to registration by the plaintiff, (5) prior registration within a limited area (*e.g.*, under state or foreign law), (6) use of the mark in violation of

---

[8] This Court's decision in *Park `N Fly, supra*, suggested in dicta that the defenses and defects established in Section 1115(b) were not substantive defenses on the merits, but served merely to rebut the otherwise conclusive evidentiary effect of an incontestable mark's registration. See 469 U.S. at 199 n.6. Congress's subsequent amendments to Section 1115 in 1988, however, "codif[ied] judicial decisions holding that the enumerated defenses or defects to an action for infringement of an incontestable registration * * * are equally applicable in actions for infringement of marks which are not incontestable." S. Rep. No. 515, 100th Cong., 2d Sess. 38 (1988); see also 134 Cong. Rec. 31,851 (1988) (Rep. Kastenmeier); cf., *e.g., Value House* v. *Phillips Mercantile Co.*, 523 F.2d 424, 429-430 (10th Cir. 1975); *Forstmann Woolen Co.* v. *Murray Sices Corp.*, 10 F.R.D. 367, 370 (S.D.N.Y. 1950). To that end, Congress amended Section 33(a) to provide that the substantive defenses and defects that apply in suits involving unregistered trademarks, which also apply to lawsuits involving registered marks by virtue of Section 33(a), "includ[e] th[e defenses and defects] set forth in Section 33(b). See Trademark Law Revision Act of 1988, Pub. L. No. 100-667, § 128(a)(4), 102 Stat. 3944. Because unregistered trademarks have no evidentiary presumption for the defense to rebut, the only role of the defenses in such cases is to defend against substantive liability. The 1988 amendments also clarified that both the mark's incontestable status and the plaintiff's proof of a likelihood of confusion—the merits of the infringement claim—"shall be subject to the following defenses or defects" enumerated in Section 1115(b). See Pub. L. No. 100-667, § 128(b)(1), 102 Stat. 3945, codified at 15 U.S.C. 1115(b). The 1988 amendments thus rendered the "defenses or defects" in Section 1115(b) defenses to the merits of an infringement claim. See also *Trademark Law Revision Act of 1987: Hearing on S. 1883 Before the Subcomm. on Patents, Copyrights & Trademarks of the Senate Comm. on the Judiciary*, 100th Cong., 2d Sess. 67, 141 & n.60 (1988) (views of U.S. Trademark Ass'n); S. Rep. No. 515, *supra*, at 3 (adopting views of U.S. Trademark Ass'n); 134 Cong. Rec. 11,073 (1988) (Sen. DeConcini) (same).

8

federal antitrust laws, (7) the mark is functional (*e.g.*, captures an aspect of the product that contributes to its utility or is necessary for effective competition), and (8) equitable principles, such as laches, estoppel, and acquiescence. 15 U.S.C. 1115(b)(1)-(3) and (5)-(9).[9]

### 2. *Factual and Procedural Background*

**a.** Permanent makeup, also referred to as "micropigmentation," involves the injection of pigment into the skin to create an external visual effect, somewhat akin to tattooing. Pet. App. 3a. Permanent makeup has both medical and cosmetic applications and may, for example, be used to conceal a scar, to enhance eyebrows, or to create permanent eye liner. *Ibid.* Petitioner and respondents are competitors in the permanent makeup industry. In 1990, petitioner began using the term "microcolor" on its advertising flyers to identify and describe the range of colors and shades of pigments that it offered for permanent makeup services. In 1991, petitioner began placing the term "microcolor" on its pigment bottles to refer to the color inside. *Id.* at 3a-4a; Resp. Mot. for Summ. J. 13, 30; Resp. Reply Stmn. of Uncontroverted Facts 4 para. 4. In 1999, petitioner used the term "microcolor" on one page of a marketing brochure, which offered an illustration of the pigment colors sold by petitioner. Pet. App. 4a, 35a-45a. The word "microcolor" appeared as part of a stylized graphical header that labeled

---

[9] Section 1115(b) appears to treat "defenses" and "defects" as interchangeable terms, according no legal significance to whether a particular showing by a defendant operates as a pure legal defense applicable to the particular defendant or more broadly serves to expose a defect in the registration of the trademark itself. See 15 U.S.C. 1115(b)(5) and (6). However, only some of the "defenses or defects" enumerated in Section 1115(b) also serve as grounds for cancellation of the registration. Compare 15 U.S.C. 1064(3) (identifying fraudulent registration, abandonment, and misrepresentation of goods or services as grounds for cancellation), and 15 U.S.C. 1065 (valid and innocent prior use of mark under local law may limit incontestable status), with 15 U.S.C. 1115(b)(1)-(3) and (5).

9

the page as petitioner's "microcolor pigment chart." *Id.* at 4a, 20a (App. B), 41a; see <*http://www.kpmakeup.com/color charts.html*> (color reproduction).

Respondents began using the term "micro colors" as a trademark for their line of permanent makeup pigments in 1992 and subsequently registered a design and word mark on the principal register in 1993. Pet. App. 3a. Respondents' trademark consists of a solid black rectangle that contains the words "micro" and "colors." *Id.* at 20a. Respondents' trademark became incontestable in 1999. *Id.* at 3a.

**b.** In 2000, petitioner filed suit against respondents under the Lanham Act seeking declaratory relief that its use of the word "microcolor" was lawful. Respondents counter-claimed for trademark infringement. Pet. App. 4a, 22a. The district court granted summary judgment for petitioner. *Id.* at 22a-31a. As relevant here, the district court ruled that petitioner's use of the word "microcolor" falls within the fair use defense. *Id.* at 29a-30a. Respondents concede, the court noted, that petitioner is using the word "microcolor" in its descriptive sense and not as a trade or service mark. *Id.* at 26a, 29a.[10] The court also cited petitioner's undisputed and continuous use of "microcolor" since 1990, which predated respondents' registration of their mark in 1993, as evidence that petitioner has used "microcolor" fairly and in good faith. *Ibid.* Because the district court found no issue of material fact as to the fair use defense, *ibid.*, the court concluded that it "need not discuss any demonstration of likelihood of confusion." *Id.* at 30a.[11]

**c.** The court of appeals reversed and remanded. Pet. App. 1a-20a. The court first held that no reasonable juror

---

[10] See also Resp. Opp. to Pet. Mot. for Summ. J. 18-19; Resp. Mot. for Summ. J. 30; Resp. Stmn. of Uncontroverted Facts 3 para. 4.

