Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Defendants and*
*Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x

JA APPAREL CORP.,

                  Plaintiff,

        v.

JOSEPH ABBOUD, HOUNDSTOOTH CORP.,
and HERRINGBONE CREATIVE
SERVICES, INC.,

                  Defendants.

------------------------------------------------------- x
------------------------------------------------------- x

JOSEPH ABBOUD, HOUNDSTOOTH CORP.,
and HERRINGBONE CREATIVE
SERVICES, INC.,

                  Counterclaim Plaintiffs,

        v.

JA APPAREL CORP. and MARTIN STAFF,

                  Counterclaim Defendants.

------------------------------------------------------- x

Civil Action No. 07 CV 07787 (THK)

**DEFENDANTS AND**
**COUNTERCLAIM PLAINTIFFS'**
**BENCH MEMORANDUM ON USE**
**OF DESCRIPTIVE TERMS IN**
**THEIR DESCRIPTIVE SENSE**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .............................................................................................................. 4

I.     OVERVIEW OF TRADEMARK LAW ON FAIR USE ................................... 4

II.    WHAT CONSTITUTES A DESCRIPTIVE USAGE, OTHER THAN AS A
      TRADEMARK ............................................................................................. 7

      A.   Placement of Descriptive Terms ........................................................ 7

      B.   Prominence of Descriptive Terms ....................................................... 9

      C.   Descriptiveness of Descriptive Terms ................................................ 11

      D.   Good Faith Use of Descriptive Terms ................................................ 12

III.    ABBOUD'S PUBLICITY RIGHTS ............................................................. 13

CONCLUSION ........................................................................................................ 14

EXAMPLES ........................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Adrian v. Unterman*, 118 N.Y.S. 2d 121 (1st Dept. 1952) ............................................13

*Application of Colonial Stores, Inc.*, 394 F.2d 549 (C.C.P.A. 1972) ...............................1

*Cairns v. Franklin Mint Co.*, 292 F.2d 1139 (9th Cir. 2002)..........................................5

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir. 1995).........................6, 7

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)...................................................................................................2, 14

*Champion Spark Plug Co. v. Champion*, 23 F.Supp. 638 (E.D. Mich. 1938) ............................12

*Charcoal Steakhouse of Charlotte, Inc. v. Staley*, 139 S.E.2d 185, 187 (N.C. 1964) ..................4

*Colgate-Palmolive Co. v. Tullos*, 219 F.2d 617 (5th Cir. 1955)...........................................13, 14

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir. 1997) ...........................................................................................5, 7, 10, 12

*Dolby v. Robertson*, 654 F.Supp. 815 (N.D.Cal. 1986) ................................................10

*815 Tonawanda Street Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643 (2d Cir. 1988) ...................1

*Eli Lilly & Co. v. Elizabeth Arden*, 577 F. Supp. 477 (S.D.N.Y. 1983) ...............................8

*Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538 (1920) .................................4

*Factors Etc. Inc., v. Pro Arts Inc*, 579 F.2d 215 (2d Cir. 1981) ....................................3

*Gucci v. Gucci Shops, Inc.*, 688 F.Supp. 916 (S.D.N.Y. 1988).....................................7, 8, 10

*Haelan Labs., Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir. 1953) .........................13

*In re The Leslie Fay Cos., Inc.*, 216 B.R. 117 (S.D.N.Y. 1997) .......................................8

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)............ *passim*

*Kiki Undies Corp. v. Alexander's Dep't Stores, Inc.*, 390 F.2d 604 (2d Cir. 1968) ....................11

*Lazzaroni USA Corp. v. Steiner Foods*, 2006 WL 932345 (D.N.J. 2006)....................................8

*Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240 (9th Cir. 1984)..........................................5

*Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814 (2d Cir. 1986) ............................ *passim*

*Manhattan Medicine Co. v. Wood*, 108 U.S. 218 (1883)....................................................3

*Max Factor & Co. v. Factor*, 226 F.Supp. 120 (S.D. Cal. 1903) ..................................12

*Minnesota Mining & Mfg. Co. v. Johnson & Johnson*, 454 F.2d 1179 (C.C.P.A. 1972)..............1

*New York Mercantile Exchange, Inc. v. Intercontinental Exchange Inc.*, 389 F. Supp. 2d 527 (S.D.N.Y. 2005) ...........................................................................................7

*R.W. Rogers Co. v. Wm. Rogers Mfg. Co.*, 70 F. 1017 (2d Cir. 1895) .......................................12

*Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1189 (5th Cir. 1980)....................................6

*Stix Prods. Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479 (S.D.N.Y. 1968) ............11

*Susy Prods., Inc. v. Greeman*, 140 N.Y.S. 2d 904 (1955) ..........................................13

*Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2d Cir. 1978) .........................12

*Topps Chewing, Inc. v. Fleer Corp*, 799 F.2d 851 (2d Cir. 1986)..........................................3, 13

