Louis S. Ederer (LE 7574)
John Maltbie (JM 3658)
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Phone (212) 715-1000
Fax (212) 715-1399

*Attorneys for Defendants and
Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

JA APPAREL CORP.,

        Plaintiff,

    v.

JOSEPH ABBOUD, HOUNDSTOOTH CORP.,
and HERRINGBONE CREATIVE
SERVICES, INC.,

        Defendants.

------------------------------------------------------------ x
------------------------------------------------------------ x

JOSEPH ABBOUD, HOUNDSTOOTH CORP.,
and HERRINGBONE CREATIVE
SERVICES, INC.,

        Counterclaim Plaintiffs,

    v.

JA APPAREL CORP. and MARTIN STAFF,

        Counterclaim Defendants.

------------------------------------------------------------ x

Civil Action No. 07 CV 07787 (THK)

**DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS'
REPLY MEMORANDUM ON USE
OF DESCRIPTIVE TERMS IN
THEIR DESCRIPTIVE SENSE**

## TABLE OF CONTENTS

**PAGE**

I. **ABBOUD DID NOT SELL THE *EXCLUSIVE* RIGHT TO USE HIS NAME IN BUSINESS** .......... 1

II. **ABBOUD'S MOCK-UP ADS MAKE *FAIR USE* OF HIS NAME TO IDENTIFY HIM AS A DESIGNER AND TO DESCRIBE HIS PRODUCTS** .......... 5

III. **ABBOUD'S PUBLICITY RIGHTS ARE NOT PRE-EMPTED BY THE LANHAM ACT** .......... 10

IV. **THE FIRST AMENDMENT PRECLUDES THE COURT FROM ORDERING SWEEPING INJUNCTIVE RELIEF WITH REGARD TO ABBOUD'S USE OF HIS NAME** .......... 11

## TABLE OF AUTHORITIES
### CASES

*A. Charmichel & Co. v Latimer, Stillman & Co.*, 11 R.I. 395, 404 (1876) .................................. 7

*Adrian v. Unterman,* 118 N.Y.S. 2d 121 (1st Dept. 1952) ......................................................... 10

*Basile S.P.A. v Basile*, 899 F.2d 35 (D.C. Cir. 1990) .................................................................. 6

*Bear U.S.A., Inc. v. Kim*, 993 F.Supp. 894 (S.D.N.Y. 1998) ....................................................... 3

*Better Bus. Bureau of Metro. Houston, Inc. v. Med. Dirs., Inc.*, 681 F.2d 397 (5th Cir. 1982) ................................................................................................................................. 12

*Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310 (D.NJ 2006) ............. 3

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir. 1995) ............................. 8

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N. Y.*, 447 U.S. 557 (1980) ................................................................................................................................. 8,11

*Cohen v California,* 403 U.S. 15, 26 (1971) ................................................................................ 5

*Consumers Union of U.S., Inc. v. Gen. Signal Corp.*, 724 F.2d 1044 (2d Cir. 1983) ................ 12

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir. 1997) ................................................................................................................................. 7,8

*ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003) ....................................................... 3

*G.M.L., Inc. v. Mayhew*, 188 F. Supp. 2d 891 (M.D. Tenn. 2002) ............................................... 3

*Gucci v. Gucci Shops, Inc.*, 688 F.Supp. 916 (S.D.N.Y. 1988) ............................................... 7,10

*Guth Chocolate Co. v. Guth*, 215 F. 750 (D.Md. 1914) ............................................................... 8

*In re Baker Indus. Inc.*, 565 F.2d 1211 (C.C.P.A. 1977) .............................................................. 2

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) .................. 8,9

*Levitt Corp. v. Levitt*, 593 F.2d 463, 468 (2d Cir. 1979) .............................................................. 8

*Madrigal Audio Labs., Inc. v. Cello, Ltd.*, 799 F.2d 814 (2d Cir. 1986) .................................. 3,6

*Mattel, Inc. v MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) ............................................... 11

*Mushroom Makers, Inc., v. R.G. Barry corp.*, 580 F.2d 44 (2d Cir. 1978) ................................ 11

