USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/13/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
JA APPAREL CORP.,

                Plaintiff,

     v.

JOSEPH ABBOUD, HOUNDSTOOTH CORP., and
HERRINGBONE CREATIVE SERVICES, INC.,

                Defendants.
------------------------------------------X
JOSEPH ABBOUD, HOUNDSTOOTH CORP., and
HERRINGBONE CREATIVE SERVICES, INC.,

                Counterclaim-Plaintiffs,

     v.

JA APPAREL CORP. and MARTIN STAFF,

                Counterclaim-Defendants.
------------------------------------------X

07 Civ. 7787 (THK)

**MEMORANDUM
OPINION AND ORDER**

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

    Plaintiff JA Apparel Corp. ("Plaintiff" or "JA Apparel") filed a Bill of Costs with the Clerk of the Court, on February 16, 2010, in the amount of $60,593.96, on the assumption that it was the prevailing party in this litigation. Defendants Joseph Abboud ("Abboud"), Houndstooth Corp. ("Houndstooth"), and Herringbone Creative Services, Inc. ("Herringbone") (at times, collectively "Abboud") have moved to have this Court review the Bill of Costs, arguing that (1) JA Apparel is not the prevailing party, and, in any event, (2) certain of the items for which Plaintiff seeks costs should be disallowed. (See Defendants' and Counterclaim Plaintiffs' Objection to Bill of Costs Requested by Plaintiff and Counterclaim

Defendants, dated Feb. 26, 2010 ("Defs. Objs.").)[1]

## BACKGROUND

In this action, JA Apparel sued Defendants for (1) breach of contract, (2) trademark infringement, false designation of origin, unfair competition, trademark dilution, false and deceptive trade practices, and (3) a declaratory judgment regarding the nature of its rights, stemming from a June 16, 2000 Purchase and Sale Agreement, and a related July 13, 2000 Side Letter Agreement, between, on the one hand, JA Apparel, and on the other, Abboud and Houndstooth. Defendants asserted counterclaims against JA Apparel and one of its principals, Martin Staff ("Staff"), for false endorsement, false advertising, violation of the New York Civil Rights and General Business Laws, and common law unfair competition, stemming from activities in which JA Apparel and Staff allegedly engaged subsequent to the expiration of the Side Letter Agreement.

Following a bench trial, the Court issued a Memorandum Opinion and Order concluding that the parties' Agreement clearly included the sale to JA Apparel of all of Joseph Abboud's trademarks, as well as his name for all commercial purposes. The Court, therefore, granted Plaintiff injunctive relief and dismissed all of Abboud's counterclaims. In addition, the Court found that

---

[1] Defendants also argued that the Bill of Costs was untimely. They have since withdrawn that objection.

2

Defendant Abboud breached the Side Letter Agreement by engaging in competitive activity prior to the expiration of his non-compete agreement with Plaintiff; nevertheless, the Court concluded that Plaintiff failed to establish any damages resulting from Abboud's breaches. See JA Apparel Corp. v. Abboud, 591 F. Supp. 2d 306 (S.D.N.Y. 2008) ("Abboud I").

On appeal, the Second Circuit concluded that the language of the Agreement was ambiguous with respect to whether Abboud was precluded from using his name for all commercial purposes, and remanded for further proceedings. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 403 (2d Cir. 2009).[2]

In a Memorandum Opinion and Order, issued on January 12, 2010, this Court concluded, after considering the extrinsic evidence, that: (1) under the parties' Agreement, Defendant Abboud was precluded from using his name as a trademark or tradename, but was not precluded from using his name in other commercial ways; (2) certain of Defendant Abboud's proposed ads for his new business constituted fair use, and others would result in trademark infringement; and (3) none of Defendant Abboud's counterclaims had merit. The Court issued a declaratory judgment in which it set out certain restrictions that Abboud is required to adhere to in using his name in advertising his own line of clothing. See JA Apparel

---

[2] Defendants did not appeal the Court's finding that Abboud breached the non-compete agreement.

Corp. v. Joseph Abboud, No. 07 Civ. 7787 (THK), 2010 WL 103399 (S.D.N.Y. Jan. 12, 2010) ("Abboud II"). Judgment was entered on January 15, 2010.