[11] Because of its resolution of the case, the district court did not address whether petitioner's use of "microcolors" qualified as a prior use protected by 15 U.S.C. 1065. See Pet. App. 29a.

10

could conclude that the term "micro color" is generic, *id.* at 10a-14a, and that the trademark's incontestable status established a conclusive presumption that the term "micro color" had acquired secondary meaning. *Id.* at 14a-15a. The court of appeals then reversed the grant of summary judgment in petitioner's favor on the fair use defense. *Id.* at 15a-19a. The court held that, in order to avail itself of the fair use defense, petitioner must prove that "there is no likelihood of confusion between [its] use of the term 'micro color' and [respondents'] mark." *Id.* at 17a. In so ruling, the court relied on circuit precedent stating that the fair use defense "only *complements* the likelihood of customer confusion analysis." *Ibid.* (quoting *Cairns* v. *Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002)). In the court of appeals' view, "there can be no fair use if there is a likelihood of confusion." Pet. App. 17a. The court then noted that "determining whether a likelihood of confusion exists at the summary judgment stage is generally disfavored because a full record is usually required to fully assess the [relevant] facts" under the court's eight-factor test for evaluating consumer confusion. *Id.* at 18a.

## SUMMARY OF ARGUMENT

The court of appeals' holding—that the fair use defense requires proof that consumer confusion is unlikely—defies the plain language of that defense, as well as its overall statutory structure, the practicable functioning of the affirmative defense, congressional purpose, legislative history, and the defense's common-law antecedents. The statute spells out the elements of the fair use defense, and proof of non-confusion is not one of them.

Furthermore, judicially injecting that factor into the defense ignores its structure and purpose. To prove a claim of trademark infringement, plaintiffs must establish (1) the validity of and exclusive right to use their trademark, and (2) a likelihood of consumer confusion, mistake, or deception

11

caused by the defendant's use of the same or a similar mark. The court of appeals thus would require defendants, in order to avail themselves of the statutory fair use defense, to disprove the very consumer confusion that the plaintiff must prove as an element of its prima facie case. But the whole point of an affirmative defense is that it absolves a defendant of liability notwithstanding the plaintiff's prima facie proof of its statutory claim. Affirmative defenses, by their nature, generally do not require negativing a central element of the plaintiff's case. The Lanham Act's fair use defense is no exception to that rule.

The court of appeals did not claim any textual anchor for its reading of the fair use defense. Instead, the court reasoned that requiring proof of non-confusion was necessary to protect consumers. The Lanham Act no doubt is concerned with reducing consumer confusion, but that is not its sole purpose. Like most laws, its terms reflect a balance of important but competing interests. By limiting a defendant's protected use of trademarked terms to purely descriptive purposes, the fair use defense is calibrated both to minimize consumer confusion and to enhance competition and consumer information by permitting fair and accurate descriptions of goods in the marketplace. Furthermore, the fair use defense enforces, in practical terms, the distinction between the secondary meaning a descriptive word has acquired through use as a trademark and its ordinary, primary descriptive meaning, which cannot be subject to a trademark and which remains in the public domain. Whether there is confusion or not, the trademark holder simply has no legal right to prevent the public from using common, ordinary descriptive words in their original sense. That is precisely what the fair use defense is designed to protect.

12

## ARGUMENT

### THE FAIR USE DEFENSE TO TRADEMARK IN-FRINGEMENT UNDER THE LANHAM ACT DOES NOT REQUIRE PROOF THAT CONSUMERS ARE NOT LIKELY TO BE CONFUSED

This Court has thrice before been presented with, and has thrice before rejected, judicially crafted efforts to import broad, extra-textual limitations into the trademark provisions of the Lanham Act. In *Park `N Fly, Inc.* v. *Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985), the Court refused to create an extra-statutory limitation on the offensive use of incontestable marks that are descriptive and that the defendant alleged had not developed a secondary meaning. The Court "searche[d] the language of the Lanham Act in vain to find any support for the" proposed limitation on descriptive marks, and noted that adopting that limitation would "render meaningless" the express statutory protection afforded incontestable marks. *Id.* at 196. Again, in *Two Pesos, Inc.* v. *Taco Cabana, Inc.*, 505 U.S. 763 (1992), the Court rejected a general rule that trade dress—a product's "'total image and overall appearance,'" *id.* at 764 n.1—could be protected only if it had developed a secondary meaning. The Court explained that the proposed restriction on trade dress protection lacked any "textual basis" and "would undermine the purposes of the Lanham Act," *id.* at 774; see also *Qualitex Co.* v. *Jacobson Prods. Co.*, 514 U.S. 159, 162 (1995) (refusing to adopt broad exclusion of colors from trademark protection, because "[b]oth the language of the Act and the basic underlying principles of trademark law would seem to include color within the universe of things that can qualify as a trademark"); cf. *Moseley* v. *V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003) (refusing to judicially modify the statutory standard for trademark dilution, where the "text unambiguously requires a showing of actual

13

dilution, rather than a likelihood of dilution"). The Ninth Circuit's implication of an additional element of the fair use defense should meet the same fate, because it equally "lacks support in the words of the statute," "renders meaningless" the affirmative defense, and has no anchor in legislative history or the defense's common-law antecedents. *Park `N Fly*, 469 U.S. at 196-197.[12]

### A. The Text Of The Lanham Act's Fair Use Defense Does Not Require Proof By The Defendant Of The Absence Of A Likelihood Of Confusion

The task of discerning the components of the fair use defense "begins where all such inquiries must begin:  with the language of the statute itself." *United States* v. *Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); see also *Park `N Fly*, 469 U.S. at 194 ("Statutory construction [of the Lanham Act] must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."). Section 33 of the Lanham Act identifies the constituent elements of a fair use defense to trademark infringement. The defendant must prove that its use of the

> term[] or device charged to be an infringement is a use, otherwise than as a mark, * * * of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

15 U.S.C. 1115(b)(4).[13]

---

[12] Contrast *Wal-Mart Stores, Inc.* v. *Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (adopting rule that unregistered product-design dress must have developed secondary meaning, in part because the distinction between inherently distinctive marks and merely descriptive marks that are protected only upon acquiring secondary meaning "has solid foundation in the statute itself").