*United States Shoe Corp. v. Brown Group Inc.*, 740 F.Supp. 196 (S.D.N.Y. 1990) ...................11

*Virginia State Bd. Of Pharmacy v. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976).....................................................................................................................2, 14

*Venetianaire Corp. v. A&P Import Co.*, 429 F.2d 1079 (2d Cir. 1970) ................................9, 10

*Warner v Publ'n Inc. v. Popular Publ'n, Inc.*, 87 F.2d 923, 915 (2d Cir. 1937)....................1, 11

*William Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526 (1924).......................................5

## STATUTES AND OTHER RESOURCES

First Amendment to the United States Constitution ........................................................2, 8, 14

79th Cong. 2d Sess. 1946, H.R. Conf. Rep. No 79-2322 ..................................................4

Hearings on H.R. 82..............................................................................................4

Hearings on H.R. 102............................................................................................4

H.R. 1654 (79th Cong. 2d Sess. 1946) ...................................................................4

Act of July 8, 1870, ch.230, §79..............................................................................4

Act of Feb. 20, 1905, ch.592, §5(b) ................................................................4

Act of Mar. 19, 1920, ch.104, §1(b) ................................................................4

15 U.S.C. § 1115..................................................................................... *passim*

1 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 3:3 (4th ed. 2004) ...........................................................................................................11

*Restatement of the Law, Third, Unfair Competition*, § 28 (1995) ...........................................2, 11

## PRELIMINARY STATEMENT

Defendants and Counterclaim Plaintiffs ("Abboud") submit this Bench Memo to address certain issues raised by the Court at trial, namely the Lanham Act's distinction between the use of descriptive terms, such as the name "Joseph Abboud", in their *primary* descriptive sense to communicate truthful and valuable commercial information concerning the quality, value, characteristics, and/or attributes of goods, versus use of such terms in their *secondary* trademark sense to identify and distinguish between the sources of goods; and to provide the Court with examples in the form of mock-up ads showing how the name "Joseph Abboud" may be used *descriptively* in advertising.  *See,* Ex. A.

It is a fundamental principle of trademark law that *descriptive* terms are "in the public domain" and "must be left free for public use." *Minnesota Mining & Mfg. Co. v. Johnson & Johnson,* 454 F.2d 1179, 1180 (C.C.P.A. 1972); *Application of Colonial Stores, Inc.,* 394 F.2d 549, 551 (C.C.P.A. 1972).  *See also, Warner v. Publ'n, Inc. v Popular Publ'n, Inc.,* 87 F.2d 923, 915 (2d Cir. 1937) ("The defendant has as much right to a descriptive title as the plaintiff."). Further, "for purposes of trademark analysis, personal names – both surnames and first names – are generally regarded as descriptive terms." *815 Tonawanda St. Corp. v. Fay's Drug Co., Inc.,* 842 F.2d 643, 648 (2d Cir. 1988).  Thus, the name "Joseph Abboud" is a descriptive term that, if used in its descriptive sense, performs the *primary* function of identifying Joseph Abboud as a person and fashion designer, including all his attendant personal goodwill.  In addition, the name "Joseph Abboud", if used as a trademark, performs the *secondary* function of identifying JA Apparel as the source of JOSEPH ABBOUD brand products.

Therefore, a name like "Joseph Abboud", just like all other descriptive terms that are also used as marks, can have two meanings, its *primary* descriptive meaning and its *secondary* trademark meaning.  However, because a name is primarily a descriptive term, then even after it acquires a secondary source-indicating meaning, the trademark owner does not have the right to

deprive a person from using his own name in its original *primary* descriptive sense.  *Restatement of the Law, Third, Unfair Competition*, § 28.

Indeed, the right of a person to refer to himself in business by his own name is so sacrosanct that the Lanham Act (15 U.S.C. § 1115(b)(4)) expressly recognizes and preserves the public's right to make "fair use" of personal names, and other descriptive terms, even as against the trademark owner, when used in their *primary* descriptive sense.  Under the Lanham Act, the only *intellectual property right* that a trademark owner can acquire with respect to a *descriptive* term is the right to use the term in its *secondary* sense as a trademark, so any inquiry as to the distinction between Abboud's right to use his name descriptively and JA Apparel's right to use the JOSEPH ABBOUD mark must focus on whether the name is being used in its *primary* sense to identify the person, or in its *secondary* sense to identify the source of a product.