*Muzikowski v Paramount Picture Corp.*, 2005 U.S. Dist. Lexis 13127 (N.D. Ill. 2005) ............ 11

*New York Mercantile Exchange, Inc. v Intercontinental Exchange Inc.*, 389 F. Supp. 2d 527 (S.D.N.Y. 2005) .................................................................................................. 8

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65 (2d Cir. 1999) ............... 8

*Paul Frank Indus., Inc. v. Sunich*, 502 F. Supp. 2d 1094 (C.D.Cal. Aug 21, 2007) ................ 6

*Peaceable Planet, Inc. v Ty, Inc.*, 362 F.3d 986 (7th Cir. 2004) .............................................. 6

*Rogers v Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ................................................................ 5,11

*Susy Prods., Inc. v Greeman*, 140 N.Y.S. 2d 904 (1955) ...................................................... 10

*Taylor Wine Co. v Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2d Cir. 1978) .......................... 6

*The Lepage Co. v. Russia Cement Co.*, 51 F. 941 (1st Cir. 1892) ............................................ 8

*Worsham Sprinkler Co., Inc. v. Wes Worsham Fire Protection, LLC*, 419 F. Supp. 2d 861 (E.D. Va. 2006) ...................................................................................................... 3

## STATUTES AND OTHER RESOURCES

First Amendment to the United States Constitution ............................................................ *passim*

15 U.S.C. § 1052 ....................................................................................................................... 2

15 U.S.C. § 1115 ............................................................................................................. *passim*

New York Civil Rights Law, § 50 .......................................................................................... 10

New York Civil Rights Law, § 51 .......................................................................................... 10

McCarthy, *The Rights of Publicity and Privacy*, §5 ............................................................. 10

McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 3.1 ...................................... 3

Defendants ("Abboud") submit this Reply to JA Apparel's Opposition to Abboud's Bench Memorandum On Use Of Descriptive Terms In Their Descriptive Sense. Although in large part the Opposition is simply a refrain of the erroneous assertion that Abboud has no right to use his personal name in its *primary descriptive sense*, despite clear and unambiguous statutory language to the contrary, it includes new arguments that necessitate this brief Reply.

### I.   Abboud Did Not Sell The *Exclusive* Right To Use His Name in Business.

First, pursuant to the Purchase and Sale Agreement ("P&S"), the "assets" set forth in Article 1.1(a)(A), however described in the text, *i.e.*, "names, trademarks, trade names, [etc.]", are those "identified" on Schedule 1.1(a)(A), which is a Trademark Report that only identifies "Mark[s]", *i.e.*, trademarks and service marks. Thus, whether the words "names, trademarks, trade names, [etc.]" should be interpreted as *descriptive* of the marks on Schedule 1.1(a)(A) or to mean *distinct* forms of intellectual property, is easily resolved by the fact that the Schedule only *identifies* Marks — as a Trademark Report, it does not *identify* any "names", "trade names" or anything else. Quite obviously, here the drafter was trying to capture by description all devices that could serve as marks and might end up appearing on Schedule 1.1(a)(A) as Marks. Further, this interpretation is confirmed by Abboud's representation and warranty in Article 3.6 that Schedule 1.1(a)(A) sets forth all his "trademark registrations [and] service mark registrations and applications", without making any representation at all regarding any "names", "trade names", or anything else. Finally, this interpretation is confirmed by Abboud's Assignment of United States Trademark/Service Mark Rights at the Closing, which, again, only provides for the assignment of "the Trademarks and registrations and applications associated with them." Again, there was never any mention of any "names" or "trade names."