**DISCUSSION**

The primary issue to be decided is whether Plaintiff can be viewed as the prevailing party in this litigation, thus entitling it to recovery of its costs.

I.  Applicable Law

Rule 54 of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

> [B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception. For this reason, the losing party has the burden to show that costs should not be imposed; for example, costs may be denied because of misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources.

Whitfield v. Scully, 241 F.3d 264, 270 (2d Cir. 2001) (internal citations omitted). Nevertheless, "[t]he determination of taxation of costs is a matter within the discretion of the trial court." Carmody v. Pronav Ship Mgmt., Inc., No. 02 Civ. 7158 (DF), 2004 WL 1837786, at *1 (S.D.N.Y. Aug. 17, 2004).

Plaintiff relies on a line of cases holding that to be the prevailing party, it is sufficient for a party to have succeeded on

4

any significant issue in the litigation, not necessarily the central issue. See, e.g., LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d Cir. 1998) (citing Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790-91, 109 S. Ct. 1486, 1492-93 (1989)). That standard, however, has more weight in a civil rights or employment discrimination context where, as a general rule, the defendant does not assert claims against the plaintiff and any significant vindication of a plaintiff's rights is meaningful, even if the plaintiff does not prevail on all of the claims asserted. In the commercial context, such as this case, prevailing on one issue does not necessarily capture the full scope of what was at issue and resolved in the litigation. If a defendant prevails on the plaintiff's most significant claim, and the plaintiff prevails on another less significant claim, it may be reasonable to conclude that neither party prevailed. However, in all cases, "for a party to be prevailing, there must be a judicially sanctioned change in the legal relationship of the parties." Dattner v. Conagra Foods, Inc., 458 F.3d 98, 101 (2d Cir. 2006) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 605, 121 S. Ct. 1835, 1840 (2001)) (internal quotation marks omitted). A technical victory that does not result in an enforceable judgment that alters the defendant's behavior vis à vis the plaintiff, is insufficient to support prevailing party status. See Farrar v. Hobby, 506 U.S.

5

103, 113, 113 S. Ct. 566, 573-74 (1992). Thus, for example, the Supreme Court has concluded that merely securing a declaratory judgment finding a regulation unconstitutionally vague, where the plaintiffs had not actually been harmed prior to securing it, would not result in prevailing party status, because the declaratory judgment did not actually alter the defendants' behavior toward the plaintiffs for their benefit. See id. at 113, 113 S. Ct. at 574; accord Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996).

II. Application

Had Plaintiff sought to recover its costs after the Court issued its decision in Abboud I, there would have been no question that it was the prevailing party. The primary issue in this litigation has always been whether the parties' Agreement, in which Abboud sold his name to Plaintiff, precluded Abboud's use of his name for all commercial purposes, not merely as a trademark or tradename. See Abboud I, 591 F. Supp. 2d at 316 ("Notwithstanding the torrent of claims, counterclaims, motions, briefs, testimony, exhibits, and letters that have been submitted . . ., the central and overriding issue in this case is a simple one, which can be stated as follows: by way of the Agreement, did Abboud sell to JA Apparel the exclusive right to use his name in connection with goods and services?") (emphasis added). In Abboud I, the Court concluded that the clear language of the Agreement prohibited

6

Abboud from using his name for all commercial purposes, and, therefore, enjoined Abboud from the using his name in connection with his new "jaz" clothing line, even if not used as a trademark. See id. at 326-27.  The Court further found that Abboud's proposed uses of his name would result in trademark infringement, and that he had failed to sustain his burden of proving the defense of fair use.  But, even here, the Court relied to some degree on its conclusion that, under the Agreement, Abboud had sold his name for all commercial purposes.  See id. at 328-31.  Finally, the Court concluded that Abboud breached the terms of the Side Agreement's non-compete provision, by engaging in activity in preparation for competing with JA Apparel prior to the expiration of the non-compete restricted period.  Nevertheless, the Court concluded that Abboud did not actually compete with JA Apparel and determined that it was "unable to discern significant damage to JA Apparel stemming from Abboud's activities."  See id. at 344.  The Court therefore declined to grant JA Apparel the injunctive and monetary relief that it requested.  See id. at 344-45.[3]

The Second Circuit had a different view of the parties' Agreement, concluding that it was ambiguous as to whether Abboud

---

[3] The Court also dismissed Defendants' counterclaims for false endorsement, false advertising, violation of the New York Civil Rights and General Business Laws, and common law unfair competition.  Here, too, the Court relied heavily on its conclusion that Abboud sold his name to JA Apparel for all commercial purposes.  See id. at 345-48.