[13] The fair use defense takes on a simpler form when the mark consists of an individual's name and the defendant is simply using his own name (or

14

Congress thus specified three components of the fair use defense. First, the defendant must prove that its use of the term or device is "otherwise than as a mark" (*ibid.*)—that is, the defendant must show that it is not using the otherwise protected term or device as a means of identifying the source of its own goods in the marketplace, see 15 U.S.C. 1127. Second, the defendant must use the term or device descriptively "only" to characterize or otherwise describe its own goods or services. Third, the defendant's descriptive use of the term or device must be undertaken "fairly and in good faith." 15 U.S.C. 1115(b)(4). The "fair[ness]" and "good faith" factors consider, respectively, the objective manner and subjective intent with which the defendant employs the term to describe its products. See Restatement (Third) of Unfair Competition (Restatement) § 28 cmts. c and d, at 295-296 (1992) (fairness of use considers, *inter alia*, where in product packaging the term appears, its physical display, and the commercial relevance of the term to the product; good faith looks to whether the user intends to capitalize on the goodwill of the trademark owner's product); *EMI Catalogue Partnership* v. *Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000).[14]

The court of appeals' requirement that the defendant prove the absence of a likelihood of confusion makes no

the name of someone in privity with him) in his own business. See 15 U.S.C. 1115(b)(4).

[14] The question whether a term is being used "fairly * * * only to describe the goods or services" (15 U.S.C. 1115(b)(4)) turns upon a factual analysis of the physical manner and context in which the term is presented and its objective fairness and accuracy. For that reason, the court of appeals did not attempt to rely on that prong of the defense as the source of its broad requirement that the defendant prove an absence of confusion in order to establish the fair use defense. Nor, given the specificity with which Congress elsewhere imposed proof requirements pertaining to consumer confusion, see page 15 & n.15, *infra*, is there any reason to conclude that Congress intended the phrase "fairly * * * describe[s]" to carry that weight.

15

appearance in the statutory text. It simply is not one of the elements of the fair use defense that Congress enacted, and this Court "ordinarily resist[s] reading words or elements into a statute that do not appear on its face." *Bates* v. *United States*, 522 U.S. 23, 29 (1997); see *Lamie* v. *United States Trustee*, 124 S. Ct. 1023, 1032 (2004).

Such hesitation is particularly appropriate here, because other provisions of the Lanham Act evidence that Congress knows how to make consumer confusion relevant to trademark claims when it wants to. See 15 U.S.C. 1051(a)(3)(D) (application to register trademark requires averment that no one else has the right to use the mark in a manner "as to be likely * * * to cause confusion, or to cause mistake, or to deceive"), and (b)(3)(D) (same for application based on bona fide intention to use trademark).[15] Where Congress "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," *Beach* v. *Ocwen Federal Bank*, 523 U.S. 410, 418 (1998) (internal quotation marks omitted), and the Court's "duty [is] to refrain from reading" such a requirement back "into the statute when Congress has left it out," *Keene Corp.* v. *United States*, 508 U.S. 200, 208 (1993).[16]

---

[15] See also 15 U.S.C. 1052(d) (prohibiting registration of trademarks that "so resemble[]" existing trademarks as "to cause confusion, or to cause mistake, or to deceive"), 1066 (same for declaration of interference with a registered trademark by the Patent and Trademark Office), 1114(1) (proof of use in a manner "to cause confusion, or to cause mistake, or to deceive" is an element of trademark infringement), 1125(a)(1)(A) (same for proof of unfair competition claim), 1127 (same for definition of "colorable imitation").

[16] The fair use defense, as designed by Congress, conforms with the United States' obligations under the World Trade Organization's Agreement on Trade-Related Aspects of Intellectual Property Rights, Apr. 15, 1994, Annex 1C, Art. 17, 33 I.L.M. 1197, 1204 (1994) ("Members may provide limited exceptions to the rights conferred by a trademark, such as

16

**B. The Context And Overall Structure Of The Lanham Act's Fair Use Defense Demonstrate That The Defendant Need Not Prove The Absence Of A Likelihood Of Confusion**

"Language, of course, cannot be interpreted apart from context." *Smith* v. *United States*, 508 U.S. 223, 229 (1993). The overall structure and design of Section 1115's affirmative defense provision reveals the unworkability of the court of appeals' non-textual requirement that defendants prove an absence of likely confusion.

**1. *Requiring Proof Of Non-Confusion Would Render The Affirmative Defense Superfluous***

Section 1115(b) establishes a framework for proving and defending against trademark infringement claims when a trademark has attained incontestable status. That Section imposes on the plaintiff the burden of establishing, first, its right to exclude others from use of the registered mark (an "exclusive right" that is conclusively proven by its incontestable status), and, secondly, "proof of infringement as defined in section 1114"—that is, proof that the defendant's use "is likely to cause confusion, or to cause mistake,

<hr>

fair use of descriptive terms, provided that such exceptions take account of the legitimate interests of the owner of the trademark and of third parties."). Other countries' trademark laws similarly establish a fair use exception, and they do not appear to include proof of non-confusion as an element of the defense. See, *e.g.*, European Council Regulation No. 40/94 on the Community Trade Mark, Dec. 20, 1993, Art. 12 ("Limitation of the effects of a Community trade mark—A Community trade mark shall not entitle the proprietor to prohibit a third party from using in the course of trade: * * * (b) indications concerning the kind, quality, quantity, intended purpose, value, geographical origin, the time of production of the goods or of rendering of the service, or other characteristics of the goods or service."); Australian Trade Marks Act of 1995, as amended in 2003, Sec. 122 ("[A] person does not infringe a registered trade mark when: * * * (b) the person uses a sign in good faith to indicate: (i) the kind, quality, quantity, intended purpose, value, geographical origin, or some other characteristic, of goods or services.").