Further, even apart from trademark law, this distinction is particularly important, since the First Amendment's protection for commercial speech extends to descriptive terms used in the promotion and advertising of products.  *Virginia State Bd. Of Pharmacy v. Citizens Consumer Council, Inc.*, 425 U.S. 748, 765 (1976).  Accordingly, courts must scrutinize commercial speech under the standard set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Com.*, 447 U.S. 557 (1980).  There, the Court ruled that government regulation, which would include injunctive relief, of truthful commercial speech is unconstitutional, unless narrowly tailored to directly and materially advance a substantial government interest.[1]

Here, any injunction prohibiting Abboud from using his name in its *primary* descriptive sense to identify himself would not meet the requirement of directly and materially advancing any government interest, because of the critical difference between *descriptive marks*, which are

---

[1] Although commercial speech is generally content neutral and thus subject to the intermediate level of scrutiny; commercial speech under the "fair use" defense is content-based, as the defense is tied to the content of the *descriptive* terms at issue.  Thus, any prohibition on Abboud's use of his name in its descriptive sense to identify himself would be subject to a strict level of scrutiny, requiring a compelling governmental interest and the *least restrictive* means of restraint.

2

in the public domain and therefore non-exclusive, and, *distinctive marks*, which primarily serve as source indicators and are therefore proprietary and exclusive. Thus, the government has no interest in banning, barring or prohibiting Abboud's use of his name in its *primary* descriptive sense. Also, any injunction prohibiting Abboud from using his name in its *primary* descriptive sense to identify himself would not serve the governmental interest in protecting *trademark usage*. Thus, because Abboud intends to use his name in its *primary* descriptive sense to communicate truthful and valuable commercial information, such use is constitutionally protected against government action in the form of a judicial injunction.

Finally, apart from trademark law and the First Amendment, the distinction between use of a descriptive term in its primary descriptive sense, as opposed to its secondary, source-indicating sense, is important, because the name "Joseph Abboud", even in its *primary* descriptive sense, is itself an *intellectual property right* that is *owned* by Abboud as a publicity right. *Topps Chewing, Inc. v. Fleer Corp*, 799 F.2d 851, 852 (2d Cir. 1986).[2] Therefore, even though JA Apparel owns the JOSEPH ABBOUD mark, which it can exploit as a trademark in its *secondary* sense to identify the source of products, JA Apparel is prohibited from misappropriating, *i.e.*, commercially exploiting, Abboud's publicity rights by using his name in its *primary* descriptive sense to identify Abboud the person and/or Abboud the designer. *Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814, 823 (2d Cir. 1986).[3]

---

[2] As noted in Abboud's Trial Brief, Abboud's assignment of the JOSEPH ABBOUD mark did not include a grant of the *exclusive* right to use his name to identify himself, to symbolize his personal talents, skills and abilities, or to signify his individual reputation. *Madrigal Audio Labs., Inc., v. Cello, Ltd.*, 799 F.2d 814, 823 (2d Cir. 1986). Indeed, just as trademark rights are distinct from publicity rights, they are also distinct from other types of intellectual property rights. Thus a sale or assignment of one particular type of intellectual property cannot impliedly include all others. Rather, it is necessary to *expressly* specify any other intellectual property rights that are to be included in a sale or assignment; and, with regard to publicity rights it is essential that the sale or assignment include the *exclusive* use of such rights. *Factors Etc. Inc. v. Pro Arts Inc*, 579 F.2d 215, 221 (2d Cir. 1981).

[3] It is also necessary to note that JA Apparel's misappropriation of Abboud's publicity rights constitutes unclean hands, which equitably forecloses JA Apparel; from obtaining any award of injunctive relief against Abboud. *Manhattan Medicine Co. v. Wood*, 108 U.S. 218 (1883) (holding that use of mark to commit fraud on the public barred equitable relief against infringer).

## ARGUMENT

### I.    OVERVIEW OF TRADEMARK LAW ON FAIR USE

At the outset, the common law only protected inherently *distinctive* terms as trademarks and did not protect *descriptive* terms at all. *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 543-44 (1920). In accord with the common law, early federal statutes prohibited the registration of *personal names* and other *descriptive* terms as trademarks. Act of July 8, 1870, ch.230, §79; Act of Feb. 20, 1905, ch.592, §5(b); Act of Mar. 19, 1920, ch.104, §1(b).

In 1938 the first version of the Lanham Act was introduced. At that time questions were raised as to whether the abrogation of the common law prohibiting the registration of *descriptive* terms as trademarks would be anti-competitive. 79th Cong. 2d Sess. 1946, H.R. Conf. Rep. No 79-2322, at 4; Hearings on H.R. 82, at 59-60; Hearings on H.R. 102, at 106-110; H.R. 1654 (79th Cong. 2d Sess. 1946). These questions arose because merchants using descriptive words as trademarks favored registration, so as to exclude their competitors from communicating descriptive information about their products, while the competitors sought to avoid the monopolization of descriptive words, so they could use the same words to describe their products. Congress balanced these competing interests in the Lanham Act by permitting the registration of *descriptive* terms as trademarks if they could be shown to have acquired a secondary meaning as a source indicator; and, at the same time, creating the "fair use" defense, which permitted competitors to use the same *descriptive* terms descriptively to promote and advertise their products. Thus, in contrast to inherently *distinctive* terms, which enjoy *exclusivity* as trademarks when registered and are thereby removed from the public domain, *descriptive* terms are *non-exclusive*, even when registered, and thus remain in the public domain for use in their descriptive sense. *See, Charcoal Steakhouse of Charlotte, Inc. v. Staley*, 139 S.E.2d 185, 187 (N.C. 1964) ("generally descriptive words . . . are the common property and heritage of all who speak the English language; they are *publici juris*. If the words reasonably indicate and

describe the business or the article to which they are applied, they may not be monopolized.).