Second, pursuant to the P&S, the "assets" to be sold under Article 1.1(a)(C) are the

"rights to use and apply for the registration of *new* trade names, trademarks, [etc.] . . . *containing the words* 'Joseph Abboud' (collectively, the "New Trademarks") . . . for any and all *products and services*" (emphasis added). Thus, Article 1.1(a)(C) clearly contemplates the *conveyance* of Abboud's *consent* to the "use and registration" of "New", *i.e., future* trademarks containing the words "Joseph Abboud", as the consent of a living individual to such registrations is required by the Lanham Act, Section 2(c). Article 1.1(a)(C) does not apply to the *conveyance* of *existing* intellectual property, such as Abboud's personal name or the trade name "Joseph Abboud Worldwide, Inc.", as *existing* intellectual property is addressed by Article 1.1(a)(A). Further, Article 1.1(a)(C)'s *consent* to use and apply for the registration of *new* trademarks is limited by the phrase "for any and all goods and services", which implicitly *excludes* any use *for* the identification of a person, *i.e.*, a personal name or publicity right, or *for* the identification of a business, *i.e.*, a trade name, under the doctrine of *expressio unius est exclusion alterius*.[1] This limitation means that Article 1.1(a)(C) conveys no rights to JA Apparel in respect of *using* the *words* "Joseph Abboud" in reference to Abboud as a person, or to designate its business. Finally, as in Article 1.1(a)(A), the words "trade names, trademarks, service marks, logos, insignias and designations" should be interpreted consistently with the *same* terms in 1.1(a)(A), *i.e.*, to be *descriptive* of the "New Trademarks".[2] Therefore, while Article 1.1(a)(C) may bar Abboud from using and registering the *words* "Joseph Abboud" and/or "designed by 'Joseph

---

[1] Note that the Lanham Act only provides for the registration of Trademarks; it does not provide for the registration of names or trade names, *per se*, unless they are used as Trademarks to identify products and services rather than persons and businesses. *See, In re Baker Indus. Inc.*, 565 F.2d 1211 (CCPA 1977).

[2] This is confirmed by the testimony of both Attorney Dinsmoor, who said the words "the names, etc." were descriptive of the marks on Schedule 1.1(a)(A), and Attorney LaGueux, who said "the names, etc." were elements of the marks on Schedule 1.1(a)(A), *i.e.*, that such words do *not* reference distinct forms of intellectual property separate and apart from the Trademarks, themselves. Note that logos, insignias and designations may be elements of a trademark, if they are embedded in the trademark, to use Mr. LeGueux's term, but they *are not* distinct forms of intellectual property in and of themselves. Similarly, names and trade names may also become elements of a trademark, if they are embedded in the mark, albeit they can also be and *are* distinct forms of intellectual property.

Abboud'" as a trademark, he remains free to make use of his personal name in its *primary descriptive sense* to identify himself and/or describe his own products.³

Third, JA Apparel's argument that the appearance of the word "designation" in Article 1.1(a)(C) somehow means that Abboud agreed to convey to JA Apparel the exclusive right to use his name other than as a trademark is simply wrong, since the word "designation" is another way to describe a trademark. Indeed, it is well established that the word "designation" is a term that is often used interchangeably with the word "trademark." *See, e.g., ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 921-22 (6th Cir. 2003) (stating that "[t]he essence of a trademark is a *designation* in the form of a distinguishing name, symbol or device which is used to identify a person's goods and distinguish them from the goods of another") (emphasis added); *Worsham Sprinkler Co., Inc. v. Wes Worsham Fire Protection, LLC*, 419 F. Supp. 2d 861, 867 (E.D. Va. 2006) (noting that "[a] trademark is 'a *designation* used to identify and distinguish the goods of a person,' while a service mark is a *designation* to identify and distinguish the services of a person") (emphasis added); McCarthy, *McCarthy on Trademarks*, § 3.1 (noting that under both common law and federal law, "a trademark is a *designation* used to identify and distinguish the goods of a person") (emphasis added); *see also Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 327 (D.NJ 2006); *Bear U.S.A., Inc. v. Kim*, 993 F.Supp. 894, 895 (S.D.N.Y. 1998); *G.M.L., Inc. v. Mayhew*, 188 F. Supp. 2d 891, 895 (M.D. Tenn. 2002).

Fourth, the argument that Abboud had to expressly reserve the right to use his name in business in the P&S stands the law on its head, for as the Second Circuit ruled in *Madrigal*, 799 F.2d at 822-23, Abboud will not be deemed to have conveyed his name unless *his* intent is "clearly shown." This places the burden on JA Apparel to prove that *Abboud* intended to convey

---

³ Note that as a result of Abboud's departure from JA Apparel, JA Apparel is itself now barred from using and registering "designed by 'Joseph Abboud'" as a trademark, because such a mark would constitute a fraud on the public. *Madrigal*, 799 F.2d 814.