7

sold his name for all commercial purposes. It therefore remanded the case to this Court for consideration of the extrinsic evidence, as well as an element-by-element analysis of the various ads Abboud proposed to use to determine whether Abboud's name would be used as a trademark. See JA Apparel Corp., 568 F.3d at 403.

As discussed, on remand this Court determined that the extrinsic evidence supported Abboud's position that he had not sold his name to JA Apparel for all commercial purposes. The Court, therefore, was limited to addressing JA Apparel's trademark infringement claims and concluded that certain of Abboud's proposed ads would lead to trademark infringement and others would not. As guidance to the parties in their future dealings, the Court set fairly strict parameters for Abboud's use of his name in any future ads for his "jaz" line of clothing. See Abboud II, 2010 WL 103399, at *24.

In sum, Abboud, not JA Apparel, prevailed on the primary issue in the litigation — construction of the term "name" in the parties' Agreement. Moreover, although Abboud was precluded from using certain of the ads the Court reviewed, he had not used them prior to the Court's decision and, thus, had not actually infringed JA Apparel's trademark. And, other proposed ads were found acceptable.[4] Finally, although Abboud was found to have breached

---

[4] Abboud never disputed that he could not use the Joseph Abboud name as a trademark, and he agreed that he would not use the Joseph Abboud name on products or hangtags. The only issue

8

the parties' non-compete agreement, the Court concluded that no demonstrable harm accrued to JA Apparel.

On this record, the Court concludes that JA Apparel was not the prevailing party in this action. The judgment was "mixed," with Abboud prevailing on the issue most seriously in contention, and JA Apparel prevailing on other issues. Accordingly, JA Apparel's application for costs is denied. Each party shall bear its own costs. See ARP Films, Inc. v. Marvel Entm't Group, Inc., 952 F.2d 643, 651 (2d Cir. 1991) ("In view of the mixed outcome of this litigation, the district court was well within its discretion in concluding that plaintiffs were not prevailing parties within the meaning of . . . Fed. R. Civ. P. 54(d), and accordingly were not entitled to costs or attorneys' fees."); see also Interthal v. State Farm Fire and Cas. Co., 52 Fed. App'x 582, 583-84 (3d Cir. 2002) ("The results here were mixed. [Plaintiff] achieved only partial success on his claims. For that reason, the District Court did not abuse its discretion in holding that each party should be responsible for its own costs."); Amarel v. Connell, 102 F.3d 1494, 1523 (9th Cir. 1996) ("In the event of a mixed judgment, however, it is within the discretion of a district court to require each party to bear its own costs."); Testa v. Village of Mudelein, Illinois, 89 F.3d 443, 447 (7th Cir. 1996) ("[T]he prevailing party

---

to be decided was whether particular uses of the name in advertisements were trademark uses.

is the party who prevails as to the <u>substantial</u> part of the litigation . . . . Considering the mixed outcome . . . the decision requiring each party to bear its own costs is within [the court's] discretion.") (internal citations and quotation marks omitted); <u>Howell Petroleum Corp. v. Samson Res. Co.</u>, 903 F.2d 778, 783 (10th Cir. 1990) ("The court was within its discretion to refuse to award costs to a party which was only partly successful."); <u>First Commodity Traders, Inc. v. Heinold Commodities, Inc.</u>, 766 F.2d 1007, 1015 (7th Cir. 1985) ("[T]his court has held that under Rule 54(d) the 'prevailing party' is the party who prevails 'as to the substantial part of the litigation.'").

    So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

    Dated: April 13, 2010
           New York, New York