17

or to deceive." 15 U.S.C. 1115(b) (cross-referencing 15
U.S.C. 1114(1)).[17]  Once the plaintiff has met that burden,
Section 1115(b) instructs that the plaintiff's case "shall be
subject to the following [nine] defenses or defects," one of
which is the fair use defense.

Because the party asserting an infringement claim must
always prove a likelihood of confusion in order to prevail,
neither the fair use defense nor any of the other defenses in
Section 1115(b) would be needed if there were no such
likelihood of confusion.  The plaintiff's case would fail on its
own terms.  The defenses to trademark infringement estab-
lished by Congress are, by their very design, intended to
apply after the plaintiff has introduced prima facie proof of a
likelihood of confusion. Construing the statutory fair use
defense to require disproving the very predicate that trig-
gers application of the defense in the first place thus would
empty the defense of significance.[18]  As the Fourth Circuit
explained in rejecting the Ninth Circuit's augmentation of
the fair use defense:

> [I]t defies logic to argue that a defense may not be
> asserted in the only situation where it even becomes
> relevant.  If a fair-use defense is not to be considered
> when there is a likelihood of confusion, then it is never to
> be considered. * * * A defense which can be considered
> only when the *prima facie* case has failed is no defense at
> all.

*Shakespeare Co.* v. *Silstar Corp.*, 110 F.3d 234, 243 (4th Cir.
1997), cert. denied, 522 U.S. 1046 (1998); see also *Soweco*,

---

[17] See also, *e.g.*, 15 U.S.C. 1115(a), 1125(a)(1)(A); *Two Pesos*, 505 U.S. at
768, 769; *Packman* v. *Chicago Tribune Co.*, 267 F.3d 628, 638 & n.8 (7th
Cir. 2001); *Time, Inc.* v. *Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir.
1999).

[18] See *Black's Law Dictionary* 55 (5th ed. 1979) (defining "affirmative
defense" as a "new matter which, assuming the complaint to be true,
constitutes a defense to it").

18

*Inc.* v. *Shell Oil Co.*, 617 F.2d 1178, 1189 n.30 (5th Cir. 1980)
("[E]ven if there were a likelihood of confusion, the defen-
dant would still be entitled to its fair-use defense, so long as
it had met the requirements of § 1115(b)(4). To hold other-
wise would effectively eviscerate the fair-use defense."),
cert. denied, 450 U.S. 981 (1981); cf. *Mil-Mar Shoe Co.* v.
*Shonac Corp.*, 75 F.3d 1153, 1161 n.17 (7th Cir. 1996) (state-
law fair use defense "would serve no purpose" if the
defendant had to prove no likelihood of confusion; under such
a scheme, "either there is a likelihood of confusion, which
would preclude the defense, or there is no likelihood of confu-
sion, in which case the defense is unnecessary").[19]

It is a "settled rule" that statutes "must, if possible, be
construed in such fashion that every word has some opera-
tive effect." *United States* v. *Nordic Village, Inc.*, 503 U.S.
30, 36 (1992). The court of appeals' requirement that defen-
dants disprove any likelihood of confusion in order to estab-
lish the fair use defense, however, leaves that statutory de-
fense "with no job to do," *Doe* v. *Chao*, 124 S. Ct. 1204, 1210
(2004), and it must therefore be rejected.

### 2. *The Court Of Appeals' Policy Rationale Fails*

The court of appeals failed to explain why any defendant
who can prove that there is no likelihood of confusion, and
thus can defeat the plaintiff's case on its own terms, would
bother assuming the difficult task of proving the other
statutory elements of the fair use defense. Nor did it explain

---

[19] See also *Cosmetically Sealed Indus.* v. *Chesebrough-Pond's USA
Co.*, 125 F.3d 28, 31 (2d Cir. 1997); *Sunmark, Inc.* v. *Ocean Spray Cran-
berries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995). Even if the fair use
defense were deemed only to rebut the conclusive evidentiary effect of
registration, rather than to provide a substantive defense on the merits of
an infringement claim, see n. 8, *supra*, the court of appeals' decision would
still render the defense superfluous. That is because it will always be
easier to rebut the plaintiff's evidence of likely confusion with proof of
non-confusion than to prove all the elements of the fair use defense in
addition to proving non-confusion.

19

why Congress would enact an affirmative defense that, in practice, "accomplishes nothing." *Doe* v. *Chao*, 124 S. Ct. at 1210. The sole justification the court offered for supplementing the fair use defense with an unwritten element is the perceived need to prevent consumer confusion. The authority for the court's holding in that regard (Pet. App. 17a) traces back to the Fifth Circuit's ruling in *Zatarains, Inc.* v. *Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (1983).[20] *Zatarains*, in turn, simply cites and follows, without elaboration or analysis, the interpretation of the fair use defense advocated by Thomas McCarthy in his treatise on trademark law. *Id.* at 791, 796.[21] That treatise opines that a use "should be deemed 'fair' only if it is non-confusing" "[b]ecause a paramount goal of the law of trademarks is to prevent likely confusion." 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition (McCarthy)* § 11:47, at 11-95 (2003).

---

[20] The court of appeals (Pet. App. 17a) cited and followed dicta in *Cairns* v. *Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). *Cairns*, in turn, relies on *Transgo, Inc.* v. *Ajac Transmission Parts Corp.*, 911 F.2d 363 (9th Cir. 1990), and *Lindy Pen Co.* v. *Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984), cert. denied, 469 U.S. 1188 (1985). *Lindy Pen* does not support *Cairns*' dicta. See 725 F.2d at 1248 (noting only that the Ninth Circuit had yet to interpret the fair use defense to apply when a likelihood of confusion is shown, and then denying the defense on alternative grounds). *Transgo*, however, does appear to hold that the fair use defense will apply only if the challenged "'use does not lead to consumer confusion,'" relying entirely on *Zatarains*, without providing any further analysis. See 911 F.2d at 365 n.2.