Accordingly, the Lanham Act's "fair use" defense (15 U.S.C. § 1115(b)(4)) provides an *absolute defense* to a claim of trademark infringement for an individual using his name other than as a mark in his business, as well as a *qualified defense* for a party using a descriptive term other than as a mark to fairly and in good faith describe his products. Thus, when used as a mark, the Lanham Act protects against infringement; but when used descriptively, the Lanham Act makes the words available to all competitors. However, notwithstanding the clear and unequivocal language of 15 U.S.C. § 1115(b)(4), courts have differed widely in their application of the "fair use" defense.

Thus, for many years, the Ninth Circuit and several of its followers, took the position that "fair use" and "likelihood of confusion" were incompatible. *Cairns v. Franklin Mint Co.*, 292 F.2d 1139, 1151 (9th Cir. 2002). Accordingly, when confronted with a "fair use" defense, the Ninth Circuit proceeded to analyze "fair use" under its "likelihood of confusion" test to determine whether, notwithstanding the use of a descriptive term in its descriptive sense, such use might be likely to cause confusion with a registered mark. If so, courts in the Ninth Circuit would proceed to bar such descriptive use, because it was still likely to cause confusion. *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240 (9th Cir. 1984).

In contrast, the Second Circuit has generally taken the more practical view that "fair use" of a descriptive term is a defense to a claim of infringement, despite confusion with a registered mark, as long as the term is used in its *primary* descriptive sense. This approach was foreshadowed by the Supreme Court's pre-Lanham Act decision in *William Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 528 (1924), where the Court held that "[a] name which is merely descriptive of the ingredients, qualities, or characteristics of an article of trade cannot be appropriated as a trademark and the exclusive use of it afforded legal protection. The use of a similar name by another to truthfully describe his own products does not constitute a legal or

5

moral wrong, even if its effect is to cause the public to mistake the origin or ownership of the product."

Accordingly, the Second Circuit has typically focused on the three factors articulated in 15 U.S.C. § 1115(b)(4) for purposes of determining whether the use of descriptive term is "fair", rather than undertaking a likelihood of confusion analysis. These factors are whether the term in question is used (i) descriptively; (ii) other than as a mark; and (iii) in good faith. *Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995). Thus, according to the Second Circuit, the "fair use" defense "permits others to use protected marks in descriptive ways" notwithstanding any likelihood of confusion. *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (2d Cir. 1997). This is because, "[i]f any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *Id.* at 31; *see also, Car Freshener, supra*, at 270 ("If any confusion results to the detriment of the markholder, that was a risk entailed in the selection of a mark with descriptive attributes"); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1189 (5th Cir. 1980) ("If a defendant's use of a term to fairly describe a characteristic of its goods creates a likelihood of confusion, then plaintiff should adopt some other method of distinguishing its goods from those of defendant").

This split in how the Circuits have analyzed "fair use", *i.e.*, whether or not a confusion analysis was appropriate, was resolved by the Supreme Court in *KP Permanent Make-Up v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004), which rejected the Ninth Circuit's view that the "fair use" of descriptive words should be subject to a likelihood of confusion test. Rather, as the Court aptly noted, "Congress said nothing about the likelihood of confusion in setting out the elements of the fair use defense." *Id.* at 118. Specifically, the Court noted the common law's "tolerance for a certain degree of confusion on the part of consumers", as well as the Lanham Act's "similar leniency, there being no indication that the statute was meant to deprive

6

commercial speakers of the ordinary utility of descriptive words." *Id.* at 122. The Court found that while a plaintiff in an infringement case must always prove likelihood of confusion as part of its *prima facie* case, a defendant relying on the *fair use* defense need only prove that his use of the mark was in the mark's descriptive sense, *i.e.*, other than as a trademark. Further, the Court determined that "consumer confusion must be compatible with fair use," as this is the consequence of preventing "anyone [from] obtain[ing] a complete monopoly on use of a descriptive term." *Id.* at 121-23. As such, the Court determined that the "risk of confusion will not rule out fair use." *Id.* Finally, echoing the Second Circuit opinions discussed *supra*, the Court noted that under the Lanham Act a trademark owner accepts the risk of confusion when he adopts a descriptive term as his mark. *Id.*