3

his name, rather than on Abboud to prove that he reserved any rights in his name, with any ambiguity in intent favoring Abboud. At a minimum, a plain reading of the P&S makes clear that JA Apparel cannot meet its burden. Moreover, in order to meet its burden of proof regarding Abboud's intent, JA Apparel could easily have added a provision to the P&S stating that Abboud "shall convey the exclusive right to use and exploit his personal name for its own commercial benefit in any and all media in perpetuity." However, it did not do so. Thus, the very idea that JA Apparel would not have paid Abboud $65.5 million without acquiring the *exclusive* right to use his name is patently absurd, given that JA Apparel never even proposed any provision conveying such an *exclusive* right; and, given that throughout the entire history of the negotiations regarding the P&S, not once did JA Apparel orally or in writing ever communicate to Abboud or his attorney that *it was intending* to acquire the *exclusive* right to his name in business. Indeed, *all* of JA Apparel's communications to Abboud and his attorney during this time period repeatedly referred to *its intent to acquire* "trademarks" and "only trademarks."

Fifth, the hollowness of JA Apparel's argument is further confirmed by the fact that after the Closing at which Abboud assigned his Marks, JA Apparel continued over the next *eight years* to refer to the transaction as a "trademark" transaction. Indeed, even when JA Apparel was sold to J.W. Childs in 2004, it only listed "trademarks" on the schedule of intellectual property assets owned by the company, even though Mr. LeGueux, JA Apparel's attorney who worked on both transactions, indicated that he considered the exclusive right to use Abboud's personal name in business to be a form of intellectual property. If, indeed, JA Apparel truly owned that important intellectual property right, it undoubtedly would have listed that asset on its schedule of intellectual property owned by JA Apparel. Indeed, it was not until last year, when Abboud

decided to launch his new "jaz" line, that JA Apparel's *new* owners, who had absolutely nothing to do with the P&S, for the first time concocted an argument that Abboud must have sold the *exclusive* right to his name, or the *prior* Italian owners never would have paid him $65.5 million. Yet none of the *prior* Italian owners, their directors, or their officers, ever mentioned any such intent over the last *eight* years; and, none of them appeared to so testify at trial.

Sixth, the argument that Abboud is somehow barred from using words that are synonyms of "designed" or "by" (as in "designed by Joseph Abboud" or "by Joseph Abboud"), is completely antithetical to the law, because such words are in the dictionary and in the public domain for everyone to use according to their ordinary plain meaning. *Cohen v California,* 403 U.S. 15, 26 (1971) (noting that "[w]e cannot indulge the facile assumption that one can forbid particular words without running a substantial risk of suppression of ideas in the process"). This First Amendment principle, which is embodied in the "no alternative avenues" test, prohibits a lock-up on phrases like "designed by" and all possible synonyms, so as to foreclose Abboud from any alternative means of communicating to the consuming public that he has created his "jaz" product line. *Rogers v Grimaldi,* 875 F.2d 994, 999 – 1000 (2d Cir. 1989) (discussing the "no alternative avenues" test in the context of trademark law). Thus, JA Apparel's claim to synonymous words like "compose", "create", or "execute",[4] as synonyms for "designed by" only extends to their use and registration as trademarks, at which time, because they are *descriptive*, they are still subject to "fair use" by Abboud and others.

## II.    Abboud's Mock-Up Ads Make *Fair Use* Of His Name To Identify Him As A Designer And To Describe His Products.

First, as noted in the Bench Memo, personal names are recognized as *descriptive* under the "fair use" provision of the Lanham Act, which permits a person to use his personal name as a

---

[4] Note that JA Apparel not only asserts that Abboud sold the words "designed by", but all synonyms as well, including: "compose", "create" and "execute". *See* JA Apparel's Request For Conclusion Of Law, Number 2.