[21] For its part, the Fifth Circuit has authored conflicting views on whether the fair use defense applies when the challenged use gives rise to a likelihood of confusion. Compare *Zatarains*, *supra*, with *Soweco*, 617 F.2d at 1189 n.30 (alternative holding that fair use defense would apply "even if there were a likelihood of confusion"), *Sugar Busters, LLC* v. *Brennan*, 177 F.3d 258, 271 (5th Cir. 1999) (dicta adopting *Soweco* view); *Pebble Beach Co.* v. *Tour 18 I Ltd.*, 155 F.3d 526, 545 n.12 (5th Cir. 1998) (same), abrogated in part on other grounds, *TrafFix Devices, Inc.* v. *Marketing Displays, Inc.*, 532 U.S. 23 (2001).

20

That assertion is simply too thin a reed on which to hang judicial emendation of statutory text, as other authorities have recognized.[22] First, while averting consumer confusion is undoubtedly one important congressional purpose, see, e.g., 15 U.S.C. 1127, "the Lanham Act * * * has never provided absolute protection against all consumer confusion." *Vornado Air Circulation Sys., Inc.* v. *Duracraft Corp.*, 58 F.3d 1498, 1509 (10th Cir. 1995), cert. denied, 516 U.S. 1067 (1996). Indeed, no legislation "pursues its purposes at all costs." *Rodriguez* v. *United States*, 480 U.S. 522, 525-526 (1987) (per curiam). "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice." *Id.* at 526; see also *Director, Office of Workers' Comp. Programs* v. *Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 136 (1995) ("Every statute proposes, not only to achieve certain ends, but also to achieve them by particular means— and there is often a considerable legislative battle over what those means ought to be."). To assume, as McCarthy's treatise and the Ninth Circuit did, "that whatever furthers the statute's primary objective must be the law," ultimately "frustrates rather than effectuates legislative intent," *Rodriguez*, 480 U.S. at 526, by failing to reserve for Congress the policy compromises and trade-offs inherent in the creation of any defense to trademark infringement.

Second, to the extent that the plaintiff has chosen to use a descriptive word as a mark, the argument overlooks the fact that the trademark in a descriptive term attaches only to the specialized, secondary meaning that a word has acquired, and not to its original, primary descriptive content. See *Qualitex*, 514 U.S. at 171-172; *Park 'N Fly*, 469 U.S. at 194;

---

[22] See 3 Jerome Gilson, et al., *Trademark Protection and Practice* § 11.08[3][d][i][D], at 11-201 to -202 (2003) (the "modern trend" is "to hold that fair use of a term should be protected even if some confusion is likely") (footnote omitted); Restatement, *supra*, § 28 cmt. a, at 295.

21

Restatement § 13 cmt. e. The fair use defense gives practical force to that distinction by protecting the public's right to continue using the primary descriptive value of words and thus to use that aspect of a word that falls *outside* the scope of the trademark. The central purpose of the fair use defense, in other words, is to protect particular descriptive usages that are *not* covered by the trademark and thus are not, by definition, infringing uses. The trademark holder should not be able to circumvent that inherent and essential limitation on the scope of its mark merely by showing that some consumers might be confused. Indeed, allowing the mark holder to establish infringement based on the purely descriptive use of a word would *expand*, rather than enforce, the holder's existing rights in the trademark. In any event, if consumer confusion results from the word's descriptive use, "that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Cosmetically Sealed Indus.* v. *Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997).[23]

Third, if the Ninth Circuit were correct that preventing consumer confusion were the controlling imperative of trademark law, then one would expect that consumer confusion would be a component of all, or at least some, of the other eight defenses in Section 1115(b) as well. But it is not. Not a

---

[23] The fair use defense is not restricted to alleged infringements of descriptive marks. As long as the terms of Section 1115(b)(4) are satisfied and, in particular, the defendant's use of a term is purely descriptive, the defense is available regardless of whether the plaintiff's mark is characterized as arbitrary, suggestive, or descriptive. That is because the fair use defense focuses on how the defendant uses a term, not how the trademark holder uses it. See *Brother Records, Inc.* v. *Jardine*, 318 F.3d 900, 907 (9th Cir.), cert. denied, 124 S. Ct. 155 (2003); *Car-Freshner Corp.* v. *S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995); but see *Institute for Scientific Information, Inc.* v. *Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1010 (3d Cir.) (finding that mark was "clearly descriptive * * * was necessary before deciding whether defendants could avail themselves of the fair use defense"), cert. denied, 502 U.S. 909 (1991).

22

single one of the other defenses requires defendants to prove an absence of consumer confusion.

Nor would such a requirement make sense, because the listed defenses serve important public policy goals that stand separate and apart from any generalized interest in preventing consumer confusion. The strong public interest in preventing fraud, misrepresentation, or violations of the antitrust laws, see 15 U.S.C. 1115(b)(1), (3), and (7), outweighs any countervailing interest in protecting consumers from confusion about the source of goods. Likewise, keeping functional devices in play and opening abandoned marks to new, beneficial uses, see 15 U.S.C. 1115(b)(2) and (8), enhances competition and the information available to consumers, even if those benefits come at the price of some consumer confusion. The equitable defenses afforded by subsection (b)(9)—laches, estoppel, and acquiescence—also serve distinct policy goals and have not been construed by courts to require a showing of non-confusion by the defendant, despite their broad equitable nature.