To the extent that the Supreme Court in *KP Permanent Make-Up* left further development of the "fair use" defense to the Circuit Courts, only Second Circuit decisions control here and they clearly rule out any confusion analysis. *Cosmetically Sealed*; *Car-Freshener*, both *supra*; *New York Mercantile Exchange, Inc. v. Intercontinental Exchange Inc.*, 389 F. Supp. 2d 527, 545 (S.D.N.Y. 2005) (assertion that the "fair use defense is not available if [it] 'creates a likelihood of confusion' . . . is *wrong as a matter of law*.") (emphasis added). Therefore, based on *KP Permanent Make-Up*, as well as *Cosmetically Sealed*, *Car-Freshener* and *New York Mercantile*, Abboud need only prove that his intended use of his name is descriptive, that is, other than as a mark, to prevail on his fair use defense; he is not required to prove a lack of confusion. JA Apparel's apparent reliance on non-Second Circuit case law and/or historic cases emphasizing a likelihood of confusion analysis is wholly misplaced.

## II.    WHAT CONSTITUTES A DESCRIPTIVE USAGE, OTHER THAN AS A MARK

### A.    Placement of Descriptive Terms

While some courts have permitted descriptive usage of a mark even when placed on products, *Gucci v. Gucci Shops, Inc.*, 688 F.Supp. 916, 927 (S.D.N.Y. 1988) ("Designed By

Paolo Gucci" may be placed on hangtags with a disclaimer), or packaging, *Eli Lilly & Co. v. Elizabeth Arden,* 577 F. Supp. 477, 486 (S.D.N.Y. 1983) ("descriptive term on packaging does not show that the term is being used as a trademark"), many attempts at placing a descriptive mark on products have resulted in a finding of infringement. *See, e.g., In re The Leslie Fay Cos., Inc.,* 216 B.R. 117 (S.D.N.Y. 1997) (enjoining use of "Albert Nippon" on merchandise labels attached to products). In any event, as the Second Circuit made very clear in *Madrigal, supra* at 823, "when an individual sells no more than the right to use his name as a . . . trademark *he is precluded only from using his personal name on products.*" (emphasis added).

Here, of course, Abboud does not intend to place his name on products, their labels or their packaging. Rather, Abboud intends to use his name descriptively, to refer to himself individually, and as a form of commercial speech to describe values, characteristics and attributes of his products in promotional and advertising material that is placed in newspapers, magazines and other traditional communications media. Thus, Abboud's intended placement of his name in media is not a trademark placement; rather, it is commercial speech placement, protected by the First Amendment.[4]

Further, Abboud's intended placement of his name is consistent with the permissible use of personal names sanctioned in *Madrigal, supra,* at 823, (Levinson has right to "advertis[e]" and "inform[] the public" that "he is now designing audio equipment for Cello"), as well as *Leslie Fay, supra* at 136 ("Nippon is not precluded from advising the apparel industry of his association with American Pop"). In sum, although these pre-*KP Permanent Make-Up* decisions include a confusion analysis that is no longer relevant to the "fair use" defense, on the critical issue of trademark usage they all draw a distinction between the prohibited use of registered personal names on products and the permitted use of these names to communicate commercial

---

[4] JA Apparel attempts to confuse the Court by reference to *Lazzaroni USA Corp. v. Steiner Foods,* 2006 WL 932345 (D.N.J. 2006), but that case involved not only the placement of a name on packaging, but a picture of the packaging in a catalogue. Here, Abboud does not intend to use his name on any product or on any packaging.

messages in various media.

Finally, contrary to JA Apparel's arguments, there is nothing in *Madrigal* which would prohibit Abboud from using his name in brochures. Rather, an accurate reading of *Madrigal* reveals that it was Eginton, D.J. who, after admitting that he did not "understand anything about the merits of any . . . trademark case" and was "not about to educate [himself] in that jungle", issued a May 31, 1985, preliminary injunction prohibiting "Cello from using . . . brochures linking Levinson to Cello", because "there is a likelihood of confusion . . . in the trade by the simultaneous use of Mark Levinson by the two companies." This preliminary injunction was not appealed and therefore not addressed by the Second Circuit, which only focused on a Feb. 24, 1986, modified injunction. Nevertheless, the Court severely criticized Eginton for his ignorance about trademark law; and, by virtue of its opinion, proceeded to *reject* any finding by Eginton of a likelihood of confusion, and to *permit* Levinson to "advertise" his involvement with Cello.[5]

### B.    Prominence of Descriptive Terms

In addition to placement, the prominence of a descriptive term is another factor that this Circuit has used to determine whether a usage is descriptive or source indicating. Thus, in *Venetianaire Corp. v. A&P Import Co.,* 429 F.2d 1079, 1082 (2d Cir. 1970), the Court held that the "prominent display" of the descriptive term "Hygienic" alone and in the same "typestyle" as the registered term "Hygient" was a "trademark use", rather than a descriptive use of the term. However, the Court went on to say that had the defendant "used the word 'hygienic' in a sentence . . . the word would appear to be 'used fairly and in good faith only to describe to users