5

descriptive term to identify himself in connection with his business. As Judge Posner wrote in *Peaceable Planet, Inc. v Ty, Inc.*, 362 F.3d 986, 989 (7th Cir. 2004), the "fair use" defense with respect to personal names not only protects the right of a person to identify himself with his business, but it also performs the very important function of insuring the communication of useful information to the public. This function is particularly important in the high-end fashion industry, where an individual designer's personal reputation plays a key role in a consumer's decision to purchase high-end fashion apparel. *Basile S.P.A. v Basile*, 899 F.2d 35, 40 (D.C. Cir. 1990) (discussing consumer interest in the reputation of individual designers, such as Yves St. Laurent and Christian Dior, with regard to their purchase of high fashion apparel). Thus, there is no merit to JA Apparel's assertions that the "fair use" defense is somehow restricted so as to prevent Abboud from informing the public that he has created his "jaz" product line.

Second, many courts have ruled that even when a person has *sold* his name as a trademark, he remains free to use his name *descriptively* to identify himself in connection with his business. *Madrigal*, 799 F.2d at 823 (protecting Mark Levinson's right to *advertise* and *inform* the public that "he is now *designing* audio equipment for Cello"(emphasis added)), *Taylor Wine*, 569 F.2d 731 (protecting vintner's use of his *signature* on wine bottles; so public can rely on his personal "knowledge" and "skill" as a "grower and distributor of regional wines"); *Paul Frank Indus., Inc. v. Sunich*, 502 F. Supp. 2d 1094, 1097 (C.D.Cal. Aug 21, 2007) (permitting Paul Frank "to identify himself as the *designer* of [his] products in a *message or informative piece* posted on [his] website" (emphasis added)). In sum, although all these decisions are infected with a confusion analysis that is not relevant to the "fair use" defense, on the critical issue of *descriptive* usage they all draw a sharp distinction between a seller's *prohibited* use of his name as a mark on products; and, his *permitted* use of his own name as a

*descriptive* term to identify himself and communicate to the public the truthful and valuable commercial information that he has created the products he markets and sells.

      Third, contrary to JA Apparel's assertions, Abboud is clearly using his "jaz" trademark to identify the "source" of his apparel products in the example ads, rather than his name, which is being used *descriptively* to identify himself as the creator of his "jaz" product line. *Cosmetically Sealed*, 125 F.3d at 30 (noting that "[t]he non-trademark use of the challenged phrase and the defendants' good faith are both evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks"). JA Apparel's attempt to transform Abboud's testimony that he is the "source" of his "work" into an intention to use his name to identify his products is simply unavailing, because the word "work" refers to Abboud's *design* work, not his "jaz" product line; and, JA Apparel has no right to such *design* work or to hold itself out as the "source" of such *design* work. *A. Charmichel & Co. v Latimer, Stillman & Co.*, 11 R.I. 395, 404 (1876) ("[i]f an artist or an artisan has acquired by his personal skill and ability a reputation which gives to his works in the market a higher value than those of other artists or artisans, he cannot give to other persons the right to affix his name or mark to their goods, because he cannot give to them a right to practice a fraud upon the public").

      Fourth, far from being irrelevant, *Gucci*, 688 F.Supp. 916, is an excellent example of how a court should address "fair use" under the Lanham Act, because there the court examined the very factors that are relevant to determining "fair use", *i.e.*, *placement, prominence* and *presentation* (descriptive context); and, because the court held that Paolo Gucci could use the descriptive phrase "designed by Paolo Gucci" to inform the public that he had *designed* his products, as long as the phrase was accompanied by the prominent display of his "Riviera" trademark and by a disclaimer stating that he was not affiliated with "Gucci" or its products.

7

Fifth, the Supreme Court's opinion in *KP Permanent Make-Up*, 543 U.S. 111 *did* rule out confusion as an element that a defendant had to negate in asserting "fair use"; so JA Apparel's repeated reliance on earlier cases to the contrary is misplaced, particularly in light of the Second Circuit opinions in *Cosmetically Sealed*, 125 F.3d 28, and *Car-Freshner*, 70 F.3d 267, *that also rule out confusion in connection with "fair use."* Accord *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 73-74 (2d Cir. 1999); *New York Mercantile*, 389 F. Supp. 2d 527.