Most tellingly, the protection afforded by the fifth and sixth defenses for innocent use of a mark in a localized area and for a prior valid use necessarily presupposes the existence of consumer confusion because it authorizes the defendant's use of a term or device that both could be identical to the registered mark and used by the defendant as a trademark. See, *e.g.*, *United Drug Co.* v. *Theodore Rectanus Co.*, 248 U.S. 90, 97, 103-104 (1918) (acknowledging the confusion that arises from dual usage of a mark even in a limited geographical area); *Thrifty Rent-A-Car Sys., Inc.* v. *Thrift Cars, Inc.*, 831 F.2d 1177, 1184 (1st Cir. 1987) ("[W]e recognize that some consumer confusion may result."). Those two defenses thus, by their very nature, embody a level of consumer confusion that Congress considered

. 23

tolerable in light of the competing interests in protecting innocent uses.[24]

And so it is with the fair use defense. Like the other defenses surrounding it, the fair use defense effectuates important policy interests that Congress wanted to advance in spite of, not just in the absence of, a likelihood of consumer confusion. See *Beecham* v. *United States*, 511 U.S. 368, 371 (1994) (the fact that "several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well"). The fair use defense

---

[24] Underscoring that proof of non-confusion is *not* a part of the other Section 1115(b) defenses, a number of courts have allowed plaintiffs to respond to invocations of the valid local use (Section 1115(b)(5)) or equitable defenses (Section 1115(b)(9)) with evidence of consumer confusion and then have considered the existence of such confusion in framing remedial decrees. In so holding, however, the courts have placed the burden of proving such confusion squarely on the plaintiff, not on the defendant. See, *e.g.*, *Resorts of Pinehurst, Inc.* v. *Pinehurst Nat'l Corp.*, 148 F.3d 417, 423 (4th Cir.) ("strong proof of likelihood of confusion" by the plaintiff supports issuance of an injunction notwithstanding the defendant's proof of laches and acquiescence), cert. dismissed, 525 U.S. 1051 (1998); *TMT North America, Inc.* v. *Magic Touch GmbH*, 124 F.3d 876, 886 (7th Cir. 1997) ("The law therefore allows the senior user's claim to be revived from estoppel if the *senior user can show* that 'inevitable confusion' would result from dual use of the marks," but the court should "structur[e] a remedy" that "minimiz[es] the hardship" on both parties) (emphasis added); *SunAmerica Corp.* v. *Sun Life Assurance Co.*, 77 F.3d 1325, 1335 (11th Cir.) (the registered user must "make out a prima facie case  *  *  * before consideration of affirmative defenses, such as acquiescence," and, if the defense is established, the registered user must "prove[] the inevitability of confusion" if it wishes the court to employ "traditional equitable principles when fashioning injunctive relief"), cert. denied, 519 U.S. 822 (1996); *Thrifty Rent-A-Car*, 831 F.2d at 1184 & n.9 (remedial decree regulating use of mark by innocent local user, under Section 1115(b)(5), adequately addressed plaintiff's allegation of "substantial consumer confusion"); *Burger King* v. *Hoots*, 403 F.2d 904, 908-909 (7th Cir. 1968) (remedial decree adequately addressed the plaintiffs' concerns about confusion arising from local use of mark permitted by Section 1115(b)(5) by restricting the use to a "sufficiently distinct and geographically separate market[] so that public confusion would be reduced to a minimum").

24

reflects Congress's judgment that there is a separate and distinct value in allowing producers to provide and consumers to receive accurate and meaningful descriptions of goods and services and thus preserving for "the public domain language that is merely descriptive." *Park `N Fly*, 469 U.S. at 201 (citing *Hearings on H.R. 102, H.R. 5461, and S. 895 Before the Subcomm. on Trade-Marks of the House Comm. on Patents (H.R. 102 Hearings)*, 77th Cong., 1st Sess. 110-111 (1941) (testimony of Wallace Martin, Chair, American Bar Ass'n Trade-Mark Comm.)); see also *id.* at 215 (Stevens, J., dissenting) (businesses should not be able to "claim[] the exclusive right to use words or phrases that are a part of our common vocabulary"). The fair use defense, "in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *Soweco*, 617 F.2d at 1185; see *Abercrombie*, 537 F.2d at 12 ("When a plaintiff has chosen a mark with some descriptive qualities, he cannot altogether exclude some kinds of competing uses even when the mark is properly on the register."). Thus, the fair use defense, like Section 1115(b)'s other eight defenses, evidences that "the Lanham Act does not require the complete elimination of all confusion," where extirpating such confusion would come at the expense of competing public interests. *Thrifty Rent-A-Car*, 831 F.2d at 1184. "At bottom," the Ninth Circuit's elevation of consumer confusion to a singularly controlling consideration in the fair use defense "simply disagrees with the balance struck by Congress." *Park `N Fly*, 469 U.S. at 202.

### C. No Other Considerations Justify Judicial Supplementation Of The Fair Use Defense Enacted By Congress

The language and context of Section 1115(b) provide a "straightforward" answer to the question whether the fair use defense includes an unwritten requirement that defen-

25

dants prove the absence of likely confusion, and with that
"straightforward application ready to hand, statutory inter-
pretation has no business getting metaphysical." *Lexecon
Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26,
37 (1998). But even were the Court to consider other factors,
such as legislative history and common-law practice, none of
them would support the court of appeals' holding.

### 1. *Legislative History*

The Ninth Circuit's requirement that non-confusion be
proven lacks any foundation in the legislative history of the
fair use provision. While the pertinent legislative history is
sparse, this Court recognized in *Park `N Fly* that Congress
strove to balance the interest in avoiding consumer confu-
sion against the competing public interest in preserving
descriptive words for accurate and informative use in the
marketplace. 469 U.S. at 201. In adopting the fair use
defense, Congress considered "the public viewpoint," not
just "the trade-mark owner's viewpoint," and thus ensured
that "[e]verybody has got a right to the use of the English
language and * * * to assume that nobody is going to take
that English language away from him." *H.R. 102 Hearings*
72 (Wallace Martin). By allowing persons other than the
trademark owner to make a fair and good faith use of such
descriptive terms for the limited purpose of describing their
own goods, Congress preserved "the trade-mark owner['s]
absolute and complete control over [the words] as a trade-
mark," while allowing others "to use the same [words] in a
wholly incidental and descriptive manner in describing
the[ir] product[s]." *Id.* at 70 (testimony of Karl Pohl, U.S.
Trade Mark Ass'n); see also *Park `N Fly*, 469 U.S. at 201
(fair use defense was designed to preserve for "the public
domain language that is merely descriptive").