---

[5] Indeed, JA Apparel's entire effort to prevent Abboud from using his name in promotional and advertising materials is misguided, for if he cannot use his name on a product without risking trademark usage; and, he cannot use his name in promotional and advertising materials as a descriptive term, just where is he supposed to make "fair use" of his name to communicate the truthful and valuable information that he is the designer of his "jaz" products? Obviously, JA Apparel's argument is designed to shut down all such communication so it can have exclusive use of the name "Joseph Abboud", but this exclusive use is precisely what Congress rejected by creating the "fair use" defense in the Lanham Act.

a characteristic of the goods." *Id*; *Dolby v. Robertson*, 654 F.Supp. 815, 823 (N.D. Cal. 1986) (permitting the recording artist Thomas Dolby to use his personal name on recordings and in his music career, as long as he did not use the surname "Dolby" alone). Similarly, in *Madrigal*, *supra* at 823, the Second Circuit ruling that Mark Levinson could use his name in "advertising, *in a not overly intrusive manner*, that he is affiliated with a new company" (emphasis added), appears to reflect the view that such use would be a descriptive use, in contrast to a prominent display of his name, which might be deemed a trademark use.

Moreover, the prominent display of another trademark in connection with the descriptive term is indicative that the term is not being used as a mark. *Cosmetically Sealed, supra*, at 30-31 ("Seal it with a Kiss" was descriptive, rather than as a mark, when accompanied by CUTEX mark); *Car Freshener, supra*, at 270 ("pine tree shaped" car air freshener was descriptive, when accompanied by "GLADE PLUG INS" mark). Here, as exemplified in the mock-up ads attached as Ex. A, Abboud's proposed use of his name is in informational text *tagged* onto Abboud's "jaz" mark, which is prominently displayed in large script letters; and the use of the word "designer", immediately preceding the words "Joseph Abboud", clearly connotes that Abboud's name is being used in its *primary* descriptive sense to identify Joseph Abboud the person, and not in its *secondary* trademark sense. As such, Abboud's intended use of his name (*See*, Ex. A and restrictions set forth in ¶78 of Abboud's Prop. Concl. of Law) makes clear that such use is a non-prominent *descriptive* use, rather than a source-indicating *trademark* use. *See, e.g., Gucci, supra*, (designer Paolo Gucci was permitted to use his name *descriptively* in order to "identify himself as the designer of [his] products", upon the following conditions: (i) the products are designed by Paolo Gucci, designed under his supervision or selected by him; (ii) the use is always in connection with Paolo Gucci's RIVIERA trademark, or other mark; (iii) the name Paolo Gucci always appears after the mark; (iv) the phrase "[Trademark] designed by Paolo Gucci" is split into no more than three lines; and (v) all of the letters of the phrase "designed by

10

Paolo Gucci" are in the identical typestyle, size and color); 1 J. Thomas McCarthy, *McCarthy on*

*Trademarks & Unfair Competition* § 3:3 (4th ed. 2004) (some of the common markers of

whether a word is being used as a trademark are "larger-sized print, all capital letters or initial

capitals, distinctive or different print style, color, and prominent position on label or advertising

copy"); *Restatement, Third, Unfair Competition*, § 28 at comment a (the "nature of the use in

terms of size, location, and other characteristics in comparison with the appearance of other

descriptive matter or other trademarks is also relevant").

## C.    Descriptiveness of Descriptive Terms

The test for descriptive usage is whether the term conveys information about the quality,

value, characteristics of goods, *Stix Prods. Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp.

479, 487 (S.D.N.Y. 1968), particularly when it is used in text to describe some attribute of the

goods. *Kiki Undies Corp. v. Alexander's Dep't Stores, Inc.,* 390 F.2d 604 (2d Cir. 1968) (use of

"kicky" to describe clothing in newspaper ad was a descriptive use that did not infringe the

"KIKI" mark); *United States Shoe Corp. v. Brown Group Inc.,* 740 F.Supp. 196 (S.D.N.Y. 1990)

(use of portion of trademark in text was a descriptive use); *Restatement, Third, Unfair*

*Competition*, § 28, at comment c ("use in textual descriptions is ordinarily a fair use").

Here, Abboud intends to use his name in its *primary* descriptive sense to identify himself

as the designer of the products that he plans to market and sell under his "jaz" mark, and, in

doing so, to inform the public that such products are imbued with his personal aesthetic values,

characteristics and attributes.[6]  *See* Ex. A for examples of "Joseph Abboud" used descriptively.