Sixth, the repeated and now tired invocation of the so-called "sweeping injunctive relief" statement in *Levitt Corp*, 593 F.2d at 468, and other cases, ignores the fact that *Levitt* and its progenitors, *Guth*, 215 F. at 767, and *The Lepage Co. v. Russia Cement Co.*, 51 F. 941, 944-46 (1st Cir. 1892), *all* involved defendants who used their names as *trademarks* on their products, *e.g.*, Levitt used "Levittown Florida" on his Florida real estate project; Guth used his name prominently on the packages for his candy; and LePage used his name on the bottles containing his glue; so *descriptive* use was never an issue. Therefore, at best these cases only stand for the proposition that when a person has sold his name as a trademark and subsequently proceeds to use his name as a mark, the courts are justified in granting "sweeping injunctive relief" as a means of *correcting* such *bad faith* infringement. However, these cases have no application, whatsoever, to "fair use" under the Lanham Act, because Congress did not condition the Lanham Act's "fair use" defense on a person *not having sold his name as a trademark.* In other words, there is no exception under the fair use provision of the Lanham Act for trademarks that have been sold. Moreover, while the courts certainly have the inherent judicial power to grant sweeping injunctive relief, as instrumentalities of the government, they are constrained in their exercise of such equitable power by the First Amendment, which requires a "narrow tailoring" of any injunctions imposed on commercial speech. *Central Hudson*, 447 U.S. 557. Thus,

"sweeping injunctive relief" prohibiting truthful commercial speech would be unconstitutional.

Seventh, while it is true that an "attention getting symbol" may be indicative of trademark usage under the prominence factor for analyzing "fair use", *prominence* is only one factor that may be taken into account along with *placement* and *presentation* (descriptive context) for purposes of determining if a particular use is descriptive. Here, it is important to note that this is a very fact-specific inquiry and that no one factor is decisive. Rather, it is necessary to examine all three factors and balance them against one another. In any event, the use of "Joseph Abboud" in the mock-up ads is not attention getting, when balanced against the *far more prominent* display of the "jaz" trademark; and, the *presentation* of "Joseph Abboud" in the *context* of a *statement* that *identifies* him as a *person, i.e.*, the "award winning designer", who has *performed the function* of creating a "new luxury collection" known as "jaz". (DX 187,188).

Eighth, while it may be perfectly permissible for Abboud to make "fair use" of the *descriptive* phrase "designed by", he has not done so and does not intend to do so. Moreover, as indicated by JA Apparel's Opposition, JA Apparel has no more claim to this *descriptive* phrase than many other designers who have used "designed by" with regard to their names. In short, because "designed by" is a *descriptive* phrase, it cannot serve as a trademark by itself; so it is in the public domain and available to all, when used descriptively.

Ninth, despite the Supreme Court's very clear statement that negation of confusion is not an element of the "fair use" defense, *see KP Permanent Make-Up*, 543 U.S. at 121-23, JA Apparel erroneously asserts that Abboud would have to prove that consumers would not be confused by the example mock-up ads. In any event, while such proof is clearly irrelevant to the "fair use" defense, without waiving Abboud's rights respecting the "fair use" defense, it is noteworthy that any concern about confusion could be easily addressed by adding a disclaimer to

the example mock-up ads stating that: "Designer Joseph Abboud is no longer affiliated or associated with JA Apparel Corp., the owner of trademark "Joseph Abboud." *See* DX 35, which includes a disclaimer similar to the one approved in *Gucci, supra*.

### III. Abboud's Publicity Rights Are Not Pre-Empted By The Lanham Act.

First, as a matter of law, the "name, portrait or picture of any living person" are all *expressly* protected as *publicity* rights under the N.Y. Civil Rights Law, §§ 50, 51; so JA Apparel's assertion that Abboud's publicity rights somehow do not include his *name* is meritless.