Indeed, had Congress wanted to make consumer confusion
an element of the fair use defense, it would have enacted one
of the earlier versions of the fair use defense, which required

26

a defendant to show that its descriptive use of the term was "not likely to deceive the public." H.R. 5461, 77th Cong., 1st Sess. § 33(b)(4), at 28 (1941). Congress, however, rejected that language. See *H.R. 102 Hearings* 38, 44, 61; see also *id.* at 167-168 (unenacted proposals that fair use defense require that the use be "made in a manner not calculated to deceive the public" or "not likely to deceive the public") (Prof. Milton Handler). The court of appeals' reading of the statute thus accords with Congress's "discarded draft[s]." *John Hancock Mut. Life Ins. Co.* v. *Harris Trust & Sav. Bank*, 510 U.S. 86, 101 (1993). But it is the statutory text that Congress actually adopted that establishes the elements of the fair use defense.

**2. *Common Law***

The court of appeals' holding that the fair use defense requires proof of non-confusion likewise lacks any foundation in the common law. Indeed, the fair use defense itself has a very limited common-law pedigree because the common law generally did not afford trademark protection to descriptive marks. See *Armstrong Paint & Varnish Works* v. *Nu-Enamel Corp.*, 305 U.S. 315, 335 (1938); 1 *McCarthy, supra,* § 5:3, at 5-8; see also *Franklin Knitting Mills, Inc.* v. *Fashionit Sweater Mills, Inc.*, 297 F. 247, 248 (S.D.N.Y. 1923) (Learned Hand, J.) ("[T]he validity of the mark ends where suggestion ends and description begins."), aff'd, 4 F.2d 1018 (2d Cir. 1925).

The common law, however, did afford limited trademark protection to descriptive terms that had acquired a "secondary meaning"—that is, descriptive terms that had developed a specialized public association between the word and the trademark holder's products. The protection afforded such marks presaged the fair use defense of Section 1115(b) by providing "protection against [the words'] unfair use *as a trade-mark*" only. *Armstrong Paint*, 305 U.S. at 335. But the common law did "not confer a monopoly on the use of

27

the words" themselves. *Ibid.*; cf. *Thaddeus Davids Co.* v. *Davids*, 233 U.S. 461, 470 (1914) (descriptive trademarks with secondary meaning recognized as marks only "in this limited character"). Consequently, when "marks consist[ed] of names or terms having double significance," which were "susceptible of legitimate uses with respect to their primary [*i.e.*, descriptive] sense," this Court recognized that another's non-trademark use of such names or terms would constitute infringement only if it was not undertaken in good faith. *Id.* at 470 (unfair competition resulted only if use of the descriptive term was "calculated to mislead the public with respect to the origin or ownership of the goods and thus to invade the right of the registrant").

Consistent with the limited protection afforded descriptive trademarks, this Court's pre-Lanham Act decisions indicate that a fair, descriptive use of language contained in a mark is permissible regardless of whether it generates some consumer confusion.

> The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product.

*William R. Warner & Co.* v. *Eli Lilly & Co.*, 265 U.S. 526, 528 (1924); see *Howe Scale Co.* v. *Wyckoff, Seamans, & Benedict*, 198 U.S. 118, 140 (1905) ("[C]ourts will not interfere where the only confusion, if any, results from a similarity of names, and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another; and if defendant conducts its business as not to palm off its goods as those of complainant, the action fails.").[25]

---

[25] See also *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.*, 220 U.S. 446, 453 (1911) ("'[N]o one can appropriate as a trade-mark a generic name or one descriptive of an article of trade, its qualities, ingredients, or

28

The Restatement of the Law of Unfair Competition continues that trend, specifically refusing to engraft onto the fair use defense a requirement that the defendant prove non-confusion. Quite the opposite, the fair use defense "can be applicable even if the trademark owner presents evidence sufficient to prove a likelihood of confusion." Restatement, *supra*, § 28 cmt. b, at 295. As long as

> the manner of use by the defendant is reasonable in light of the commercial justification for the use, the possibility or even certainty that some prospective purchasers will perceive the term as an indication of source despite the reasonableness of the defendant's use is not sufficient to deprive the defendant of the right to employ the term in its descriptive sense.

*Ibid.* In short, "a defendant who uses a descriptive term fairly and in good faith to describe its goods or services is not liable for infringement even if some residual confusion is likely." *Ibid.*

The court of appeals thus erred in concluding, without textual support, that Congress's statutory protection for fair use is more grudging than the common law. Cf. *Green* v. *Bock Laundry Machine Co.*, 490 U.S. 504, 521 (1989) ("A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change.").

Finally, the Ninth Circuit's approach makes the litigation of trademark infringement claims unduly cumbersome. As the Ninth Circuit noted, determining whether there is a likelihood of consumer confusion is a fact-intensive inquiry that infrequently lends itself to summary adjudication. Pet.

---

characteristics, or any sign, word, or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth.'"); but cf. *Prestonettes, Inc.* v. *Coty*, 264 U.S. 359, 368 (1924) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.").

29

App. 18a. If consumer confusion were to become a component both of the plaintiff's opening case and the defendant's affirmative defense, summary judgment would become a rare event in fair use cases. Indeed, the burden on defendants would be particularly onerous because the question not only is fact intensive, but also requires proof of a negative—the absence of a likelihood of confusion. "Since as a practical matter it is never easy to prove a negative, it is hardly likely that conclusive factual data could ever be assembled." *Elkins* v. *United States*, 364 U.S. 206, 218 (1960). It is unlikely that Congress would legislate such an unwieldy proof scheme in an Act designed to make trademark protection "simpl[er], less expensive and more certain." H.R. Rep. No. 944, 76th Cong., 1st Sess. 2 (1939); see *Wal-Mart Stores, Inc.* v. *Samara Bros., Inc.*, 529 U.S. 205, 214 (2000) (noting the anti-competitive effects that trademark litigation can have); *H.R. 102 Hearings* 67 (Wallace Martin) (the fair use defense should be easy to resolve because "it ought not to be a very difficult thing for a court to determine whether a word is merely descriptive and is used in good faith").