---

[6] The same trademark/non-trademark usage principles that apply to the JOSEPH ABBOUD mark also apply with
equal force to the so-called New Trademarks containing the words "Joseph Abboud" set forth in Section 1.1(A)(c)
of the Purchase and Sale Agreement. By agreeing to assign to JA Apparel the New Trademarks, all Abboud did was
to agree to give up his right to use and register these phrases *as trademarks* — he did not relinquish his right to use
such words or phrases descriptively. *Warner v Publ'n Inc. v. Popular Publ'n, Inc.,* 87 F.2d 923, 915 (2d Cir. 1937).
Thus, to the extent JA Apparel seeks to claim any proprietary rights in the New Trademarks, it must use and register
them as trademarks, but even in doing so, they are still only *descriptive* marks and therefore freely available for
*descriptive* usage. *Cosmetically Sealed, supra,* at 30 ("Seal it with a Kiss" did not infringe "Sealed With A Kiss"
mark, because phrase was a "use of words in their descriptive sense" rather than "as a mark to identify a product").

**D.    Good Faith Use of Descriptive Terms**

A close reading of 15 U.S.C. § 1115(b)(4) shows that it provides an *absolute* defense to infringement for a competitor using his own name other than as a trademark in his business, because such *use* is *not* qualified by the word "good faith"; and, a *qualified* defense for a competitor using a descriptive term other than as a trademark to describe his products in "good faith." Here the distinction is not material, as Abboud's proposed use of his name is other than as a mark and is in good faith.

In general, a good faith use of a personal name arises when a person has a *legitimate connection* with his business and/or products. As noted in *Madrigal, supra* at 822, even when a personal name has been assigned as a mark, "it continues to serve the important function to its bearer of acting as a symbol of that person's personality, reputation and accomplishments" as distinguished from its *secondary* function of identifying goods. Thus, in *Madrigal*, the Second Circuit ruled that, not withstanding such a sale, a person is not precluded "from taking advantage of his individual reputation" by using his name in connection with his new business. *Id.*; *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 737 (2d Cir. 1978). In contrast, bad faith arises when a person "enters a particular line of trade for no apparent reason other than to use a conveniently confusing surname to his advantage." *Id.* at 735, *citing R.W. Rogers Co. v. Wm. Rogers Mfg. Co.*, 70 F. 1017, 1018 (2d Cir. 1895) (defendant was a "decoy" for silver plating firm); *Max Factor & Co. v. Factor*, 226 F.Supp. 120, 121 (S.D. Cal. 1903) (defendant had no involvement in hosiery business using his name); *Champion Spark Plug Co. v. Champion*, 23 F.Supp. 638, 641 (E.D. Mich. 1938) (defendant did not manufacture spark plugs).

Here, of course, Abboud is a designer who possesses substantial personal goodwill as the result of his individual talents, skills and artistic abilities, as well as his own accomplishments in the fashion industry and his widespread reputation and celebrity. Therefore, Abboud has a *legitimate* basis to use his name to identify himself in connection with his business and the "jaz"

12

product line that he has designed, and any such use, therefore, is in good faith.

## III.   ABBOUD'S PUBLICITY RIGHTS

It is well established that when a personal name has come to be recognized in a certain field of human endeavor as identifying a particular living individual, the individual possesses a valuable *intellectual property right* in that name, a so-called "*publicity right*" in his own *identity*, which cannot be appropriated by others without his *written consent. Topps Chewing Gum*, 799 F.2d at 852; *Haelan Labs., Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866, 868 (2d Cir. 1953).

Further, when a person assigns the right to use his name as a mark, the assignment is *limited* to the use of the name in its *secondary* source-indicating trademark sense. *Madrigal, supra*, at 822. Thus, notwithstanding such an assignment, a person has the right to take advantage of his name in its *primary* descriptive sense to identify himself in connection *with* his own business ventures and/or his own products. *Id.* This right to identify oneself, *i.e.*, the right of publicity, includes the right to restrict others from commercially trading upon and/or exploiting his reputation for their own financial benefit. Thus, the right of publicity prevents the assignee of a mark from taking commercial advantage of the assignor's personal reputation, because doing so is not only beyond the scope of the trademark assignment, which is limited to trademark usage, but a fraud on the public. *Id.*

Finally, it must be noted that while the permissive use of a person's publicity rights may be implied by his involvement in the promotion or advertising of the business, *in the absence of written consent*, such permissive use does not vest any exclusive rights in the business, *Susy Prods., Inc. v. Greeman*, 140 N.Y.S. 2d 904, 905 (1955); nor, does it constitute any form of waiver or estoppel. *Adrian v. Unterman*, 118 N.Y.S. 2d 121, 127 (1st Dept. 1952).  Moreover, such permissive use during the association does not survive the association. *Colgate-Palmolive Co. v. Tullos*, 219 F.2d 617 (5th Cir. 1955) (once plaintiff's services are terminated, defendant's ability to use her publicity rights to promote its products immediately ceased).  And, *a fortiori*,

such permissive use must cease when it has been expressly revoked, as Abboud expressly revoked such permissive use here by his counsel's April 1, 2005 letter to JA Apparel's counsel.