Second, the case law cited by JA Apparel actually supports Abboud's position that he validly revoked any implied consent to the use of publicity rights upon the termination of his services for JA Apparel as at July 13, 2005. *See, Susy Prods.*, 140 N.Y.S. 2d 904 (holding that "[t]he mere fact that, during his association with Susy Products and its successor . . . Knox permitted his nom de plume to be used, did not vest in either company the *exclusive right* to the use of the name under which he had been known" (emphasis added)); and, *Adrian*, 118 N.Y.S. 2d 121 (holding that "[n]either has plaintiff waived the benefit of the Civil Rights Law by consenting for a time to have his name used in the perfumery field by Overhamm).

Third, there is simply no conflict between federal trademark law under the Lanham Act and the N.Y. Civil Rights Law, which would permit pre-emption, particularly with regard to Abboud's right to prevent JA Apparel from misappropriating his publicity rights by using his name to identify him as a person, designer, expert and/or celebrity. *See*, McCarthy, *The Rights of Publicity and Privacy*, §5 (stating that trademark right rights and publicity rights "can exist side by side as parallel legal rights that are *not inconsistent*" (emphasis added)). Certainly, the Lanham Act protects JA Apparel's right to use the name "Joseph Abboud" in its *secondary* trademark sense to identify the source of its products, but it does not permit JA Apparel to use

the name in its *primary* descriptive sense to identify Abboud as a person.

### IV. The First Amendment Precludes The Court From Ordering Sweeping Injunctive Relief With Regard To Abboud's Use Of His Name.

First, while there is no question that the First Amendment does not protect false or deceptive advertising, Abboud's use of his name to identify himself and to inform the consuming public that he has created the "jaz" product line is neither false nor deceptive. Indeed, there is a *some relevance* between Abboud's reputation as a designer and his communicating that he created the "jaz" line; and, there is *nothing explicitly misleading* in Abboud identifying himself as the designer of the "jaz" products. Thus, Abboud's communication of such truthful and valuable information is subject to protection under the First Amendment. *Rogers, supra* (articulating the "some relevance" test for purposes of protecting First Amendment interests in communication). This means that any injunctive relief that would impinge upon Abboud's commercial speech must be narrowly tailored to directly and materially advance a substantial governmental interest under the intermediate level of scrutiny required by *Central Hudson*, *supra*.

Second, contrary to JA Apparel's assertion, the First Amendment tolerates confusion in the marketplace, because the public interest in communicating truthful and valuable commercial speech outweighs the risk of confusion. *Muzikowski v Paramount Picture Corp.*, 2005 U.S. Dist. Lexis 13127, *36 (N.D. Ill. 2005) ("First Amendment concerns trump Lanham Act protections"); *Mattel, Inc. v MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) (the Lanham Act's likelihood of confusion test" fails to account for the full weight of the public's interest in free expression"); *Mushroom Makers, Inc., v. R.G. Barry corp.*, 580 F.2d 44 (2d Cir. 1978) (courts tolerate a "greater likelihood of confusion" when First Amendment interests are at stake).

As a practical matter, the only way to eliminate consumer confusion is to impose

11

ignorance, but no court in this country should countenance such ignorance in this age of consumer rights and interests. Thus, as the Fifth Circuit said in *Better Bus. Bureau of Metro. Houston, Inc. v. Med. Dirs., Inc.*, 681 F.2d 397, 405 (5th Cir. 1982), the appropriate means for dealing with confusion in the marketplace "is not less speech, but more." Therefore, under the First Amendment "absolute prohibitions of [commercial] speech . . . are improper where there is any possibility that an explanation or disclaimer will suffice." *Consumers Union of U.S., Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir. 1983).

## CONCLUSION

In sum, based upon the clear and unequivocal terms of the P&S; the "fair use " defense under the Lanham Act; and, the First Amendment protection afforded commercial speech, JA Apparel's arguments in its Opposition brief must be rejected.

Dated: New York, New York
        March 31, 2008

                                        Respectfully submitted,

                                        ARNOLD & PORTER LLP

                                        By: _____
                                        Louis S. Ederer (LE 7574)
                                        John Maltbie (JM 3658)
                                        399 Park Avenue
                                        New York, New York 10022
                                        (212) 715-1000