Nor is the risk of consumer confusion arising from genuine fair uses so significant as to warrant imposition of a judicially crafted remedy. The self-limiting terms of the fair use defense ameliorate the risk of confusion by restricting the defendant's use of a term to a purely descriptive and non-trademark function that is undertaken fairly and in good faith. Because the use is circumscribed, most fair uses will "be unlikely as a practical matter to create a likelihood of confusion." Restatement, *supra*, § 28 cmt. c, at 295. Moreover, evidence of consumer confusion introduced by the *plaintiff*, when combined with evidence of a defendant's particular manner of using or displaying a term, may indicate that the defendant is using the term as a trademark and thus that the fair use defense fails. See *PACCAR, Inc.* v. *Tele-*

30

*Scan Techs., LLC*, 319 F.3d 243, 255 (6th Cir. 2003); *Sunmark, Inc.* v. *Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1059 (7th Cir. 1995). But forcing defendants to prove the absence of consumer confusion has no place in the carefully crafted affirmative defense for fair use that Congress enacted. "To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of [the Court's] duty." *United States* v. *Reese*, 92 U.S. 214, 221 (1875).

## CONCLUSION

The judgment of the court of appeals should be reversed and the case should be remanded for further proceedings consistent with this Court's decision.

Respectfully submitted.

THEODORE B. OLSON
*Solicitor General*

PETER D. KEISLER
*Assistant Attorney General*

JAMES A. TOUPIN
*General Counsel*

JOHN M. WHEALAN
*Solicitor*

CYNTHIA C. LYNCH
NANCY C. SLUTTER
*Associate Solicitors*
*Patent and Trademark Office*

THOMAS G. HUNGAR
*Deputy Solicitor General*

PATRICIA A. MILLETT
*Assistant to the Solicitor*
*General*

ANTHONY J. STEINMEYER
ANTHONY A. YANG
*Attorneys*

APRIL 2004

## APPENDIX

The Trademark Act of 1946, ch. 540, 60 Stat. 427, as amended, provides in relevant part, as codified in Title 15, United States Code:

**§ 1065.    Incontestability of right to use mark under certain conditions**

Except on a ground for which application to cancel may be filed at any time under paragraphs (3) and (5) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable: *Provided*, That—

**(1)** there has been no final decision adverse to registrant's claim of ownership of such mark for such goods or services, or to registrant's right to register the same or to keep the same on the register; and

**(2)** there is no proceeding involving said rights pending in the Patent and Trademark Office or in a court and not finally disposed of; and

**(3)** an affidavit is filed with the Director within one year after the expiration of any such five-year period setting forth those goods or services stated in the registration on or in connection with which such mark has been in continuous use for such five consecutive years and is still in use in

(1a)

2a

commerce, and other matters specified in paragraphs (1) and (2) of this section; and

**(4)** no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered.

Subject to the conditions above specified in this section, the incontestable right with reference to a mark registered under this chapter shall apply to a mark registered under the Act of March 3, 1881, or the Act of February 20, 1905, upon the filing of the required affidavit with the Director within one year after the expiration of any period of five consecutive years after the date of publication of a mark under the provisions of subsection (c) of section 1062 of this title.

The Director shall notify any registrant who files the above-prescribed affidavit of the filing thereof.

\*   \*   \*   \*   \*

3a

### § 1114.  Remedies; infringement; innocent infringement by printers and publishers

(1)  Any person who shall, without the consent of the registrant—

(a)  use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b)  reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official

4a

capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(2) Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

(A) Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

(B) Where the infringement or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510(12) of Title 18, the remedies of the owner of the right infringed or person bringing the action under section 1125(a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The

5a

limitations of this subparagraph shall apply only to innocent infringers and innocent violators.

**(C)** Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125(a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.

**(D)(i)(I)** A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.

**(II)** A domain name registrar, domain name registry, or other domain name registration authority described in

6a

subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has—

    **(aa)** not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;

    **(bb)** transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or

    **(cc)** willfully failed to comply with any such court order.

    **(ii)** An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name—

    **(I)** in compliance with a court order under section 1125(d) of this title; or

    **(II)** in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.

    **(iii)** A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.

7a

**(iv)** If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action.  The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

**(v)**    A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.  The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

**(E)**    As used in this paragraph—

**(i)**    the term "violator" means a person who violates section 1125(a) of this title; and

**(ii)**    the term "violating matter" means matter that is the subject of a violation under section 1125(a) of this title.

\*    \*    \*    \*    \*

8a

## § 1115.   Registration on principal register as evidence of exclusive right to use mark; defenses

### (a)  Evidentiary value; defenses

Any registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b) of this section, which might have been asserted if such mark had not been registered.

### (b)  Incontestability; defenses

To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of section 1065 of this title, or in the renewal application filed under the provisions of section 1059 of this title if the goods or services specified in the renewal are fewer in number, subject to any conditions or limitations in the registration or in such affidavit or renewal application.   Such conclusive

9a

evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 1114 of this title, and shall be subject to the following defenses or defects:

(1) That the registration or the incontestable right to use the mark was obtained fraudulently; or

(2) That the mark has been abandoned by the registrant; or

(3) That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services on or in connection with which the mark is used; or

(4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; or

(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved; or

10a

**(6)** That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: *Provided, however,* That this defense or defect shall apply only for the area in which the mark was used prior to such registration or such publication of the registrant's mark; or

**(7)** That the mark has been or is being used to violate the antitrust laws of the United States; or

**(8)** That the mark is functional; or

**(9)** That equitable principles, including laches, estoppel, and acquiescence, are applicable.

\*  \*  \*  \*  \*

11a

## § 1127.    Construction and definitions; intent of chapter

In the construction of this chapter, unless the contrary is plainly apparent from the context—

\* \* \* \* \*

The term "trademark" includes any word, name, symbol, or device, or any combination thereof—

(1)   used by a person, or

(2)   which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter,

to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.  Titles, character names, and other distinctive featuers of radio or television programs may be registered as service marks notwithsanding that they, or the programs, may advertise the goods of the sponsor.

\* \* \* \* \*

The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-

12a

marks, trade names, and unfair competition entered into
between the United States and foreign nations.