Here, Abboud's counterclaim against JA Apparel for misappropriating his publicity rights, and Abboud's unclean hands defense arising out of JA Apparel's misappropriation of those rights, turn on the quintessential distinction between the *primary* descriptive usage of "Joseph Abboud" to identify the world renowned designer, his talents, accomplishments and reputation; and, the *secondary* source-indicating trademark usage.

## CONCLUSION

Notwithstanding the Congressionally mandated *competition* between the use of a name in its *primary* sense to identify a person or describe the quality, characteristics and attributes of goods and use in its *secondary* trademark sense to identify products, historically the judiciary has tried to eliminate such competition by focusing its time and attention on a *prima facie* aspect of trademark infringement, *i.e.*, a likelihood of confusion, rather than focusing on the respective rights of the parties as delineated by Congress in the Lanham Act. Unfortunately, this has led to a large, but now irrelevant, body of case law that has enjoined descriptive use solely because courts thought it might be confusing to someone.

However, by restoring in *KP Permanent Make-Up, supra,* the "fair use" defense to its roots and thereby eliminating confusion from the "fair use" analysis, the Supreme Court has also squared the defense with the First Amendment protection now afforded commercial speech that conveys truthful and valuable product information by means of descriptive terms. *Va. State Bd. Of Pharmacy v. Citizens Consumer Council, Inc.,* 425 U.S. 748, 765 (1976). This means that the lower courts must scrutinize commercial speech under the intermediate standard set forth in *Central Hudson Gas & Elec. Corp. v. Public Service Com.,* 447 U.S. 557 (1980). There, the Court ruled that government regulation, which would include injunctive relief, of truthful commercial speech is unconstitutional, unless narrowly tailored to directly and materially

advance a substantial government interest.

Thus, over the last decade judicial focus on the public interest in commercial speech has shifted away from the paternalistic view that consumers must be denied information so they will not become confused, toward the enlightened view that consumers deserve to be informed so they can decide for themselves. Such is the price the law requires us to pay for a *free society* and a *free market*.

## **EXAMPLES**

In view of the foregoing, Abboud offers the attached examples of mock-up ads showing how Abboud may use his name in its *primary* descriptive sense in advertising so as to identify himself as the designer of "jaz" products.[7] These examples are consistent with the framework set forth in Abboud's Prop. Concl. of Law, namely that Abboud will agree: (i) not to use his name as a trademark or service mark; (ii) not to use his name on products, product labels or product packaging; (iii) not to use his name in reference to any prior association with JA Apparel, its business activities or its products; (iv) use of his name only as a "descriptive term" to identify himself, and/or to describe himself as (a) the designer or endorser of products and/or services that he personally designs (or supervises the designing of), selects, approves, markets and/or sells; or (b) the owner, operator or manager of businesses that he personally owns or operates; or (c) the celebrity, expert, artist, author, commentator and/or personality appearing in connection with his personal appearances, speaking engagements, or public announcements; (v) use his name in print only in connection with the "jaz" mark, or other trademarks, service marks and/or trade names, which are more prominently displayed in such materials or media than the name "Joseph Abboud", when any reference is made to any products and/or services; and (vi) use his name in print only in the same type size, font and color as the wording surrounding his name.

---

[7] These mock-ups have been prepared by taking the actual ad run by Abboud in DNR magazine on October 29, 2007, which has been offered into evidence as Defendants' proposed Exhibit 34, and then modifying such ad by adding text and copy thereto, including copy that refers to Mr. Abboud by name.

The examples in the mock-up ads and the proposed restrictions make clear that Abboud can make a descriptive, non-prominent, good faith use of his name to identify himself as the designer of the "jaz" products, and, in doing so, to inform the public that such products are imbued with his personal aesthetic values, characteristics and attributes.  Such use is protected by the terms of the "fair use" provision of the Lanham Act, notwithstanding any "confusion" they may arise.

Dated: New York, New York
      March 5, 2008

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____

Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
399 Park Avenue
New York, New York 10022
(212) 715-1000

**Exhibit A**







NEW YORK  212 399-0020
MONTREAL 514 866-4891

JAZ IS A NEW LUXURY COLLECTION CREATED
BY THE AWARD-WINNING DESIGNER JOSEPH ABBOUD.

FALL 2008





NEW YORK  212 399-0020
MONTREAL  514 866-4891

FALL 2008

JAZ IS A NEW LUXURY COLLECTION CREATED
BY THE AWARD-WINNING DESIGNER JOSEPH ABBOUD.

QUINTESSENTIALLY AMERICAN, JAZ IS AN EXPRESSION
OF CLASSIC STYLE WITH PERSONALITY AND INNOVATION.